# Exhibit 8

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ACQIS LLC,<br>a Texas limited liability company,<br><br>        Plaintiff,<br>v. | ***CONSOLIDATED***<br><br>**JURY TRIAL DEMANDED** |
| MITAC COMPUTING TECHNOLOGY CORPORATION and MITAC HOLDINGS CORPORATION, a Taiwan corporation,<br>        Defendants. | Civil Action No.: 6:20-cv-962-ADA |
| ASUSTEK COMPUTER, INC.,<br>        Defendant. | Civil Action No.: 6:20-cv-965-ADA |
| INVENTEC CORPORATION, a Taiwan corporation,<br>        Defendant. | Civil Action No.: 6:20-cv-966-ADA |
| LENOVO GROUP Ltd. et al.,<br>        Defendants. | Civil Action No.: 6:20-cv-967-ADA |
| WIWYNN CORPORATION, a Taiwan corporation,<br>        Defendants. | Civil Action No.: 6:20-cv-968-ADA |

## ACQIS'S CLAIM CONSTRUCTION SURREPLY BRIEF

## **TABLE OF CONTENTS**

**Page**

I.  **"PERIPHERAL COMPONENT INTERCONNECT (PCI) BUS TRANSACTION" /
"PCI BUS TRANSACTION"** ................................................................. 1

    A.    ACQIS's Proposed Construction Is Consistent with, and Adds Specificity to,
Judge Payne's and Judge Davis's Prior Constructions. .......................................... 1

    B.    ACQIS Never Disclaimed Its Proposed Construction. ........................................... 4

        1.    ACQIS's 2014 IPR statements were not clear and unmistakable
disclaimers. ......................................................................................... 4

        2.    Judge Payne found no disclaimer. ........................................................... 9

        3.    Any disclaimer relating to the '873 and '814 patents does not attach to the
asserted reissue patents. ......................................................................... 10

    C.    The Intrinsic and Extrinsic Evidence Establishes that a "PCI Bus Transaction" Is
Not Required to Include Information Beyond Address, Data, Byte Enable, and
Command Type Information. ................................................................. 10

    D.    Defendants' Proposed Construction Is Ambiguous and Fails to Resolve
Anticipated Infringement Disputes. ........................................................ 11

    E.    The *EMC* litigation did not result in collateral estoppel. ..................................... 12

II.  **CLAIMS RECITING "ADDRESS AND DATA BITS" OR "ADDRESS BITS,
DATA BITS, AND BYTE ENABLE INFORMATION BITS" OF A PCI BUS
TRANSACTION** ................................................................................. 13

III.  **CLAIMS RECITING AN "ENCODED" PCI BUS TRANSACTION OR A PCI BUS
TRANSACTION IN "SERIAL STREAM" OR "SERIAL FORM"** ................................. 14

    A.    The Claim Terms Do Not Necessarily Require a Parallel-to-Serial Conversion of
a PCI Bus Transaction .......................................................................... 14

    B.    ACQIS's Statements in Pending IPRs Are Consistent with Its Proposed
Construction. .................................................................................... 15

IV.  **"UNIVERSAL SERIAL BUS (USB) PROTOCOL [DATA]" / "UNIVERSAL
SERIAL BUS (USB) PROTOCOL INFORMATION"** ....................................... 16

V.  **"COMPUTER MODULE"** ...................................................................... 17

VI.  **"CONSOLE"** ................................................................................... 19

i

**VII.**   **"SINGLE CHIP"** .......................................................................................................... 20

**VIII.**  **"CENTRAL PROCESSING UNIT"** ............................................................................ 21

**IX.**   **CONCLUSION** ........................................................................................................ 21

4818-9988-3774\1

# TABLE OF AUTHORITIES

Page(s)

## Cases

*3M Innovative Props. Co. v. Tredegar Corp.*,
 725 F.3d 1315 (Fed. Cir. 2013) ........................................................................... 5

*ACQIS LLC v. Alcatel-Lucent USA Inc.*,
 No. 6:13-CV-638, 2015 U.S. Dist. LEXIS 48339 (E.D. Tex. Apr. 13, 2015)............................*passim*

*ACQIS LLC v. Appro Int'l, Inc.*,
 No. 6:09-cv-148, 2010 U.S. Dist. LEXIS 77548 (E.D. Tex. Aug. 2, 2010)........................................ 18

*ACQIS LLC v. Appro Int'l, Inc.*,
 No. 6:09-CV-148, 2011 U.S. Dist. LEXIS 10515 (E.D. Tex. Feb. 3, 2011).......................................... 2

*Avid Tech., Inc. v. Harmonic, Inc.*,
 812 F.3d 1040 (Fed. Cir. 2016) ....................................................................... 6, 8

*Biotec Biologische Naturverpackugen GmbH & Co. KG v. Biocorp, Inc.*,
 249 F.3d 1341 (Fed. Cir. 2001) ........................................................................... 9

*Droplets, Inc. v. eBay, Inc.*,
 No. 2:11-CV-401-JRG-RSP, 2014 U.S. Dist. LEXIS 117699 (E.D. Tex. Aug. 22, 2014)..................................................................................................... 19

*eBay, Inc. v. IDT Corp.*,
 No 4:08-CV-04015-HFB, 2009 U.S. Dist. LEXIS 138768 (D. Ark. Oct. 15, 2009) ........................... 19

*Ecolab, Inc. v. FMC Corp.*,
 569 F.3d 1335 (Fed. Cir. 2009) ........................................................................... 8

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*,
 946 F.3d 1367 (Fed. Cir. 2020) ............................................................... 19, 20, 21

*Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*,
 508 F.3d 1366 (Fed. Cir. 2007) ........................................................................... 9

*Fujitsu Ltd. v. Netgear, Inc.*,
 07-cv-710-bbc, 2009 U.S. Dist. LEXIS 739 (W.D. Wis. Jan. 5, 2009).............................................. 16

*GE Lighting Solutions, LLC v. AgiLight, Inc.*,
 750 F.3d 1304 (Fed. Cir. 2014) ........................................................................... 7

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
 527 F.3d 1379 (Fed. Cir. 2008) ......................................................................... 21

*Kara Tech. Inc. v. Stamps.com Inc.*,
 582 F.3d 1341 (Fed. Cir. 2009) ......................................................................... 18

iii

*Novartis Pharms. Corp. v. Watson Labs., Inc.*,
611 Fed. Appx. 988 (Fed. Cir. 2015) ................................................................. 13

