# Exhibit 9

2021 WL 1088207
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

ACQIS, LLC, Plaintiff,
v.
EMC CORPORATION, Defendant.

Civil Action No. 14-cv-13560-ADB
|
Signed 02/19/2021

**Attorneys and Law Firms**

Angela C. Tarasi, Pro Hac Vice, Brian Eutermoser, Pro Hac Vice, Britton F. Davis, Pro Hac Vice, Janna K. Fischer, Pro Hac Vice, Mikaela Stone, Pro Hac Vice, Peter J. Sauer, Pro Hac Vice, James P. Brogan, Pro Hac Vice, King & Spalding LLP, Denver, CO, Joseph M. Drayton, Pro Hac Vice, Cooley LLP, New York, NY, Thomas J. Friel, Jr., Pro Hac Vice, King & Spalding LLP, Palo Alto, CA, David H. Rich, Todd & Weld, Boston, MA, George Edmond Chandler, Chandler Mathis & Zivley, P.C., Michael Kirk Mathis, Chandler Law Offices, Lufkin, TX, W. Perry Zivley, Jr., Chandler Mathis & Zivley, PC, Houston, TX, for Plaintiff.

Benjamin Hershkowitz, Brian A. Rosenthal, Pro Hac Vice, Josh A. Krevitt, Joshua Krevitt, Pro Hac Vice, Katherine Q. Dominguez, Pro Hac Vice, Laura Corbin, Pro Hac Vice, Paul E. Torchia, Pro Hac Vice, Gibson, Dunn & Crutcher LLP, New York, NY, Brian M. Buroker, Pro Hac Vice, Matthew D. McGill, Gibson Dunn & Crutcher LLP, Washington, DC, Christine K. Bush, Laurel M. Gilbert, Michael J. Connolly, Hinckley Allen & Snyder, LLP, Boston, MA, Jordan H. Bekier, Pro Hac Vice, Gibson Dunn & Crutcher, LLP, Los Angeles, CA, Krishnendu Gupta, Pro Hac Vice, Emc Corporation, Thomas A. Brown, Dell Inc., Hopkinton, MA, Nathan R. Curtis, Pro Hac Vice, Gibson Dunn & Crutcher LLC, Dallas, TX, for Defendant.

**MEMORANDUM AND ORDER ON EMC'S MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

**\*1** Plaintiff ACQIS, LLC ("ACQIS") brings claims against Defendant EMC Corporation ("EMC") alleging infringement of several patents relating to modular computing systems.

Among the twenty-four motions currently pending before the Court is EMC's motion for summary judgment of non-infringement of eight patents. [ECF No. 502]. EMC argues that critical elements of the asserted claims are not present in its accused products and that, as a result, there has been no infringement. ACQIS opposes the motion. For the reasons stated below, EMC's motion for summary judgment of non-infringement, [ECF No. 502], is GRANTED, and the remaining pending motions, [ECF Nos. 237, 354, 356, 413, 418, 419, 450, 452, 455, 461, 464, 466, 494, 498, 506, 509, 511, 513, 515, 518, 521, 524, 527], are DENIED as moot.

**I. BACKGROUND**

**A. The Patents-in-Suit**
ACQIS alleges that certain of EMC's computer storage products infringe the following eleven claims of eight patents owned by ACQIS: U.S. Patent No. 7,363,416, claim 60; U.S. Patent No. 7,818,487, claims 38 and 49; U.S. Patent No. 8,041,873, claims 9, 29, and 61; U.S. Patent No. RE41,294, claim 44; U.S. Patent No. RE42,814, claim 31; U.S. Patent No. RE43,119, claim 39; U.S. Patent No. RE43,171, claim 24; and U.S. Patent No. RE44,468, claim 29. [ECF No. 504 ¶ 1].

The EMC products at issue are modular computer systems, and the patents-in-suit each describe and claim one or more computer modules that can be removed from one console and placed in another. [ECF No. 102 at 1]. The console (e.g., keyboard, mouse, display, and disk drive) is a platform into which a module containing the core computing hardware (e.g., central processing unit ("CPU"), memory, input/output, and hard drive) can be inserted in order to form a complete personal computer. [ECF No. 71 at 2].

