# Exhibit 12

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

<table>
<tr><td>

ACQIS LLC,

            Plaintiff,

    v.

EMC CORPORATION,

            Defendant.

</td><td>

C.A. No. 1:14-cv-13560-ADB

</td></tr>
</table>

## **THIRD AMENDED COMPLAINT**

Plaintiff ACQIS LLC complains against EMC Corporation as follows:

## **THE PARTIES**

1.  Plaintiff ACQIS LLC is a limited liability corporation organized under the laws of Texas, with offices at 411 Interchange Street, McKinney, Texas 75071. A related entity, ACQIS Technology, Inc. is a corporation organized under the laws of Delaware, having its principal place of business at 1621 West El Camino Real, Mountain View, California 94040. ACQIS LLC—the Texas entity—is operated from California, where its President William Chu resides. Mr. Chu is also the Chief Executive Officer of ACQIS Technology, Inc. The Plaintiff in this case, ACQIS LLC, will be referred to herein as ACQIS.

2.  Defendant EMC is a corporation organized under the laws of Massachusetts, having its principal place of business at 176 South Street, Hopkinton, Massachusetts 01748. EMC's agent for service of process is 155 Federal Street, Suite 700, Boston, MA 02110.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      EMC is subject to this Court's personal jurisdiction because EMC is incorporated in the state of Massachusetts and its principal place of business is in Massachusetts.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because EMC is incorporated in the state of Massachusetts and its principal place of business is in Massachusetts.

## THE PATENTS-IN-SUIT

7.      On April 22, 2008, United States Patent No. 7,363,416 ("the '416 Patent") entitled "Computer System Utilizing Multiple Computer Modules with Password Protection" issued to William W.Y. Chu.  (A copy of the '416 Patent is attached hereto as Exhibit A.)  The entire right, title and interest to the '416 Patent has been assigned to ACQIS, including the right to enforce the '416 patent and obtain legal and equitable relief for infringement.

8.      On March 9, 2010, United States Patent No. 7,676,624 ("the '624 Patent") entitled "Multiple Module Computer System and Method Including Differential Signal Channel Comprising Unidirectional Serial Bit Channels" issued to William W.Y. Chu.  (A copy of the '624 Patent is attached hereto as Exhibit B.)  The entire right, title and interest to the '624 Patent has been assigned to ACQIS, including the right to enforce the '624 patent and obtain legal and equitable relief for infringement.

9.      On October 19, 2010, United States Patent No. 7,818,487 ("the '487 Patent") entitled "Multiple Module Computer System and Method Using Differential Signal Channel Including Unidirectional, Serial Bit Channels" issued to William W.Y. Chu.  (A copy of the '487

Patent is attached hereto as Exhibit C.)  The entire right, title and interest to the '487 Patent has been assigned to ACQIS, including the right to enforce the '487 patent and obtain legal and equitable relief for infringement.

10.     On October 18, 2011, United States Patent No. 8,041,873 ("the '873 Patent") entitled "Multiple Module Computer System and Method Including Differential Signal Channel Comprising Unidirectional Serial Bit Channels to Transmit Encoded Peripheral Component Interconnect Bus Transaction Data" issued to William W.Y. Chu.  (A copy of the '873 Patent is attached hereto as Exhibit D.)  The entire right, title and interest to the '873 Patent has been assigned to ACQIS, including the right to enforce the '873 patent and obtain legal and equitable relief for infringement.

11.     On April 27, 2010, United States Patent No. RE41,294 ("the '294 Patent") entitled "Password Protected Modular Computer Method and Device" issued to William W.Y. Chu.  (A copy of the '294 Patent is attached hereto as Exhibit E.)  The entire right, title and interest to the '294 Patent has been assigned to ACQIS, including the right to enforce the '294 patent and obtain legal and equitable relief for infringement.

12.     On October 2, 2011, United States Patent No. RE42,814 ("the '814 Patent") entitled "Password Protected Modular Computer Method and Device" issued to William W.Y. Chu.  (A copy of the '814 Patent is attached hereto as Exhibit F.)  The entire right, title and interest to the '814 Patent has been assigned to ACQIS, including the right to enforce the '814 patent and obtain legal and equitable relief for infringement.

