# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| ACQIS LLC, <br><br>         Plaintiff, <br><br>    v. <br><br> SONY INTERACTIVE ENTERTAINMENT INC., SONY INTERACTIVE ENTERTAINMENT LLC, <br><br>         Defendants. | Case No. 6:22-cv-386-ADA <br><br> **JURY TRIAL DEMANDED** <br><br> ███████████ |

**ACQIS'S OPPOSITION TO SONY'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA, OR IN THE ALTERNATIVE, TO THE AUSTIN DIVISION OF THE WESTERN DISTRICT OF TEXAS**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................ 1

III.  LEGAL STANDARD .................................................................................................... 2

IV.  THE PRIVATE AND PUBLIC INTEREST FACTORS WEIGH AGAINST
TRANSFER FROM THIS DISTRICT. ....................................................................... 3

    A.  The Private Interest Factors Weigh Against Transfer to NDCA. ........................ 3

        1.  Judicial economy strongly weighs against transfer because there
are other cases involving the same patents pending before this
Court. ................................................................................................. 3

        2.  Relative ease of access to sources of proof. ..................................... 5

        3.  The availability of compulsory process to secure attendance of
witnesses. .......................................................................................... 9

        4.  The cost of attendance for willing witnesses. ................................. 10

    B.  The Public Interest Factors Weigh Against Transfer to the NDCA. ................. 12

        1.  The administrative difficulties flowing from court congestion. ............... 12

        2.  The local interest in having localized interests decided at home. ............. 12

        3.  The familiarity of the forum with the law that will govern the case,
and the avoidance of unnecessary problems of conflict of laws or
the application of foreign law. .................................................................. 13

    C.  The Private Interest in Judicial Economy Weighs Against Transfer to the
Austin Division; All Other Factors Are Neutral. ................................................ 13

        1.  The remaining private interest factors are neutral. ................................... 14

        2.  The public interest factors are neutral. ...................................................... 15

V.  CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
No. 6:20-cv-810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ................................... 6

*ACQIS LLC v. ASUSTeK Computer, Inc.*,
No. 6:20-cv-00966-ADA, Dkt. 144 (W.D. Tex. Dec. 28, 2022) ................................ 5

*ACQIS LLC v. Lenovo Group Ltd.*,
No. 6:20-cv-00967-ADA, Dkt. 106 (W.D. Tex. Nov. 17, 2021)................................. 4

*ACQIS LLC v. MiTAC Holdings Corp.*,
No. 6:20-cv-00962-ADA, 2021 WL 4805431 (W.D. Tex. Oct. 14, 2021) ............... 5, 6, 12, 13

*ACQIS, LLC v. EMC Corp.*,
No. 2021-1772, 2022 WL 1562847 (Fed. Cir. May 18, 2022).................................. 5

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
358 F.3d 337 (5th Cir. 2004) ........................................................................ 3

*Atlas Global Techs. LLC v. OnePlus Tech. (Shenzhen) Co., Ltd.*,
No. W-21-cv-01217-ADA, Dkt. 72 (Public Version) (W.D. Tex. Mar. 10, 2023) ............... 4, 9

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ........................................................................ 2

*EcoFactor, Inc. v. Ecobee, Inc.*,
No. 6:20-cv-00078-ADA, 2021 WL 1535535 (W.D. Tex. Apr. 16, 2021) ............................. 3

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sep. 10, 2019) ........... 3, 5, 9, 11, 12

*Flypsi, Inc. v. Google LLC*,
No. W-22-cv-00031-ADA, 2022 WL 17347156 (W.D. Tex. Nov. 29, 2022) ........................ 9

*In re Adobe Inc.*,
823 F. App'x 929 (Fed. Cir. 2020) .............................................................. 12

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ................................................................. 11

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) .............................................................. 11, 12

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ................................................ 11

*In re HP Inc.*,
No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ................................................ 10

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ................................................................................................ 12

*In re Planned Parenthood Fed'n of Am.*,
52 F.4th 625 (5th Cir. 2022) ............................................................................................. 6, 10

*In re Vistaprint Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010) ................................................................................................ 5

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .......................................................................................... 2, 3, 10, 12

*In re Volkswagen of Am., Inc.*,
566 F.3d 1349 (Fed. Cir. 2009) ................................................................................................ 4

