# Exhibit 33

# UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————————

EMC CORPORATION,

Petitioner

v.

ACQIS LLC,

Patent Owner

————————————

Case No. IPR2014-01462
Patent:  8,041,873

————————————

## PATENT OWNER'S PRELIMINARY RESPONSE

## UNDER 37 C.F.R. § 42.107

Mail Stop **PATENT BOARD**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## Table of Contents

**Page**

I.    INTRODUCTION ........................................................................1

II.   GROUNDS 1-14 RELY ON PETITIONER'S FLAWED CLAIM
      CONSTRUCTION OF "PCI BUS TRANSACTION" AND SHOULD
      BE REJECTED ..........................................................................3

      A.    Patent Owner's BRI Is Consistent With the Evidence ........................5

            1.    "PCI bus transaction" is properly limited to bus
                  transactions according to the Peripheral Component
                  Interconnect protocol ..................................................5

            2.    The broadest reasonable interpretation of "PCI bus
                  transaction" includes the address, data, and command
                  information from the Peripheral Component Interconnect
                  protocol ......................................................................10

      B.    Petitioner's BRI Is Unreasonably Broad ..............................................12

            1.    Petitioner's unreasonably broad construction is
                  inconsistent with the specification ..............................................13

            2.    Petitioner offers insufficient evidence and explanation for
                  its unreasonably broad construction ..........................................14

III.  INSTITUTION ON GROUNDS 5-14 SHOULD BE DENIED
      BECAUSE THE BOGAERTS DRAFT IS NOT A "PRINTED
      PUBLICATION" UNDER 35 U.S.C. § 102(B) ..........................................16

      A.    The Bogaerts Draft Is An Internal Draft Report Unavailable to
            Persons of Ordinary Skill ..................................................................18

      B.    Evidence from CERN Suggests the Bogaerts Draft Was Not
            Available Until 2008 ........................................................................21

IV.   INSTITUTION ON GROUNDS 3 AND 5-14 SHOULD BE DENIED
      BECAUSE THE OBVIOUSNESS COMBINATIONS LACK
      SUFFICIENT RATIONALE ........................................................................22

      A.    For Each of Grounds 3 and 5-14, Petitioner Fails to Specify
            Which of Its Alternative Combinations It Asserts ..............................23

            1.    Ground 3 should not be instituted on claim 56 because
                  Petitioner does not specify which combination it asserts ........25

# Table of Contents
(continued)

Page

2.   Ground 5 should not be instituted because Petitioner does not specify which combination it asserts ................................27

3.   Ground 6 should not be instituted because Petitioner does not specify which combination it asserts ................................28

4.   Ground 7 should not be instituted because Petitioner does not specify which combination it asserts ................................29

5.   Grounds 8-14 should not be instituted because Petitioner does not specify which combinations it asserts ......................30

B.   For Each Possible Combination of Grounds 3 and 5-14, Petitioner Omits a Rational Underpinning for How References Would Be Combined ..........................................................33

1.   For Ground 3, Petitioner does not explain how a person of ordinary skill would combine Horst and Pocrass ...............34

   a.   Petitioner does not explain how a person of ordinary skill in the art would combine Horst's and Pocrass' overlapping disclosures for claim 56 ..............34

   a.   Petitioner does not explain how a person of ordinary skill in the art would apply Pocrass' connectors to Horst for claim 59 ..................................36

2.   For Ground 5, Petitioner does not explain how a person of ordinary skill would combine the Bogaerts Draft, James, and Gulick ..................................................38

3.   For Ground 6, Petitioner does not explain how a person of ordinary skill would combine Pocrass with other references ...............................................................41

   a.   Petitioner does not explain how a person of ordinary skill in the art would combine the Bogaerts Draft's and Pocrass' overlapping disclosures for claim 56.................................41

   b.   Petitioner does not explain how a person of ordinary skill in the art would apply Pocrass' connectors to the Bogaerts Draft for claim 59 ..............43

# Table of Contents
(continued)

**Page**

4.    For Ground 7, Petitioner does not explain how a person of ordinary skill would combine Deters with the Bogaerts Draft ..........................................................................................44

5.    For Grounds 8-14, Petitioner does not explain how a person of ordinary skill would combine LVDS Owner's Manual with other references...................................................45

V.    CONCLUSION...............................................................................................46

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

## List of Exhibits Cited in this Preliminary Response

Exhibit 2001:     *PCI Local Bus Specification*, Production Version, Rev. 2.1, June 1, 1995 ("PCI Local Bus Specification")

Exhibit 2002:     *Computer Desktop Encyclopedia*, (2d Ed. 1999) ("Computer Desktop Encyclopedia")

Exhibit 2003:     *Microsoft Press Computer Dictionary*, (3d Ed. 1997).

Exhibit 2004:     CERN DOCUMENT SERVER, Listing for Bogaerts, A. et al., *RD24 status report: application of the scalable coherent interface to data acquisition at LHC*, http://cds.cern.ch/record/294145/files/.

Exhibit 2005:     CERN LIBRARY RESOURCES, http://library.web.cern.ch/resources.

Exhibit 2006:     P.R. 4-3 Joint Claim Construction Statement, *ACQIS v. EMC Corp.*, 6:13-cv-00638-LED (E.D. Tex. Nov. 25, 2014)

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

## I.   INTRODUCTION

Petitioner alleges that claims 54 and 56-61 of the '873 patent ("Petitioned

Claims") are unpatentable, asserting 14 grounds.  The allegations rely on (1) for

Grounds 1-14, a flawed construction of "PCI bus transaction" that ignores the

language of the claims and the intrinsic record; (2) for Grounds 5-14, an alleged

prior art reference—the Bogaerts Draft—that fails to meet the requirements of a

printed publication under § 102(b); and (3) for Grounds 3 and 5-14, a scattershot

presentation of prior art references allegedly combinable in at least 28 ways—none

of which Petitioner provides proper explanation for.  For these reasons, Petitioner

fails to show that there is a reasonable likelihood that it will prevail as to at least

one of the challenged claims.  The Petition should be denied in its entirety.

All of the asserted grounds rely extensively on a flawed construction of "PCI

bus transaction."  Petitioner proposes an unreasonably broad construction of "PCI

bus transaction" that reads out the express definition of "PCI."[1]  As a consequence,

Petitioner asserts art in Grounds 1-14 relevant to its flawed, overbroad construction

---

[1] In the related district court litigation, Petitioner agrees that "PCI bus transaction"

should include "PCI" and cites the specification, prosecution history, and extrinsic

evidence to support its position there.  (Ex. 2006, at 3-8.)  Here, however,

Petitioner ignores all of that evidence in pursuit of its extreme position.

but not to a proper construction consistent with the claim language. Under the proper construction of "PCI bus transaction," each of the asserted grounds fails and institution should be denied.

Grounds 5-14 rely on an internal CERN draft document (the Bogaerts Draft) that does not qualify as a prior art printed publication. The title page of the Bogaerts Draft indicates that the document was just a preliminary draft. And the only date on the document suggests when the document was last edited or prepared, not when it was published, indexed, or posted publicly. Indeed, evidence from the CERN library indicates that CERN did not make the Bogaerts Draft accessible until 2008, well after the '873 patent was filed. Petitioner simply submitted no evidence to establish an actual publication date of the draft document. Petitioner, for example, did not submit testimony from any one with knowledge of the Bogaerts Draft's publication or offer any explanation for when it first could have been publicly accessible. The Bogaerts Draft is not a prior art publication, and Grounds 5-14 should be denied.

