# Exhibit 54

1

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TEXAS
 2                          WACO DIVISION

 3   ACQIS LLC                 * September 1, 2022
                               *
 4   VS.                       * CIVIL ACTION NOS.
                               *
 5   ASUSTEK COMPUTER, INC.  *    W-20-CV-966
     LENOVO GROUP LTD., ET AL*    W-20-CV-967
 6   WIWYNN CORPORATION       *    W-20-CV-968

 7

              BEFORE THE HONORABLE ALAN D ALBRIGHT
 8            SUPPLEMENTAL CLAIM CONSTRUCTION HEARING

 9   APPEARANCES:

10   For the Plaintiff:  Case L. Collard, Esq.
                         Dorsey & Whitnay LLP
11                       1400 Wewatta Street, Suite 400
                         Denver, CO 80202
12
                         Elliot J. Hales, Esq.
13                       Mark A. Miller, Esq.
                         Dorsey & Whitney LLP
14                       111 S. Main Street, Suite 2100
                         Salt Lake City, UT 84111
15
                         Paige Arnette Amstutz, Esq.
16                       Scott, Douglass & McConnico, LLP
                         303 Colorado Street, Suite 2400
17                       Austin, TX 78701

18   For Defendant ASUSTeK:

19                       Michelle L. Marriott, Esq.
                         Chris R Schmidt, Esq.
20                       Erise IP, PA
                         7015 College Boulevard
21                       Overland Park, KS 66211

22                       Melissa Richards Smith, Esq.
                         Gillam and Smith, LLP
23                       303 South Washington Avenue
                         Marshall, TX 75670

24

25
```

1    For Defendant Lenovo:

2                          Jeffrey S. Seddon II, Esq.
                           Michael Wueste, Esq.
3                          Desmarais LLP
                           230 Park Avenue, 26th Floor
4                          New York, NY 10169

5                          J. Stephen Ravel, Esq.
                           Kelly Hart & Hallman LLP
6                          303 Colorado Street, Suite 2000
                           Austin, TX 78701

7
     For Defendant Wiwynn:
8
                           Harold Davis, Esq.
9                          Greenberg Traurig
                           101 Second Street, Suite 2200
10                         San Francisco, CA 94105-3668

11                         Mark D. Siegmund, Esq.
                           Steckler Wayne Cochran Cherry, PLLC
12                         8416 Old McGregor Rd.
                           Waco, TX 76712
13
     Court Reporter:       Kristie M. Davis, CRR, RMR
14                         PO Box 20994
                           Waco, Texas 76702-0994
15                         (254) 340-6114

16      Proceedings recorded by mechanical stenography,

17   transcript produced by computer-aided transcription.

18

19

20

21

22

23

24

25

| 09:05 | 1 | (Hearing begins.) |
|---|---|---|

09:05   1                    (Hearing begins.)

09:05   2                    THE CLERK:  A civil action in Cases

09:05   3    6:20-CV-966, 967 and 968, ACQIS LLC versus ASUSTeK

09:05   4    Computer Incorporated, et al.  Cases called for a

09:05   5    supplemental claim construction hearing.

09:05   6                    THE COURT:  If I could have announcements

09:05   7    from counsel, please.

09:05   8                    MS. AMSTUTZ:  Good morning, Judge

09:05   9    Albright.  May it please the Court.  Paige Amstutz with

09:05  10    Scott, Douglas & McConnico on behalf of plaintiff ACQIS

09:06  11    LLC.

09:06  12                    I'm joined by my co-counsel from the

09:06  13    Dorsey firm, Mr. Case Collard, Mr. Mark Miller and

09:06  14    Mr. Elliot Hales.  And depending on the issue, you will

09:06  15    hear from one of those three gentlemen this morning.

09:06  16                    THE COURT:  Welcome back.  It's been too

09:06  17    long since I've seen you in court.

09:06  18                    MS. AMSTUTZ:  Nice to hear you and see

09:06  19    you, Judge.

09:06  20                    THE COURT:  Now for someone that's not

09:06  21    been too long since I've seen in court, Mr. Ravel?

09:06  22                    MR. RAVEL:  Thank you, Judge.

09:06  23                    THE COURT:  It's nice to see you anyway.

09:06  24                    MR. RAVEL:  I know it's a common

09:06  25    occurrence.  Thanks for noticing.

4

```
09:06   1                    Judge, Steve Ravel for the Lenovo
09:06   2    defendants.  With me today from the Desmarais firm are
09:06   3    Jeff Seddon and Michael Wueste.  And Mr. Seddon will be
09:06   4    our primary speaker today.
09:06   5                    THE COURT:  Give me just one second to
09:06   6    get organized, I'll be right with you.
09:06   7                    MR. SIEGMUND:  And, Judge, just for the
09:06   8    record, this is Mark Siegmund on behalf of defendant
09:06   9    Wiwynn.  Also with me this morning is Hal Davis from
09:07  10    Greenberg Traurig.
09:07  11                    I believe that Lenovo will be handling
09:07  12    the majority of the argument, but in case they need
09:07  13    some backup, we're here as well.
09:07  14                    THE COURT:  I think your sitting would be
09:07  15    better if you were a little over this way and you
09:07  16    couldn't see that A&M diploma.  I'm not sure what the
09:07  17    other one is.  But, you know, if you were going to
09:07  18    block one, I would -- at any rate.
09:07  19                    MR. SIEGMUND:  That's there for you,
09:07  20    Judge.
09:07  21                    THE COURT:  I have -- and you're not the
09:07  22    only A&M graduate on this call, I know for a fact.
09:07  23                    So give me one second.
09:07  24                    (Pause in proceedings.)
09:07  25                    MS. MARRIOTT:  Your Honor, this is also
```

| 09:07 | 1 | Michelle Marriott and Chris Schmidt from Erise IP for |

Michelle Marriott and Chris Schmidt from Erise IP for
defendant ASUSTeK.  And I believe Melissa Smith is also
on the call with us.

THE COURT:  Welcome to all of you.
Welcome, Ms. Smith.

MS. SMITH:  Good morning, Your Honor.

THE COURT:  Anyone else?  Okay.

Okay.  Josh suggests we have plaintiff
start first, so that's what we'll do.

MR. COLLARD:  Thank you, Your Honor.
This is Case Collard for ACQIS from Dorsey & Whitney.

And may it please the Court.

I think I'd like to just make sure and
set the stage and let you know who will be talking
about which item and which item I'll be talking about
and where we'll start.

So from ACQIS' perspective, we have three
items to discuss.  One is the backwards compatibility
issue that you requested and received supplemental
briefing on.  I'll be addressing that.

The next is a dispute regarding the scope
of application of the other two EMC claim
constructions.  Mr. Miller will be handling that issue.

And then the final issue is if we get
into scheduling, there is one issue that we feel

09:09    1    relates to the schedule that is a discovery dispute

09:09    2    that we submitted via the 500-word chart process.

09:09    3                  If we get to that, if you'd like to

09:09    4    discuss that today, that would be something that

09:09    5    Mr. Hales would handle.

09:09    6                  So if that is all sort of understood,

09:09    7    then I'm happy to jump into the issues on backwards

09:09    8    compatible.

09:09    9                  I will share my screen for some slides.

09:09   10                  Look at the slide -- can you see the

09:09   11    slides, Your Honor?

09:09   12                  Okay.  Great.

09:09   13                  So you made a comment at the last hearing

09:09   14    that, you know, you would think of nothing else during

09:10   15    the interim while we were worked on this.  Nonetheless,

09:10   16    I'm going to reset the stage a little bit.

09:10   17                  So that -- I'm going to do three things.

09:10   18    I'm going to reset the stage, sort of how we got here.

09:10   19    I'm going to try to frame the issue or actually reframe

09:10   20    the issue in a way that I think provides some clarity.

09:10   21    And then I'm going to offer what I think is a simple

09:10   22    and elegant solution to this issue.

09:10   23                  So as we reframe, you may recall in the

09:10   24    hearing in your courtroom which was in July I pointed

09:10   25    to two things that I thought really exhibited this idea

```
09:10   1    of backwards compatibility was acknowledged all

09:10   2    throughout the history of the litigation of the ACQIS

09:10   3    patents, going back to this 2011 claim construction

09:10   4    from Judge Davis.

09:10   5              And here I have a slide of a slide.  It's

09:10   6    kind of meta, but this is our claim construction slide.

09:10   7    We have been very consistent in how we have articulated

09:10   8    these issues.  So this is our claim construction slide

09:11   9    from November 2021 that I pointed to that has our

09:11   10   highlighting of what Judge Davis said.

09:11   11             This has been explored at the hearing, in

09:11   12   our papers.  I don't want to spend a lot of time on it,

09:11   13   but I just wanted to reframe that issue.