*Personalized Media Communs., LLC v. Google LLC*,
2:19-cv-00090-JRG, 2020 U.S. Dist. LEXIS 59421 (E.D. Tex. Apr. 3, 2020) .................................... 3

*Phil-Insul Corp. v. Airlite Plastics Co.*,
854 F.3d 1344 (Fed. Cir. 2017) ................................................................. 13

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ................................................................. 18

*Rambus Inc. v. Infineon Techs. AG*,
318 F.3d 1081 (Fed. Cir. 2003) ................................................................. 9

*State Farm Mut. Auto. Ins. Co. v. Logisticare Solutions, LLC*,
751 F.3d 684 (5th Cir. 2014) ................................................................. 3

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*,
849 F.3d 1349 (Fed. Cir. 2017) ................................................................. 8

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
728 F.3d 1309 (Fed. Cir. 2013) ................................................................. 10

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 1 | U.S. Patent No. 9,529,768 ("'768 patent") |
| 2 | U.S. Patent No. 9,703,750 ("'750 patent") |
| 3 | U.S. Patent No. 8,977,797 ("'797 patent") |
| 4 | U.S. Patent No. 7,676,624 ("'624 patent") |
| 5 | U.S. Patent No. 8,041,873 ("'873 patent") |
| 6 | U.S. Patent No. 8,626,977 ("'977 patent") |
| 7 | U.S. Patent No. 8,756,359 ("'359 patent") |
| 8 | U.S. Patent No. 9,529,769 ("'769 patent") |
| 9 | U.S. Patent No. RE42,984 ("'984 patent") |
| 10 | U.S. Patent No. RE43,602 ("'602 patent") |
| 11 | U.S. Patent No. RE44,468 ("'468 patent") |
| 12 | U.S. Patent No. RE44,654 ("'654 patent") |
| 13 | U.S. Patent No. RE44,739 ("'739 patent") |
| 14 | U.S. Patent No. RE45,140 ("'140 patent") |
| 15 | U.S. Patent No. RE46,947 ("'947 patent") |
| 16 | Expert Declaration of Marc E. Levitt, Ph.D. Regarding Claim Construction dated June 3, 2021 ("Levitt Decl.") and Exhibit A thereto, filed in *ACQIS LLC v. Samsung Elec. Co., Ltd., et al.*, No. 2:20-cv-00295-JRG (E.D. Tex. Jul. 8, 2021) |
| 17 | Rebuttal Expert Declaration of Marc E. Levitt, Ph.D. Regarding Claim Construction dated June 21, 2021 ("Levitt Rebuttal Decl."), filed in *ACQIS LLC v.* |

iv

| | |
|---|---|
| | *Samsung Elec. Co., Ltd., et al.*, No. 2:20-cv-00295-JRG (E.D. Tex. Jul. 8, 2021) |
| 18 | Excerpts from *PCI Local Bus Specification*, Rev. 2.1 (Jun. 1, 1995) ("PCI 2.1") |
| 19 | Excerpts from *PCI Local Bus Specification*, Rev. 2.2 (Dec. 8, 1998) ("PCI 2.2") |
| 20 | Excerpts from *The IEEE Standard Dictionary of Electrical and Electronics Terms* (6th ed. 1996) |
| 21 | Excerpts from *Universal Serial Bus Specification*, Rev. 1.0 (Jan. 15, 1996) ("USB 1.0") |
| 22 | Excerpts from *Universal Serial Bus Specification*, Rev. 2.0 (Apr. 27, 2000) ("USB 2.0") |
| 23 | U.S. Patent No. RE42,814 ("'814 patent") |
| 24 | Expert Declaration of Robert P. Colwell, Ph.D. Regarding Claim Construction dated June 3, 2021 ("Colwell Decl.") and Appendix A thereto, filed in *ACQIS LLC v. Samsung Elec. Co., Ltd., et al.*, No. 2:20-cv-00295-JRG (E.D. Tex. Aug. 30, 2021) |
| 25 | Rebuttal Expert Declaration of Robert P. Colwell, Ph.D. Regarding Claim Construction dated June 15, 2021 ("Colwell Rebuttal Decl."), filed in *ACQIS LLC v. Samsung Elec. Co., Ltd., et al.*, No. 2:20-cv-00295-JRG (E.D. Tex. Aug. 30, 2021) |
| 26 | *Excerpt of EMC Corp. v. ACQIS LLC*, IPR2014-01469, Hearing Transcript, Paper No. 55 (PTAB Jan. 5, 2016) |
| 27 | *Excerpt of EMC Corp. v. ACQIS LLC*, IPR2014-01469, Transcript of Deposition of Volken Lindenstruth, Ph.D. (PTAB Aug. 28, 2015) |
| 28 | *Excerpt of EMC Corp. v. ACQIS LLC*, IPR2014-01469, Declaration of Deposition of Volken Lindenstruth, Ph.D. (PTAB Jun. 11, 2015) |
| 29 | Plaintiff ACQIS LLC's Opening Claim Construction Brief from *ACQIS LLC v. Samsung Elec. Co., Ltd.*, No. 2:20-cv-00295-JRG, Dkt. 65 (E.D. Tex. Jul. 8, 2021) |
| 30 | Defendants' Aug. 9, 2021 Preliminary Proposed Claim Constructions from the present litigation |
| 31 | ACQIS's Aug. 9, 2021 Preliminary Proposed Claim Constructions from the present litigation |
| 32 | *Excerpt of EMC Corp. v. ACQIS LLC*, IPR2014-01462, Patent Owner's Preliminary Response (PTAB Dec. 15, 2014) |
| 33 | *Excerpt of Intel Corp. v. ACQIS LLC*, IPR2021-01107, Patent Owner's Preliminary Response (PTAB Sep. 17, 2021) |

Exhibits 1-31 were submitted with Plaintiff ACQIS LLC ("ACQIS")'s Responsive Claim Construction Brief ("Resp."). Exhibits 32-33 are submitted concurrently with ACQIS's Surreply Claim Construction Brief ("Surr.").

Much of Defendants' Reply Claim Construction Brief ("Reply") reiterates their Opening Claim Construction Brief ("Br."), which ACQIS has already addressed in its Response. The Reply has, however, made clear that many of Defendants' proposed constructions, particularly those relating to the "PCI bus transaction," rest on two shaky grounds: collateral estoppel and disclaimer.  Defendants essentially assert that these two arguments allow the Court to disregard long-established canons of claim construction. If the Court does not apply the collateral estoppel and disclaimer arguments as Defendants claim, Defendants have little, if anything, to support their proposed constructions.