**B. Procedural Background**
On September 9, 2013, ACQIS filed its initial complaint against EMC in the United States District Court for the Eastern District of Texas. Complaint, ACQIS LLC v. EMC Corp., No. 13-cv-00639 (E.D. Tex. Sept. 9, 2013), Dkt. No. 1. On December 6, 2013, EMC moved to transfer the action to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). Motion to Change Venue, ACQIS LLC v. EMC Corp., No. 6:13-cv-00639 (E.D. Tex. Dec. 6, 2013), Dkt. No. 21. On April 30, 2014, before ruling on the motion to transfer, the court consolidated the action against EMC with three related

lawsuits brought by ACQIS against other defendants in the Eastern District of Texas. Order of Consolidation, [ACQIS LLC v. EMC Corp., No. 6:13-cv-00639 (E.D. Tex. Apr. 30, 2014)](), Dkt. No. 38. On September 10, 2014, Judge Leonard Davis conditionally granted EMC's motion to transfer the action to the District of Massachusetts, retaining jurisdiction over EMC through the claim construction process and noting that the transfer would become effective upon the issuance of his claim construction opinion. [ECF No. 44]. On February 12, 2015, Judge Davis held a <u>Markman</u> hearing concerning the disputed claim terms. [ECF No. 71 at 1]. On April 13, 2015, he issued a claim construction opinion and an order transferring the case against EMC to this Court. [ECF Nos. 71, 72].

**\*2** On April 27, 2015, EMC filed a motion to stay the case pending *inter partes* review ("IPR") of two of the patents-in-suit. [ECF No. 80]. IPR is an expedited procedure for challenging the validity of a patent before the United States Patent and Trademark Office and its Patent Trial and Appeal Board ("PTAB"). [ECF No. 102 at 4]; <u>see</u> ⚑[35 U.S.C. §§ 311–]()⚑[19](). On June 10, 2015, the Court stayed the case in its entirety until a decision issued in the IPRs. [ECF No. 102 at 2]. On March 8, 2016, the PTAB issued final written decisions finding that EMC had not proven that the challenged claims were unpatentable. [ECF No. 140 at 1]. On August 10, 2016, this Court lifted its stay. [<u>Id.</u>].

On July 27 and July 28, 2017, this Court held a second <u>Markman</u> hearing and issued a Memorandum and Order ruling on disputed issues of claim construction. [ECF No. 389]. Three terms or phrases were construed for purposes of this litigation (either by the Court or by stipulation between the parties) as follows:

| Term | Court's Construction |
|---|---|
| "Peripheral Component Interconnect (PCI) bus transaction" | "a transaction, in accordance with the industry standard PCI Local Bus Specification, for communication with an interconnected peripheral component." |
| "Encoded ... serial bit stream of Peripheral Component Interconnect (PCI) bus transaction and related terms" | "a PCI bus transaction that has been serialized from a parallel form" |
| "communicating ... PCI bus transaction." | "communicating a PCI bus transaction, including all address, data, and control bits" |

On July 19, 2018, EMC filed the pending motion for summary judgment on non-infringement. [ECF No. 502]. On August 22, 2018, ACQIS filed its opposition, [ECF No. 574], and on September 21, 2018, EMC filed its reply, [ECF No. 626].

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [Fed. R. Civ. P. 56(a)](). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.' " [Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012)]() (alteration in original) (quoting ⚑[Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)]()). "A fact is material if its resolution might affect the outcome of the case under the controlling law." [Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003)](). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." <u>Id.</u> By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." ⚑[United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 204 (1st Cir. 1992)]() (citing ⚑[Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)]()).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must ... 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file ... demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.' " [Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015)]() (quoting ⚑[Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)]()). Conversely, "[t]o defeat a properly supported

motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)). That is, the nonmoving party must set forth specific, material evidence showing that there is a genuine disagreement as to some material fact. Plat 20, Lot 17, Great Harbor Neck, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6. The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

 **\*3** Patent infringement analysis involves two steps: (1) the threshold construction of the meaning and scope of the asserted claim, followed by (2) a determination of whether the accused product infringes the properly construed claim. Athletic Alts., Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996). "To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1353 (Fed. Cir. 2001). "Literal infringement requires that every limitation of the patent claim be found in the accused device." Durel Corp. v. Osram Sylvania, Inc., 256 F.3d 1298, 1303 (Fed. Cir. 2001) (quoting Gen. Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997)). [1] "If no reasonable jury could possibly find that an accused product satisfies

every claim limitation of the asserted claims ... then summary judgment of noninfringement must be granted." EveryScape, Inc. v. Adobe Sys., Inc., 8 F. Supp. 3d 38, 45 (D. Mass. 2014).