13.     On February 7, 2012, United States Patent No. RE43,171 ("the '171 Patent") entitled "Data Security Method and Device for Computer Modules" issued to William W.Y. Chu.  (A copy of the '171 Patent is attached hereto as Exhibit G.)  The entire right, title and

interest to the '171 Patent has been assigned to ACQIS, including the right to enforce the '171 patent and obtain legal and equitable relief for infringement.

14.    On August 27, 2013, United States Patent No. RE44,468 ("the '468 Patent") entitled "Data Security Method and Device for Computer Modules" issued to William W.Y. Chu.  (A copy of the '468 Patent is attached hereto as Exhibit H.)  The entire right, title and interest to the '468 Patent has been assigned to ACQIS, including the right to enforce the '468 patent and obtain legal and equitable relief for infringement.

15.    On November 29, 2011, United States Patent No. RE42,984 ("the '984 Patent") entitled "Data Security Method and Device for Computer Modules" issued to William W.Y. Chu.  (A copy of the '984 Patent is attached hereto as Exhibit I.)  The entire right, title and interest to the '984 Patent has been assigned to ACQIS, including the right to enforce the '984 patent and obtain legal and equitable relief for infringement.

16.    On January 17, 2012, United States Patent No. RE43,119 ("the '119 Patent") entitled "Password Protected Modular Computer Method and Device" issued to William W.Y. Chu.  (A copy of the '119 Patent is attached hereto as Exhibit J.)  The entire right, title and interest to the '119 Patent has been assigned to ACQIS, including the right to enforce the '119 patent and obtain legal and equitable relief for infringement.

17.    On November 23, 2010, United States Patent No. RE41,961 ("the '961 Patent") entitled "Password Protected Modular Computer Method and Device" issued to William W.Y. Chu.  (A copy of the '961 Patent is attached hereto as Exhibit K.)  The entire right, title and interest to the '961 Patent has been assigned to ACQIS, including the right to enforce the '961 patent and obtain legal and equitable relief for infringement.

18.    The above patents are collectively referred to herein as the "Patents-in-Suit."

## BACKGROUND REGARDING PRIOR LITIGATION

19.     In April 2009, ACQIS filed suit in the Eastern District of Texas against IBM, Hewlett-Packard, Sun Microsystems (now Oracle), Dell and six others, accusing defendants' blade server products of patent infringement. *ACQIS LLC v. Appro Int'l, Inc.*, No. 6:09-CV-148-LED (April 4, 2009) ("the 2009 litigation"). IBM was the only defendant remaining when the case was tried in February 2011—the other nine defendants settled before trial. At trial, the jury found that IBM infringed all of the patent claims tried, and that none of the tried claims was invalid. In October 2011, ACQIS filed a second suit against IBM, accusing IBM's rack and tower server products of patent infringement. In December 2011, IBM and ACQIS entered into a settlement agreement ending both disputes.

20.     During the course of the previous litigations, IBM and Hewlett-Packard sought reexamination of the '416 Patent, and IBM sought reexamination of the '873 and '814 Patents. The Patent Office confirmed the patentability of all the claims under reexamination for the '873 Patent, all but two claims of the '814 Patent, and all but three claims of the '416 Patent.

21.     The '416 Patent was asserted against IBM in the 2009 litigation. The '873 Patent was asserted in the October 2011 Complaint filed against IBM. Several of the Patents-in-Suit are part of the same patent family as the patents asserted in the 2009 litigation.

22.     In the prior litigations, ACQIS's infringement claims were directed toward blade server products. In this suit, ACQIS's infringement claims are directed toward a broader range of modular computers.

## BACKGROUND REGARDING THIS LITIGATION

23.     On September 9, 2013, ACQIS filed suit in the Eastern District of Texas against EMC (Case No. 6:13cv639), Alcatel-Lucent (Case No. 6:13cv638), Ericsson (Case No.

6:13cv640), and Huawei Technologies (Case No. 6:13cv641) for infringement of patents related to modular computer systems.

24.    Alcatel-Lucent, Ericsson, and Huawei have all settled, and those cases are closed.

25.    On December 6, 2013 EMC answered ACQIS's First Amended Complaint and moved to transfer the case to this District.  (D.I.s. 18 & 21, Case No. 6:13cv639.)  The Eastern District of Texas conditionally transferred this case on September 10, 2014, pending claim construction.  (*Id*. D.I. 88).  This case was transferred to this District on April 13, 2015. (*Id*. D.I. 188, 189.)