*Kajeet, Inc. v. Trend Micro, Inc.*,
No. 6:21-cv-389-ADA, 2022 WL 126490 (W.D. Tex. Jan. 12, 2022) ................................. 15

*Moskowitz Fam. LLC. v. Globus Med., Inc.*,
No. 6:19-cv-00672-ADA, 2020 WL 4577710 (W.D. Tex. July 2, 2020) ...................... 11, 12

*PaSafeShare LLC v. Microsoft Corp.*,
No. 6:20-cv-00397-ADA, 2021 WL 1298933 (W.D. Tex. Apr. 7, 2021) ................... 3, 14, 15

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*,
No. 6:11-cv-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ............................................ 3

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) .................................................................................................................... 2

*SynKloud Techs., LLC v. Dropbox, Inc.*,
No. 6:19-cv-00525-ADA, 2020 WL 2494574 (W.D. Tex. May 14, 2020) .............................. 3

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) .................................................................................................................. 2

*VSLI Tech. LLC v. Intel Corp.*,
No. 6:19-cv-00254-ADA, 2019 WL 8013949 (W.D. Tex. Oct. 7, 2019) .............................. 15

*Word to Info, Inc. v. Facebook, Inc.*,
No. 3:14-CV-04387-K, 2015 WL 13870507 (N.D. Tex. Jul. 23, 2015) ................................ 12

*Wsou Investments, LLC v. Microsoft Corp.*,
   No. 6:20-cv-00454-ADA, 2021 WL 1298935 (W.D. Tex. Apr. 7, 2021),
   *reconsideration denied,* 2022 WL 2078216 (W.D. Tex. June 9, 2022) ........................... 14, 15

**Statutes**

28 U.S.C. §1404(a) ................................................................................................ 2, 5, 10

**Rules**

FRCP 45(c)(1)(A) .......................................................................................................... 9

FRCP 45(c)(1)(B)(ii) ...................................................................................................... 9

## I. INTRODUCTION

The motion to transfer venue (Dkt. 21) of Defendants Sony Interactive Entertainment Inc. ("SIEI") and Sony Interactive Entertainment LLC ("SIE") (collectively, "Sony") does not mention that this is one of four cases pending before this Court involving overlapping asserted patents, with cases against ASUSTeK and Wiwynn set for trial in September 2023 and another case, *ACQIS LLC v. Microsoft Corp.*, No. 6:22-cv-00385-ADA ("*ACQIS v. Microsoft*"), on an identical schedule to this case. Microsoft has not sought transfer despite passage of the March 3, 2023 deadline to file a motion for inter-district transfer without a showing of good cause for delay. No. 6:22-cv-00385-ADA, Dkt. 33 at 2. This Court has deep familiarity with the asserted patents and has construed numerous terms from the claims of the asserted patents in co-pending cases. Considerations of judicial economy and consistency strongly weigh against transfer.

On balance, the private and public factors disfavor transfer. Although SIE has a presence in the Northern District of California ("NDCA"), Advanced Micro Devices ("AMD")—the supplier of the processor found in the accused products, which provides functionality material to ACQIS's infringement allegations—has a significant physical presence in the Western District of Texas ("WDTX") and likely possesses evidence of infringement in WDTX. Illustrating WDTX's nexus to the facts of this case, ███████████████████████████████████████████ ████████████████████████████████████████████ Sony's motion should be denied.

## II. FACTUAL BACKGROUND

ACQIS has asserted that Sony infringed five ACQIS patents—U.S. Patent Nos. 9,529,768 ("'768"), 9,703,750, 8,977,797, RE44,654, and RE45,140 ("Asserted Patents")—through U.S. sales and other activities relating to Sony PlayStation 4 ("PS4") game consoles. Dkt. 1 at ¶¶ 1-4. ACQIS's infringement allegations relate to the PCI Express (PCIe) functionality used to connect PS4 system components, namely connecting the AMD-supplied semi-custom Liverpool APU

processor chip to the southbridge chip, and USB 3.x functionality that allows connection of the PS4 to external components. *See, e.g., id.* at ¶¶ 55-72 (PCIe), 147-150 (USB 3.x). In particular, the PCIe functionality of the PS4's processor, including PCIe controller(s) and other elements found on the processor chip, is material to ACQIS's allegations of infringement by the accused PS4 systems. *See id.*; *see also generally, e.g.*, Ex. 1[1] (excerpt from '768 infringement contention chart).