Grounds 3 and 5-14 should also be denied because Petitioner fails to provide the necessary rationale for the combinations of those grounds. Petitioner has the burden to state the precise relief it requests and to specify how each claim is rendered unpatentable by the prior art. *See* 37 C.F.R. § 42.22(a); 37 C.F.R. § 42.104. In specifying how the cited art renders claims obvious, Petitioner must

specify the precise combinations it asserts. *See Edmund Optics, Inc. v. Semrock, Inc.*, IPR2014-00583, Paper 9, at 10-12 (PTAB Sept. 19, 2014) (denying institution because petitioner offered combinations of references in the alternative). Petitioner fails to meet its burden by asserting all of the combinations of Grounds 3 and 5-14 in the alternative and failing to explain how the references would actually be combined. Petitioner leaves the Board and the Patent Owner to guess at Petitioner's positions. In all, Petitioner asserts eight different references for Grounds 3 and 5-14 resulting in at least 28 alternative combinations. Without sufficient explanation for the combinations, institution on each of the obviousness grounds in Grounds 3 and 5-14 should be denied. *See Apple Inc. v. Achates Reference Publishing, Inc.*, IPR2013-00081, Paper 21, at 20-21 (PTAB June 3, 2013) (refusing to consider alternative combinations); *Wowza Media Systems, LLC v. Adobe Systems Inc.*, IPR2013-00054, Paper 12, at 10-11 (PTAB Apr. 8, 2013) (refusing to consider undeveloped unpatentability theories).

## II.   GROUNDS 1-14 RELY ON PETITIONER'S FLAWED CLAIM CONSTRUCTION OF "PCI BUS TRANSACTION" AND SHOULD BE REJECTED

"PCI bus transaction" is recited in independent claim 54, from which all other Petitioned Claims depend. In particular, claim 54 recites "a low voltage differential signal (LVDS) channel comprising two sets of unidirectional, multiple serial bit channels to transmit data in opposite directions for communicating an

encoded serial bit stream of Peripheral Component Interconnect (PCI) bus

transaction."  (Ex. 1001, at 43:45-49.)

The BRI of "PCI bus transaction" is "command, address, and data

information, in accordance with the PCI standard, for communication with an

interconnected peripheral component."  This construction is supported by both

intrinsic evidence and extrinsic evidence.  In contrast, Petitioner proposes that

"PCI bus transaction" be construed as a generic bus transaction:  "a digital signal

communication with an interconnected peripheral component."  (Petition, at 14.)

Petitioner's construction is unreasonably broad, ignoring the definition of "PCI" in

the claims and other crucial evidence.  As a consequence, Petitioner applies the

cited art using a flawed interpretation of the claims for all of the asserted grounds

and institution of all of the grounds should be denied.

**Table 1 – Proposed constructions for "PCI Bus transaction"**

| Patent Owner's Construction | Petitioner's Construction |
|---|---|
| command, address, and data information, in accordance with the PCI standard, for communication with an interconnected peripheral component | a digital signal communication with an interconnected peripheral component |

### A.   Patent Owner's BRI Is Consistent With the Evidence

Patent Owner's proposed construction is consistent with the plain and ordinary meaning of "PCI" and is properly supported by intrinsic and extrinsic evidence.

### 1.   "PCI bus transaction" is properly limited to bus transactions according to the Peripheral Component Interconnect protocol

A "PCI bus transaction" cannot reasonably be broader than a bus transaction of the Peripheral Component Interconnect protocol standard. The claims themselves limit "PCI" by expressly defining it to have its plain and ordinary meaning, "Peripheral Component Interconnect." (Ex. 1001, at 43:45-49.) By virtue of the express definition of "PCI" in the claims, it must be narrower than some generic transaction to any interconnected device.

The Board previously has found that industry acronyms like "PCI" should be given their plain and ordinary meaning, which is the phrase the acronym represents. For example, in *Ex Parte Li Chen*, the Board rejected an examiner's BRI of "URL" as a generic "identifier" and found that the interpretation of "URL" should be limited specifically to "Uniform Resource Locator," its plain and ordinary meaning. *Ex Parte Li Chen*, Appeal 2011-013075, at 2 (PTAB Jan. 22, 2014). According to the Board, the examiner's interpretation was unreasonably broad. *Id.* ("Appellants contend '[the Examiner's] asserted interpretation of the

term "URL" is improper because the asserted interpretation is too broad and is not reasonable.'  Appellants contend that 'URL' has an established plain meaning in the computer arts.  We agree with Appellants." (citations omitted)).

The Federal Circuit also interprets well-known industry acronyms according to their plain and ordinary meaning, even where the specification includes support for conflicting interpretations.  In *Azure Networks, LLC v. CSR PLC*, the Federal Circuit recently interpreted "MAC address" according to its plain and ordinary meaning—"Media Access Control."  *Azure Networks, LLC v. CSR PLC*, No. 2013-1459, 2014 WL 5741337, at *10 (Fed. Cir. Nov. 6, 2014).  Construing "MAC address" as "Media Access Control address" was appropriate in spite of statements in the specification that would suggest a meaning of "MAC" that differed from the industry-understood meaning of "Media Access Control."  *Id.* at *10-11 (finding that patentee's reference to "Media Access (MAC) address" rather than "Media Access Control" "did not re-coin an established term").

The Board similarly should limit "PCI" to the "Peripheral Component Interconnect" protocol standard and "PCI bus transaction" to a bus transaction according to that protocol standard.  As stated in the claims, "PCI" stands for "Peripheral Component Interconnect" and should be interpreted as such.  To attribute some meaning to "PCI bus transaction" broader than a bus transaction in accordance with the Peripheral Component Interconnect protocol, the specification

must deliberately, clearly, and precisely set forth the broader meaning. *Azure Networks*, 2014 WL 5741337, at *10.

Likewise, "Peripheral Component Interconnect" carries significant meaning as a proper noun beyond a generic interconnect for a peripheral component. The claims purposefully capitalize the term "Peripheral Component Interconnect." "PCI bus transaction" should be interpreted no broader than the meaning of the proper noun "Peripheral Component Interconnect." *See Fidelity National Information Services, Inc. v. Checkfree Corp.*, CBM2013-00030, Paper 16, at 8 (PTAB Dec. 23, 2013) (finding that "Automated Clearing House" is a proper noun specifically referring to the Federal Reserve ACH network, not a broader clearing house).

Extrinsic evidence further supports interpreting "PCI bus transaction" as a bus transaction specific to the Peripheral Component Interconnect, or PCI, protocol standard. In particular, the acronym "PCI" is consistently defined and described as relating to the PCI protocol. In one example, the *Computer Desktop Encyclopedia*, from 1999, defines "PCI" as "(Peripheral Component Interconnect) A peripheral bus commonly used in PCs, Macintoshes and workstations. It was designed primarily by Intel and first appeared in PCs in late 1993." (Ex. 2002, at 6-7.) In another example, the *Microsoft Press Computer Dictionary*, dated 1997, defines a "PCI local bus" as relating to the PCI protocol, stating that it is "short for

Peripheral Component Interconnect local bus.  A specification introduced by Intel Corporation that defines a local bus system….”  (Ex. 2003, at 7-8.)  The consistent treatment “PCI” receives from extrinsic evidence shows that the BRI for “PCI bus transaction” should refer to a bus transaction according to the PCI protocol standard.

Next, Patent Owner’s BRI is consistent with the specification of the ’873 patent.  In addition to the recited definition of “PCI” in the claims, the specification describes PCI “bus transactions” generated according to the PCI protocol standard and serialized for transmission over a low-voltage differential signal channel. Indeed, one of the goals of the invention is to serialize PCI protocol standard signals specifically, not some generic signal or alternative:

> “The present invention overcomes the aforementioned disadvantages of the prior art by interfacing two PCI or PCI-like buses using a non-PCI or non-PCI -like channel. In the present invention, PCI control signals are encoded into control bits and the control bits, rather than the control signals that they represent, are transmitted on the interface channel. At the receiving end, the control bits representing control signals are decoded back into PCI control signals prior to being transmitted to the intended PCI bus.”

(Ex. 1001, at 5:31-39.)

Lastly, Petitioner agrees in the related district court litigation that "PCI" refers to the industry standard PCI bus, a construction at odds with the one it presents here. (Ex. 2006, at 1, 3.) Indeed, both parties' proposed constructions of "PCI" and "PCI bus transaction" in the district court define "PCI" as the PCI protocol standard. Patent Owner's proposed constructions here and in the district court are the same. (*Id.*) In the district court, Petitioner proposes that "PCI bus transaction" means "signals communicated over a 'PCI bus'" and "PCI bus" means an "industry standard computer bus known as the Peripheral Component Interconnect Local Bus." (*Id.*) Thus, while the parties' definitions differ to some extent in the district court, there is no dispute that a PCI bus transaction is a transaction according to the protocol set forth in the PCI standard.