09:11   14             And then the other piece of that puzzle

09:11   15   the EMC statements at the appellate argument in, you

09:11   16   know, earlier in 2022.  And so that spans over a decade

09:11   17   of time where this idea of backwards compatibility has

09:11   18   been acknowledged by the Court, by EMC, acknowledging

09:11   19   that this idea of backwards compatibility was a part of

09:11   20   the claim constructions in their case and a part of how

09:11   21   the patents worked.

09:11   22             We were criticized in one of the briefs

09:11   23   by defendants of saying, well, you're pointing to

09:11   24   litigation commentary.  You're not pointing to the

09:11   25   intrinsic record.
```

09:11   1        Well, we pointed to the intrinsic
09:11   2    evidence that supports the idea of having backwards
09:12   3    compatibility as a part of these patents and as a part
09:12   4    of the construction of PCI bus transaction.  And that's
09:12   5    covered pretty extensively in our responsive brief on
09:12   6    this issue.
09:12   7        So that's for the Lenovo docket, that's
09:12   8    Docket 202, Pages 1 and 2 of the response brief and
09:12   9    that's where it discusses the how, how this invention
09:12  10    of Dr. Chu and of ACQIS remains backwards compatible by
09:12  11    using PCI-like buses with a non-PCI or non-PCI-like
09:12  12    channel.
09:12  13        And there was a lot of argument, both in
09:12  14    the last hearing and in the papers about a time frame,
09:12  15    saying that ACQIS is looking at the wrong time frame.
09:12  16    There was this established set of peripherals and
09:12  17    you're looking back from the time of the invention.
09:12  18    And that's your time frame.  You can't look forward.
09:13  19        I have to tell you, Your Honor, I think
09:13  20    these time frame arguments are misguided.  The process
09:13  21    is the patent infringement process that we have to
09:13  22    follow.  We can't skip steps and say, well, because
09:13  23    there was a future standard that had a different name,
09:13  24    there cannot be infringement and you cannot look at
09:13  25    that future standard for infringement.

| | | |
|---|---|---|
| 09:13 | 1 | You can't skip steps based on the name of |
| 09:13 | 2 | a standard.  You have to construe the claims and then |
| 09:13 | 3 | you have to apply those claims to the accused products |
| 09:13 | 4 | to determine -- to determine infringement.  And so |
| 09:13 | 5 | don't get hung up on the names of the standards or even |
| 09:13 | 6 | the time frames.  It's the functionality and the scope |
| 09:13 | 7 | of the claims as properly construed that we are |
| 09:13 | 8 | focusing on today. |
| 09:13 | 9 | So that's a little bit of the background. |
| 09:13 | 10 | Now it's time for my reframing of the issue.  And I |
| 09:13 | 11 | think I'm trying to articulate what the core of the |
| 09:14 | 12 | dispute is between the parties today.  And that is, is |
| 09:14 | 13 | backwards compatibility one way for a transaction to be |
| 09:14 | 14 | in accordance with the PCI transaction? |
| 09:14 | 15 | And I would suggest that defendants' |
| 09:14 | 16 | approach creates a kind of bizarre potential situation. |
| 09:14 | 17 | So if you were to go with defendants' |
| 09:14 | 18 | approach and say that a transaction that is compatible |
| 09:14 | 19 | with the PCI local bus specification but is not in |
| 09:14 | 20 | accordance with the PCI local bus specification, I |
| 09:14 | 21 | think that that is a nonsensical result. |
| 09:14 | 22 | I think if something's "in accordance |
| 09:14 | 23 | with," then that -- if something is compatible with the |
| 09:14 | 24 | specification because -- due to backwards |
| 09:14 | 25 | compatibility, then it's in accordance with the |

| 09:14 | 1  | specification. |
| 09:14 | 2  | And we asked that question in our briefs, |
| 09:14 | 3  | and I have not heard a good answer for why "in |
| 09:15 | 4  | accordance with" would exclude backwards compatibility. |
| 09:15 | 5  | And there's sort of one issue that we |
| 09:15 | 6  | just barely touched on in our briefs, but I wanted to |
| 09:15 | 7  | highlight based upon my prep today. |
| 09:15 | 8  | And as we were looking at the exhibits -- |
| 09:15 | 9  | this is in Judge Burroughs' claim construction order -- |
| 09:15 | 10 | she has a chart saying "ACQIS' construction," "EMC's |
| 09:15 | 11 | construction," as she -- in her claim construction |
| 09:15 | 12 | order. |
| 09:15 | 13 | And it's telling because EMC actually |
| 09:15 | 14 | didn't seek the terms in that chart "in accordance with |
| 09:15 | 15 | the PCI local bus specification."  They said they |
| 09:15 | 16 | wanted "as defined by the PCI local bus specification." |
| 09:15 | 17 | And I think that that's -- there's a real |
| 09:15 | 18 | difference to those terms.  I think "as defined by" is |
| 09:15 | 19 | much more rigorous than "in accordance with."  And "in |
| 09:15 | 20 | accordance with," I think, matches that the idea of |
| 09:15 | 21 | compatibility is key. |
| 09:15 | 22 | And one of the things I would say is that |
| 09:16 | 23 | defendants have been very keen to say, we are bound by |
| 09:16 | 24 | what the Federal Circuit has done in EMC.  Well, that |
| 09:16 | 25 | means that we are bound by "in accordance with." |

09:16  1          We can't just simply say, well, it says
09:16  2  "in accordance with," but we want to treat this as a
09:16  3  very high standard.  We want to treat this as "as
09:16  4  defined by the PCI local bus specification."
09:16  5          So I think that that also ties into the
09:16  6  fact that there is a recognition, going back to Judge
09:16  7  Davis, that maintaining software compatibility when you
09:16  8  have a different physical bus design is really what
09:16  9  this invention is about.
09:16  10          And so now I want to get to what I would
09:16  11  call my proposed solution here.
09:16  12          Throughout the defendants' papers, they
09:16  13  say that you can't adopt or backwards compatible
09:16  14  because it is inconsistent -- these are -- this is just
09:16  15  a sampling of words I pulled out -- inconsistent, it's
09:17  16  an alternative concept, it changes the scope, it
09:17  17  improperly expands the definition.  And I've chosen a
09:17  18  really, you know, an example that pulls a few of those
09:17  19  together.
09:17  20          This is from defendants' response where
09:17  21  they state the proposed construction, but what they do
09:17  22  here is the emphasis they add -- they don't just add
09:17  23  emphasis.  They add the Bracketed 1 and the Bracketed 2
09:17  24  to try to make these, and then they say:  As the
09:17  25  emphasized language shows, because backwards compatible

09:17   1    is an alternative to transactions in accordance with,

09:17   2    then it would include other transactions not in

09:17   3    accordance with.

09:17   4                  They're treating it as an expansion of

09:17   5    scope, but that's never been our position.  And if

09:17   6    you'll allow me, I don't think that that's the Court's

09:17   7    intention here with the use of "or backwards

09:18   8    compatible."

09:18   9                  And I think we have a very grammatical

09:18   10   solution which is how "or" is being used here is not as

09:18   11   disjunctive.  This "or" in the alternative this.  But

09:18   12   it is to connect alternatives for the same thing which

09:18   13   is a common use of "or."

09:18   14                  We have some dictionary definitions here

09:18   15   on the slide.  But you know, one example in a sentence

09:18   16   is photons or individual particles of light travel huge

09:18   17   distances in space.  Those things are equivalents.

09:18   18   They are not alternatives.

09:18   19                  And so if you treat these as equivalents

09:18   20   or if you treat backwards compatibility of -- as an

09:18   21   example of how to be in accordance with something, then

09:18   22   I think essentially all defendants' arguments go away.

09:18   23   Because every objection they have is based on an

09:18   24   expansion of scope.

09:19   25                  There's actually case law, pretty recent

| | | |
|---|---|---|
| 09:19 | 1 | case law that supports this interpretation in the claim |
| 09:19 | 2 | construction world.  This is a Federal Circuit case |
| 09:19 | 3 | from August 2021, Amazon Web Services v. PersonalWeb |
| 09:19 | 4 | Techs. |
| 09:19 | 5 | And this, you know, I was sort of |
| 09:19 | 6 | surprised to find, is on point about the idea of using |
| 09:19 | 7 | this type of "or."  Not disjunctive but an "or" to |
| 09:19 | 8 | connect equivalents in a patent. |
| 09:19 | 9 | And the Federal Circuit says that it is |
| 09:19 | 10 | being used to connect two words that are synonyms or |
| 09:19 | 11 | equivalents of each other in the patent.  And they said |
| 09:19 | 12 | neither party cites a case which held that the word |
| 09:19 | 13 | "or" in a patent claim can be used as a connector for |
| 09:19 | 14 | synonyms. |
| 09:19 | 15 | But the Supreme Court has held that in a |
| 09:19 | 16 | statutory context.  And then they point out that |
| 09:20 | 17 | statutory interpretation canons can be used for |
| 09:20 | 18 | interpreting patent claims. |
| 09:20 | 19 | I think we actually have even a much |
| 09:20 | 20 | easier issue here, because this is not something that |
| 09:20 | 21 | is language out of the patent claim.  The Court can |
| 09:20 | 22 | just say this is how we are using "or" in this |
| 09:20 | 23 | instance.  It is to connect equivalents or to show an |
| 09:20 | 24 | example of something that's in accordance with.  The |
| 09:20 | 25 | Court can just clarify its meaning. |

| | | |
|---|---|---|
| 09:20 | 1 | I think it's important the Court do that. |
| 09:20 | 2 | I don't know if the Court is aware, but the other |
| 09:20 | 3 | pending case in ACQIS that was set for trial in October |
| 09:20 | 4 | in the Eastern District of Texas has been settled.  So |
| 09:20 | 5 | now our cases would be the first, the cases that are |
| 09:20 | 6 | furthest along. |
| 09:20 | 7 | So I think it is important to get this |
| 09:20 | 8 | settled.  Because although Judge Payne and Judge |
| 09:20 | 9 | Gilstrap had been looking at this issue, they now will |
| 09:20 | 10 | not have a reason to further look at this issue. |
| 09:20 | 11 | And so the easiest solution for the |
| 09:21 | 12 | backwards compatibility issue is to confirm that the |
| 09:21 | 13 | "or" in your construction means that or backwards |
| 09:21 | 14 | compatible is just an example of how to be in |
| 09:21 | 15 | accordance with the specification.  And we would even |
| 09:21 | 16 | suggest that if it provides extra clarity, you could |
| 09:21 | 17 | use "e.g." or "for example, backwards compatible" |
| 09:21 | 18 | instead of "or backwards compatible" to reach the |
| 09:21 | 19 | same -- to have the same effect. |
| 09:21 | 20 | And so that's all I have on backwards |
| 09:21 | 21 | compatible, Your Honor. |
| 09:21 | 22 | And I would assume or suggest that we'll |
| 09:21 | 23 | take these sort of one issue at a time rather than |
| 09:21 | 24 | turning it to Mr. Miller to start talking about the |
| 09:21 | 25 | other claim construction. |

09:21  1            THE COURT:  Yeah.  That makes sense to

09:21  2   me.

09:21  3            A response?

09:21  4            MR. SEDDON:  Jeff Seddon for the Lenovo

09:21  5   defendants, Your Honor.  And I think I'm also speaking

09:21  6   for the remaining defendants on this.  And I have some

09:21  7   slides as well, if you don't mind me putting them up.

09:21  8            Is Your Honor able to see that?

09:22  9            Fantastic.

09:22  10           So, Your Honor, I think the first point I

09:22  11   want to start with is really right where Mr. Collard

09:22  12   started and, frankly, I think where Mr. Collard ended,

09:22  13   which is the notion that adding "or backwards

09:22  14   compatible" would not modify the claim scope.

09:22  15           In fact -- and this is I think the

09:22  16   primary point, this is the point that Your Honor asked

09:22  17   for argument on -- adding "or backwards compatible" to

09:22  18   this claim construction would and it is ACQIS' intent

09:22  19   that it would modify the claim scope.

09:22  20           I hear what ACQIS is saying with regard

09:23  21   to this notion that "or" can be a disjunctive.  It

09:23  22   doesn't have to be a disjunctive.  It could just be a

09:23  23   definition.

09:23  24           But, in fact, what is happening here is

09:23  25   ACQIS is suggesting that Your Honor add additional

09:23   1   language to the claim construction that adds this "or

09:23   2   backwards compatible" possibility.

09:23   3              And while ACQIS is saying you can treat

09:23   4   this as just an example, you can treat this as just a

09:23   5   definition, this is going to go in front of a jury and

09:23   6   the ordinary language -- an ordinary person who looks

09:23   7   at this and reads it is going to see "or."

09:23   8              And when I say, I want to have cereal or

09:23   9   toast for breakfast, that doesn't mean that cereal

09:23   10  means toast.  We're not defining that.  It means I'm

09:23   11  going to have one or the other.  Maybe both, but

09:23   12  certainly one or the other.

09:23   13             And so when you add this "or backwards

09:24   14  compatible," it is going to be effectively adding a

09:24   15  second alternative category.

09:24   16             Now, ACQIS provides no legal basis nor

09:24   17  any basis -- and I will say this -- nor any basis in

09:24   18  the intrinsic evidence for the Court to modify a

09:24   19  binding construction from the Federal Circuit.  There

09:24   20  is none.

09:24   21             Now, the Federal Circuit's construction

09:24   22  applies as a matter of law.  Its holding is binding.

09:24   23  Your Honor recognized that and Your Honor said that you

09:24   24  would adopt the Federal Circuit's claim constructions

09:24   25  with regard to the other constructions.  The only

—17—

09:24   1    question here is whether or not it excludes the issue