Within the last month, at least one other Court has already rejected the estoppel and disclaimer arguments.  In the *Samsung* litigation, Judge Payne adopted constructions that are consistent with ACQIS's proposed constructions and necessarily rejected the estoppel and disclaimer arguments, similarly espoused by Samsung. Reply, Ex. 27 at 17-19, 23, 26-27. ACQIS's proposed constructions are also consistent with the prior constructions of Judge Davis in the *EMC* litigation. Here, ACQIS seeks very similar or identical constructions, with the one caveat being that on certain terms, ACQIS requests a construction that would streamline the infringement and invalidity stages of this case, something Judge Payne and Judge Davis left for later. Accordingly, ACQIS respectfully requests that the Court adopt each of its proposed constructions that will advance the case.

## I.     "PERIPHERAL COMPONENT INTERCONNECT (PCI) BUS TRANSACTION" / "PCI BUS TRANSACTION"

### A.     ACQIS's Proposed Construction Is Consistent with, and Adds Specificity to, Judge Payne's and Judge Davis's Prior Constructions.

When interpreting "PCI bus transaction," Judge Davis found that (1) a "transaction" means "information," (2) it does not mean "signals," and (3) a "PCI bus transaction" does not require a parallel PCI bus. *ACQIS LLC v. Alcatel-Lucent USA Inc.*, No. 6:13-CV-638,

1

2015 U.S. Dist. LEXIS 48339, at *13-15 (E.D. Tex. Apr. 13, 2015) ("*Alcatel-Lucent*").

ACQIS accepts this holding and proposes a construction that adds specificity regarding the

information required by a "PCI bus transaction" to address a fundamental dispute between

the parties. Resp. at 7. Defendants ignore the need for greater specificity.

      Defendants mischaracterize Judge Davis's ruling in claiming that he has already

rejected ACQIS's proposed construction. Reply at 2. While Judge Davis explained that "a

PCI bus transaction must include all information *required* by the PCI standard," he did not

provide any more specificity about how to determine what information is required and what

is not required. *Alcatel-Lucent*, 2015 U.S. Dist. LEXIS 48339, at *15 (emphasis added).

Importantly, he did not conclude that "all information required by the PCI standard" for a

"PCI bus transaction" includes everything contained in the PCI Specification, *id.*, because

much of the specification has nothing to do with what constitutes a "transaction." Instead,

Judge Davis found only that the "extrinsic evidence does not clearly define a 'transaction.'"

*Id.* Requiring everything contained in the PCI Specification would conflict with Judge

Davis's earlier Order that the term "PCI bus transaction" *does not* require aspects related to

a parallel PCI bus—and instead facilitates "backward compatibility" for legacy PCI devices.

*ACQIS LLC v. Appro Int'l, Inc.*, No. 6:09-CV-148, 2011 U.S. Dist. LEXIS 10515, at *24-25

(E.D. Tex. Feb. 3, 2011) ("*Appro*"). While ACQIS addressed the impact of *Appro* on the

construction of "PCI bus transaction" (Resp. at 12, 14), Defendants have ignored Judge

Davis's earlier decision. But, the construction must be read in the context of Judge Davis's

prior decision.

      On its face, Judge Davis's construction requires *less* than what ACQIS proposes

because he construed the term to require just "information, in accordance with the PCI

2

standard," while ACQIS's proposed construction would require which specific "information:" "digital command, address, and data information." Judge Davis's analysis thus did not resolve the fundamental dispute here, and it does not preclude ACQIS's current construction under collateral estoppel or any other theory. *See Personalized Media Communs., LLC v. Google LLC*, 2:19-cv-00090-JRG, 2020 U.S. Dist. LEXIS 59421, at *16-17 (E.D. Tex. Apr. 3, 2020) (explaining that collateral estoppel applies only to an issue "identical to the issue litigated in a prior action") (quoting *State Farm Mut. Auto. Ins. Co. v. Logisticare Solutions, LLC*, 751 F.3d 684, 689 (5th Cir. 2014)). ACQIS's proposed construction here incorporates additional detail, based on the intrinsic and extrinsic evidence, to resolve the dispute about which information from the PCI Specification a "transaction" requires. It aligns with and complements Judge Davis's construction and conclusions.

ACQIS's proposed construction is also consistent with, but adds specificity to, Judge Payne's construction of "PCI bus transaction." Judge Payne "decline[d], however, to rule in claim construction whether a particular set of information qualifies as a transaction under the PCI Local Bus Specification." Reply, Ex. 27 at 17. Instead, Judge Payne stated that the specific information contained in a "PCI bus transaction" is "an issue of fact to be considered in the context of an infringement or invalidity analysis rather than an issue of claim construction." *Id.* at 18. Thus, Judge Payne's rationale demonstrates that Defendants' construction—that a "PCI bus transaction" *must* include more than address, data, byte enable information, and command information bits—is wrong since Judge Payne expressly left that question for the finder of fact. *Id.* By adopting ACQIS's proposed construction, the Court would provide useful guidance on what specific information is contained in a "PCI

3

bus transaction," which would focus the infringement and invalidity analysis by avoiding competing application of the same construction in subsequent briefing or at trial. ACQIS has provided sufficient intrinsic and extrinsic evidence for this Court to adopt its proposed construction.

### B. ACQIS Never Disclaimed Its Proposed Construction.

Defendants' proposed construction of "PCI bus transaction" depends on ACQIS's alleged disavowal of claim scope. But that did not happen. Defendants take ACQIS's past statements out of context and otherwise omit and ignore evidence that refutes their position.

#### 1. ACQIS's 2014 IPR statements were not clear and unmistakable disclaimers.

As ACQIS explained in its Response, "before the PTAB, as here, ACQIS contends that a 'PCI bus transaction' should be construed in accordance with the *information* required by the PCI Specification." Resp. at 18. Defendants claim that this is "[n]ot true" and that "ACQIS told the PTAB that a PCI Bus Transaction is a *transaction*." Reply at 2-3 (emphasis in original).  Defendants' basis for this statement is a quoted heading from page five of the Patent Owner's Preliminary Response in IPR2014-01462: "'PCI bus transaction' is properly limited to bus transactions according to the Peripheral Component Interconnect protocol." *Id.* But this ignores other parts of the Preliminary Response that put ACQIS's statements in the proper context and directly, and resoundingly, contradict Defendants' position.