## III. DISCUSSION

This Court, together with Judge Davis, has fulfilled the first part of the infringement analysis through the claim construction process. The Court must now determine whether, under the construction for each claim term, EMC's accused devices fall within the scope of those claims.

EMC argues that its products do not infringe because, pursuant to this Court's construction of the relevant terms, every limitation set forth in the claims cannot be found in the accused devices. [ECF No. 503 at 29]. Specifically, EMC avers that the accused devices do not include (1) a PCI bus transaction in accordance with the PCI Local Bus Specification, (2) serialization of that transaction from parallel form, and (3) communication of all bits of that transaction over a serial channel. [Id.]. ACQIS contends that EMC misinterprets this Court's construction of the relevant claim terms and, as a result, identifies limitations that are not present in the claims. [ECF No. 560-15 at 6].

### A. Compliance with the PCI Local Bus Specification

EMC's primary argument is that ACQIS's claims require compliance with the PCI Local Bus Specification (the "Specification") in its entirety, and, as the accused products do not comply with the Specification, there is no infringement. [ECF No. 503 at 20, 30]. ACQIS responds that its claims require compliance only with the aspects of the Specification that are relevant to its products. [ECF No. 560-15 at 20].

"To establish literal infringement, 'every limitation set forth in a claim must be found in an accused product, exactly.' Thus, 'if any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.' " Becton, Dickinson and Co. v. Tyco Healthcare Grp., LP, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (internal citations and alterations omitted) (first quoting Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995), then quoting Amgen Inc. v. F. Hoffman–La Roche, Ltd., 580 F.3d 1340, 1374 (Fed. Cir. 2009)).

The crux of this dispute is the interpretation of this Court's construction of the claim term "Peripheral Component Interconnect (PCI) bus transaction." Prior to the Markman

hearing, the parties agreed to include a reference to the relevant industry standard, the Specification, in the construction. [ECF No. 389 at 6; ECF No. 192-1 at 1 (joint claim construction brief, with both parties' proposed constructions for "PCI bus transaction" including a reference to "the PCI standard" or Specification)]. During the hearing, the parties further agreed on the inclusion of the word "transaction" in the claim construction. [ECF No. 350 at 27 (July 27 Tr. at 27:9–28:20); ECF No. 389 at 6–7]. The remaining dispute was whether the term required the presence of a PCI bus. The Court declined to read the presence of a PCI bus on the peripheral side into the claim language and construed "PCI bus transaction" to mean "a transaction, in accordance with the industry standard PCI Local Bus Specification, for communication with an interconnected peripheral component." [ECF No. 389 at 9–10].

**\*4** EMC contends that, under this claim construction, each of the asserted claims requires a PCI bus transaction in accordance with every element of the Specification, including an address phase followed by one or more data phases as well as control signals and parity signals. [ECF No. 503 at 29–30]. As EMC's products do not contain these limitations, EMC argues that there is no infringement. [Id.].

ACQIS does not dispute that EMC's products do not include these features. [ECF No. 560-16 ¶¶ 13, 14 (ACQIS response to paragraphs 27 and 28 of EMC's statement of facts, disputing EMC's inclusive definition of signals without disputing that EMC's products do not communicate those signals through transactions)]. Instead, ACQIS argues that these features are not limitations set forth in their claims and are therefore irrelevant to a non-infringement analysis. [ECF No. 560-15 at 17]. ACQIS first reasons that this Court's refusal to construe a PCI bus transaction as requiring a physical bus necessarily modified the Specification to excise any elements pertaining to a physical bus, such as interface control signals, phase timing, parity signals, and bit-for-bit identical command encodings. [Id. at 20–21]. Next, ACQIS contends that the elements noted above apply only to the methodology used to convey the PCI bus transaction and are therefore outside the scope of the PCI bus transaction itself. [Id. at 22]. Finally, ACQIS asserts that the Specification defines a PCI bus transaction as an "address transfer plus one or more data transfers" and any additional elements are merely part of one embodiment of the Specification. [Id. at 26–27].