26.    EMC moved to stay this case pending the results of three *inter partes* reviews before the Patent Trial and Appeal Board, and the Court granted the stay on June 10, 2015.  (D.I. 102.)

27.    The Patent Trial and Appeal Board denied institution of one *inter partes* review and found that EMC had not proven that any claim was unpatentable in the two others. This Court lifted the stay on August 10, 2016. (D.I. 140).

## MODULAR COMPUTER SYSTEMS

28.    The types of products at issue in this case are modular computer systems. Modular computing systems are systems that use computer modules and related components that can be inserted into a chassis, rack, console, or other enclosure.  Modular computer systems allow for more processing power in less space, simplify cabling, and reduce power consumption as compared to other computer system configurations.  Modular computer systems have become extremely popular over the last few years as customers demand more computing power and lower cost of ownership.

29.     EMC's modular computing products include, for example, its Isilon series systems, VMAX series systems, and VNX series systems and EMC products operating in a similar manner.

30.     The identified EMC products in each count below include, or in the case of method claims when operated perform, each and every limitation of the referenced claims. For example, all of EMC's identified products include infringing architectures, including:

- a computer module that is insertable into the coupling site of a console;

- a main circuit board;

- a processing unit (e.g., one or more Intel™ Xeon processors) coupled to the main circuit board;

- a main memory (DRAM memory) coupled to the one or more Intel™ Xeon processors;

- industry standard PCI Express channels, which are low voltage differential signal (LVDS) channels comprising two sets of unidirectional, multiple serial bit channels to transmit data in opposite directions for communicating an encoded serial bit stream of Peripheral Component Interconnect (PCI) bus transaction; and

- a peripheral bridge circuit that is directly coupled to the Intel™ Xeon processor(s) and includes an interface controller directly coupled to the PCI Express LVDS channel.

31.     In some EMC products the peripheral bridge is external to the Intel™ Xeon processor packaging and, in other products, the peripheral bridge is incorporated into the Intel™ Xeon processor packaging.  In both cases, the peripheral bridge is coupled to the processor(s) and the PCI Express LVDS channels in the manner required by the claims.

## **WILLFUL INFRINGEMENT**

32.     ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-31.

33.     EMC has known of ten of the asserted patents since at least May 3, 2013, and has known of the '468 Patent since at least September 12, 2013.

34.     EMC knows and has represented that its parent company, Dell, is a licensee of ACQIS. (D.I. 126.) Dell's products use highly similar technology to the EMC products. To date, thirteen other companies whose products use technology highly similar to EMC's also took licenses under the ACQIS portfolio.

35.     A jury in the case, *ACQIS v. International Business Machines Corp.*, 6:09-cv-00148 (E.D. Tex.), found that IBM products using technology highly similar to the technology accused in EMC's products infringed the '416 Patent at issue in this proceeding and other patents related to those at issue in this proceeding. ACQIS produced the IBM trial transcript to EMC on July 18, 2014, and EMC knows or should have known that a jury found IBM's technology, which is highly similar to its own, infringing. The trial transcript includes testimony from IBM engineers that PCI Express links carry encoded PCI bus transactions. Engineers for other licensees have given similar testimony and EMC has access to that testimony.

36.     Asserted patents in the ACQIS portfolio have survived *inter partes* reexamination proceedings initiated by IBM and HP.

37.     EMC sought *inter partes* review of three of the asserted patents before the Patent Trial and Appeal Board. It failed to prove that even one of the challenged claims was unpatentable.

38. EMC continues to manufacture infringing products, using the same PCI Express-based connectivity architecture found to be infringing in the earlier IBM litigation. It does so knowing that ACQIS's patents exist and that they are valid.

39. EMC's conduct has been, and will continue to be, willful and deliberate. EMC's willful and deliberate infringement entitles ACQIS to enhanced damages under 35 U.S.C. § 284.

## FIRST CAUSE OF ACTION
## (INFRINGEMENT OF THE '416 PATENT)

40. ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-39.

41. ACQIS is the sole holder of the entire right, title and interest in the '416 Patent.

42. EMC directly infringes, for example, claims 51 and/or 60 of the '416 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300, 5500, 5700, 7500, VG2, VG8, and VNXe 3100 and 3300 systems.[1] For example, EMC's infringement is shown in ACQIS's May 9, 2014 Infringement Contentions against EMC for the VMAX and VNX products listed in the preceding sentence.