## III.   LEGAL STANDARD

To prevail on a motion to transfer under 28 U.S.C. §1404(a), there is a "significant burden on the movant to show good cause for the transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) ("*Volkswagen II*"). The burden on a movant is not to show that an alternative venue is more convenient, but that is "*clearly* more convenient." *Id.* at 315 (emphasis added). The moving party must "clearly establish good cause for transfer based on convenience and justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). Some inconvenience is "expected and acceptable" when a defendant is brought into court, but "the fact that litigating would be more convenient for that defendant elsewhere is not enough to justify transfer." *Id*. Section 1404(a) "place[s] discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Absent a showing that a destination venue is "clearly more convenient," the plaintiff's choice of venue "should be respected." *Volkswagen II*, 545 F.3d at 315.

In this case, where venue would have been proper in the transferee district, *i.e.*, NDCA, the determination of whether Sony has met its significant burden "turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *EcoFactor, Inc. v.*

---

[1] References herein to numbered exhibits refer to exhibits submitted with the Declaration of Logan J. Drew, submitted herewith. References to lettered exhibits refer to Sony exhibits.

*Ecobee, Inc.*, No. 6:20-cv-00078-ADA, 2021 WL 1535535, at *1 (W.D. Tex. Apr. 16, 2021) (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). The Court "must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sep. 10, 2019) (citation omitted). The private/public interest factors apply to intra-district transfers, and it is "well settled that trial courts have even greater discretion in [deciding] intra-district transfers than they do in the case of inter-district transfers." *PaSafeShare LLC v. Microsoft Corp.*, No. 6:20-cv-00397-ADA, 2021 WL 1298933, at *2 (W.D. Tex. Apr. 7, 2021) (citation omitted).

## IV. THE PRIVATE AND PUBLIC INTEREST FACTORS WEIGH AGAINST TRANSFER FROM THIS DISTRICT.

Sony has not met its significant burden to show that NDCA is clearly more convenient than WDTX, or Austin is clearly more convenient than Waco. Transfer should be denied.

### A. The Private Interest Factors Weigh Against Transfer to NDCA.

#### 1. Judicial economy strongly weighs against transfer because there are other cases involving the same patents pending before this Court.

When considering the private interest factors, courts must consider "practical problems that make trial of the case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315 (citation omitted). Multiple co-pending suits involving the same or similar issues "may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013) (citation omitted). This factor is important where, as here, there is "co-pending litigation before the trial court involving the same patent and underlying technology." *SynKloud Techs., LLC v. Dropbox, Inc.*, No. 6:19-cv-00525-ADA, 2020 WL 2494574, at *5 (W.D. Tex. May 14, 2020) (citation omitted). Indeed, the existence of multiple lawsuits involving the same issues is a "paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen*

*of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Different courts deciding issues relating to the same patents creates "significant practical difficulties," "wastes judicial resources and risks inconsistent rulings on the patents-in-suit." *Atlas Global Techs. LLC v. OnePlus Tech. (Shenzhen) Co., Ltd.*, No. W-21-cv-01217-ADA, Dkt. 72 at 20 (W.D. Tex. Mar. 10, 2023) (public version).

There are currently four cases, including this one, pending before this Court involving the same patents; three other cases before this Court involving the same patents were resolved within the last thirteen months.[2] The co-pending cases all involve overlapping issues of claim construction, invalidity, prior art, conception and reduction to practice, and infringement based on PCIe and USB 3.x functionality common to the accused computer systems in all co-pending cases (*e.g.*, gaming consoles, PCs, servers). *See, e.g.*, Ex. 2 (excerpt from '768 infringement contention chart against Microsoft Xbox One); No. 6:20-cv-966-ADA, Dkt. 1 (ASUSTek Complaint) (W.D. Tex. Oct. 15, 2020), at ¶¶ 57-61, 136; No. 6:20-cv-968-ADA, Dkt. 1 (Wiwynn Complaint) (W.D. Tex. Oct. 15, 2020), at ¶¶ 51-54, 90. The case against Microsoft is on an identical schedule to this case. *See* No. 6:22-cv-00385-ADA, Dkt. 33. Microsoft has not moved to transfer venue.