Here, Petitioner's proposed construction of "PCI bus transaction" reads "PCI" out of all of the Petitioned Claims. As a result, Petitioner applies the asserted art to every claim in all of the asserted grounds using a flawed interpretation of "PCI bus transaction." For example, in Ground 1, Petitioner points to a generic serial bus and several bus protocols that are not PCI, including PCMCIA, INTEL serial bus, and IEEE P.1394, to meet the limitation. (Petition, at 22-23.) For Ground 2, Petitioner identifies a Tandem Computers proprietary bus (TNet) that carries proprietary bus transactions unrelated to PCI. (Petition, at 31-32.) Petitioner articulates its grounds through the prism of its generic and

overbroad interpretation of "PCI bus transaction," ignoring the PCI requirement.

Petitioner's failure to include "PCI" in its proposed construction combined with its

failure to address the proper construction is fatal to all of Grounds 1-14.  *See*

*Superior Communications, Inc. v. Speculative Product Design, LLC*, IPR2013-

00626, Paper 18, at 6, 10-11 (PTAB ) (denying institution after interpreting term

narrowly and finding that Petitioner failed to address the narrow interpretation.)

> **2.     The broadest reasonable interpretation of "PCI bus
>         transaction" includes the address, data, and command
>         information from the Peripheral Component Interconnect
>         protocol**

Details provided in the specification about the PCI signals make clear that

the bus transactions are specific to the PCI protocol and that each bus transaction

includes specific information.  The BRI of "PCI bus transaction" must be one that

takes into account that specific information required by the PCI protocol.

According to the '873 patent, the specific information required by the PCI

protocol includes "command, address, and data information."  Figure 10 in the

'873 patent relates to a PCI bus transaction and illustrates the required command,

address, and data information portions of a PCI bus transaction.  In describing

Figure 10, the specification states that the "[t]ransmitter 1030 receives multiplexed

parallel address/data (A/D) bits and control bits from translator 1020 on the

AD[31::0] out and the CNTL out lines, respectively."  (Ex. 1001, at 17:41-43.)

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

The specification's description of the address, data, and control bits mirrors the PCI bus transaction as explained in the PCI Local Bus Specification, which is cited on the face of the '873 patent.  In its section entitled "Bus Transactions" (Ex. 2001, at 51-55), it describes a PCI bus transaction as having an address phase and data phase "AD[31::00]" and a command, or control, phase "C/BE[3::0]#."  (Ex. 2001, at 52.)

The following table provides a side-by-side comparison of the disclosure of the '873 patent and the PCI Local Bus Specification.

**Table 2 – Comparison of PCI bus transactions from the specification and the PCI Local Bus Specification**

| PCI Bus Transaction | |
|---|---|
| **The '873 Patent**<br>(Ex. 1001, at 17:41-53 (bold added)) | **PCI Local Bus Specification**<br>(Ex. 2001, at 25, 52 (bold and annotations added)) |
| **address/data (A/D) bits** . . . on the **AD[31::0]** out [line] . . . | **AD[31::00]** . . . *Address and Data* are multiplexed . . .<br> |
| and **control bits** . . . on the . . . the **CNTL** out lines | **C/BE[3::0]#** . . . ***Bus Command and Byte Enables*** are multiplexed . . . |



The specification and other intrinsic evidence all consistently require a "bus transaction" of the PCI protocol to require "command, address, and data information." The BRI of "PCI bus transaction" should no be no broader than that requirement.

In short, each of the claims, the description in the specification, and the cited art on the face of the patent uniformly suggest that "PCI bus transaction" should be construed consistent with Patent Owner's BRI of "command, address, and data information, in accordance with the PCI standard, for communication with an interconnected peripheral component."

### B.   Petitioner's BRI Is Unreasonably Broad

Petitioner argues that "PCI bus transaction" should be construed as "a digital signal communication with an interconnected peripheral component," the same construction applied by the district court in an earlier case. (Petition, at 14.) Petitioner's proposed construction is flawed because (1) it ignores the express definition of "PCI" in the claims and (2) it ignores all other evidence aside from a single *Markman* order, an order Petitioner *agrees* was incorrectly decided. (Ex. 2006, at 1, 3-8)

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

### 1. Petitioner's unreasonably broad construction is inconsistent with the specification

Petitioner's construction of "a digital signal communication with an interconnected peripheral component" ignores the express definition of "PCI" in the claims that limit a "PCI bus transaction" to a "Peripheral Component Interconnect bus transaction." Under Petitioner's construction, the claims would read on a bus transaction that complies with Peripheral Component Interconnect standard as well as virtually any other bus protocol that allows communication with a peripheral device. Petitioner's construction improperly reads the "Peripheral Component Interconnect" limitation out of the claim.

An example using an embodiment in the '873 patent illustrates how overbroad Petitioner's proposed construction is. In connection with Figure 3, the '873 patent describes an IDE bus. (*See* Ex. 1001, at 12:53-13:4.) Even though an IDE bus and a PCI bus are different types of buses, under Petitioner's broad construction a transaction on an IDE bus would meet the limitation. In particular, an IDE bus complies with a different bus protocol that formats transactions different from a PCI bus for peripheral component communication. For example, the '873 patent calls for a separate IDE controller to generate transactions particular to the IDE bus, not PCI bus transactions, for a disk drive peripheral

component:  "IDE controller 429 generally supports and provides timing signals

necessary for the IDE bus."  (Ex. 1001, at 12:65-67.)

The specification also groups the PCI bus separately from the IDE bus and

other buses.  It notes that additional bus protocols could replace the IDE bus,

lumping them all together, but does not include PCI:  "In the present embodiment,

the IDE controller is embodied as a 643U2 PCI-to IDE chip from CMD

Technology, for example. Other types of buses than IDE are contemplated, for

example EIDE, SCSI, USB, and the like in alternative embodiments of the present

invention."  (Ex. 1001, at 12:67-13:4.)

Even though the specification differentiates PCI from the other bus

protocols, any bus in accordance with those other bus protocols could potentially

meet the limitation under Petitioner's construction.  Petitioner's construction is

inconsistent with the specification and the express definition in the claims and

should be rejected.

### 2.    Petitioner offers insufficient evidence and explanation for its unreasonably broad construction

The only evidence Petitioner cites to support its construction is a *Markman*

order from an earlier litigation announcing it.  (Petition, at 14.)  After summarizing

Judge Davis' findings from the *Markman* order, Petitioner repeats the construction.

(Petition, at 14-15.)  Yet, Petitioner does not (1) explain why the Board should

adhere to the district court's construction, (2) identify any portion of the specification supporting it, or (3) offer any expert testimony as to its validity.  (*Id.*) Petitioner simply fails to backup its proposed construction.  (*Id.*)  A construction that ignores such basic tenants of patent law must be rejected.  *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006) ("In determining the meaning of the disputed claim limitation, we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence.") (citations omitted)).

Finally, in the current related district court, Petitioner agrees that the *Markman* order it relies on here improperly construed PCI bus.  (Ex. 2006 at 1.)  In the district court, Petitioner proposed that "PCI bus transaction" should be construed in accordance with the PCI protocol standard.  (*Id.* at 1, 3-8.)  Over the course of several pages, Petitioner cited evidence and testimony from the intrinsic and extrinsic record to support its construction.  (*Id.*)  Even though a different claim construction standard applies there, Petitioner's plainly inconsistent position on the meaning of "PCI" and "PCI bus transaction" highlights just how overbroad its construction is here.  Petitioner cited to the specification the '873 patent, the specification and prosecution history of related patents, art cited on the face of the '873 patent, deposition testimony, and other extrinsic evidence.  Indeed, Petitioner cited to some of the same evidence Patent Owner relies on for its claim

construction here, including the same embodiment descriptions in the '873 patent

(Ex. 2006, at 4) and the PCI Local Bus Specification (Ex. 2006, at 7).  Yet, of all

the pages of support it cited for its district court construction, Petitioner cites

nothing that suggests that "PCI" be read out of the Petitioned Claims.  Petitioner's

flawed and inconsistent construction should be rejected.