09:24   2    of backwards compatibility.

09:24   3                There is no case that ACQIS cites where a

09:24   4    district court modified the Federal Circuit claim

09:24   5    construction.  So there's no legal basis for that.

09:24   6                And as ACQIS points out, the vast

09:24   7    majority of their argument here comes from the notion

09:25   8    that backwards compatibility has been recognized by

09:25   9    other courts as something that is generally significant

09:25   10   to the litigation.  And it points to a number of other

09:25   11   courts.

09:25   12               But the thing is, Your Honor, every

09:25   13   single one of those other courts looked at this and

09:25   14   recognized that regardless of the issue of backwards

09:25   15   compatibility, despite considering the issue of

09:25   16   backwards compatibility, PCI bus transactions still had

09:25   17   to be in accordance with the PCI standard.

09:25   18               So it's not in accordance with or

09:25   19   backwards compatible.  It's in accordance with the

09:25   20   industry standard.

09:25   21               ACQIS suggests that in accordance with is

09:25   22   just another way of saying backwards compatible.  Or

09:25   23   backwards compatible is just another way of saying in

09:25   24   accordance with.

09:25   25               But, Your Honor, use your common sense.

09:25 1    That doesn't make sense.  If it was just the same

09:25 2    thing, if it was that clear that something was --

09:26 3    compatible with was in accordance with the standard,

09:26 4    then why would they be trying to write that into the

09:26 5    construction?  They wouldn't.

09:26 6              And frankly, Your Honor, that's my point

09:26 7    number two.  That's my second major point here.  We

09:26 8    don't need to close our eyes to the real world

09:26 9    consequences of this just because we're dealing with

09:26 10   the claim construction.

09:26 11             The reality is we know why ACQIS wants to

09:26 12   modify the Federal Circuit's claim construction.  It's

09:26 13   because they fought this issue and they lost at the

09:26 14   Federal Circuit.

09:26 15             They went up on summary judgment.  They

09:26 16   appealed summary judgment in the EMC case where the EMC

09:26 17   court found under the Federal Circuit's construction,

09:26 18   the construction the Federal Circuit adopted, that

09:26 19   ACQIS' patents did not cover products using PCI

09:26 20   Express.

09:26 21             The Federal Circuit looked at it.  They

09:27 22   looked at the claim construction.  They adopted the

09:27 23   claim construction.  And they affirmed the EMC case's

09:27 24   noninfringement determination.

09:27 25             And so now what ACQIS is trying to do is

| 09:27 | 1 | ACQIS is trying to get around that noninfringement |

ACQIS is trying to get around that noninfringement
determination and get around the Federal Circuit's
claim construction by asking Your Honor to modify the
claim construction.

This isn't an issue where we need to skip
ahead and look at the issue of what it covers or what
it doesn't cover.  We don't even need to look at the
accused products to make this determination.  We just
need to look at the situation and think about why ACQIS
is asking Your Honor to address this, to address an
issue that they already raised in the Federal Circuit.

They argued the issue of backwards
compatibility with the Federal Circuit and they still
lost.  And the Federal Circuit adopted this
construction.  And now they're trying to add it back
into the construction.  And they're trying to do it in
order to save their case.  Because they know that under
the Federal Circuit's construction, they lose.

The Federal Circuit said, unambiguously,
the determination of noninfringement flows directly
from the claim constructions.  And so they know that if
you move forward with the Federal Circuit's
constructions, unambiguously, they lose.

Now, ACQIS says, okay.  We can add this
in as a clarification.  It means the same thing.  Well,

09:28  1    frankly, Your Honor, if that were true, then they would

09:28  2    lose in any case.  Because if the claim construction's

09:28  3    the same scope, then the noninfringement determination

09:28  4    still flows directly from the claim construction.

09:28  5              The EMC case found as a matter of law,

09:28  6    and we argued this in our motion for judgment, that

09:28  7    they -- there was no infringement of PCI Express

09:28  8    devices of ACQIS' PCI claims as a matter of law, and

09:28  9    the Federal Circuit affirmed.  And they're collaterally

09:29  10   estopped from raising that same issue here.

09:29  11             And when we argued that back in July,

09:29  12   they -- ACQIS fought a lot and they raised a lot of

09:29  13   distinctions with regard to the claim constructions,

09:29  14   but they didn't really contest that on the issue of

09:29  15   infringement, they were collaterally estopped.

09:29  16             So this is all something where it only

09:29  17   makes sense that they're doing this, that they're

09:29  18   trying to rewrite this in here because they're trying

09:29  19   to expand the scope and they're trying to do an end

09:29  20   runaround the claim construction that the Federal

09:29  21   Circuit issued and the Federal Circuit found resulted

09:29  22   in noninfringement.

09:29  23             Your Honor should reject that.  Your

09:29  24   Honor should not open the door to ACQIS attempting to

09:29  25   do an end runaround the Federal Circuit's decision.

21

09:29  1          There's no legal basis for it.  There's,
09:29  2    frankly, no intrinsic evidence that suggests that you
09:29  3    can treat PCI bus transactions as being somehow open to
09:29  4    backwards compatibility.  They don't cite anything that
09:30  5    talks about the PCI bus transactions in particular
09:30  6    being backwards compatible.
09:30  7          Instead, what we should be doing here is
09:30  8    we should be focusing on the claims that are
09:30  9    legitimately remaining in the case, ACQIS' allegations
09:30  10    against products using USB 3.0, and we should be
09:30  11    preparing those for trial.
09:30  12          ACQIS fought the issue of PCI Express in
09:30  13    the EMC case.  They fought this claim construction in
09:30  14    the Federal Circuit.  They appealed specifically on
09:30  15    this claim construction, and they specifically raised
09:30  16    the issue of backwards compatibility and they lost.
09:30  17    Now it's time to move on.
09:30  18          And I want to go to just the third point,
09:30  19    Your Honor, which is the notion that backwards
09:30  20    compatibility is important to the invention and the
09:30  21    notion that backwards compatibility needs to be
09:30  22    imported into -- they want to import the notion of
09:30  23    backwards compatibility that they say is somewhere in
09:30  24    the specification into the construction.
09:30  25          Well, frankly, Your Honor, ACQIS is just

—22—

09:31  1  wrong on importing backwards compatibility into the PCI

09:31  2  bus transaction.

09:31  3          Now, it is absolutely true that prior

09:31  4  courts have looked at this invention, these claims and

09:31  5  said, backwards compatibility's important.  But what

09:31  6  they say backwards compatibility is important is itself

09:31  7  important.

09:31  8          What ACQIS has said and what prior courts

09:31  9  have said is that ACQIS' invention allowed their

09:31  10  invention, their system, their computer, their device,

09:31  11  their bus to be backwards compatible with existing PCI

09:31  12  legacy devices.

09:31  13          And so basically back when they came up

09:31  14  with their invention in the early 2000s there was a

09:31  15  whole bunch of PCI devices out there.  There was a

09:31  16  whole bunch of different PCI peripheral devices out

09:31  17  there that used the PCI local bus.  In order to be

09:31  18  commercially successful, their device had to be able to

09:31  19  communicate with these legacy devices.  And so that's

09:31  20  the type of backwards compatibility that's important.

09:31  21          But what's also important is the way they

09:32  22  did that, the way they maintained backwards

09:32  23  compatibility is they allowed their invention to speak

09:32  24  to the legacy PCI devices using a PCI local bus

09:32  25  transaction, using a transaction that's in accordance

23

09:32  1    with the PCI local bus specification.

09:32  2                    And that's actually critically important

09:32  3    because the legacy PCI devices only spoke PCI.  They

09:32  4    needed a PCI bus transaction in accordance with the

09:32  5    specification to actually communicate that.

09:32  6                    You can see that in the arguments they

09:32  7    made on appeal.  They said in their opening brief, we

09:32  8    maintain backwards compatibility by enabling the new

09:32  9    physical layer of their interface to communicate PCI

09:32  10   standard bus transactions.  They said they couldn't

09:32  11   abandon the PCI standard because it was required for

09:32  12   the computer system to be commercially successful.  And

09:32  13   EMC said the same thing.

09:32  14                   So everyone recognized at -- on the

09:32  15   Federal Circuit at appeal and in the prior decisions,

09:33  16   that the compatibility that they were talking about was

09:33  17   the compatibility of the ACQIS interface, the ACQIS

09:33  18   device with existing legacy devices.  It wasn't about

09:33  19   transactions being compatible.  The transactions had to

09:33  20   be in accordance with the standard.

09:33  21                   And we know that -- frankly, we know that

09:33  22   because ACQIS said that in the IPRs.  And this is

09:33  23   actually intrinsic evidence because it's part of the

09:33  24   prosecution history.  It's part of the record.

09:33  25                   ACQIS said, "PCI is an industry

09:33  1    Standard...Even minor deviations from a standard will

09:33  2    result in incompatible hardware and

09:33  3    Software...Adherence to the specification...is critical

09:33  4    for interoperability..."

09:33  5              So -- and this is -- this is from ACQIS'

09:33  6    mouth.  They needed to have a PCI bus transaction in

09:33  7    accordance with the specification in order to

09:33  8    communicate with the legacy devices.  That's what they

09:33  9    needed to do.

09:33  10             Even minor deviations from the standard

09:33  11   could render it unable to communicate with legacy PCI

09:34  12   devices, to actually do the communication with existing

09:34  13   devices, other devices, other physical devices,

09:34  14   printers, whatnot, out there.  And so it's not just a

09:34  15   software issue.  They had to have this transaction in

09:34  16   accordance with the PCI bus transaction -- the PCI

09:34  17   local bus specification in order to render the device,

09:34  18   the interface, compatible with existing devices.

09:34  19             Now, ACQIS' counsel posed the question,

09:34  20   well, what's the difference between "in accordance

09:34  21   with" or "backwards compatibility"?

09:34  22             Well, this is exactly the issue.  ACQIS

09:34  23   wants to take transactions that do not follow the

09:34  24   standard precisely, that have these minor deviations

09:34  25   from the standard and say, well, the deviations aren't

09:34   1    important.  They're minor.  They're not a big deal.

09:34   2    It's compatible.

09:34   3                But that's inconsistent with what they

09:34   4    told the PTAB.  That's inconsistent with what they've

09:34   5    said the invention requires.  And that's inconsistent

09:34   6    with the notion of actually communicating with legacy

09:35   7    PCI devices, because even minor deviations from the

09:35   8    standard can result in incompatibility.

09:35   9                So what compatibility means in the

09:35   10   context of the invention, and it's compatibility for

09:35   11   the invention overall, is compatibility with legacy's

09:35   12   PCI devices.  It achieves that by sending transactions

09:35   13   that are in accordance with the PCI local bus

09:35   14   specification.

09:35   15               And so if you expand the definition of

09:35   16   "transactions," if you insert "backwards compatibility"

09:35   17   and loosen the definition of "transactions," then that

09:35   18   in itself is actually going to break backwards

09:35   19   compatibility and be inconsistent with the invention.

09:35   20               And I just want to show one other thing,

09:35   21   Your Honor, because ACQIS made a distinction between

09:35   22   the definition and "in accordance with" and said we're

09:36   23   sort of attempting to do some sort of higher standard.

09:36   24               And so what I have up on the screen is

09:36   25   Exhibit 2 from defendant's motion for judgment, which

| | | |
|---|---|---|
| 09:36 | 1 | is ACQIS' opening brief in the Federal Circuit. |
| 09:36 | 2 | What ACQIS said to the Federal Circuit is |
| 09:36 | 3 | they invented a technique for connecting modules using |
| 09:36 | 4 | an interface channel that was still compatible with |
| 09:36 | 5 | existing software because it could communicate the |
| 09:36 | 6 | transactions defined by the dominant communications |
| 09:36 | 7 | standard at the time, the peripheral component |
| 09:36 | 8 | interconnect standard, the PCI standard. |
| 09:36 | 9 | And so we're not making things up.  We're |
| 09:36 | 10 | not sort of holding them to a heightened standard. |
| 09:36 | 11 | ACQIS themselves said their transactions had to be |
| 09:36 | 12 | defined by the PCI component interconnect standard. |
| 09:36 | 13 | Federal Circuit said that's in accordance |
| 09:36 | 14 | with the standard.  I think those two are consistent, |
| 09:36 | 15 | but really we don't need to make any decision there |
| 09:36 | 16 | because the Federal Circuit has given us the language. |