*First*, Defendants omitted from their exhibit the page of the Preliminary Response just prior to the heading they quote, but that page expressly states that ACQIS's proposed construction of "PCI bus transaction" requires specific *information*. ACQIS told the PTAB that "[t]he BRI [Broadest Reasonable Interpretation] of 'PCI bus transaction' is 'command,

address, and data ***information***, in accordance with the PCI standard, for communication with an interconnected peripheral component." Surr., Ex. 32 at 4 (emphasis added). ACQIS even provided a table, ignored by Defendants, plainly showing that ACQIS's proposed construction of "PCI Bus transaction" requires specific information:

**Table 1 – Proposed constructions for "PCI Bus transaction"**

| Patent Owner's Construction | Petitioner's Construction |
| --- | --- |
| command, address, and data information, in accordance with the PCI standard, for communication with an interconnected peripheral component | a digital signal communication with an interconnected peripheral component |

*Id.* ACQIS's proposed construction during an IPR seven years ago is substantively the same as it is now, and it is directed to ***information***. *See* Resp. at 6. This omitted information alone shows that there was no clear and unmistakable disclaimer. *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013) ("[O]ur precedent requires that, in order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable.").

Table 1 above also provides context for the heading quoted by Defendants. Petitioner EMC proposed to construe "PCI bus transaction" as a generic transaction, without any reference to the PCI standard. Surr., Ex. 32 at 4. The quoted heading comes from a section in which ACQIS argued that construing the term ***without reference to the PCI standard*** is improper. *Id.* at 5. ACQIS explained to the PTAB, "[h]ere, Petitioner's proposed construction of 'PCI bus transaction' reads 'PCI' out of all of the Petitioned Claims." *Id.* at 9. ACQIS never argued to the PTAB that a "transaction" should simply be construed as a "transaction." It did the opposite. *Id.* at 10 ("The broadest reasonable interpretation of 'PCI

5

bus transaction' includes the address, data, and command information from the Peripheral Component Interconnect protocol"). These statements fully refute Defendants' disclaimer argument. Defendants' statement that the quoted heading is an "unequivocal admission[] that a PCI bus transaction is a transaction" (Reply at 3) is, at best, deceptive hyperbole.

*Second*, Defendants also selectively quote statements from one of ACQIS's IPR experts, Dr. Lindenstruth, to prove disclaimer of embodiments that do not require "control signals." Reply at 3, 4. Taken in context, the quoted testimony does not show disclaimer. Defendants refer to "control signals" in their Reply, but the testimony actually refers to "control lines." *See, e.g.*, *id.* at 3 ("Q. Do these ***control lines, such as frame, target ready, and so forth***, are they part of the PCI bus transaction as you understand that term in the claims of the patent?"). "Control lines" are not "control signals." EMC's counsel's and Dr. Lindenstruth's references to "control lines" indicate that they were talking about a physical bus. As further evidence that they were discussing a physical bus, in the passage just prior to the reference to "control lines," Dr. Lindenstruth discussed the "pins" of a physical bus and the separate control lines corresponding to those pins. Br., Ex. 12 at 144:7-145:17. Dr. Lindenstruth's testimony shows there was no disclaimer, but, even if it were merely ambiguous, that would defeat the disclaimer argument. *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) ("Where the alleged disavowal is ambiguous, or even amenable to multiple reason interpretations, we have declined to find prosecution disclaimer.") (internal quotations and citations omitted).

Further, Dr. Lindenstruth's statement that the "control lines…define the PCI transaction" does not concede that they are ***part*** of the transaction. Dr. Lindenstruth's testimony indicates that they are separate:

6

> The frame signal is there to define the length of the transaction. This is a very fundamental thing because, unlike in other cases, in particular typically in networks, where the length of the packet is basically submitted as one of the very first words in the head of the packet saying, "This is it" and, "This is how long it will be." In PCI this doesn't exist.

Br., Ex. 12 at 143:9-16. The full testimony indicates that, in some other protocols, the length of a transaction is submitted as a part of the transaction/packet. Dr. Lindenstruth testified this is ***not*** the case in PCI. *Id.* ("In PCI this doesn't exist."). Here, just because something "defines the transaction" and "has to be there" when conveying a PCI bus transaction over a parallel PCI bus does not make it a ***part*** of the transaction. A protocol can require sending a message on one wire saying "the next packet you see will be three bytes long" and then send the packet/transaction on another, different wire. That first message is not a "part" of the transaction even though it does "have to be there" (when conveying a PCI bus transaction over a parallel bus) and "defines the transaction." Although such signals might ***define*** the length of the transaction, they are not necessarily a ***part*** of the transaction itself. Dr. Lindenstruth testimony does not constitute clear and unmistakable disclaimer of any claim scope.

In addition, ACQIS has explained that Dr. Lindenstruth's confirmation during his deposition of the construction set out in his earlier declaration (i.e., that a PCI bus transaction was only required to include "address and bus command information" and "data and byte enable[]" information) undermines Defendants' disclaimer argument. Resp. at 19-20. Defendants fail to address ACQIS's argument or explain why the declaration does not overcome their disclaimer argument. Accordingly, Defendants have not shown a clear and unmistakable disclaimer that would have been evident to a person of ordinary skill in the art. *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("The standards for finding lexicography and disavowal are exacting.").