All of ACQIS's arguments are attempts to skirt the claim construction set forth by Judge Davis and this Court. During claim construction before Judge Davis, the parties agreed to construe the term "PCI bus transaction" according to the Specification. [ECF No. 350 at 27:9–28:20; ECF No. 189 at 19]. Judge Davis noted that "a PCI bus transaction must include all information required by the PCI standard." [ECF No. 71 at 10]. Subsequently, in connection with this Court's Markman proceeding, the parties once again agreed to construe the term "PCI bus transaction" according to the Specification. [ECF No. 192-1 at 1]. Although ACQIS argued strenuously and successfully that a PCI bus was not required in a PCI bus transaction, ACQIS never sought to disavow the elements of the Specification pertaining to a physical bus. See [ECF No. 389 at 15 (discussing required elements of PCI bus transaction in context of Specification and requiring aspects of PCI bus to be present in a transaction (e.g., parallel communications) even though PCI bus itself was not required); id. at 13 ("And so the claims don't require a bus. They require a PCI transaction to take place. *You are looking at the standard the whole time.*" (emphasis added) (quoting ECF No. 189-21 at 47))].

Similarly, ACQIS never attempted to parse the Specification in order to differentiate the elements that describe the methodology of the PCI bus transaction from those that describe the substance of the transaction. See [ECF No. 189 at 16 (ACQIS's responsive claim construction brief, stating "the claims do not require a PCI bus. They require a transaction defined by the PCI Standard (i.e., memory read, memory write, I/O read, I/O write, etc.) to take place.")]. Nor did ACQIS contend that the Specification's relevance was limited to its definition of transaction as "address transfer plus one or more data transfers." Only now, at summary judgment, does ACQIS seek to disavow the parts of the Specification unfavorable to its infringement claims. Put simply, ACQIS is attempting to reopen claim construction. Despite not asking Judge Davis or this Court to construe "PCI Local Bus Specification," ACQIS is now arguing that the Specification is less specific than it is.

**\*5** As an initial matter, ACQIS's attempt to reduce the import of the Specification is untimely. If ACQIS wanted to tee up a summary judgment position based on a particular construction, "it could (and should) have sought a construction to that effect." ePlus, Inc. v. Lawson Software, Inc., 700 F.3d 509, 520 (Fed. Cir. 2012) (concluding that a post-trial challenge to the sufficiency of the evidence of infringement was an inappropriate and untimely attempt

to give a narrow definition to "determining"); [Function Media, L.L.C. v. Google Inc., 708 F.3d 1310, 1325 (Fed. Cir. 2013)](#) (concluding that district courts are not obligated to rule on claim construction arguments presented for the first time in summary judgment briefs). Although the Court has a duty to resolve fundamental disputes about claim scope, [O2 Micro Int'l v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008)](#), it is "not (and should not be) required to construe every limitation present in a patent's asserted claims," [id. at 1362](#). ACQIS had ample opportunity to argue for a modified definition of the Specification during either court's claim construction proceedings, but chose not to do so. Judge Davis construed a PCI transaction as "information, in accordance with the PCI standard." [ECF No. 71 at 10]. Then, in connection with this Court's claim construction, ACQIS agreed with EMC to use the relevant industry standard, the Specification. [ECF No. 189 at 19; ECF No. 192-1 at 1; ECF No. 389 at 7]. There is no need to now construe a readily understandable term that ACQIS itself thought clear when offering proposed constructions of related terms and the Court will not do so.

"Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree over which of two possible meanings of [a term] is the proper one, the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." [Athletic Alts., 73 F.3d at 1578](#). The Court rejects ACQIS's proffered modification of the claim term "PCI bus transaction" to narrow the application and meaning of the Specification. Accordingly, because the accused products do not contain the limitations set forth in the asserted claims, which recite a PCI bus transaction with reference to the Specification, the Court concludes that there is no infringement and summary judgment is appropriate. See [Durel, 256 F.3d at 1303](#).