43. EMC had knowledge of the '416 Patent at least as early as May 3, 2013.

44. Since obtaining knowledge of the '416 Patent, EMC has indirectly infringed the '416 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '416 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

---

[1] The Court denied ACQIS's motion for leave to amend its infringement contentions to include additional infringing products in the present action, including products released after ACQIS filed the operative complaint.

45.     EMC end-users, resellers, and/or customers directly infringe the '416 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

46.     EMC's active inducement of infringement and/or contributory infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of the '416 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '416 Patent.

47.     ACQIS has suffered damages as a result of EMC's infringement of the '416 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement.  As set forth above, EMC's infringement is willful.

48.     For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '416 Patent. In the alternative, ACQIS is entitled to damages in lieu of an injunction, in an amount consistent with the fact that, for future infringement, EMC will be adjudicated infringers of a valid patent, and thus EMC's future infringement will be willful as a matter of law.

## SECOND CAUSE OF ACTION
## (INFRINGEMENT OF THE '624 PATENT)

49.     ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-48.

50.     ACQIS is the sole holder of the entire right, title and interest in the '624 Patent.

51.     EMC directly infringes, for example, claim 39 of the '624 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300,

5500, 5700, 7500, VG2, VG8, and VNXe 3100 and 3300 systems. For example, EMC's infringement is shown in ACQIS's May 9, 2014 Infringement Contentions against EMC for the VMAX and VNX products listed in the preceding sentence.

52. EMC had knowledge of the '624 Patent at least as early as May 3, 2013.

53. Since obtaining knowledge of the '624 Patent, EMC has indirectly infringed the '624 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '624 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

54. EMC end-users, resellers, and/or customers directly infringe the '624 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

55. EMC's active inducement of infringement and/or contributory infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of the '624 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '624 Patent.

56. ACQIS has suffered damages as a result of infringement of the '624 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement. As set forth above, EMC's infringement is willful.

57. For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '624 patent. In the alternative, ACQIS is entitled to

damages in lieu of an injunction, in an amount consistent with the fact that, for future infringement, EMC will be adjudicated infringers of a valid patent, and thus EMC's future infringement will be willful as a matter of law.

**THIRD CAUSE OF ACTION**
**(INFRINGEMENT OF THE '487 PATENT)**

58.     ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-57.

59.     ACQIS is the sole holder of the entire right, title and interest in the '487 Patent.

60.     EMC directly infringes, for example, claims 38, 45, 48 and/or 49 of the '487 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300, 5500, 5700, 7500, VG2, VG8, and VNXe 3100 and 3300 systems. For example, EMC's infringement is shown in ACQIS's May 9, 2014 Infringement Contentions against EMC for the VMAX and VNX products listed in the preceding sentence.

61.     EMC had knowledge of the '487 Patent at least as early as May 3, 2013.

62.     Since obtaining knowledge of the '487 Patent, EMC has indirectly infringed the '487 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '487 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

63.     EMC end-users, resellers, and/or customers directly infringe the '487 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

64.     EMC's active inducement of infringement and/or infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of the '487 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '487 Patent.

65.     ACQIS has suffered damages as a result of infringement of the '487 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement. As set forth above, EMC's infringement is willful.

66.     For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '487 patent. In the alternative, ACQIS is entitled to damages in lieu of an injunction, in an amount consistent with the fact that, for future infringement, EMC will be adjudicated infringers of a valid patent, and thus EMC's future infringement will be willful as a matter of law.

## FOURTH CAUSE OF ACTION
### (INFRINGEMENT OF THE '873 PATENT)

67.     ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-66.

68.     ACQIS is the sole holder of the entire right, title and interest in the '873 Patent.

69.     EMC directly infringes, for example, claims 6, 9, 29, 54, 61, 65, and/or 71 of the '873 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300, 5500, 5700, 7500, VG2, VG8, VNXe 3100 and 3300, and EMC Isilon X410, X200, X400, NL400, S200, and S210 systems. For example, EMC's infringement is

shown in ACQIS's May 9, 2014 Infringement Contentions against EMC for the VMAX and VNX products listed in the preceding sentence.