In November 2021, this Court construed claims from all five of the Asserted Patents in this case. *See ACQIS LLC v. Lenovo Group Ltd.*, No. 6:20-cv-00967-ADA, Dkt. 106 (W.D. Tex. Nov. 17, 2021). In December 2022, this Court issued an order concluding that constructions of certain claim terms from different ACQIS patents construed in a prior case against EMC, which the Federal Circuit had recently affirmed (*ACQIS, LLC v. EMC Corp.*, No. 2021-1772, 2022 WL

---

[2] ACQIS currently has cases against Microsoft, No. 6:22-cv-00385-ADA (involving the same five patents asserted here (*see* Dkt. 1 at ¶ 1)), Wiwynn, No. 6:20-cv-00968-ADA (involving four of the five patents asserted here (*see* Dkt. 1 at ¶ 2)), and ASUSTeK, No. 6:20-cv-00966-ADA (involving all five patents asserted here (*see* Dkt. 1 at ¶ 2)). ACQIS resolved cases against MiTAC, No. 6:20-cv-00962-ADA (involving same patents) (dismissed Feb. 2022), Inventec, No. 6:20-cv-00965-ADA (involving four of the five patents asserted here) (dismissed June 2022), and Lenovo, No. 6:20-cv-00967-ADA (involving same patents) (dismissed Dec. 2022).

1562847 (Fed. Cir. May 18, 2022)), do not apply to certain claim terms addressed in that order. *ACQIS LLC v. ASUSTeK Computer, Inc.*, No. 6:20-cv-00966-ADA, Dkt. 144 (W.D. Tex. Dec. 28, 2022). Because there is a significant degree of commonality within the co-pending cases, including up to five overlapping patents between each co-pending case, "judicial economy is best served by denial of transfer." *ACQIS LLC v. MiTAC Holdings Corp.*, No. 6:20-cv-00962-ADA, 2021 WL 4805431, at *5 (W.D. Tex. Oct. 14, 2021) ("*MiTAC*") (denying motion to transfer to NDCA).

As the Federal Circuit has recognized, the "meaningful application" of the §1404(a) factors "often creates a reasonable range of choice." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010). "Under such circumstances, it is entirely within the district court's discretion to conclude" that the factors of public interest or judicial economy can be of "'paramount consideration' . . . and as long as there is plausible support of record for that conclusion," the Federal Circuit "cannot say the trial court clearly abused its discretion in denying transfer" "even if the convenience factors call for a different result" (here, they do not). *Id.* at 1347, n. 3 (citation omitted) (denying mandamus petition where "the trial court performed a detailed analysis explaining that it is very familiar with the only asserted patent and the related technology, and where there is co-pending litigation before the trial court involving the same patents-in-suit, and pertaining to the same underlying technology and accusing similar services"). Given the co-pending cases in this Court involving the same Asserted Patents, and the Court's deep familiarity with the Asserted Patents and the underlying technology, judicial economy is of "paramount consideration," and this factor weighs strongly against transfer.

### 2. Relative ease of access to sources of proof.

This factor is focused on "where documentary evidence, such as documents and physical evidence, is stored." *Fintiv*, 2019 WL 4743678, at *2. The Fifth Circuit has recognized that this factor carries more weight in the transfer analysis when the evidence is physical or non-electronic.

*In re Planned Parenthood Fed'n of Am.*, 52 F.4th 625, 630 (5th Cir. 2022). "[T]his Court has stressed that the focus on physical location of electronic documents is out of touch with modern patent litigation." *MiTAC*, 2021 WL 4805431, at *2 (citations omitted). "[A]ccess to documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another." *Id.* (citation omitted).