### III.   INSTITUTION ON GROUNDS 5-14 SHOULD BE DENIED BECAUSE THE BOGAERTS DRAFT IS NOT A "PRINTED PUBLICATION" UNDER 35 U.S.C. § 102(B)

Petitioner relies on Bogaerts et al., *RD24 Status Report:  Application of the*

*Scalable Coherent Interface to Data Acquisition at LHC* ("the Bogaerts Draft")

(Ex. 1013), for Grounds 5-14.  According to Petitioner, the Bogaerts Draft is a

prior art printed publication under § 102(b).  (Petition, at 58.)  Whether the

Bogaerts Draft is a prior art printed publication under § 102(b) depends on "the

facts and circumstances surrounding its disclosure to members of the public."

*Samsung Electronics Co. Ltd. v. Rembrandt Wireless Technologies, L.P.*, IPR2014-

00514, Paper 18, at 6 (PTAB Sept. 9, 2014) (citing *In re Klopfenstein*, 380 F.3d

1345, 1350 (Fed. Cir. 2004)).  To establish that the Bogaerts Draft was a printed

publication, Petitioner has the burden show that the document was "sufficiently

accessible to the public interested in the art."  *See  In re Lister*, 583 F.3d 1307,

1311 (Fed. Cir. 2009); *Samsung Electronics*, IPR2014-00514, Paper 18, at 9-10

(PTAB Sept. 9, 2014) (finding that Petitioner did not make a "sufficient showing"

that a document was a printed publication).  To qualify a reference as a printed publication, Petitioner must submit "sufficient proof of its dissemination or that it has otherwise been available and accessible to persons concerned with the art to which the document relates and thus most likely to avail themselves of its contents." *In re Wyer*, 655 F.2d 221, 227 (CCPA 1981).

Petitioner asserts that the Bogaerts Draft is a prior art printed publication based solely on an October 2, 1996 date printed on its first page.  (Petition, at 12, 58.)  Aside from pointing to the October 1996 date, Petitioner provides no evidence or explanation of the Bogaerts Draft's public accessibility.  (*Id.*)  And the October 1996 exhibits none of the indicia typically associated with a publication date.  A date on the face of a draft document like the Bogaerts Draft is just as likely an edit date or an internal circulation date, not a publication or copyright date that might be found on a journal article or publicly disseminated paper.  As a result, Petitioner fails to meet its burden to show public accessibility.  In fact, evidence from the CERN document server indicates that the Bogaerts Draft was inaccessible until 2008.  (Ex. 2004, at 1.)  The Bogaerts Draft is not a prior art printed publication, and Institution of Grounds 5-14, which rely on the Bogaerts Draft, should be denied.  *Samsung Electronics*, IPR2014-00514, Paper 18, at 9-10 (PTAB Sept. 9, 2014).

### A.    The Bogaerts Draft Is An Internal Draft Report Unavailable to Persons of Ordinary Skill

The Bogaerts Draft on its face is a draft status report internal to a CERN project team.  As shown in the excerpted image from the Bogaerts Draft below, the authors titled it "preliminary."  (Ex. 1013, at 1.)  In other words, the Bogaerts Draft was not final; it was not publication-ready.  According to the authors, the Bogaerts Draft was a preliminary draft to be further revised because the project was incomplete.  (Ex. 1013, at 1 (noting the draft would be revised for "the next LBC meeting" because of "incomplete milestone measurements due to delay in delivery of SCI equipment").)  There is simply no indication that it was disseminated to the public or distributed or made available beyond the co-authors in October 1996.

**Figure 1 - Page 1 excerpted from the Bogaerts Draft
(Ex. 1013, at 1)**

EUROPEAN ORGANIZATION FOR NUCLEAR RESEARCH
This status report is preliminary[1] and will be revised for the next LCB meeting

\*\*\*

_____

1. incomplete milestone measurements due to delay in delivery of SCI equipment

The only evidence Petitioner identifies to support its contention that the Bogaerts Draft is prior art is the date on its face, October 2, 1996.  (Petition, at 12, 58.)  Neither Petitioner nor the Bogaerts Draft explains the meaning of the October

1996 date.  It is unclear whether the date is the date the document was saved the last time, an intermediate edit date, or the date is was circulated among the authors or others at CERN.  With such uncertainty about the meaning of the October 1996 date, Petitioner has not met its burden to establish the Bogaerts Draft as prior art. *Samsung Electronics*, IPR2014-00514, Paper 18, at 9-10 (PTAB Sept. 9, 2014) (finding that Petitioner did not make a "sufficient showing" of dissemination outside of working group to establish that a document was a printed publication).

The October 1996 date is not the kind of designated copyright or publication date typically relied on to show publication.  *See, e.g.*, *ZTE Corporation v. IPR Licensing, Inc.*, IPR2014-00525, Paper 19, at 16 (PTAB Sept. 17, 2014) (finding that a copyright date on a European Telecommunications Standards Institute paper reasonably suggested publication); *IBM v. Intellectual Ventures II LLC*, IPR2014-00681, Paper 11, at 13-14 (PTAB Oct. 30, 2014) (finding a threshold showing that a product brochure was prior art based on its copyright date).  Nothing about the October 1996 date suggests publication, particularly when viewed in context with the authors' statements on the face of the Bogaerts Draft that suggest it was a draft internal status report.

If the Bogaerts Draft were truly prior art, then Petitioner could have used the well-known techniques for proving documents were publicly available.  For example, Petitioner could have submitted an affidavit from one of the authors

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

addressing public distribution of the draft or an affidavit from a librarian at CERN or some other library to confirm the date of indexing for the library collection. *See, e.g.*, *Finisar Corp. v. Thomas Swan & Co. Ltd.*, IPR2014-00460, Paper 9, at 16, 19 (PTAB Aug. 21, 2014) (finding a sufficient showing that a document was prior art based on librarian testimony that document was indexed and shelved). Alternatively, Petitioner could have submitted expert testimony about public accessibility of CERN draft documents generally or the meaning of dates on CERN draft documents. *See, e.g.*, *Rackspace US, Inc. v. PersonalWeb Technologies, LLC*, IPR2014-00059, Paper 9, at 33-34 (PTAB Apr. 15, 2014) (crediting expert testimony about the availability of a reference on a newsgroup). Petitioner simply offers no evidence or testimony to support its claim that the Bogaerts Draft was publicly accessible as of October 1996. (Petition, at 12, 58.)

At the very least, in the absence of evidence, Petitioner could have explained the Bogaerts Draft's availability or how a person of ordinary skill in the art could have obtained a copy with reasonable diligence. *See EMC Corp. v. PersonalWeb Technologies., LLC*, IPR2013-00084, Paper, at 18-22 (PTAB May 17, 2013) (finding that a reference qualified as prior art because petitioner explained how the document was available as of the document's date). Petitioner failed even to offer attorney argument to show the Bogaerts Draft is prior art as of October 1996.

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

In short, Petitioner offers no support or explanation showing the Bogaerts Draft was a printed publication available to persons of skill in the art.  To the contrary, the document suggests on its face that it was an unpublished internal draft.  For at least this reason, the Board should deny institution on Grounds 5-14 which rely on the Bogaerts Draft.  *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1350 (Fed. Cir. 2008) ("A reference is publicly accessible upon a satisfactory showing that it was disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it."  (internal citation and quotation marks omitted)).

### B.     Evidence from CERN Suggests the Bogaerts Draft Was Not Available Until 2008

Aside from the authors' description of the Bogaerts Draft as a preliminary document, other evidence affirmatively shows that it was not published until 2008. The current CERN library document server indicates that the Bogaerts Draft was posted on August 4, 2008, long after the effective filing date of the '873 patent:



(Ex. 2004 (annotated).)

The August 2008 date is the only evidence of a publication date for the Bogaerts Draft.  CERN publishes articles, books, papers, and other documents on its document server through the CERN library and through the CERN document server in particular.  (Ex. 2005, at 1.)  By making documents available to the public through the document server, the August 2008 on the listing for the Bogaerts Draft on the document server is a more reliable indicator of its publication date than the unlabeled October 1996 date on its face.  In short, it is more likely than not that the Bogaerts Draft was not published until at least 2008.  Petitioner has failed to show by preponderance of the evidence that the Bogaerts Draft was prior art as of October 1996.  Institution on Grounds 5-14, which rely on the Bogaerts Draft, should be denied.