| 09:36 | 17 | It has said the transactions have to be in accordance |
| 09:37 | 18 | with the standard, and it has also said that that |
| 09:37 | 19 | forecloses ACQIS' infringement read against PCI |
| 09:37 | 20 | Express. |
| 09:37 | 21 | So with that, Your Honor, I think the |
| 09:37 | 22 | answer is simple.  We need to stick with the Federal |
| 09:37 | 23 | Circuit's construction verbatim, adopt it, as Your |
| 09:37 | 24 | Honor has said you will do with the other two |
| 09:37 | 25 | constructions, and move on so that we can focus on the |

09:37  1    claims against USB 3 that are legitimately still in the

09:37  2    case.

09:37  3                      And unless Your Honor has any questions,

09:37  4    thank you.

09:37  5                      THE COURT:  Mr. Collard, if you'll give

09:37  6    me just one second.  I'll be right back.

09:37  7                      (Pause in proceedings.)

09:41  8                      THE COURT:  Okay.  If we could go back on

09:42  9    the record.

09:42  10                     So as I understand it -- these are

09:42  11   questions for defense counsel before I jump back over

09:42  12   to plaintiff.

09:42  13                     As I understand it, Judge Davis and Judge

09:42  14   Burroughs essentially determined that PCI bus is not

09:42  15   required.

09:42  16                     Do I have that much right?

09:42  17                     MR. SEDDON:  Yes, Your Honor.  They

09:42  18   determined that the invention does not require the

09:42  19   presence of a physical PCI bus in the system, but that

09:42  20   the bus transactions that were set were nonetheless had

09:42  21   to be in accordance with the standard.

09:42  22                     THE COURT:  And my question about that

09:42  23   is, if that's correct, what would a POSITA feel about

09:42  24   whether or not all the PCI information would be

09:42  25   required that is required in a PCI bus transaction?

| | |
|---|---|
| 09:42 | 1 |

MR. SEDDON:  So, Your Honor, I think what
we have from the evidence and what was explicitly
argued to the Federal Circuit is that all of the
information has to be present.  And what the Federal
Circuit looked to, at least in argument, was all of the
required -- the information sent by the required pins
as shown in the PCI local bus specification.

THE COURT:  Even though it's going to be
a different architecture than a PCI bus?

MR. SEDDON:  So although the PCI --
there's going to be a different architecture, it can be
conveyed over a different physical layer.  Ultimately
the goal was to take that information and then turn it
into something that could be received by a local PCI, a
legacy device that has all those pins and needs the
information from all those required pins.

So if you think about it, you know, let's
say you've got a 1995 printer that's speaking PCI local
bus, you know, it has to have all those required pins.
And it's got to have information coming in over all
those required pins.

And so even if ACQIS' XP bus is sort of
repackaging everything, it's still got to at least have
all the signals that are going over those required pins
so that it can repackage them and then communicate with

| 09:44 | 1 | that 1995 printer. |

09:44  1  that 1995 printer.

09:44  2          THE COURT:  And has any court expressly

09:44  3  held that backwards compatible, that "backwards

09:44  4  compatible" was excluded from "in accordance with"?

09:44  5          MR. SEDDON:  Your Honor, I think ACQIS

09:44  6  has argued backwards compatibility.  It argued that

09:44  7  backwards compatibility was essential to the invention

09:44  8  when it actually argued to the Federal Circuit.  That's

09:44  9  part of their brief.  That's part of what they said.

09:44  10  That's what they defined the solution of the problem

09:44  11  was.

09:44  12          And so the Federal Circuit looked at all

09:44  13  of their arguments and said, no, what we require is we

09:44  14  require transactions that are in accordance with the

09:44  15  specification.

09:44  16          THE COURT:  We can go back to the

09:44  17  plaintiff now.  And I'm happy to hear plaintiff's

09:44  18  response.  Mr. Collard?

09:45  19          MR. COLLARD:  Your Honor, I'm going to

09:45  20  keep it very brief.

09:45  21          I would say that Mr. Seddon's response to

09:45  22  your question about what needs to be there when there's

09:45  23  no PCI bus sure sounded a lot like backwards

09:45  24  compatibility to me, to say you still have to be able

09:45  25  to talk to the 1995 printer.

09:45   1              I think that that is hard to get around

09:45   2   and that is why, going back to Judge Davis, there has

09:45   3   been -- not -- it hasn't even really been that much in

09:45   4   dispute that backwards compatibility is the concept

09:45   5   that is necessary to bridge the gap when there's no

09:45   6   physical PCI bus required.

09:45   7              If there's no physical PCI bus required,

09:45   8   then -- and, frankly, I think this is what you came to,

09:45   9   why you added it in the first place in November, is we

09:45   10  were having this argument and you said, look.  I'm not

09:46   11  going to say it needs A, B, C.  I'm going to say it has

09:46   12  to be backwards compatible.  And I think that that is

09:46   13  just right in line with what the other courts have

09:46   14  done.

09:46   15             And the answer to your question, has any

09:46   16  court excluded backwards compatibility from in

09:46   17  accordance with?  The simple answer to that is no.  No

09:46   18  court has looked at that and said no.  That is not a

09:46   19  part of backwards -- or that is not a part of "in

09:46   20  accordance with."

09:46   21             I mean, you would have seen that if --

09:46   22  you would have seen that highlighted if that had been

09:46   23  explicitly addressed, and that's because it hasn't.

09:46   24  The idea of backwards compatibility has been in the

09:46   25  background, but hasn't been explicitly addressed but --

09:46    1    and especially hasn't been rejected by any court

09:46    2    because they weren't explicitly asked to include it at

09:46    3    any stage.

09:46    4              And I think -- I don't want to go into

09:46    5    this too much.  I think that a lot of Mr. Seddon's

09:46    6    argument was infringement.  We got to take it step by

09:47    7    step because the claims are king.  We may have some

09:47    8    claims -- and I think Your Honor recognized this when

09:47    9    you indicated we'd have the ability to go back and look

09:47   10    at this again, look at our claims again, but we may

09:47   11    have some claims that require transmission of, you

09:47   12    know, parts of the PCI bus transaction, the entire PCI

09:47   13    bus transaction, something else.

09:47   14              So we have to be careful to not let

09:47   15    infringement drive the claim construction process.  And

09:47   16    so I think that if you do that, then you do need to

09:47   17    look at this from the 02 Micro perspective.  We have a

09:47   18    dispute about claim scope that should be resolved by

09:47   19    the Court.

09:47   20              And then that leads me to my last point

09:47   21    and that the justification for doing that, and

09:47   22    defendants point to the Eolas case in their briefing a

09:47   23    couple times.  This is the last page of their final

09:47   24    brief, Docket 203:  No law allows this Court to change

09:48   25    the scope of the Federal Circuit's construction.  See

| | | |
|---|---|---|
| 09:48 | 1 | Eolas text. |
| 09:48 | 2 | We are not asking the Court to change the |
| 09:48 | 3 | scope.  We're asking for a clarification. |
| 09:48 | 4 | I think it's also important to note that |
| 09:48 | 5 | the Eolas case was on the exact same patent.  And here |
| 09:48 | 6 | you might recall, we're not on the exact same patent |
| 09:48 | 7 | and the question is about -- the prime directive is |
| 09:48 | 8 | about being consistent.  It's not about having the |
| 09:48 | 9 | exact same words, and this doesn't change the scope. |
| 09:48 | 10 | And then I think if you look at Eolas, |
| 09:48 | 11 | the construction that the Court was going to adopt |
| 09:48 | 12 | before they went with the Federal Circuit's |
| 09:48 | 13 | construction was just completely different, whole |
| 09:48 | 14 | cloth, new construction. |
| 09:48 | 15 | And I'd say what you have done here is |
| 09:48 | 16 | gone to great lengths to try to square your |
| 09:48 | 17 | construction with the Federal Circuit and make sure |
| 09:48 | 18 | you're consistent.  And I'd say what you're doing is |
| 09:48 | 19 | consistent with Eolas. |
| 09:48 | 20 | THE COURT:  You actually were pressing |
| 09:48 | 21 | it.  You actually took -- you answered the question |
| 09:48 | 22 | I -- the only question I had and was about to ask you |
| 09:49 | 23 | with regard to how do we -- how do we do our best to |
| 09:49 | 24 | divine what the Circuit is trying to signal to us.  So |
| 09:49 | 25 | I think you covered that. |

| | | |
|---|---|---|
| 09:49 | 1 | Anything in response? |
| 09:49 | 2 | MR. SEDDON:  Your Honor, two quick |
| 09:49 | 3 | things. |
| 09:49 | 4 | First, backwards compatibility, as it has |
| 09:49 | 5 | been discussed consistently throughout all the cases, |
| 09:49 | 6 | is backwards compatibility of ACQIS' interface with |
| 09:49 | 7 | other devices.  It's -- and it's -- ACQIS has said it |
| 09:49 | 8 | achieves that by using a bus transaction in accordance |
| 09:49 | 9 | with the specification. |
| 09:49 | 10 | So if backwards compatibility is a |
| 09:49 | 11 | requirement, if that is a key feature of the invention, |
| 09:49 | 12 | it does not go in the transaction.  It is a feature of |
| 09:49 | 13 | the overall invention.  And it's not something that you |
| 09:49 | 14 | should redefine the transaction to include. |
| 09:49 | 15 | And the second point, Your Honor, is if |
| 09:49 | 16 | backwards compatibility means anything other than in |
| 09:49 | 17 | accordance with the specification, in full compliance |
| 09:49 | 18 | with the specification, then in fact, it is |
| 09:50 | 19 | inconsistent with the Federal Circuit's decision. |
| 09:50 | 20 | Because the Federal Circuit looked at this and said -- |
| 09:50 | 21 | and in our earlier presentation we showed you the |
| 09:50 | 22 | quotes from the Federal Circuit when they said, look, |
| 09:50 | 23 | all the information required by the specification's |
| 09:50 | 24 | required. |
| 09:50 | 25 | So to the extent that ACQIS comes back |

09:50  1    and says backwards compatibility allows any deviation

09:50  2    from the PCI local bus specification, that's

09:50  3    inconsistent with the Federal Circuit's decision.

09:50  4               THE COURT:  I got it.

09:50  5               MS. MARRIOTT:  Your Honor, if I may.

09:50  6    This is Michelle Marriott for ASUSTeK.  And I want to

09:50  7    just answer your question very directly.

09:50  8               I think your question was has any court

09:50  9    ever said that backwards compatibility should be

09:50  10   excluded from the construction?  If I understand it,

09:50  11   that was the question.

09:50  12              And with respect to PCI Express, the

09:50  13   answer is absolutely yes.  And that happened in the EMC

09:50  14   case.  That was the central issue in the EMC case.

09:50  15              And I -- you know, I would just kind of

09:51  16   point the Court to our opening brief on this which was

09:51  17   Docket 117.  On Page 2 we talk about the history here.

09:51  18   The Federal Circuit specifically adopted the EMC's

09:51  19   construction, and that was that it must be in

09:51  20   accordance with the PCI local bus specification.

09:51  21              The EMC court held the claims are limited

09:51  22   by the PCI specification in its entirety.  And during

09:51  23   that oral argument at the Federal Circuit, Judge Chen

09:51  24   asked, you know, as I understand it, the point that the

09:51  25   judge was making in EMC was that this transmission has

09:51  1   to be in accordance with the PCI bus transaction.  And

09:51  2   ACQIS answered, right.

09:51  3                  And so that's the entire PCI bus

09:51  4   transaction?  That was the question.

09:51  5                  Right.  That's exactly right.

09:51  6                  There's no deviation here.  And going

09:51  7   back to Mr. Collard's suggestion earlier that future

09:51  8   standards -- we can't say that a future standard can't

09:51  9   be infringing.  We can as to PCI Express.

09:51  10                 Because that is exactly what the Federal

09:52  11   Circuit affirmed in the EMC case, that PCI Express, a

09:52  12   later standard, is not a transaction in accordance with

09:52  13   the PCI standard.  It is not a bizarre result and it's

09:52  14   the result that was actually held by the EMC court and

09:52  15   was affirmed by the Federal Circuit.

09:52  16                 Respectfully, Your Honor, this has

09:52  17   already been decided by the Federal Circuit.

09:52  18                 And backwards compatibility here, no

09:52  19   court has ever held that a backwards compatible

09:52  20   standard should be incorporated within the claim scope.

09:52  21   It's just -- that's exactly what was held in EMC.

09:52  22                 THE COURT:  Any response or anyone want

09:52  23   to say anything else?

09:52  24                 MR. COLLARD:  Nothing from ACQIS, Your

09:52  25   Honor.

| | | |
|---|---|---|
| 09:52 | 1 | THE COURT: I'll be back in a few |
| 09:52 | 2 | seconds. |
| 09:52 | 3 | (Pause in proceedings.) |
| 09:59 | 4 | THE COURT: Okay. If we could go back on |
| 09:59 | 5 | the record. |
| 09:59 | 6 | I'm going to adopt the Circuit's |
| 09:59 | 7 | construction of "a transaction in accordance with the |
| 09:59 | 8 | industry standard PCI local bus specification or |
| 10:00 | 9 | communication with interconnected peripheral |
| 10:00 | 10 | component." |
| 10:00 | 11 | But I also am putting on the record -- |
| 10:00 | 12 | and we'll get a written order out on this as quickly as |
| 10:00 | 13 | possible -- we agree with plaintiff that "in accordance |