7

*Third*, ACQIS has explained that statements by its IPR counsel referring to "control bits," when read in context, were clearly meant to refer to "command information" and are consistent with ACQIS's proposed construction of "PCI bus transaction." Resp. at 18-20. Defendants cite *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349 (Fed. Cir. 2017) in an attempt to show that this clear misstatement by ACQIS's counsel, made while discussing a part of the PCI Specification titled "Command Definition" ***during oral argument***, constitutes disclaimer. Reply at 4. But that case does not support Defendants' argument. It dealt with a patentee who made intentional and unequivocal ***written*** statements during prosecution that argued its claims overcame the prior art. *Tech. Props.*, 849 F.3d. at 1359. Those statements went beyond what the patentee needed to overcome the prior art, and in litigation, the patentee argued that its broad, unequivocal written statement should not be considered disclaimer for that reason. *Id.* The Federal Circuit held that because "[t]he question is what a person of ordinary skill would understand the patentee to have disclaimed during prosecution," it did not matter what the patentee *could* have said to determine disclaimer. *Id.* That case did not deal with an obvious misstatement by counsel during oral argument. And the present case does not relate to making a statement that was broader than needed to overcome the prior art. At most, the statements by ACQIS's counsel were ambiguous and may be subject to more than one reasonable interpretation, which defeats Defendants' disclaimer argument. *See Avid Tech.*, 812 F.3d at 1045. Misstatements, such as the ones here about "control bits" while discussing the "Command Definition" of the specification, create ambiguity and are not "clear and unmistakable," especially in light of all the written material to the contrary. Therefore, they cannot constitute disclaimer. *See Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009) ("Even if an isolated

8

statement appears to disclaim subject matter, the prosecution history as a whole may demonstrate that the patentee committed no clear and unmistakable disclaimer.") (internal citations omitted); *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371-73 (Fed. Cir. 2007) (statement that may be read in isolation as constituting disclaimer did not meet threshold for disclaimer in view of intrinsic evidence as a whole because the erroneous statement had no intrinsic support, and other statements in same prosecution communication created further ambiguity as to that statement); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1089-91 (Fed. Cir. 2003) (finding no clear disclaimer because the statement made was "facially inaccurate" in light of the remainder of the prosecution history); *Biotec Biologische Naturverpackugen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1348 (Fed. Cir. 2001) (finding no clear disclaimer because "a person of reasonable intelligence would not be misled into relying on the erroneous statement, for it is contrary not only to the plain language of the claims and the specification, but also to other statements in the same prosecution document"). Taken in context, no person of ordinary skill in the art would conclude that an attorney's obvious misstatement, by itself, constitutes clear and unmistakable disclaimer.

### 2. Judge Payne found no disclaimer.

Judge Payne considered ACQIS's IPR statements and found that "[t]his does not rise to the level of disclaimer to constrain a list of information items from a PCI bus transaction to require all information of a PCI bus transaction regardless what items are enumerated in the list." Reply, Ex. 27 at 23. Defendants suggest that this was because Judge Payne was not directed to Dr. Lindenstruth's statement that a claim reciting address and data bits of a PCI bus transaction also requires other "corollary information." Reply at 12 n.9. However, Defendants neglect to point out that the "corollary information" Dr. Lindenstruth referred to

was only "command information," which is part of ACQIS's proposed construction, not all of the other aspects of the PCI Specification. Br., Ex. 12 at 121:5-15.

> **3.     Any disclaimer relating to the '873 and '814 patents does not attach to the asserted reissue patents.**

Defendants argue that disclaimer relating to the '873 and '814 patents attaches to the asserted reissue patents. Reply at 5 (citing *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309 (Fed. Cir. 2013)).  They claim that the prosecution histories of these patents inform the use of the same limitations in the reissue patents because they are related, but they do not dispute that the reissue patents have different disclosures from, and do not claim priority to, the '873 and '814 patents. *Trading Techs.* teaches "that arguments made in a related application do not automatically apply to different claims in a separate application." 728 F.3d at 1323 (internal citations and quotations omitted). The Federal Circuit concluded that disclaimer did not extend between related patents because of differences in their claim language and disclosures. *Id.* The same rationale applies here. *See* Resp. at 30; *see also* Section III.B., *infra*.

> **C.     The Intrinsic and Extrinsic Evidence Establishes that a "PCI Bus Transaction" Is Not Required to Include Information Beyond Address, Data, Byte Enable, and Command Type Information.**

ACQIS has described Figure 13 of the '768 patent as showing an embodiment of the claimed invention, noting that it includes the address, data, and byte enable information bits shown in the claims, but it does not include parity and control signals such as FRAME#, IRDY#, and TRDY#. Resp. at 10-11. ACQIS explained that those signals are replaced with new bits, different from existing PCI, and represented in Figure 13 as BS0 to BS3. *Id.* at 11. Defendants sow confusion by treating a ***representation*** of the parity and control signals as the signals themselves. Reply at 8. They do not address the fact that the new replacement

bits are different from existing PCI, which is why they are not shown in the depiction of prior art in Figure 16 of the '768 patent.

Defendants also argue that, because the specification of the '873 patent describes "the present invention" as including control bits representing PCI signals, those control bits must be included in the recited "PCI bus transaction." Reply at 8-9, citing '873 patent, 5:33-36. However, nowhere in the cited language does the specification expressly or impliedly state that a "PCI bus transaction" requires PCI control signals or parity. Defendants' cited language is irrelevant since it does nothing to answer the actual question in dispute—i.e., what information must be included in a "PCI bus transaction"?

ACQIS has explained that parity might be calculated on transactions, but it is not a part of the transaction itself. Resp. at 13, 15-17. Defendants respond by quoting intrinsic evidence about parity "lagging" address and data, being "calculated on" PCI transactions, "illustrat[ing]" transactions with parity, etc. Reply at 7. None of this evidence suggests that parity is part of the information included in a "PCI bus transaction." Moreover, ACQIS has pointed out in that Defendants have not addressed that the "PCI bus transaction" described in Figure 13 does not reference "parity" at all. Resp. at 17. Even after Defendants filed their Reply, this statement still holds true.

### D. Defendants' Proposed Construction Is Ambiguous and Fails to Resolve Anticipated Infringement Disputes.

Defendants have failed to explain exactly which bits of information a PCI bus transaction must contain. This issue was specifically left open by Judge Davis. Nevertheless, Defendants argue that their proposed construction is sufficient because it is the same as the *EMC* court construction. Reply at 9-10. But the *EMC* court's construction is flawed (*see* Resp. at 20-23), led to Judge Burroughs finding a waiver of an issue that was never briefed,

and is on appeal. Accordingly, Defendants' reliance on the *EMC* decision for a clear resolution is misplaced.