Given the Court's entry of summary judgment on EMC's first theory of non-infringement, the Court will only briefly address each of EMC's remaining theories, which further support the entry of summary judgment for EMC.

### B. Serialization of a Parallel PCI Bus Transaction

EMC next argues that ACQIS's claims require the serialization of a PCI bus transaction from parallel form. [ECF No. 503 at 44]. According to EMC, the accused products never create or communicate a PCI bus transaction in parallel form, let alone a PCI bus transaction that is converted from parallel to serial form. [Id.]. ACQIS responds that the accused products do serialize data from parallel form, as evidenced by the presence of parallel-to-serial converters in the products. [ECF No. 560-15 at 15, 43].

As discussed supra, Section III.A, the Court construed a PCI bus transaction to mean "a transaction ... for communication" that incorporates the requirements set forth in the Specification, see [ECF No. 389 at 10]. In addition, the Court construed the term "encoded ... serial bit stream of [PCI] bus transaction and related terms" to mean "a PCI bus transaction that has been serialized from a parallel form." [Id. at 16–17]. Despite this, ACQIS now suggests that information that is serialized from a parallel form but is not communicated as a PCI bus transaction infringes the asserted claims. [ECF No. 560-16 ¶ 14 (disputing that the Specification's requirements for a PCI bus transaction, including the use of control signals, apply); id. ¶ 15 (claiming that EMC's accused products, which do not include the control signals identified in the Specification, nonetheless generate PCI bus transactions)]. ACQIS's own expert, Dr. Thomas Gafford, testified at his deposition that he was unaware of whether the accused products communicate a PCI bus transaction in a parallel form. [ECF No. 504 ¶ 53]. At best, ACQIS asserts that EMC's products modify *some data* from a parallel to serial form prior to communicating or transacting that data, [ECF No. 560-3 ¶ 59], but ACQIS does not actually identify a *PCI bus transaction* that is converted from parallel to serial form and communicated by the accused products, [ECF No. 504 ¶¶ 52–53; ECF No. 503 at 46–48].

**\*6** ACQIS does not dispute that "[t]he asserted claims require a PCI bus transaction, beginning in parallel form, to be converted into serial form for transmission across a serial interface." [ECF No. 504 ¶ 49]; see also [ECF No. 560-16 ¶ 24]. As the Court stated in its Order on claim construction, "ACQIS repeatedly represented that 'the whole point' of the invention is to convert a PCI bus transaction from parallel to serial and back to parallel." [ECF No. 389 at 14]. ACQIS has not shown that EMC's accused products serialize a PCI bus transaction from a parallel form consistent with the asserted claims and has therefore failed to demonstrate that the products infringe those claims. See [Netword, 242 F.3d at 1353](#) (noting that summary judgment is appropriate where "no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee").

**C. Communication of All Bits of a PCI Transaction**

This Court has construed the term "communicating ... PCI bus transaction" to mean "communicating a PCI bus transaction, including all address, data, and control bits." [ECF No. 389 at 17–18]. EMC contends that the terms "address, data, and control bits" should be given the meaning ascribed to them in the Specification. [ECF No. 503 at 52–53]. ACQIS argues that these terms should exclude any address, data, or control bits that pertain to PCI interface control signals, as this Court has construed the claims as not requiring a physical PCI bus. [ECF No. 560-15 at 46].

This Court has already concluded that the claims are limited by the Specification in its entirety. Therefore, for the reasons described above, there is no infringement, and summary judgement is appropriate.

**IV. CONCLUSION**

Accordingly, EMC's motion for summary judgement of non-infringement, [ECF No. 502], is <u>GRANTED</u>. The remaining pending motions, [ECF Nos. 237, 354, 356, 413, 418, 419, 450, 452, 455, 461, 464, 466, 494, 498, 506, 509, 511, 513, 515, 518, 521, 524, 527], are <u>DENIED</u> as moot.

**SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 1088207

## Footnotes

1        ACQIS has not alleged infringement under the doctrine of equivalents. [ECF No. 560-16 ¶ 1 ("ACQIS does not presently assert infringement under the doctrine of equivalents...."); ECF No. 503 at 29]. <u>See generally</u> [ECF No. 560-15].

© 2022 Thomson Reuters. No claim to original U.S. Government Works.