70. EMC had knowledge of the '873 Patent at least as early as May 3, 2013.

71. Since obtaining knowledge of the '873 Patent, EMC has indirectly infringed the '873 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '873 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

72. EMC end-users, resellers, and/or customers directly infringe the '873 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

73. EMC's active inducement of infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of the '873 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '873 Patent.

74. ACQIS has suffered damages as a result of infringement of the '873 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement. As set forth above, EMC's infringement is willful.

75. For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '873 patent. In the alternative, ACQIS is entitled to damages in lieu of an injunction, in an amount consistent with the fact that, for future

infringement, EMC will be adjudicated infringers of a valid patent and, thus, EMC's future infringement will be willful as a matter of law.

### FIFTH CAUSE OF ACTION
### (INFRINGEMENT OF THE '294 PATENT)

76.     ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-76.

77.     ACQIS is the sole holder of the entire right, title and interest in the '294 Patent.

78.     EMC directly infringes, for example, claims 35 and/or 44 of the '294 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300, 5500, 5700, 7500, VG2, VG8, and VNXe 3100 and 3300 systems, and EMC Isilon EMC Isilon X410, X200, X400, NL400, S200, and S210 systems. For example, EMC's infringement is shown in ACQIS's May 9, 2014 Infringement Contentions against EMC for the VMAX, VNX, and Isilon products listed in the preceding sentence.

79.     EMC had knowledge of the '294 Patent at least as early as May 3, 2013.

80.     Since obtaining knowledge of the '294 Patent, EMC has indirectly infringed the '294 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '294 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

81.     EMC end-users, resellers, and/or customers directly infringe the '294 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

82.     EMC's active inducement of infringement and/or contributory infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of the '294 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '294 Patent.

83.     ACQIS has suffered damages as a result of infringement of the '294 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement. As set forth above, EMC's infringement is willful.

84.     For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '294 patent. In the alternative, ACQIS is entitled to damages in lieu of an injunction in an amount consistent with the fact that, for future infringement, EMC will be adjudicated infringers of a valid patent, and thus EMC's future infringement will be willful as a matter of law.

**SIXTH CAUSE OF ACTION**
**(INFRINGEMENT OF THE '814 PATENT)**

85.     ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-85.

86.     ACQIS is the sole holder of the entire right, title and interest in the '814 Patent.

87.     EMC directly infringes at least claims 24 and/or 31 of the '814 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300, 5500, 5700, 7500, VG2, VG8, and VNXe 3100 and 3300 systems, and EMC products operating in a similar manner. For example, EMC's infringement is shown in ACQIS's May 9, 2014

Infringement Contentions against EMC for the VMAX and VNX products listed in the preceding sentence.

88.     EMC had knowledge of the '814 Patent at least as early as May 3, 2013.

89.     Since obtaining knowledge of the '814 Patent, EMC has indirectly infringed the '814 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '814 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

90.     EMC end-users, resellers, and/or customers directly infringe the '814 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

91.     EMC's active inducement of infringement and/or contributory infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of the '814 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '814 Patent.

92.     ACQIS has suffered damages as a result of infringement of the '814 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement. As set forth above, EMC's infringement is willful.

93.     For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '814 patent. In the alternative, ACQIS is entitled to damages in lieu of an injunction in an amount consistent with the fact that, for future

infringement, EMC will be adjudicated infringers of a valid patent, and thus EMC's future infringement will be willful as a matter of law.

## SEVENTH CAUSE OF ACTION
## (INFRINGEMENT OF THE '171 PATENT)

94.     ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-94.

95.     ACQIS is the sole holder of the entire right, title and interest in the '171 Patent.

96.     EMC directly infringes at least claim 24 of the '171 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300, 5500, 5700, 7500, VG2, VG8, and VNXe 3100 and 3300 systems, and EMC products operating in a similar manner.  For example, EMC's infringement is shown in ACQIS's May 9, 2014 Infringement Contentions against EMC for the VMAX and VNX products listed in the preceding sentence.

97.     EMC had knowledge of the '171 Patent at least as early as May 3, 2013.

98.     Since obtaining knowledge of the '171 Patent, EMC has indirectly infringed the '171 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '171 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

99.     EMC end-users, resellers, and/or customers directly infringe the '171 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

100.    EMC's active inducement of infringement and/or contributory infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of the '171 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '171 Patent.