ACQIS acknowledges, based on the location of the identified SIE witnesses, that relevant Sony documents likely exist in Japan and California. Notably, however, Sony does not assert that any of its documents exist in, or are stored solely in, non-electronic form or that any physical evidence cannot be digitized. *See* Dkt. 21 at 5-6. Sony does not assert that it would be difficult or burdensome to make such documents available in WDTX. *See id.*

Further, Sony's reliance on *10Tales, Inc. v. TikTok Inc.*, No. 6:20-cv-810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021), is misplaced because it is based on Sony's unsupported assertion that there is not "a single source of physical proof in this District." Dkt. 21 at 6. Highly relevant third-party AMD documents relating to the Liverpool APU processor found in the accused PS4 products (as well as custodians, including current and possibly former AMD employees), are located and/or accessible in Austin in WDTX. The Liverpool APU is a semi-custom processor

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *See, e.g.*, Ex. 3 ███████████████

████████ at SONY_0000082; *see also* Exs. 4-7. The PCIe functionality of the processor found in the PS4—including controllers and other elements found on the processor chip, and how those elements connect to components in the infringing systems using PCIe—is material to ACQIS's

---

[3] ███████████████████████████████████████████████████████████████████

████████ *See* Dkt. 21, Declaration of Geoff Norton ("Norton Decl."), ¶3.

infringement allegations. *See* Ex. 1 at 3-32. ███████████████████████

████████████████████████████████████████████████████████████████████

████████████████ *See, e.g.*, Ex. 3 at SONY_0000120, 291. These ████████████████ which are indicative of the types of documentary evidence in AMD's possession, include, *inter alia*, discussion of relevant PCIe functionality of the Liverpool APU found in the accused PS4 products. *See* Drew Decl. at ¶ 4 (citing excerpts ████████████████████████████ ).

Although AMD is headquartered in Sunnyvale, California, much of its engineering work takes place in Austin, Texas, including much of the Liverpool APU development. Ex. 8 (article dated Aug. 10, 2013) at 2. In 2013, during development of the Liverpool APU, AMD employed approximately 2,000 people in Texas. *Id.* AMD's presence in WDTX remains significant, with approximately 1,500 current employees in central Texas. Ex. 9 (article dated May 5, 2022) at 1.

In its motion, Sony identifies a single AMD witness/custodian, Richard George, who resides in Sunnyvale, CA. *See* Dkt. 21 at 7. Sony subsequently identified six additional current or former AMD employees of which it is aware, involved with technical aspects of the Liverpool APU. *See* Ex. 10 (1st Supp. Resp. to ACQIS Interrogatory No. 4) at 7. Of the seven current or former AMD employees Sony identified, only Mr. George is located in California. Another is Tom McKeone, whose LinkedIn profile indicates that he is in the Austin area and that his knowledge is highly relevant. *See* Ex. 11 at 1-2 (explaining that he "[l]ead [sic] all engineering efforts (design, platform, and software) in semi-custom division" and "[w]orked to bring next generation gaming consoles to the market with Sony Playstation 4 . . . ."). The other five individuals Sony identified— Masooma Bhaiwala, Bob Feldstein, Rick Fuller, Rick Hagen, and Andi Skende—appear to be located in or around Massachusetts. *See* Ex. 10 at 7; Exs. 12-16.

It is also apparent that there are numerous other current (and former) AMD employees,

beyond those identified by Sony, that are likely custodians of relevant documents and/or witnesses.

[REDACTED] with knowledge, and likely documents in the case of individuals still with AMD/Sony,

relevant to infringement. Indeed, [REDACTED]

[REDACTED]

[REDACTED] Ex. 3 at SONY_0000097.

[REDACTED]:

| | AMD Employees | Sony Employees |
|---|---|---|
| [REDACTED] | [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] | |
| [REDACTED] | [REDACTED] | |

As shown above, Chris Kilburn, whose LinkedIn profile indicates that he remains an employee of

AMD and lives in the Austin area (*see* Ex. 18 at 1), [REDACTED]

[REDACTED] Ex. 4 ([REDACTED]) at

SONY_0001784; Ex. 5 ([REDACTED]) at SONY_0001833; Ex. 6 ([REDACTED]) at SONY_0001912; Ex. 7

([REDACTED]) at SONY_0001986. Mr. Kilburn is likely to be a custodian of relevant documents.

Mignonne Gros, who also appears to reside in Austin but is no longer with AMD, [REDACTED]

[REDACTED] Ex. 4 at SONY_0001784; Ex. 5 at

SONY_0001833. AMD's operations in Austin appear to include a "Sony Business Unit," as

indicated by Texas-based AMD employee and likely document custodian Jeff Connell, whose

8

LinkedIn profile identifies his title from June 2016 as "Corporate VP and GM, Sony Business Unit." Ex. 22. ACQIS also identifies twelve additional potential AMD custodians/witnesses. *See* Drew Decl. at ¶ 24 (summary of additional known AMD witnesses in WDTX); Exs. 23-34.