## IV.   INSTITUTION ON GROUNDS 3 AND 5-14 SHOULD BE DENIED BECAUSE THE OBVIOUSNESS COMBINATIONS LACK SUFFICIENT RATIONALE

A petition must identify with particularity the grounds on which the challenge to each claim is based.  35 U.S.C. § 312(a)(3).  Under 37 C.F.R. § 42.22(a), a petition must include a statement of the precise relief requested and, under 37 C.F.R. § 42.104, the burden is on the petitioner to establish "[h]ow the construed claim is unpatentable" by specifying "where each element of the claim is found in the prior art patents or printed publications relied upon."  Petitioner failed

to meet its burden for Grounds 3 and 5-14 because (1) it asserts numerous combinations in the alternative without specifying which combinations should be instituted and (2) it does not explain how a person of ordinary skill in the art would combine references.

In short, Petitioner's shotgun approach to its obviousness combinations lacks sufficient analysis.  Grounds 3 and 5-14 should therefore be denied.  *See, e.g.*, *Edmund Optics, Inc. v. Semrock, Inc.*, IPR2014-00583, Paper 9, at 10-12 (PTAB Sept. 19, 2014) (denying institution because petitioner offered combinations of references in the alternative); *Wowza Media Systems, LLC v. Adobe Systems Inc.*, IPR2013-00054, Paper 12, at 10-11 (PTAB Apr. 8, 2013) (refusing to consider undeveloped unpatentability theories).

## A.    For Each of Grounds 3 and 5-14, Petitioner Fails to Specify Which of Its Alternative Combinations It Asserts

For Grounds 3 and 5-14, Petitioner asserts at least 28 different combinations using the following eight references.

**Table 3 – List of References potentially cited in Grounds 3 and 5-14**

| Reference | Exhibit Number |
|---|---|
| U.S. Patent No. 5,608,608 ("Flint") | 1002 |
| Horst, TNet: A Reliable System Area Network ("Horst") | 1011 |

| Reference | Exhibit Number |
|---|---|
| U.S. Patent No. 6,148,357 ("Gulick") | 1012 |
| Bogaerts, Application of the Scalable Coherent Interface to Data Acquisition at LHC ("Bogaerts Draft") | 1013 |
| U.S. Patent No. 5,428,806 ("Pocrass") | 1016 |
| U.S. Patent No. 5,227,957 ("Deters") | 1017 |
| U.S. Patent No. 5,961,623 ("James") | 1018 |
| LVDS Owner's Manual | 1019 |

As explained in further detail below, Petitioner asserts the combinations in the alternative, failing to specify which combinations constitute which grounds. The Board has found similar petitions insufficient where a petitioner asserts combinations in the alternative, tries to reserve the ability to assert different alternative combinations, or fails to specify with particularity the asserted combination. For example, the Board has refused to consider combinations that a petitioner has argued could be an alternative ground but that were not specifically identified. *Apple Inc. v. Achates Reference Publishing, Inc.*, IPR2013-00081, Paper 21, at 20-21 (PTAB June 3, 2013).

-24-

In IPR2013-00054, the Board refused to consider numerous alternative combinations from the petition.  The Board found that the Petitioner failed to "explain how the references to be applied in the alternative might remedy the deficiencies in the other references, [or apply] the references as proposed to be combined in the alternative against any specific claims." *Wowza Media Systems, LLC v. Adobe Systems Inc.*, IPR2013-00054, Paper 12, at 10-11 (PTAB Apr. 8, 2013).

Additionally, in IPR2014-00583, the Board denied institution where the petitioner had characterized grounds using "multiple conjunctive and disjunctive 'and/or' connectors" to increase the number of potential combinations.  *Edmund Optics, Inc. v. Semrock, Inc.*, IPR2014-00583, Paper 9, at 10-12 (PTAB Sept. 19, 2014).

Like the petitioners in those cases, Petitioner offers alternative combinations, fails to specify which of the combinations should be instituted, and fails to explain how the combinations should be applied.  Accordingly, Grounds 3 and 5-14 should be denied.

### 1. Ground 3 should not be instituted on claim 56 because Petitioner does not specify which combination it asserts

For Ground 3, Petitioner asserts that Horst in combination with Pocrass renders claim 56 obvious.  (Petition, at 35.)  Petitioner alleges, however, that both

Horst and Pocrass disclose the claim 56 limitations.  (*Id*.)  As a result, Petitioner

asserts alternative combinations for Ground 3.

**Table 4 – Potential Combinations for Ground 3**

| Combination | Potential Combinations |
|:---:|:---|
| 1 | Horst alone |
| 2 | Horst + Pocrass |

According to Petitioner, "Horst discloses a TNet processor interface" to

meet the serial communication controller limitation of claim 56 and that "Pocrass

also discloses this element."  (Petition, at 35.)  Thus, Petitioner assert two

alternative theories:  one in which Horst renders claim 56 obvious and one in

which Horst + Pocrass renders claim 56 obvious.

By failing to specify which unpatentability theory it asserts for claim 56,

Petitioner has failed to meet its burden to identify with particularity the ground of

unpatentability for Ground 3.  Ground 3 on claim 56 therefore should not be

instituted.  *See Edmund Optics*, IPR2014-00583, Paper 9, at 10-12 (PTAB Sept.

19, 2014) (denying institution on alternate combinations); *Wowza Media Systems*,

IPR2013-00054, Paper 12, at 10-11 (PTAB Apr. 8, 2013) (denying institutions for

failure to specify with particularity the asserted combinations).

**2.   Ground 5 should not be instituted because Petitioner does not specify which combination it asserts**

For Ground 5, Petitioner asserts four different theories, contending that the Bogaerts Draft alone or in some combination with James and Gulick renders claims 54, 57, 60, and 61 obvious.  (Petition, at 39, 42-48; *see also* Ex. 1003, at 124 ("It Would Have Been Obvious to Combine James and/or Gulick with Bogaerts").)  Thus, Ground 5 results in the following potential unpatentability theories:

**Table 5 – Potential Combinations for Ground 5**

| Combination | Potential Combinations |
|:---:|:---|
| 3 | Bogaerts Draft alone |
| 4 | Bogaerts Draft + James |
| 5 | Bogaerts Draft + Gulick |
| 6 | Bogaerts Draft + James + Gulick |

Petitioner asserts each of the theories in the alternative, failing to explain which of the four potential combinations constitutes Ground 5—or even if all four combinations make up Ground 5:  "Claims 54, 57, 60, 61 Are Unpatentable Under 35 U.S.C. § 103 as Obvious in View of **Bogaerts in Combination with Either James or Gulick.**"  (Petition, at 39 (emphasis added).)  By failing to specify which

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

unpatentability theory it asserts and, thus, multiplying the potential asserted

combinations, Petitioner has failed to meet its burden to identify with particularity

the ground of unpatentability for Ground 5 and Ground 5 should not be instituted.

*See Edmund Optics*, IPR2014-00583, Paper 9, at 10-12 (PTAB Sept. 19, 2014)

(denying institution on alternate combinations); *Wowza Media Systems*, IPR2013-

00054, Paper 12, at 10-11 (PTAB Apr. 8, 2013) (denying institutions for failure to

specify with particularity the asserted combinations).

### 3. Ground 6 should not be instituted because Petitioner does not specify which combination it asserts

Ground 6 creates four more alternative combinations by adding Pocrass to

any of the alternative Ground 5 combinations.  (Petition, at 48-50  ("Claims 56 and

59 Are Unpatentable Under 35 U.S.C. § 103 as Obvious in View of Bogaerts in

Combination with Either James or Gulick, in Further View of Pocrass").)  Because

Petitioner leaves the combinations of Ground 5 open ended, Petitioner also leaves

the asserted combinations of Ground 6 open ended.

**Table 6 – Potential Combinations for Ground 6**

| Combination | Potential Combinations |
|:---:|:---|
| 7 | Bogaerts Draft + Pocrass |
| 8 | Bogaerts Draft + James + Pocrass |

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

| Combination | Potential Combinations |
|:---:|:---|
| 9 | Bogaerts Draft + Gulick + Pocrass |
| 10 | Bogaerts Draft + James + Gulick + Pocrass |

Again, each of the combinations is an alternative theory, and Petitioner does not explain which of the four alternative combinations constitute Ground 6 or if all six combinations together make up Ground 6.  (Petition, at 48-50 .)  Accordingly, institution on Ground 6 should be denied.  *See Edmund Optics*, IPR2014-00583, Paper 9, at 10-12 (PTAB Sept. 19, 2014) (denying institution on alternate combinations); *Wowza Media Systems*, IPR2013-00054, Paper 12, at 10-11 (PTAB Apr. 8, 2013) (denying institutions for failure to specify with particularity the asserted combinations).