| 10:00 | 14 | with" includes "backward compatibility" and that adding |
| 10:00 | 15 | "backwards compatibility" does not expand the claim |
| 10:00 | 16 | scope. |
| 10:00 | 17 | My understanding is we also have at least |
| 10:00 | 18 | one discovery issue to take up. Whose discovery issue |
| 10:00 | 19 | is it? |
| 10:00 | 20 | MR. MILLER: Actually, Your Honor, what |
| 10:00 | 21 | we had was pointing out a couple other constructions |
| 10:00 | 22 | from the EMC case to make sure what claim language they |
| 10:00 | 23 | do and do not apply to. |
| 10:00 | 24 | THE COURT: Okay. |
| 10:00 | 25 | MR. MILLER: And I will go ahead and |

| | | |
|---|---|---|
| 10:00 | 1 | share my screen to talk about those issues. |
| 10:00 | 2 | THE COURT:  Okay.  Very good. |
| 10:00 | 3 | MR. MILLER:  The first construction deals |
| 10:01 | 4 | with -- during the EMC case deals with this phrase |
| 10:01 | 5 | "communicating... PCI bus transaction." |
| 10:01 | 6 | And so it's important here to focus on |
| 10:01 | 7 | what happened at the Federal Circuit.  It's what |
| 10:01 | 8 | happens at the appeals court that matters. |
| 10:01 | 9 | First, let's look at the claims that were |
| 10:01 | 10 | at issue in EMC. |
| 10:01 | 11 | On the left-hand side, you have a list of |
| 10:01 | 12 | the claims that state that the PCI bus transaction |
| 10:01 | 13 | itself is communicated.  It says these are the claims |
| 10:01 | 14 | that say you transmit or communicate the transaction. |
| 10:01 | 15 | And then sometimes they will also say, |
| 10:01 | 16 | wherein the transaction includes or comprises address |
| 10:01 | 17 | and data bits.  So those are the claims on the |
| 10:01 | 18 | left-hand side. |
| 10:01 | 19 | If you look on the right-hand side, these |
| 10:01 | 20 | are claims that say you communicate not the |
| 10:01 | 21 | transaction.  You communicate the address and data bits |
| 10:01 | 22 | of the transaction. |
| 10:02 | 23 | So these are what were referred to during |
| 10:02 | 24 | the Federal Circuit briefing as the "address and data |
| 10:02 | 25 | bits claims."  So it's important to keep these two |

10:02    1    categories of claims from EMC in mind as you go through

10:02    2    what happened on appeal.

10:02    3             At the -- first of all, Judge Burroughs'

10:02    4    decision framed the claim language as this:

10:02    5    Communicating...PCI bus transaction.  And then adopted

10:02    6    what she felt was an agreement between the parties.

10:02    7             There's no express statement from Judge

10:02    8    Burroughs that this "communicating... PCI bus

10:02    9    transaction" applies to any claim that refers to

10:02   10    communicating PCI bus transaction, including the

10:02   11    address and data bits claims.

10:02   12             And on appeal both EMC and ACQIS made

10:02   13    that clear.  ACQIS argued in its appeal brief that they

10:02   14    did not agree that the address and data bits claims are

10:03   15    limited by this construction.

10:03   16             ACQIS explained that the district court

10:03   17    on this issue didn't address the merits.  It wasn't

10:03   18    actually litigated.  It was rejected as untimely.  And

10:03   19    so it was rejected at the summary judgment stage on a

10:03   20    procedural basis.  So it was never actually litigated

10:03   21    or decided.

10:03   22             And EMC agreed in their appeal brief.

10:03   23    EMC said that the district court never reached the

10:03   24    separate arguments concerned -- or ACQIS asserts they

10:03   25    never reached them.  And EMC says that ACQIS' argument

10:03  1    was forfeited.  That's a procedural resolution that

10:03  2    doesn't implicate issue preclusion or collateral

10:03  3    estoppel.  EMC also argued to the Federal Circuit ACQIS

10:03  4    never made this argument.

10:03  5              Now, the most important admission EMC

10:03  6    made at the Federal Circuit is this footnote right

10:03  7    here.  EMC said this:  EMC takes no position at this

10:04  8    time as to whether the address and data [bits] claims

10:04  9    also require transmission of the control and parity

10:04  10   bits that are part of the transaction...

10:04  11             So EMC took no position on this which

10:04  12   means it cannot be the subject of issue preclusion.

10:04  13             So what did the Federal Circuit decide?

10:04  14   Here's what really governs the issue, Your Honor, is

10:04  15   the Federal Circuit's decision.  In this footnote they

10:04  16   say:  The asserted claims use slight variations of

10:04  17   [this term].

10:04  18             Look at the claims the Federal Circuit's

10:04  19   decision places as an example of the communicating PCI

10:04  20   bus transaction constructions.  They cite this one.

10:04  21   They cite the '416 patent, the '487, the '873 and the

10:04  22   '294.  These are all the claims that say you

10:04  23   communicate the transaction itself.

10:04  24             What claims did the Federal Circuit not

10:04  25   include in this list in Footnote 1?  The Federal

—40—

| 10:05 | 1 | Circuit's decision never mentioned the '814 patent, the |
|---|---|---|
| 10:05 | 2 | '119 patent, the '171 patent or the '468 patent when |
| 10:05 | 3 | explaining here are examples of communicating PCI bus |
| 10:05 | 4 | transaction. |
| 10:05 | 5 | So the question of whether the |
| 10:05 | 6 | construction of communicating...PCI bus transaction |
| 10:05 | 7 | applies to address and data bits claims has never been |
| 10:05 | 8 | decided on its merits. |
| 10:05 | 9 | The district court's claim construction |
| 10:05 | 10 | order doesn't address it.  The summary judgment order |
| 10:05 | 11 | doesn't address it.  The summary judgment order says |
| 10:05 | 12 | ACQIS' additional claim construction arguments are |
| 10:05 | 13 | waived and untimely. |
| 10:05 | 14 | And the Federal Circuit decision doesn't |
| 10:05 | 15 | address it.  In fact, the Federal Circuit decision uses |
| 10:05 | 16 | the other claims as examples and not the address and |
| 10:05 | 17 | data bits claims as examples.  And EMC expressly took |
| 10:05 | 18 | no position on this issue. |
| 10:05 | 19 | So the Court's construction as it stands |
| 10:05 | 20 | in this case -- your construction, Your Honor, where |
| 10:06 | 21 | you say address and data bits is plain and ordinary |
| 10:06 | 22 | meaning, that is entirely consistent with what happened |
| 10:06 | 23 | on appeal at the Federal Circuit. |
| 10:06 | 24 | Because the claims where it says you |
| 10:06 | 25 | communicate not the entire transaction but the address |

10:06  1    and data bits of a transaction, that is something that

10:06  2    was not by the admission of both ACQIS and EMC and by

10:06  3    the Federal Circuit's decision in its Footnote 1, that

10:06  4    is not something that was decided.

10:06  5              So applying plain and ordinary meaning to

10:06  6    the simple reference to address and data bits of a PCI

10:06  7    bus transaction is entirely appropriate for the Court

10:06  8    to maintain in this case.

10:06  9              The next claim limitation I want to bring

10:06  10   to the Court's attention is a very simple one.  It's

10:06  11   the one that says "encoded...serial bit stream."

10:06  12             At the district court level, Judge

10:06  13   Burroughs identified the relevant claim term as this:

10:06  14   Encoded... serial bit stream.

10:07  15             The briefing in the district court made

10:07  16   it clear that Judge Burroughs was relying on the

10:07  17   prosecution history during the IPR to construe this

10:07  18   term.  So how did she review that prosecution history,

10:07  19   because she said Judge Davis never had this prosecution

10:07  20   history?

10:07  21             So she reviewed it, and here's what she

10:07  22   said.  During the IPR, she said:  Because the claims

10:07  23   use encoded, ACQIS made these arguments.

10:07  24             So the arguments from the file history

10:07  25   she relied on to limit the claim language was expressly

10:07  1   linked to the word "encoded" in that phrase.  And she

10:07  2   kept quoting ACQIS' arguments.  And every time she

10:07  3   referred to an argument from the IPR, it was about an

10:07  4   encoded transaction.

10:07  5           She also said that the claim language

10:07  6   that's at issue here, the disputed term essentially

10:08  7   contains the following elements:  Element No. 1,

10:08  8   encoded.

10:08  9           So Judge Burroughs never construed the

10:08  10  scope and meaning of claim language that did not

10:08  11  include encoded with the serial language, which means

10:08  12  the EMC construction, to the extent it applies in this

10:08  13  case, it applies to claims that talk about an encoded

10:08  14  serial bit stream.  It does not apply to claims that

10:08  15  don't have the word "encoded."

10:08  16          So that's an important distinction we

10:08  17  wanted to bring to the Court's attention.  There are

10:08  18  some claims that talk about serial bit stream or

10:08  19  serialized that do not refer to it as an encoded serial

10:08  20  bit stream, and that makes a difference, because the

10:08  21  EMC case was explicitly limited to claim language that

10:08  22  combined encoded with serial bit stream.

10:08  23          And those are my two issues that I wanted

10:08  24  to bring to the Court's attention.

10:08  25          THE COURT:  Is there a response?

| | | |
|---|---|---|
| 10:09 | 1 | MR. SEDDON: Yes, Your Honor. Jeff |
| 10:09 | 2 | Seddon for the Lenovo defendants. |
| 10:09 | 3 | So first, Your Honor, I want to talk |
| 10:09 | 4 | about ACQIS' argument -- actually, let me just preface |
| 10:09 | 5 | this by saying, Your Honor, these issues have already |
| 10:09 | 6 | been decided. |
| 10:09 | 7 | This dispute -- this issue comes back in |
| 10:09 | 8 | front of you because after Your Honor heard argument in |
| 10:09 | 9 | the July hearing, you directed us to go and come up |
| 10:09 | 10 | with an agreement on which claim terms the |
| 10:09 | 11 | constructions that Your Honor agreed to adopt applied |
| 10:09 | 12 | to in order to make things more convenient rather than |
| 10:09 | 13 | pulling the chart that defendants had provided in our |
| 10:09 | 14 | opening motion out of the briefing. |
| 10:09 | 15 | And so really this is an issue where |
| 10:09 | 16 | ACQIS is just trying to reargue something that they've |
| 10:09 | 17 | already lost. We already went through all this and why |
| 10:09 | 18 | the constructions apply to the specific claims that we |
| 10:10 | 19 | spelled out in all of our charts. |
| 10:10 | 20 | So this is effectively a last-minute |
| 10:10 | 21 | request for reconsideration not even made under motion |
| 10:10 | 22 | and Your Honor should disregard it and adopt the chart |
| 10:10 | 23 | that we put in our motion for judgment. |
| 10:10 | 24 | With regard to the specific points, so |
| 10:10 | 25 | first with regard to the communicating of PCI bus |

| | |
|---|---|
| 10:10 | 1 |
| 10:10 | 2 |
| 10:10 | 3 |
| 10:10 | 4 |
| 10:10 | 5 |
| 10:10 | 6 |
| 10:10 | 7 |
| 10:10 | 8 |
| 10:10 | 9 |
| 10:10 | 10 |
| 10:11 | 11 |
| 10:11 | 12 |
| 10:11 | 13 |
| 10:11 | 14 |
| 10:11 | 15 |
| 10:11 | 16 |
| 10:11 | 17 |
| 10:11 | 18 |
| 10:11 | 19 |
| 10:11 | 20 |
| 10:11 | 21 |
| 10:11 | 22 |
| 10:11 | 23 |
| 10:11 | 24 |
| 10:11 | 25 |

transaction, ACQIS apparently contends that where claim terms recite specific types of bits, such as address and data bits, the construction from the Federal Circuit, the construction in the EMC case, can't apply because they didn't actually -- they argued and -- EMC only argued forfeiture at the Federal Circuit.

But first of all, that's totally wrong as a matter of collateral estoppel because they -- the issue came up and was decided in the EMC case below. The fact that they didn't actually successfully argue it and EMC didn't address it on appeal doesn't change the fact that they lost it below.

And the second point is, the notion that the Federal Circuit didn't have an opportunity to consider it or didn't consider it just doesn't make any sense. The Federal Circuit adopted the EMC constructions below despite the fact that ACQIS specifically made the argument that the "communicating of PCI bus transaction" term did not apply to terms specifically reciting address and data bits.

And so that's in Exhibit 2 to our opening motion, their opening appeal brief at Page 26 and 31, it's in the reply brief at 20 and 21.

They specifically made this argument to the Federal Circuit that the construction should not

| | | |
|---|---|---|
| 10:11 | 1 | apply to terms reciting address and data bits, and the |
| 10:11 | 2 | Federal Circuit said, no.  We're adopting the EMC |
| 10:11 | 3 | construction. |
| 10:11 | 4 | The second point I want to make, and this |
| 10:12 | 5 | actually comes directly from ACQIS' slides, you know, |
| 10:12 | 6 | ACQIS told you that if you look at the -- and I'm |
| 10:12 | 7 | sharing Page -- Slide 21 of ACQIS' slides today.  If |
| 10:12 | 8 | you look at the Federal Circuit's decision, it doesn't |
| 10:12 | 9 | actually apply to claims that just recite address and |
| 10:12 | 10 | data bits. |
| 10:12 | 11 | But, in fact, the very first claim here, |
| 10:12 | 12 | Claim 60 of the '416 patent that the Federal Circuit |
| 10:12 | 13 | put in its opinion as an example, was about |
| 10:12 | 14 | "communicating encoded serialized [PCI] component |
| 10:12 | 15 | interconnect bus transaction data...wherein the serial |
| 10:12 | 16 | bit stream of [the] PCI bus transaction comprises |
| 10:12 | 17 | encoded PCI address and data bits." |
| 10:12 | 18 | So literally the first example the |
| 10:12 | 19 | Federal Circuit gave was about communicating data that |
| 10:12 | 20 | was just address and data bits.  And the Federal |
| 10:12 | 21 | Circuit adopted a construction saying that that was |
| 10:12 | 22 | address data and control bits. |
| 10:12 | 23 | And so the notion that the Federal |
| 10:13 | 24 | Circuit wasn't addressing this issue just doesn't hold |
| 10:13 | 25 | up.  It doesn't hold up even if you look at the example |