### E.      The *EMC* litigation did not result in collateral estoppel.

In *Samsung*,[1] Judge Payne considered essentially the same collateral estoppel issue present before this Court—i.e., whether the *EMC* case precludes ACQIS's proposed construction of "PCI bus transaction"—and concluded that it does not. He recognized that, "[w]hile the scope of related limitations in related patents has been previously addressed in other cases, the previous determinations do not rise to the level of collateral estoppel regarding the issue here; namely, what set of information qualifies as a transaction under the PCI Local Bus Specification." Reply, Ex. 27 at 17-18. He further explained that, "[i]n this context, where the EMC case involved claims of different scope in different patents asserted against different technology and where the *EMC Summary Judgment* was premised on the procedural posture rather than whether the PCI Local Bus Specification actually distinguishes between information used to convey a transaction and the transaction itself, collateral estopped does not apply." *Id*. at 18-19. Judge Payne's reasoning is sound, and, for the same reasons, collateral estoppel from the *EMC* case does not apply here. Surprisingly, Defendants fail to mention Judge Payne's decision even once when discussing collateral estoppel. Had Defendants been able to refute Judge Payne's simple distillation of the issue, they would have tried to do so.  Their silence is telling.

Defendants' arguments for collateral estoppel are essentially reiterations of the arguments made in its Opening Brief and rebutted in ACQIS's Responsive Brief. Resp. at 20-23. The only new argument made by Defendants is that a pending appeal does not

---

[1] In *Samsung*, ACQIS asserted a subset of the patents asserted in this case and proposed the same construction for "PCI bus transaction" that it has proposed here.

4818-9988-3774\1

preclude collateral estoppel in the Fifth Circuit. Reply at 11. Although courts in patent cases are guided by the collateral estoppel criteria of the regional circuit, "Federal Circuit precedent applies, however, to aspects of the collateral estoppel analysis that are particular to patent law." *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017). The finality of claim constructions is an aspect of collateral estoppel particular to patent law, and claim constructions become final when the Federal Circuit affirms them on appeal. *Id.* at 1357-58. ACQIS previously cited the *Phil-Insul* decision (Resp. at 22), but Defendants have not distinguished it. Defendants cite *Novartis Pharms. Corp. v. Watson Labs., Inc.*, 611 Fed. Appx. 988 (Fed. Cir. 2015) for support, but that non-precedential case is distinguishable because the Court specifically noted that claim construction was not at issue on appeal. *Id.* at 994. The other two decisions relied on by Defendants (Reply at 11, n.7) are from other districts and do not relate to patent law.

## II. CLAIMS RECITING "ADDRESS AND DATA BITS" OR "ADDRESS BITS, DATA BITS, AND BYTE ENABLE INFORMATION BITS" OF A PCI BUS TRANSACTION

ACQIS has argued that Defendants' proposed construction of the claims reciting specific bits are wrong because they render express claim language meaningless, they violate the presumption of claim differentiation, and they conflict with the specifications' disclosures. Resp. at 24-25. Rather than attempting to directly rebut any of those arguments, Defendants argues that "all of those principles are trumped by ACQIS's *IPR* disclaimers."[2] Reply at 12. Put differently, Defendants have bet everything on IPR disclaimer, and, if that argument fails—as it did with Judge Payne—they have no basis for disregarding established

---

[2] Defendants confusingly state that "ACQIS did not attempt to rebut" their disclaimer argument. Reply at 12. This is false. ACQIS rebutted Defendant's IPR disclaimer argument at pages 18-20 of its Response.

canons of claim construction. ACQIS and Judge Payne have explained that none of ACQIS's IPR statements clearly and unmistakably disclaimed the scope of this limitation. *See* Resp. at 18-20; Reply, Ex. 27 at 23. Accordingly, the Court should reject Defendants' proposed construction of this term because it violates multiple principles of claim construction without justification.

## III.   CLAIMS RECITING AN "ENCODED" PCI BUS TRANSACTION OR A PCI BUS TRANSACTION IN "SERIAL STREAM" OR "SERIAL FORM"

### A.   The Claim Terms Do Not Necessarily Require a Parallel-to-Serial Conversion of a PCI Bus Transaction

Defendants point to language describing Figure 10 (which on its face shows encoders separated from both parallel to serial and serial parallel to converters) as evidence for their proposed construction, but that language merely states that encoders can format address and data bits to a form more suitable for serialization. Reply at 15-16. It does not require them to actually carry out that conversion. *Id.*

Judge Payne rejected the construction proposed by Defendants for "encoding" and "serial." Reply, Ex. 27 at 26-27. He recognized that the claims themselves do not specify a transaction that has been converted from parallel to serial form and that there is nothing else in the patents that restricts all encoded or serially transmitted PCI bus transactions to transactions that have been serialized from a parallel form. *Id.* In fact, Judge Payne identified certain embodiments suggesting that the transaction may originate in serial form and thus would not require conversion. *Id.* Finally, Judge Payne concluded that ACQIS's remarks regarding the '873 patent do not rise to the level of disclaimer, and even if they did, that disclaimer would not attach to related patents. *Id.* Consistent with Judge Payne's findings, Defendants have failed to cite any intrinsic evidence supporting their construction.

**B.      ACQIS's Statements in Pending IPRs Are Consistent with Its Proposed Construction.**

Defendants argue that ACQIS's position here is inconsistent with the positions taken in currently pending IPRs. Reply at 14-15. In fact, they are consistent.  The '873 patent does not explicitly include certain figures and description that were added in later-filed continuations and required by the claims of those continuations for written description support. Defendants' argument is wrong and relies on selectively quoting and misstating ACQIS's IPR arguments. ACQIS has maintained in the co-pending IPRs that Figs. 8A and 8B from provisional application Chu '886 are not essential to the claims of the earlier patents in the '768 patent priority chain (*e.g.*, the '873 and preceding patents) for written description support and were explicitly not included in the figures and specification of those patents. Surr., Ex. 33, IPR2021-01107, Patent Owner's Preliminary Response at 19 (PTAB Sep. 17, 2021). The figures and description from Chu '886 were only included in continuations ***after***[3] the '873 patent because the later patents have claims with limitations that require those figures and description for written description support, and they explicitly added those figures and description from Chu '886 (which was proper due to the incorporation by reference of Chu '886). *See id.* at 14-16. Because the claims of the '873 patent do not directly/explicitly recite or rely on Figures 8A-8B for written description support, it was proper for those figures to be excluded from the claim construction analysis. Accordingly, the positions taken by ACQIS during the *EMC* IPR, this litigation, and the co-pending IPRs are consistent.

---

[3] The first such continuation was U.S. Application No. 13/087,912 which issued as U.S. Patent No. 8,234,436 (not asserted in the present litigation). Surr., Ex. 33 at 6-10. They are referred to as the "'912 application" and the "'436 patent," respectively, in the IPR proceedings. *Id.* at 19.