101.    ACQIS has suffered damages as a result of infringement of the '171 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement.  As set forth above, EMC's infringement is willful.

102.    For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '171 patent. In the alternative, ACQIS is entitled to damages in lieu of an injunction in an amount consistent with the fact that, for future infringement, EMC will be adjudicated infringers of a valid patent and, thus, EMC's future infringement will be willful as a matter of law.

### EIGHTH CAUSE OF ACTION
### (INFRINGEMENT OF THE '468 PATENT)

103.    ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-103.

104.    ACQIS is the sole holder of the entire right, title and interest in the '468 Patent.

105.    EMC directly infringes claim 29 of the '468 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300, 5500, 5700, 7500, VG2, VG8, VNXe 3100 and 3300 systems, and EMC Isilon X410, X200, X400, NL400, S200, and S210 systems. For example, EMC's infringement is shown in ACQIS's May 9, 2014

Infringement Contentions against EMC for the VMAX, VNX, and Isilon products listed in the preceding sentence.

106.    EMC had knowledge of the '468 Patent at least as early as September 12, 2013.

107.    Since obtaining knowledge of the '468 Patent, EMC has indirectly infringed the '468 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '468 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

108.    EMC end-users, resellers, and/or customers directly infringe the '468 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

109.    EMC's active inducement of infringement and/or contributory infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of the '468 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '468 Patent.

110.    ACQIS has suffered damages as a result of infringement of the '468 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement. As set forth above, EMC's infringement is willful.

111.    For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '468 patent.  In the alternative, ACQIS is entitled to damages in lieu of an injunction in an amount consistent with the fact that, for future

infringement, EMC will be adjudicated infringers of a valid patent, and thus EMC's future infringement will be willful as a matter of law.

**NINTH CAUSE OF ACTION**
**(INFRINGEMENT OF THE '984 PATENT)**

112.    ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-112.

113.    ACQIS is the sole holder of the entire right, title and interest in the '984 Patent.

114.    EMC directly infringes, for example, claims 48 and/or 85 of the '984 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300, 5500, 5700, 7500, VG2, VG8, VNXe 3100 and 3300 systems, and EMC Isilon X410, X200, X400, NL400, S200, and S210 systems.  For example, EMC's infringement is shown in ACQIS's May 9, 2014 Infringement Contentions against EMC for the VMAX, VNX, and Isilon products listed in the preceding sentence.

115.    EMC had knowledge of the '984 Patent at least as early as May 3, 2013.

116.    Since obtaining knowledge of the '984 Patent, EMC has indirectly infringed the '984 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '984 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

117.    EMC end-users, resellers, and/or customers directly infringe the '984 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

118. EMC's active inducement of infringement and/or contributory infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of the '984 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '984 Patent.

119. ACQIS has suffered damages as a result of infringement of the '984 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement. As set forth above, EMC's infringement is willful.

120. For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '984 patent. In the alternative, ACQIS is entitled to damages in lieu of an injunction in an amount consistent with the fact that, for future infringement, EMC will be adjudicated infringers of a valid patent and, thus, EMC's future infringement will be willful as a matter of law.

## TENTH CAUSE OF ACTION
### (INFRINGEMENT OF THE '119 PATENT)

121. ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-121.

122. ACQIS is the sole holder of the entire right, title and interest in the '119 Patent.

123. EMC directly infringes at least claims 38 and/or 39 of the '119 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300, 5500, 5700, 7500, VG2, VG8, and VNXe 3100 and 3300 systems. For example, EMC's

infringement is shown in ACQIS's May 9, 2014 Infringement Contentions against EMC for the VMAX and VNX products listed in the preceding sentence.

124.    EMC had knowledge of the '119 Patent at least as early as May 3, 2013.

125.    Since obtaining knowledge of the '119 Patent, EMC has indirectly infringed the '624 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '119 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

126.    EMC end-users, resellers, and/or customers directly infringe the '119 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

127.    EMC's active inducement of infringement and/or contributory infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of the '119 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '119 Patent.

128.    ACQIS has suffered damages as a result of infringement of the '119 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement. As set forth above, EMC's infringement is willful.