The table above also identifies the various Sony employees who have served as  One of those individuals, ███████████, is identified as a Japan-based likely party trial witness in Sony's motion, Dkt. 21 at 5, and he was ████████ ████████████████████████████████ Notably, ██████████████████████ ████████████████████████████████████████████████████████████ ████████████████ Ex. 35 (1st Supp. Resp. to ACQIS Interrogatory No. 3) at 6-7.

Because Sony does not identify any specific physical, non-electronic Sony evidence that cannot be digitized and made available in WDTX, and ignores the significant sources of AMD evidence in WDTX (and associated custodians), this factor weighs against transfer or is neutral.

### 3. The availability of compulsory process to secure attendance of witnesses.

A court may subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person; or within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." FRCP 45(c)(1)(A), (B)(ii). The focus of this factor is "non-party witnesses whose attendance may need to be secured by a court order." *Flypsi, Inc. v. Google LLC*, No. W-22-cv-00031-ADA, 2022 WL 17347156, at *9 (W.D. Tex. Nov. 29, 2022) (citing *Fintiv*, 2019 WL 4743678, at *14). Although this Court has recognized Federal Circuit guidance "that 'when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor,'" *Atlas Global Techs.*, No. W-21-cv-01217-ADA, Dkt. 72 at 11-12 (quoting *In re HP Inc.*, No. 2018-149,

2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)), the Court has also noted that "the Fifth Circuit has clarified that the availability of the compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* (citing *In re Planned Parenthood*, 52 F.4th at 630-31) (internal quotations omitted).

ACQIS identifies 16 exemplary non-party AMD witnesses, discussed above, including current and former employees, who appear to reside in Texas and likely have relevant information. These witnesses are subject to compulsory process by this Court and their presence in WDTX weighs against transfer. Sony identifies 17 (not 18) alleged non-party witnesses that purportedly reside in California. Dkt. 21 at 7-8. However, one of them, Dr. William Chu, the founder, President, and CEO of ACQIS and sole inventor of the patents-in-suit, is a willing party witness for whom attending trial in Waco in the WDTX would not be an inconvenience. Chu Decl. at ¶ 4. Sony fails to show, or even allege, that William Galliani, the patent attorney who prosecuted the Asserted Patents, or any of the other 15 witnesses are unwilling witnesses. Dkt. 21 at 7-8. Under either presumption of willingness, ACQIS identifies at least 16 non-party witnesses in Texas (specifically WDTX) compared to the 16 Sony identifies in California.[4] This factor is neutral.

### 4. The cost of attendance for willing witnesses.

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317. However,

---

[4] Sony's non-party witnesses include three former Sony employees who allegedly worked on design and/or development of the PS4, Dkt. 21 at 7-8, but Sony provides no explanation for why their testimony would be needed in addition to that of current Sony employees with similar knowledge. Sony also identifies nine named inventors of alleged prior art. *Id.*; Lang Decl. at ¶¶ 12-14. Sony has not yet served invalidity contentions and has provided no explanation for why the identified alleged prior art is likely to be used at trial, but even if this alleged prior art is the subject of trial testimony, the nine witnesses span only five unique alleged prior art patents. Lang Decl. at ¶¶ 12-14.

when witnesses will be required to travel significant distances regardless of whether the case is transferred, "the '100-mile rule' should not be rigidly applied . . . ." *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009). The Federal Circuit has held that this inquiry focuses on the cost and inconvenience of time spent traveling, rather than distance, *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021), and that "slight" differences in convenience between forums should not weigh heavily. *In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020).

ACQIS identifies one party witness, Dr. Chu, for whom attending trial in the WDTX would not be an inconvenience. Chu Decl. at ¶ 4. ACQIS identifies several non-party AMD potential witnesses who reside in Texas, and various other non-party AMD potential witnesses who reside in Massachusetts or Canada. Sony identifies nine party and 16 non-party witnesses, all of whom reside in California except for one party witness, ███████████, who resides in Japan (and who ████████████████████████████████████ as discussed above). Dkt. 21 at 5, 7-8.