### 4.   Ground 7 should not be instituted because Petitioner does not specify which combination it asserts

For Ground 7, Petitioner combines Deters with the Ground 5 combinations to create another four alternative combinations.  (Petition, at 50-51 ("Claim 58 is Unpatentable Under 35 U.S.C. § 103 as Obvious in View of Deters in Combination with Bogaerts and Either James or Gulick.")  Once again, Petitioner does not say which of the combinations it actually asserts or if it intends to rely on all four combinations.

-29-

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

**Table 7 – Potential Combinations for Grounds 7**

| Combination | Potential Combinations |
|:---:|:---|
| 11 | Bogaerts Draft + Deters |
| 12 | Bogaerts Draft + James + Deters |
| 13 | Bogaerts Draft + Gulick + Deters |
| 14 | Bogaerts Draft + James + Gulick + Deters |

Petitioner states generally that Deters would be combined "with Bogaerts and either James or Gulick" to disclose claim 58.  (Petition, at 51.)  Again, Petitioner's vague reasoning multiplies the number of potential combinations and lacks any specificity about what actual combinations it asserts.  Institution on Ground 7 should therefore be denied.  *See Edmund Optics*, IPR2014-00583, Paper 9, at 10-12 (PTAB Sept. 19, 2014) (denying institution on alternate combinations); *Wowza Media Systems*, IPR2013-00054, Paper 12, at 10-11 (PTAB Apr. 8, 2013) (denying institutions for failure to specify with particularity the asserted combinations).

> **5.    Grounds 8-14 should not be instituted because Petitioner does not specify which combinations it asserts**

Finally, Petitioner adds yet another reference, LVDS Owner's Manual, to every potential combination of all previous grounds.  (Petition, at 51.)  Thus,

Petition doubles the number of alternative combinations in Grounds 3 and 5-7 to

add another 14 alternative combinations:

**Table 8 – Potential Combinations for Grounds 8-14**

| Combination | Potential Combinations |
|:---:|:---|
| 15 | Horst + LVDS Owner's Manual |
| 16 | Horst + Pocrass + LVDS Owner's Manual |
| 17 | Bogaerts Draft alone + LVDS Owner's Manual |
| 18 | Bogaerts Draft + James + LVDS Owner's Manual |
| 19 | Bogaerts Draft + Gulick + LVDS Owner's Manual |
| 20 | Bogaerts Draft + James + Gulick + LVDS Owner's Manual |
| 21 | Bogaerts Draft + Pocrass + LVDS Owner's Manual |
| 22 | Bogaerts Draft + James + Pocrass + LVDS Owner's Manual |
| 23 | Bogaerts Draft + Gulick + Pocrass + LVDS Owner's Manual |

| Combination | Potential Combinations |
|:---:|:---|
| 24 | Bogaerts Draft + James + Gulick + Pocrass + LVDS Owner's Manual |
| 25 | Bogaerts Draft + Deters + LVDS Owner's Manual |
| 26 | Bogaerts Draft + James + Deters + LVDS Owner's Manual |
| 27 | Bogaerts Draft + Gulick + Deters + LVDS Owner's Manual |
| 28 | Bogaerts Draft + James + Gulick + Deters + LVDS Owner's Manual |

For Grounds 8-14, Petitioner again does not limit the combinations, vaguely arguing that a "skilled artisan at the time would been motivated to apply the teachings in LVDS Owner's Manual to any computer bus system." (Petition, at 52.) Based on Petitioner's addition of another 15 potential combinations with no explanation for Grounds 8-14, institution of Grounds 8-14 should be denied. *See Edmund Optics*, IPR2014-00583, Paper 9, at 10-12 (PTAB Sept. 19, 2014) (denying institution on alternate combinations); *Wowza Media Systems*, IPR2013-00054, Paper 12, at 10-11 (PTAB Apr. 8, 2013) (denying institutions for failure to specify with particularity the asserted combinations).

**B.    For Each Possible Combination of Grounds 3 and 5-14, Petitioner Omits a Rational Underpinning for How References Would Be Combined**

Another reason for denying institution on Grounds 3 and 5-14 is Petitioner's

failure to address how or why any of its secondary references is combined with any

other reference. To meet its burden to establish a reasonable likelihood of success

on each of Grounds 3 and 5-14, Petitioner must have provided some "rational

underpinning" for each combination of those grounds.  *See In re Kahn*, 441 F.3d

977, 988 (Fed. Cir. 2006) (holding that "there must be some articulated reasoning

with some rational underpinning to support the legal conclusion of obviousness").

A "rational underpinning" requires that Petitioner explain how or why a reference

would be combined with another reference.  *Lake Cable, LLC v. Windy City Wire

Cable and Tech. Prods., LLC*, IPR2013-00528, Paper 11, at 18-19, 24-25, 26-27

(PTAB Feb. 19, 2014) (denying institution based on petitioner's failure to explain

why or how a person of ordinary skill in the art would combine references and how

asserted combinations would result in the stated advantages).

For the potential combinations of Grounds 3 and 5-14, Petitioner offers

boilerplate obviousness conclusions and omits a rational underpinning for how

references would be combined.  As discussed further in the sections below, neither

Petitioner nor Petitioner's expert explains how or whether a person of ordinary

skill would find it obvious that the teachings of a secondary reference should be

added to or substituted for the teachings of another reference.  And Petitioner and

Petitioner's expert ignore whether references include overlapping or contradictory

disclosures.  Petitioner leaves the Board and the Patent Owner to guess at the

rationale for all of the potential combinations and how Petitioner proposes a person

of ordinary skill would cobble together the references.  Petitioner offers no rational

underpinning and, thus, fails to establish a reasonable likelihood of success of

proving the Petitioned Claims would have been obvious under Grounds 3 and 5-14.

*Lake Cable, LLC v. Windy City Wire Cable and Tech. Prods., LLC*, IPR2013-

00528, Paper 11, at 18-19, 24-25, 26-27 (PTAB Feb. 19, 2014).  Institution of

Grounds 3 and 5-14 should be denied.

### 1. For Ground 3, Petitioner does not explain how a person of ordinary skill would combine Horst and Pocrass

For Ground 3, Petitioner asserts two possible combinations of Horst and

Pocrass.  (Petition, at 35.)  Petitioner asserts that both references disclose the

limitations of claims 56 and 59.  (Petition, at 35-36.)  For each claim, Petitioner

provides insufficient rational underpinning for a Horst and Pocrass combination

and Ground 3 should not be instituted.

### a. Petitioner does not explain how a person of ordinary skill in the art would combine Horst's and Pocrass' overlapping disclosures for claim 56

Claim 56 recites "The computer module of claim 54, further comprising a

serial communication controller to couple to the console for data communication."

According to Petitioner, both Horst and Pocrass disclose claim 56's "computer module comprising a serial communication controller to couple to the console for data communication."  (Petition, at 35 ("Horst discloses a TNet processor interface, *i.e.*, a serial communication controller that couples the processor node and the cabinet over the byte-serial TNet links for data communication. . . . Pocrass also discloses this element").)  Petitioner's rationale for combining Horst and Pocrass is that a "skilled artisan would be [motivated] to combine the teachings of Horst with Pocrass to make Horst's Lan communications available to the module in order to provide the benefits of a network connection to the module."  (Petition, at 36.)