```
10:13    1    that ACQIS put in front of you.
10:13    2                    Let me just stop sharing for a second.
10:13    3                    The second point I want to make with
10:13    4    regard to the encoded versus serial argument --
10:13    5                    THE COURT:  If I've looked quizzical
10:13    6    during this, I've checked with both Josh and my law
10:13    7    clerk and we had no heads-up this was going to be
10:13    8    argued as part of this hearing this morning.
10:13    9                    So my understanding is we had the issue
10:13   10    I've ruled on and we had a discovery issue.  If this is
10:13   11    the discovery issue, I don't think it is.  I think this
10:13   12    sounds more like a summary judgment motion that y'all
10:14   13    have in front of us.
10:14   14                    Is there a discovery issue that needs to
10:14   15    be taken up?
10:14   16                    MR. SEDDON:  Your Honor, I --
10:14   17                    MR. MILLER:  Your Honor, I can explain
10:14   18    how this came up.  We did e-mail the Court when -- the
10:14   19    Court gave us direction to identify what claim language
10:14   20    the EMC constructions applied to.  And in that process
10:14   21    the proposal we got from defendants was applying these
10:14   22    two constructions beyond their proper scope.  So we
10:14   23    sent our own separate e-mail on that issue.
10:14   24                    So those e-mails were sent to the Court.
10:14   25    We're happy to maybe provide the Court some short
```

| 10:14 | 1 | five-page briefing on these two constructions in that |
| 10:14 | 2 | context instead of handling it here. |
| 10:14 | 3 | THE COURT:  That'd be fine. |
| 10:14 | 4 | Is there a separate discovery motion? |
| 10:14 | 5 | MR. COLLARD:  Your Honor, yes, there is a |
| 10:14 | 6 | discovery motion.  And let me -- I want to just frame |
| 10:14 | 7 | this out to make sure we're all on the same page and |
| 10:15 | 8 | doing this in the most efficient way. |
| 10:15 | 9 | The discovery dispute is about the |
| 10:15 | 10 | inclusion of products in the amended infringement |
| 10:15 | 11 | contentions.  And -- because we're anticipating |
| 10:15 | 12 | amending infringement contentions after we have nailed |
| 10:15 | 13 | down all these claim construction issues. |
| 10:15 | 14 | So I'm not sure if you want us to take |
| 10:15 | 15 | that up right now or not.  Because to me it goes more |
| 10:15 | 16 | with once we've got these claim construction issues |
| 10:15 | 17 | down and are setting a schedule and saying, hey, we're |
| 10:15 | 18 | going to amend our infringement contentions.  What |
| 10:15 | 19 | amendments are allowed or not allowed?  And we would -- |
| 10:15 | 20 | we have a dispute about that. |
| 10:15 | 21 | THE COURT:  Let's do this then.  Let's |
| 10:15 | 22 | table that discovery dispute until we get the briefing |
| 10:15 | 23 | on this.  We'll rule on that.  And then if there's |
| 10:15 | 24 | still a dispute, let -- I'm not sure who's taking -- I |
| 10:15 | 25 | have all new clerks starting today.  So I'm not sure |