## IV.    "UNIVERSAL SERIAL BUS (USB) PROTOCOL [DATA]" / "UNIVERSAL SERIAL BUS (USB) PROTOCOL INFORMATION"

Defendants' Reply largely repeats the arguments from its Opening Brief regarding the

USB terms, and ACQIS has previously explained why its own proposed constructions are more

consistent with intrinsic and extrinsic evidence.[4] *See* Resp. at 34-39. Defendants mischaracterize

ACQIS's proposed construction as an attempt to claim USB 3.0. ACQIS does not dispute that

"USB" in the claims refers to the USB specifications in existence at the time of the invention

(i.e., USB 2.0 and earlier).[5]  Resp. at 34, 38.  ACQIS supported its proposed construction, in-

part, by referencing USB 2.0 and earlier. *Id.* at 36. However, in the same way that a 2021 Ford F-

150 has components in common with, or similar to, a 2016 Ford F-150, USB 3.0 has many

requirements in common with USB 2.0. With respect to the recited claim terms, USB 2.0 and 3.0

are substantially the same. *See id.* at 37-38. Just as a patent that issued at the same time as the

2016 F-150 could still cover aspects of the 2021 model, the asserted USB claims, while referring

to USB 2.0 and earlier, can still cover USB 3.0 devices if they also meet the relevant aspects of

USB 2.0. Indeed, patents can read on entire standards that did not exist until after their filing

date. *See, e.g.*, *Fujitsu Ltd. v. Netgear, Inc.*, 07-cv-710-bbc, 2009 U.S. Dist. LEXIS 739, at *7

(W.D. Wis. Jan. 5, 2009) ("[D]etermining whether plaintiffs patents read on the standards require

nothing more than comparing the standards' language to the patents' claim language…"). Judge

Payne did not find that a USB 3.0 device could not be in accordance with the protocols defined

in USB 2.0 or earlier. In response to ACQIS's challenge to identify "any meaningful difference

---

[4] Defendants also argue that ACQIS's proposed construction would result in "nonsensical interpretations," but it fails to explain why they would be "nonsensical" or why different claim language not at issue here would not have a different construction. Reply at 17.

[5] As Judge Payne recognized, while the USB protocol information and/or data conveyed in the USB claims are necessarily in accordance with the USB standard known as of the priority date, the conveyance is not. Reply, Ex. 27 at 32-33.

between USB 2.0 and 3.0 that is relevant to the scope of the claims terms" (Resp. at 38), Defendants tell the Court that, "[c]ontrary to ACQIS's bare assertions, there are substantial differences between USB 2.0 and 3.0" but failed to provide even one example.[6] Reply at 17.

ACQIS's proposed construction adds specificity regarding the content of the information and/or data to help narrow and streamline the infringement and invalidity stages of this 15-patent litigation. This is consistent with Judge Payne's construction because he did not identify the specific information required by the USB terms, effectively leaving that question for the finder of fact. *See id.* at 33. Under Judge Payne's construction, determining whether a USB 3.0 product infringes the claims requires reviewing the factual detail and determining whether the specific claimed aspects as described in USB 2.0 or earlier are still present. Accordingly, ACQIS's proposed construction is consistent with Judge Payne's construction, but it would help narrow the issues as there are no meaningful disputes concerning the additions proposed in ACQIS's construction.

## V.     "COMPUTER MODULE"

Defendants argue that a "computer module" must include at least a "processor," "memory," and "mass storage" because there is allegedly no embodiment in the specification without those generic components. Reply at 18. Defendants also seek to import "user-removable" and "user-portable" into the claims because the specifications recite the different terms, "removable" and "portable." *Id.* at 19-20. However, the specifications expressly state that

---

[6] Defendants cite to two declarations of Dr. Colwell, Samsung's expert, for support but do not discuss them or explain their relevance. Reply at 17, citing Br., Ex. 31 ¶¶ 60-63 and Ex. 32 ¶¶ 43-45. Dr. Colwell alleges that ACQIS's expert in *Samsung*, stated that, while USB 2.0 and earlier versions were half-duplex, the claimed invention had the capacity for full-duplex functionality. But, Dr. Colwell protests, USB did not have full-duplex capability until USB 3.0. This only establishes that the claims are an improvement over USB 2.0 and earlier versions and do not require adherence to all aspects of those specifications. Resp. 35-36.

the claims are not limited to the preferred embodiments disclosed in the specification. *See, e.g.,* Resp., Ex. 1, '768 patent at 40:7-34; Ex. 5, '873 patent at 37:1-16; Ex. 15, '947 patent at 23:14-19. The Federal Circuit has explained that the claims, not the specification embodiments, define the metes and bounds of the patentee's invention. *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims."). Even where the specification describes specific embodiments of the invention, the Federal Circuit has "repeatedly warned against confining the claims to those embodiments." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). Defendants provide no valid reason to violate this well-settled canon of claim construction.

Defendants offer to change their construction to omit "mass storage" and match a construction proposed by ACQIS in the *Appro* case that includes a "processing unit" and "memory," but they omit three key facts: (1) ACQIS changed its proposed construction during that case's *Markman* hearing to omit "processing unit" and "memory," (2) Judge Davis has construed this term twice in substantially the same way that ACQIS now proposes, and (3) he has consistently rejected attempts to import a "processor," "memory," "mass storage," "user-removability," and "user-portability" into the claims. *See ACQIS LLC v. Appro Int'l, Inc.*, No. 6:09-cv-148, 2010 U.S. Dist. LEXIS 77548, at *16-17 (E.D. Tex. Aug. 2, 2010); *Alcatel-Lucent*, 2015 U.S. Dist. LEXIS 48339, at *19-22. Although ACQIS discussed Judge Davis's construction (Resp. at 40, 42-43), Defendants have failed to explain why his construction should not also apply here. Defendants reference Judge Davis's decisions regarding "computer module" only twice. First, they attempt to equate his inclusion of "removable" in his most recent construction with Defendants' proposed "user-removable." Reply at 19. However, they neglect

18

to mention that Judge Davis left the scope of "removability" for the jury, stating "whereas a driver may consider a car key to be removable from the ignition, a mechanic might consider the ignition itself to be removable." *Alcatel-Lucent*, 2015 U.S. Dist. LEXIS 48339, at *21. He did not state that "removable" and "user-removable" are the same. Defendants also state that it was incorrect for Judge Davis to find that "user-portable" "introduces unnecessary ambiguity" because the specification uses the term "portable," ignoring the fact that "user-portable" is a different term that does not appear in the specification. Reply at 19 n.13. The Court should adopt ACQIS's unambiguous construction, which is consistent with both of Judge Davis's prior constructions of "computer module."