129.    For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '119 patent.  In the alternative, ACQIS is entitled to damages in lieu of an injunction in an amount consistent with the fact that, for future

infringement, EMC will be adjudicated infringers of a valid patent and, thus, EMC's future infringement will be willful as a matter of law.

## ELEVENTH CAUSE OF ACTION
## (INFRINGEMENT OF THE '961 PATENT)

130. ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1-130.

131. ACQIS is the sole holder of the entire right, title and interest in the '961 Patent.

132. EMC directly infringes, for example, claim 28 of the '961 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States the EMC VMAX, VMAX-SE, VMAX 10K, 20K, and 40K systems, as well as the VNX 5100, 5300, 5500, 5700, 7500, VG2, VG8, and VNXe 3100 and 3300 systems. For example, EMC's infringement is shown in ACQIS's May 9, 2014 Infringement Contentions against EMC for the VMAX and VNX products listed in the preceding sentence.

133. EMC had knowledge of the '961 Patent at least as early as May 3, 2013.

134. Since obtaining knowledge of the '961 Patent, EMC has indirectly infringed the '961 Patent by actively inducing infringement by others, and/or contributing to the infringement of one or more of the claims of the '961 Patent in violation of 35 U.S.C. §§ 271(b)-(c), including at least by providing infringing products or components with no substantial non-infringing use to end-users, resellers, and/or customers, along with user guides and product documentation that instruct end-users, resellers, and customers to use EMC products in an infringing manner.

135. EMC end-users, resellers, and/or customers directly infringe the '961 Patent by using the accused products in violation of 35 U.S.C. § 271(a).

136. EMC's active inducement of infringement and/or contributory infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to

the fact that its actions would induce infringement of the '961 Patent, as demonstrated by, for example, providing specifications and instructions for the installation and operation of the accused products, including uses that infringe one or more claims of the '961 Patent.

137.    ACQIS has suffered damages as a result of infringement of the '961 Patent by EMC, and will suffer additional damages as a result of EMC's continuing infringement.  As set forth above, EMC's infringement is willful.

138.    For ongoing and future infringement, ACQIS will continue to suffer irreparable harm unless this Court enjoins EMC, its agents, employees, representatives, and all others acting in concert with EMC from infringing the '961 patent.  In the alternative, ACQIS is entitled to damages in lieu of an injunction in an amount consistent with the fact that, for future infringement, EMC will be adjudicated infringers of a valid patent and, thus, EMC's future infringement will be willful as a matter of law.

## DEMAND FOR RELIEF

WHEREFORE, ACQIS respectfully requests the following relief:

a)    That this Court adjudge and decree that EMC has been and is currently infringing, inducing others to infringe, and committing acts of contributory infringement with respect to the Patents-in-Suit;

b)    That this Court enjoin EMC from infringing any of the Patents-in-Suit;

c)    That this Court award damages to ACQIS to compensate it for each of the unlawful actions set forth in ACQIS's Complaint;

d)    That this Court award pre-judgment and post-judgment interest on such damages to ACQIS and order an accounting of damages that accrue between the close of fact discovery and the date a final judgment is entered in this litigation;

e)       That, pursuant to 35 U.S.C. § 284, a judgment trebling damages be awarded to ACQIS due to EMC's willful infringement of the asserted patents;

f)       That this Court determine that this patent infringement case is exceptional and award ACQIS its costs and attorneys' fees incurred in this action pursuant to 35 U.S.C. § 285; and

g)       That this Court award such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

ACQIS respectfully requests a trial by jury on all issues triable thereby.

Dated:  July 7, 2017                                  Respectfully submitted,

    */s/ James P. Brogan*

James P. Brogan *(pro hac vice)*
COOLEY LLP
380 Interlocken Crescent, Ste. 900
Broomfield, CO  80021-8023
Telephone:     (720) 566-4000
Facsimile:      (720) 566-4099
jbrogan@cooley.com

Thomas J. Friel, Jr.
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222
tfriel@cooley.com

Adam Gershenson (BBO # 671296)
COOLEY LLP
500 Boylston Street
14th Floor
Boston, MA 02116-3736
Telephone: (617) 937-2379
Facsimile: (617) 937-2400
agershenson@cooley.com

*ATTORNEYS FOR PLAINTIFF ACQIS, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 7, 2017.

*/s/ James P. Brogan* _____