Regarding party witnesses, the convenience of party witnesses should be "given relatively little weight compared to non-party witnesses." *Moskowitz Fam. LLC. v. Globus Med., Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *4 (W.D. Tex. July 2, 2020); *see also Fintiv*, 2019 WL 4743678, at *6.

Regarding non-party witnesses, ACQIS identifies 16 in Texas for whom the WDTX would be more convenient, while Sony identifies 16 for whom the NDCA would be more convenient. Assuming these potential non-party witnesses are all willing witnesses, the number located in Texas (16) compared to California (16) is neutral. And the convenience of the Massachusetts- and Canada-based AMD personnel identified by ACQIS should not weigh heavily on the outcome because these potential witnesses would have to travel a significant distance to either WDTX or NDCA. *See In re Google*, 2021 WL 4427899, at *4; *In re Apple*, 979 F.3d at 1342.

Finally, this Court "assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify at trial, so long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor." *Moskowitz*, 2020 WL 4577710, at *4; *see also Fintiv*, 2019 WL 4743678, at *6. Accordingly, this factor is neutral.

**B.      The Public Interest Factors Weigh Against Transfer to the NDCA.**

**1.      The administrative difficulties flowing from court congestion.**

This factor "concerns whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The "crux" of this factor is "'the speed with which a case can come to trial and be resolved.'" *MiTAC*, 2021 WL 4805431, at *6 (quoting *In re Genentech, Inc.*, 566 F.3d at 1347). This case is likely to reach trial faster in the WDTX than the NDCA. The median time from filing to trial for all civil cases in the WDTX is 28.9 months, and in NDCA 34.7 months, a difference of nearly six months.[5] Ex. 36 (trial statistics for the 12 months ending Sept. 2022). This factor weighs against transfer.

**2.      The local interest in having localized interests decided at home.**

The local interest factor requires a court to evaluate whether a local interest exists in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. A local interest is shown through "a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015) (citation omitted). To determine which district has the stronger local interest, a court must look to where the events forming the basis for the infringement occurred. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021).

---

[5] To the extent the statistics Sony cites conflict with these statistics, the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Fintiv*, 2019 WL 4743678, at *4.

Texas and WDTX have a strong localized interest in this case. ACQIS is a limited liability company organized and existing under the laws of the State of Texas. ACQIS alleges that Sony has committed acts of infringement in this District, including by making, using, offering to sell, and/or selling infringing PS4 consoles in Texas. *See, e.g.*, Dkt. 1, ¶¶ 12-13.

The "most relevant considerations" regarding the events forming the basis for infringement are "where the design, development, and sale of the accused products occurred." *MiTAC*, 2021 WL 4805431, at *7. A material aspect of Sony's infringement in this case is the design and development of the Liverpool APU, ████████████████████████, and much of this activity— ████████████████████████████████████████ Sony's assertion that the design, development, and sale of the Accused Products "all occurred in the NDCA," Dkt. 21 at 11, ignores ███████████████████████████. Further, ██████████████████ ████████████████████████████████████████████ ██████████████████████████ *See* Exs. 3-7. This indicates that a ████████████████████████████████████████ and the Accused Products generally, ██████████████ not NDCA. As discussed above, ████████████ The WDTX thus has a strong local interest, on par with that of the NDCA. This factor weighs against transfer or is neutral.

### 3. The familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws or the application of foreign law.

ACQIS agrees these factors are neutral.

### C. The Private Interest in Judicial Economy Weighs Against Transfer to the Austin Division; All Other Factors Are Neutral.

The Austin Division is inappropriate as a transferee venue for the same judicial economy

and consistency reasons stated above with respect to the NDCA. Given the co-pending cases before this Court, this is a case where judicial economy is of "paramount consideration." This factor weighs strongly against transfer to the Austin Division.