But nothing in Petitioner's rationale explains how a person of ordinary skill would actually combine Horst and Pocrass.  Petitioner does not identify whether a person would simply add Pocrass' alleged serial communication controller to Horst or substitute Horst's alleged serial communication controller with Pocrass' alleged serial communication controller.  (*See* Petition, at 35-36.)  And if a person of ordinary skill would find it obvious to substitute one of Pocrass' components for one of Horst's components, Petitioner says nothing about how a person of ordinary skill would accomplish the substitution to build the hypothetical combination.  (*See id.*)

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

Petitioner also does not explain why "a network connection to the module" would be beneficial to Horst.  Petitioner does not identify any need or gap in Horst's disclosure that would call for LAN communications in Horst's module as allegedly taught by Pocrass.  (*See* Petition, at 35-36.)  Indeed, Petitioner already identifies LAN communications in Horst.  (Petition, at 35 ("Horst also discloses a LAN controller in the console").)  Petitioner's explanation of a skilled artisan's rationale therefore lacks any rational basis.

In summary, Petitioner fails to articulate how or why a person of ordinary would combine Horst and Pocrass to meet the requirements of claim 56.  Petitioner thus fails to meet its burden to show a reasonable likelihood of success on Ground 3.  *See In re Kahn*, 441 F.3d at 988 (Fed. Cir. 2006); *Lake Cable*, IPR2013-00528, Paper 11, at 18-19, 24-25, 26-27 (PTAB Feb. 19, 2014).

> ### a. Petitioner does not explain how a person of ordinary skill in the art would apply Pocrass' connectors to Horst for claim 59

Claim 59 recites "The computer module of claim 54, further comprising a connector distinct from the main circuit board, and the connector is configured to cuople to the coupling site of the console for data communication."  According to Petitioner, both Horst and Pocrass disclose connectors:  "Horst discloses a processor node (*i.e.*, module) that connects with a 'system cabinet' through a backplane [to establish] data communication with the cabinet over the byte-serial

TNet links. . . . Pocrass also teaches this element." (Petition, at 36-37.) Petitioner alleges that a skilled artisan would include a connector separate from a circuit board according to Pocrass' teaching. (Petition, at 37.) Petitioner's entire rationale for the combination is that a skilled artisan would include "a connector distinct from the main circuit board in the module of Horst in order to allow easier connection with a backplane." (*Id.*)

For claim 59, Petitioner does not explain how a person of ordinary skill in the art would apply Pocrass' connectors to Horst. Petitioner does not identify any part of a Horst module that would accept a separate connector or how a separate connector could be used with Horst's unique, proprietary TNet architecture. (*See* Petition, at 37.) Moreover, Petitioner fails to explain just how a person of ordinary skill in the art would understand that Pocrass' connectors would allow easier connection for Horst's modules. (*Id.*) Indeed, Petitioner fails to identify how or why Pocrass' connectors allow easier connection at all. (*Id.*)

In short, Petitioner fails to develop a rational underpinning for a Horst + Pocrass combination for claim 59. Petitioner thus fails to meet its burden to show a reasonable likelihood of success on Ground 3. *See In re Kahn*, 441 F.3d at 988 (Fed. Cir. 2006); *Lake Cable*, IPR2013-00528, Paper 11, at 18-19, 24-25, 26-27 (PTAB Feb. 19, 2014).

>   **2.    For Ground 5, Petitioner does not explain how a person of ordinary skill would combine the Bogaerts Draft, James, and Gulick**

For Ground 5, Petitioner asserts four possible combinations of the Bogaerts Draft, James, and Gulick.  (Petition, at 39; *see also* Ex. 1003, at ¶ 151.)  Petitioner asserts that all three references disclose the following two elements:

> (1)    **From claim 54**:  "a peripheral bridge directly coupled to the processing unit, the peripheral bridge comprising an interface controller directly coupled to the LVDS channel"  (Petition, at 42-46)

> (2)    **From claim 60**:  "the peripheral bridge corresponds to a north bridge" (Petition, at 47-48.)

Petitioner's stated motivation for combining the Bogaerts Draft with James for both claims 54 and 60 is that "James is an improvement to the IEEE 1596 SCI standard."  (Petition, at 44, 47.)  For the Bogaerts Draft and Gulick combination for both claims, Petitioner argues that a skilled artisan would be motivated to combine the references "to have better (faster) access to the processor bus as taught by Gulick."  (Petition, at 46, 48.)  Petitioner offers no explanation for why a person of ordinary skill would combine the Bogaerts Draft, James, and Gulick.

Petitioner's rationale for the combinations does not take into account that all three references allegedly fully disclose the above elements and, thus, have overlapping disclosure.  Petitioner does not identify any missing or deficient

disclosure in any of the three references with respect to the elements.  (*See* Petition, at 44-48.)  Petitioner also does not state whether a person of ordinary skill would find it obvious to substitute a portion of one of the references for a portion of another references or whether a person of ordinary skill would find it obvious to simply add some portion of one of the references to another.  (*See id.*)  For example, Petitioner does not explain whether a person of ordinary skill would modify the Bogaerts Draft's architecture to directly couple a peripheral bridge to an LVDS channel in an identical way that James or Gulick allegedly do or even whether that would be possible.  (*See id.*)  Petitioner leaves the Board and Patent Owner to guess as to how the technology in James and Gulick might apply to the Bogaerts draft and how any resulting combination might look.

Petitioner also does not provide any support for the alleged motivations to combine.  For example, Petitioner states that "James is an improvement to the IEEE 1596 SCI standard" but then provides no factual support for the motivation. (Petition, at 43-44.)  Petitioner does not explain in what way James was an "improvement" or how any such "improvements" would benefit the Bogaerts Draft.  (*See id.*)  In fact, the Bogaerts Draft was allegedly drafted *after* James was filed.  (Petition, at 58)  And a person of ordinary skill was just as likely to understand that Bogaerts' version of the IEEE 1596 SCI is at least the same

version of SCI in James, leaving a person of ordinary skill no reason to apply

James to the Bogaerts Draft under Petitioner's rationale.

Petitioner's rationale for combining Gulick with Bogaerts is similarly

insufficient.  Petitioner claims that Gulick would provide "better (faster) access to

the processor bus."  (Petition, at 46.)  But Petitioner does not identify *how* a person

of ordinary skill would apply Gulick to the Bogaerts Draft to realize that benefit.

Moreover, Petitioner fails to support its assertion with any facts.  (*See id.*)  For

example, the Bogaerts Draft already claims fast access. (*E.g.*, Ex. 1013, at 4 ("The

latency for memory accesses adds only a few microseconds to the equivalent

access to local memory, even on PCI-SCI nodes which have no cache support".),

but Petitioner does not provide any support for the contention that Gulick is faster,

or even better.

In short, Petitioner fails to explain how any of James, Gulick, or the

Bogaerts Draft would be applied to remedy deficiencies of each other and does not

explain why a person of ordinary skill would apply or substitute an element from

one reference to another.  Petitioner thus fails to meet its burden to show a

reasonable likelihood of success on Ground 3.  *See In re Kahn*, 441 F.3d at 988

(Fed. Cir. 2006); *Lake Cable*, IPR2013-00528, Paper 11, at 18-19, 24-25, 26-27

(PTAB Feb. 19, 2014).

### 3.   For Ground 6, Petitioner does not explain how a person of ordinary skill would combine Pocrass with other references

For Ground 6, Petitioner contends that Pocrass would be obvious to combine with the combinations of Ground 5 to disclose claims 56 and 59, resulting in four more alternative combinations.  (Petition, at 48-50.)  For each claim, Petitioner provides insufficient rational underpinning for combining Pocrass and Ground 6 should not be instituted.

#### a.   Petitioner does not explain how a person of ordinary skill in the art would combine the Bogaerts Draft's and Pocrass' overlapping disclosures for claim 56

Claim 56 recites "The computer module of claim 54, further comprising a serial communication controller to couple to the console for data communication." According to Petitioner, both the Bogaerts Draft and Pocrass disclose claim 56's "computer module comprising a serial communication controller to couple to the console for data communication." (Petition, at 49.)  Petitioner's rationale for combining the Bogaerts Draft and Pocrass is that a skilled artisan "would be motivated to combine the teachings of Bogaerts with Pocrass to enable network communication in the module." (Petition, at 50.)