```
10:15   1    who's taking Jeffrey's.  I think it'll be Beth who will
10:15   2    be taking Jeffrey's place.  A dramatic improvement, I'm
10:15   3    sure.
10:15   4                  And so Jeffrey's not even in here,
10:16   5    probably good that he's not in here.
10:16   6                  But so when you all -- why don't we do
10:16   7    this:  When you get us the briefs, give Beth a
10:16   8    heads-up -- be gentle, she will be brand new -- that I
10:16   9    asked you all to do this, just that it's ripe.  And
10:16   10   then we'll get to work on that.
10:16   11                 And as soon as we have that resolved,
10:16   12   then let her know that we need to have a quick hearing,
10:16   13   if we do, on resolving the products in the infringement
10:16   14   contentions issue.
10:16   15                 MR. COLLARD:  Your Honor, that works for
10:16   16   us.  Should we do the same schedule we did last time
10:16   17   with alternating five-page briefs simultaneous?
10:16   18                 THE COURT:  Yeah.  That sounds great.
10:16   19                 MR. COLLARD:  Do you guys need a week or
10:16   20   two weeks to do the opening brief since we've already
10:16   21   been looking at this issue?
10:16   22                 MR. SEDDON:  Your Honor, I think if we're
10:16   23   going to do this, then we would appreciate two weeks to
10:16   24   do the opening.
10:16   25                 I would say that, Your Honor, I think
```