## VI.   "CONSOLE"

Defendants argue that the specification "expressly defines a 'coupling site' to be a 'computer module bay.'" Reply at 20.  This is not so.  The passage of the specification on which Defendants rely provides that, in one embodiment, a console comprises "a first coupling site and a second coupling site, *e.g.*, computer module bay."  Resp., Ex. 1, '768 patent at 4:32-33 (emphasis added).  By using "e.g.," this passage provides "computer module bay" as one example of a coupling site, it does not define "coupling site."[7]  *See Droplets, Inc. v. eBay, Inc.*, No. 2:11-CV-401-JRG-RSP, 2014 U.S. Dist. LEXIS 117699, at *20 (E.D. Tex. Aug. 22, 2014) (characterizing "i.e." as a "definitional expression" and "e.g." as merely introducing examples); *eBay, Inc. v. IDT Corp.*, No 4:08-CV-04015-HFB, 2009 U.S. Dist. LEXIS 138768, at *61, n.6 (D. Ark. Oct. 15, 2009) (distinguishing between the "narrowing" use of "i.e.," and the use of "e.g.," to mean "for example").  ACQIS's proposed construction does not exclude embodiments

---

[7] *See The Difference Between 'i.e.' and 'e.g.'*, Merriam-Webster Dictionary, https://www.merriam-webster.com/words-at-play/ie-vs-eg-abbreviation-meaning-usage-difference, (last accessed Oct. 5, 2021) ("*E.g.* is used before an item or list of items that serve as examples for the previous statement.").

as Defendants claim. Reply at 20. Rather Defendants' proposed construction would impermissibly limit "console" to one embodiment disclosed in the patents. *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1373 (Fed. Cir. 2020) (finding error in a proposed construction that would exclude "embodiments in the specification").

Defendants next argue that "console" should be limited to an "enclosure" rather than a "device or enclosure." Reply at 20. Defendants mischaracterize ACQIS's arguments in *Alcatel-Lucent*, to support its position. In *Alcatel-Lucent*, ACQIS opposed the construction "a device that supplies a module with a primary input, display, and power supply to form an operating computer system" not for its use of "a device" but because the inclusion of "input, display, and power supply . . . would render certain claim terms superfluous." 2015 U.S. Dist. LEXIS 48339, at *22-24. Defendants do not dispute that the intrinsic record discloses that a "console" may be an enclosure or another device, such as a chassis and motherboard. Reply at 20-21. Defendants merely argue, with no citation to the intrinsic or extrinsic record, that a chassis "is an enclosure." *Id.* at 21. Defendants' proposed construction risks excluding embodiments and should be rejected. *Eko Brands*, 946 F.3d at 1373.

## VII. "SINGLE CHIP"

Defendants allege that the plain and ordinary meaning of "single chip" is "one integrated circuit chip" because the specifications of the patents-in-suit "use the term 'chip' to refer to an integrated circuit chip." Reply at 21. However, the only specific use of the term "integrated circuit chip" Defendants can point to in the specifications is description of "a central processing unit (i.e., integrated circuit chip)" (s*ee* Resp., Ex. 1, '768 patent at 7:8-11). Not only does this relate to a different term to be construed here, several of the asserted claims recite both a "central processing unit" and a "single chip" and make clear that the "single chip" may include "a central processing unit"—which itself may be an integrated circuit chip—and other elements. *E.g.*, *id.*

at 38-40 ("an integrated central processing unit, interface controller, and Phase-Locked Loop

(PLL) clock circuitry in a single chip"); Resp., Ex. 12, '654 patent at 23:6-8 ("providing an

integrated Central Processing Unit (CPU) and graphics controller in a single chip, on a printed

circuit board of a computer").  The remainder of Defendants' cited evidence references only

possible embodiments. Reply at 21 n.15

The intrinsic record makes clear that a "single chip" is not limited to "one integrated

circuit chip" but may include integrated chips (such as a central processing unit) and other

elements as dictated by the claims.  Defendants' proposed interpretation should be rejected for

introducing ambiguity and violating the presumption of claim differentiation.  *See Helmsderfer v.*

*Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008).

## VIII.  "CENTRAL PROCESSING UNIT"

Defendants still do not identify any ambiguity in the specification that would require

interpreting "central processing unit" to be limited to "a single central processing unit or core

processing unit." Reply at 21. The only intrinsic evidence Defendants rely upon to support their

interpretation is "*an* embodiment" that "identifies a single-CPU microprocessor" and

embodiments that recite connecting more than one central processing units. Br. at 44-45

(emphasis added).  Defendants do not contend that *every* embodiment is limited to a "single

central processing unit or core processing unit," and their proposed interpretation would

admittedly exclude embodiments in the intrinsic record. *Id.* at 45. Defendants' proposed

construction must be denied.  *Eko Brands*, 946 F.3d at 1373

## IX.    CONCLUSION

ACQIS respectfully requests that the Court adopt ACQIS's proposed constructions.

Dated: October 11, 2021          Respectfully submitted,

By: */s/ Paige Arnette Amstutz*
Paige Arnette Amstutz
State Bar No. 00796136
**SCOTT DOUGLASS & MCCONNICO, LLP**
303 Colorado Street, Suite 2400
Austin, Texas 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
Email: pamstutz@scottdoug.com

Case Collard (*Admitted*)
Colo. Reg. No. 40692
Gregory S. Tamkin (*pro hac vice*)
Colo. Reg. No. 27105
**DORSEY & WHITNEY LLP**
1400 Wewatta Street, Suite 400
Denver, Colorado 80202
Telephone: (303) 629-3400
Facsimile: (303) 629-3450
Email: collard.case@dorsey.com
Email: tamkin.greg@dorsey.com

Mark Miller (*Admitted*)
Utah Reg. No. 9563
**DORSEY & WHITNEY LLP**
111 South Main Street, 21st Floor
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: mark.miller@dorsey.com

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify

that, on October 11, 2021, all counsel of record who have appeared in this case are being served

with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Paige Arnette Amstutz*
Paige Arnette Amstutz

4818-9988-3774\1