### 1. The remaining private interest factors are neutral.

The remaining private interest factors are neutral with respect to the Waco or Austin Divisions. Regarding the relative ease of access to sources of proof, Sony does not identify any source of proof that would be more accessible in Austin than Waco. Dkt. 21 at 13-14. Sony's incorporation of its arguments regarding the presence of relevant documentary evidence in the NDCA "is irrelevant when comparing the relative ease of access between the Waco and Austin Divisions." *Wsou Investments, LLC v. Microsoft Corp.*, No. 6:20-cv-00454-ADA, 2021 WL 1298935, at *3 (W.D. Tex. Apr. 7, 2021) (citation omitted), *reconsideration denied,* 2022 WL 2078216 (W.D. Tex. June 9, 2022); *see also PaSafeShare*, 2021 WL 1298933, at *3. Although ACQIS identifies sources of proof from AMD located in Austin, there is no evidence that these sources of proof—likely electronic documents—would be any more accessible in Austin than Waco. This factor is neutral.

The compulsory process factor is neutral. The non-party witnesses Sony identifies are in California, outside the Austin or Waco Division's subpoena power. The non-party AMD witnesses ACQIS identifies are either located in Austin and thus subject to the Austin and Waco Division's subpoena power, or located in Massachusetts or Canada, outside WDTX subpoena power.

The cost of attendance for willing witnesses factor is neutral. Austin and Waco are equally convenient for potential witnesses because "[t]he corollary of the 100-mile rule is that when the distance between existing venue and proposed venue is less than 100 miles, the factor of inconvenience of witnesses decreases in direct relationship to the lessened distance to be traveled." *Wsou Investments,* 2021 WL 1298935, at *4. Therefore, because "the distance between Waco and

Austin is less than 100 miles, there is no significant difference in cost of attendance for willing witnesses to travel and stay in Waco compared to Austin." *Id.* Further, this Court has held that the Austin and Waco Divisions are equally convenient when considering travel time and hotel costs. *See id.* (the availability of direct flights to Austin and not Waco "carries little weight"); *PaSafeShare*, 2021 WL 1298933, at *4 (finding that Waco would be cheaper than Austin because of its lower relative cost of living); *VSLI Tech. LLC v. Intel Corp.*, No. 6:19-cv-00254-ADA, 2019 WL 8013949, at *5 (W.D. Tex. Oct. 7, 2019) (Austin and Waco equally convenient even though Austin would save out-of-state witnesses up to an hour of travel time). Sony's employees in Austin, Dkt. 21 at 14-15, are irrelevant because Sony fails to identify whether (1) its subsidiaries in Austin are relevant to this case, and (2) "if [the employees of those subsidiaries] have any relevant information that makes them potential witnesses." *Wsou Investments,* 2021 WL 1298935, at *4.

### 2.     The public interest factors are neutral.

There are no statistics that indicate the speed with which a case can come to trial and be resolved in Austin is meaningfully different from Waco. This factor is neutral.

Austin has no greater local interest in this case than Waco because while AMD is located in Austin, the mere distance between the Divisions does not "obstruct the local interest from extending into [Waco]." *Kajeet, Inc. v. Trend Micro, Inc.*, No. 6:21-cv-389-ADA, 2022 WL 126490, at *8 (W.D. Tex. Jan. 12, 2022) ("Although a judicial district line separates Waco and Irving [in NDTX], there are no roadblocks on the 90-mile stretch of I-35 that obstruct the local interest from extending into this community.") (citation omitted). This factor is neutral.

ACQIS agrees with Sony that the remaining public interest factors are neutral with respect to the Waco Division in relation to either NDCA or the Austin Division.

### V.     CONCLUSION

For the foregoing reasons, ACQIS respectfully requests that Sony's motion be denied.

Dated: March 22, 2023

Respectfully submitted,

By: */s/ Logan J. Drew*

Ronald J. Schutz (admitted in this District)
MN Bar No. 0130849
Email: rschutz@robinskaplan.com
Aaron R. Fahrenkrog (*pro hac vice*)
MN Bar No. 0386673
Email: afahrenkrog@robinskaplan.com
Logan J. Drew (admitted in this District)
MN Bar No. 0389449
Email: ldrew@robinskaplan.com
William Jones (*pro hac vice*)
MN Bar No. 0402360
Email: wjones@robinskaplan.com
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181

Of Counsel:
T. John Ward, Jr.
Texas State Bar No. 00794818
Email: jw@wsfirm.com
Andrea L. Fair
Texas State Bar No. 24078488
Email: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2023, I electronically filed the foregoing with the Clerk of Court under seal using the CM/ECF system and subsequently served it on all counsel of record via electronic mail.

/s/ *Logan J. Drew*_____
Logan J. Drew