But nothing in Petitioner's rationale explains how a person of ordinary skill would actually combine the Bogaerts Draft and Pocrass.  Petitioner does not identify whether a person would simply add Pocrass' alleged serial communication controller to the Bogaerts Draft or substitute the Bogaerts Draft's alleged serial

communication controller with Pocrass' alleged serial communication controller. (*See* Petition, at 49-50.)  And if a person of ordinary skill would find it obvious to substitute one of Pocrass' components for one of the Bogaerts Draft's components, Petitioner says nothing about how a person of ordinary skill would accomplish the substitution to build the hypothetical combination.  (*See id.*)

Petitioner also does not explain why "a network connection to the module" would be beneficial to the Bogaerts Draft.  Petitioner does not identify any need or gap in the Bogaerts Draft's disclosure that would call for LAN communications in the Bogaerts Draft's module as allegedly taught by Pocrass.  (*See* Petition, at 469-50.)  Indeed, Petitioner already identifies LAN communications in the Bogaerts Draft.  (Petition, at 49 (asserting that the Bogaerts Draft's "VMIC 7587 boards . . . included an on-board Ethernet controller (a serial communication controller)").)  Petitioner's explanation of a skilled artisan's rationale therefore lacks any rational basis.

In summary, Petitioner fails to articulate how or why a person of ordinary would combine the Bogaerts Draft and Pocrass to meet the requirements of claim 56.  Petitioner thus fails to meet its burden to show a reasonable likelihood of success on Ground 6.  *See In re Kahn*, 441 F.3d at 988 (Fed. Cir. 2006); *Lake Cable*, IPR2013-00528, Paper 11, at 18-19, 24-25, 26-27 (PTAB Feb. 19, 2014).

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

> **b.    Petitioner does not explain how a person of ordinary skill in the art would apply Pocrass' connectors to the Bogaerts Draft for claim 59**

Claim 59 recites "The computer module of claim 54, further comprising a connector distinct from the main circuit board, and the connector is configured to cuople to the coupling site of the console for data communication." Petitioner alleges that a skilled artisan would include a connector separate from a circuit board in the Bogaerts Draft's module according to Pocrass' teaching. (Petition, at 50.) Petitioner's entire rationale for the combination is that a skilled artisan would include "a connector distinct from the main circuit board . . . in order easier connection with a backplane." (*Id.*)

For claim 59, Petitioner does not explain how a person of ordinary skill in the art would apply Pocrass' connectors to the Bogaerts Draft's modules. Petitioner does not identify any part of a Bogaerts Draft module that would accept a separate connector or how a separate connector could be used with the Bogaerts Draft's unique architecture. (*See* Petition, at 50.) Moreover, Petitioner fails to explain just how a person of ordinary skill in the art would understand that Pocrass' connectors would allow easier connection for the Bogaerts Draft's modules. (*See Id.*) Indeed, Petitioner fails to identify how or why Pocrass' connectors allow easier connection at all. (*See Id.*)

In short, Petitioner fails to develop a rational underpinning for a Bogaerts Draft + Pocrass combination for either claim 59.  Petitioner thus fails to meet its burden to show a reasonable likelihood of success on Ground 6.  *See In re Kahn*, 441 F.3d at 988 (Fed. Cir. 2006); *Lake Cable*, IPR2013-00528, Paper 11, at 18-19, 24-25, 26-27 (PTAB Feb. 19, 2014).

### 4.  For Ground 7, Petitioner does not explain how a person of ordinary skill would combine Deters with the Bogaerts Draft

For Ground 7, Petitioner adds Deters to the alternative combinations from Ground 5 resulting in four additional combinations.  According to Petitioner, it would have been obvious to apply Deters to the Bogaerts Draft to enclose the Bogaerts Draft's modules.  (Petition, at 50-51.)  Petitioner alleges that a skilled artisan would be motivated to combine Deters to the Bogaerts Draft modules "to avoid exposure of the computer components."  (Petition, at 51.)

Petitioner fails to explain how a person of ordinary skill would apply Deter's enclosures to the Bogaerts Draft.  For example, the Bogaerts Draft appears to teach the use of desktop personal computers (Ex. 1013, at 17) while Deters involves a that individual personal computer components (Ex. 1017, at Fig. 1).  Petitioner does not explain how the compartmentalization used in Deters's unique hardware configuration could be applied to the Bogaerts Draft's standard desktop PC configuration.   (*See* Petition, at 50-51.)

Additionally, Petitioner does not explain how applying Deters' teachings would allow a person of ordinary skill to realize any benefit.  It is unclear whether Petitioner suggests that the components within the Bogaerts Draft's PC require or would benefit from added protection or that the Bogaerts Draft's PC's themselves would benefit.  (*See* Petition, at 50-51.)  Moreover, Petitioner does not identify any need or gap in the Bogaerts Draft that would suggest any added enclosure would provide benefit.  (*See id.*)  For example, Petitioner does not identify any repeated removal and insertion of components in Bogaerts that might call for added enclosures.  Petitioner does not even explain why "exposure of the computer components" in the Bogaerts Draft is undesirable.  (*See id.*).

Petitioner offers no rational underpinning for the four potential combinations of Grounds 7 and, therefore, institution should be denied.   *See In re Kahn*, 441 F.3d at 988 (Fed. Cir. 2006); *Lake Cable*, IPR2013-00528, Paper 11, at 18-19, 24-25, 26-27 (PTAB Feb. 19, 2014).

### 5. For Grounds 8-14, Petitioner does not explain how a person of ordinary skill would combine LVDS Owner's Manual with other references

For Grounds 8-14, Petitioner asserts in the alternative that adding LVDS Owner's Manual to the combinations of all other grounds renders each of the Petitioned Claims obvious resulting in 14 additional combinations.  Again, Petitioner offers little explanation for the 14 combinations:

A skilled artisan at the time would have been motivated to apply the teachings in LVDS Owner's Manual to any computer bus system as a serial LVDS channel to keep up with the serialization trend with an affordable, easy solution, as described by the Manual.  The motivation to combine is particularly strong given that LVDS channels are recommended for rack-mounted and box-to-box systems (such as with Horst and Bogaerts) or between a system and its peripherals (Flint).

(Petition, at 52 (citations omitted).)

Petitioner's analysis lacks any description of the resulting combination or specifics related to how a person of ordinary skill in the art would add the teachings of the LVDS Owner's Manual to other references.  (*See* Petition, at 52.) Institution on Grounds 8-14 should thus be denied.  *See In re Kahn*, 441 F.3d at 988 (Fed. Cir. 2006); *Lake Cable*, IPR2013-00528, Paper 11, at 18-19, 24-25, 26-27 (PTAB Feb. 19, 2014).

## V.   CONCLUSION

Petitioner's proposed construction of "PCI bus transaction" fails to account for important and limiting intrinsic and extrinsic evidence.  Because Petitioner relies on its flawed construction of "PCI bus transaction" for each of the grounds, institution on Grounds 1-14 should be denied.  Each of Grounds 5-14 should be denied institution for the additional reason that they rely on the Bogaerts Draft

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

which is not prior art.  Finally, Grounds 3 and 5-14 lack sufficient explanation or evidence; and Grounds 3 and 5-14 should also be denied institution.

December 15, 2014

Respectfully submitted,

COOLEY LLP

COOLEY LLP
ATTN: Patent Group
1299 Pennsylvania Avenue, N.W
Suite 700
Washington, DC  20004-2400

By:     /Wayne O. Stacy/ _____
Wayne O. Stacy
Reg. No.  45,125

Tel: (720) 566-4106
Fax: (202) 842-7899

*Inter Partes* Review of U.S. Patent No. 8,041,873
Patent Owner Preliminary Response

## CERTIFICATION OF SERVICE UNDER 37 C.F.R. §§ 42.6(e), 42.105(a)

I, Mark R. Schafer, hereby certify that on December 15, 2014 the foregoing

**PATENT OWNER'S PRELIMINARY RESPONSE UNDER 37 C.F.R.**

**§ 42.107**, the associated Exhibit List, and all associated Exhibits were served

electronically via email on the following:

Brian Buroker
bburoker@gibsondunn.com

Blair Silver
bsilver@gibsondunn.com

c/o GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
202.955.8541(telephone)


December 15, 2014                                      Respectfully submitted,
                                                       **COOLEY LLP**

COOLEY LLP
ATTN: Patent Group                        By:    /Mark R. Schafer/
1299 Pennsylvania Avenue, N.W                    Mark R. Schafer
Suite 700                                        Reg. No.  65,336
Washington, DC  20004-2400

Tel: (720) 5676-4106
Fax: (202) 842-7899