```
10:17    1    they're effectively asking for reconsideration of an
10:17    2    issue that's already decided and you don't actually
10:17    3    need briefing to decide this.  It was argued and
10:17    4    thoroughly briefed in defendants' motion for judgment
10:17    5    on the pleadings.
10:17    6                THE COURT:  Well, it's been raised in a
10:17    7    discrete way.  Let's just go ahead and get a little
10:17    8    briefing done on it and that way it'd probably be
10:17    9    easier for Beth and I to swallow as well.  So we'll be
10:17   10    able to address it directly.
10:17   11                MR. COLLARD:  Thank you, Your Honor.
10:17   12    That sounds sufficient to us.
10:17   13                MR. SEDDON:  Understood, Your Honor.
10:17   14                THE COURT:  Anything else to take up?
10:17   15                Okay.
10:17   16                MR. COLLARD:  Not from ACQIS, Your Honor.
10:17   17    Thank you.
10:17   18                THE COURT:  For those of you who were
10:17   19    scheduled to start at 10:00 -- those of you who are not
10:17   20    on the 10 o'clock call, if you'll drop off and I'll let
10:17   21    Kristie and Jen get coordinated on that.  And then I'll
10:17   22    call back in.
10:17   23                So thank you, everyone.  Have a good day.
10:17   24                (Hearing adjourned.)
        25
```

```
 1   UNITED STATES DISTRICT COURT )

 2   WESTERN DISTRICT OF TEXAS     )

 3

 4

 5                I, Kristie M. Davis, Official Court

 6   Reporter for the United States District Court, Western

 7   District of Texas, do certify that the foregoing is a

 8   correct transcript from the record of proceedings in

 9   the above-entitled matter.

10                I certify that the transcript fees and

11   format comply with those prescribed by the Court and

12   Judicial Conference of the United States.

13                Certified to by me this 2nd day of

14   September 2022.

15

16                        /s/ Kristie M. Davis
                          KRISTIE M. DAVIS
17                        Official Court Reporter
                          800 Franklin Avenue
18                        Waco, Texas 76701
                          (254) 340-6114
19                        kmdaviscsr@yahoo.com

20

21

22

23

24

25
```