# Exhibit 56

-1-

1              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TEXAS
2                      WACO DIVISION

3   ACQIS LLC                 * July 13, 2022
                              *
4   VS.                       * CIVIL ACTION NOS.
                              *
5   ASUSTEK COMPUTER, INC.  *    W-20-CV-966
    LENOVO GROUP LTD., ET AL*    W-20-CV-967
6   WIWYNN CORPORATION       *    W-20-CV-968

7

           BEFORE THE HONORABLE ALAN D ALBRIGHT
8                     MOTION HEARING

9   APPEARANCES:

10  For the Plaintiff:  Case L. Collard, Esq.
                        Gregory S. Tamkin, Esq.
11                      Dorsey & Whitnay LLP
                        1400 Wewatta Street, Suite 400
12                      Denver, CO 80202

13                      Paige Arnette Amstutz, Esq.
                        Scott, Douglass & McConnico, LLP
14                      303 Colorado Street, Suite 2400
                        Austin, TX 78701
15
    For Defendant ASUSTek:
16
                        Eric A Buresh, Esq.
17                      Michelle L. Marriott, Esq.
                        Erise IP, PA
18                      7015 College Boulevard
                        Overland Park, KS 66211
19
    For Defendant Lenovo:
20
                        Jeffrey S. Seddon II, Esq.
21                      Desmarais LLP
                        230 Park Avenue, 26th Floor
22                      New York, NY 10169

23                      J. Stephen Ravel, Esq.
                        Kelly Hart & Hallman LLP
24                      303 Colorado Street, Suite 2000
                        Austin, TX 78701

25

2

```
1

     For Defendant Wiwynn:
2
                         Harold Davis, Esq.
3                        Greenberg Traurig
                         101 Second Street, Suite 2200
4                        San Francisco, CA 94105-3668

5                        Joseph William Shaneyfelt, Esq.
                         Greenberg Traurig, LLP
6                        300 West 6th Street, Suite 2050
                         Austin, TX 78701
7
                         Mark D. Siegmund, Esq.
8                        Steckler Wayne Cochran Cherry, PLLC
                         8416 Old McGregor Rd.
9                        Waco, TX 76712

10   Court Reporter:     Kristie M. Davis, CRR, RMR
                         PO Box 20994
11                       Waco, Texas 76702-0994
                         (254) 340-6114
12

13      Proceedings recorded by mechanical stenography,

14   transcript produced by computer-aided transcription.

15

16

17

18

19

20

21

22

23

24

25
```

3

```
01:35    1                    (Hearing begins.)
01:35    2                    (Call to Order of the Court)
01:35    3              DEPUTY CLERK:  A civil action in cases
01:35    4    6:20-CV-966, 967, 968, ACQIS LLC versus ASUSTek
01:35    5    Computers, Incorporated, et al.  Cases called for a
01:35    6    motions hearing.
01:35    7              THE COURT:  Announcements from counsel,
01:35    8    please.
01:35    9              MS. AMSTUTZ:  Good afternoon, Your Honor.
01:35   10    May it please the Court.  Paige Amstutz with Scott
01:35   11    Douglass & McConnico on behalf of plaintiff ACQIS LLC.
01:35   12              With me are my co-counsel from Dorsey &
01:36   13    Whitnay, Mr. Case Collard and Mr. Greg Tamkin.  And
01:36   14    depending on the issue at hand, you'll hear from one of
01:36   15    those two gentlemen.
01:36   16              THE COURT:  Very good.
01:36   17              Mr. Ravel?
01:36   18              MR. RAVEL:  Your Honor, Steve Ravel for
01:36   19    the two Lenovo defendants -- the two remaining Lenovo
01:36   20    defendants.
01:36   21              With me today is our client
01:36   22    representative, Taylor Ludlum.  And from the Desmarais
01:36   23    firm, Jeff Seddon.  And Mr. Seddon and I will both be
01:36   24    arguing today.
01:36   25              THE COURT:  Very good.  The first
```

4

01:36  1    issue -- I'm sorry.

01:36  2                    Mr. Siegmund?

01:36  3                    MR. SIEGMUND:  Good afternoon, Judge.

01:36  4    Mark Siegmund on behalf of defendant Wiwynn

01:36  5    Corporation.

01:36  6                    With me this afternoon are my two

01:36  7    co-counsel, Hal Davis and Joe Shaneyfelt from Greenberg

01:36  8    Traurig.  And we're ready to proceed.

01:36  9                    THE COURT:  Which office of Greenberg are

01:36  10   you with?

01:36  11                   MR. DAVIS:  I'm in San Francisco, Your

01:36  12   Honor.

01:36  13                   THE COURT:  Very good.

       14                   MR. SHANEYFELT:  And I'm in Austin.

       15                   THE COURT:  And you work with my friend

       16   Dale Wainwright?

       17                   MR. SHANEYFELT:  Yes, sir.

       18                   THE COURT:  Very good.

01:36  19                   MR. SHANEYFELT:  And Mark Stratton.

01:36  20                   MR. DAVIS:  Thank you, Your Honor.

01:36  21                   THE COURT:  Yes, sir.

01:36  22                   MR. BURESH:  Good afternoon, Your Honor.

01:36  23   I'm Eric Buresh on behalf of ASUSTek Computer, Inc.

01:37  24   And with me is Michelle Marriott.

01:37  25                   THE COURT:  I don't think I've had the

```
01:37    1    pleasure of having you in my court before, have I?
01:37    2                    MR. BURESH:  Only on video, Your Honor.
01:37    3                    THE COURT:  Okay.
01:37    4                    MR. BURESH:  So it's a pleasure to be
01:37    5    here.
01:37    6                    THE COURT:  Well, I'm sure there are
01:37    7    other places than Waco in the summer you would like to
01:37    8    be, but I'm glad you're here.
01:37    9                    MR. BURESH:  Thank you, Your Honor.
01:37   10                    THE COURT:  Okay.  The first issues we
01:37   11    need to take up are -- I think there are essentially
01:37   12    three motions that are the same, asking for, for lack
01:37   13    of a better word, an alignment of the claim
01:37   14    constructions with what has been determined in another
01:37   15    court.
01:37   16                    So I'm happy to take that up first from
01:37   17    whoever's going to argue that.
01:37   18                    MR. RAVEL:  Your Honor, Lenovo's going to
01:37   19    take the lead on that one.
01:37   20                    May I proceed, Your Honor?
01:38   21                    THE COURT:  Please.
01:38   22                    MR. RAVEL:  Judge, I don't want to get
01:38   23    off on the wrong foot with you today, but I would --
01:38   24                    THE COURT:  You're here.
01:38   25                    (Laughter.)
```

6

01:38    1                   MR. RAVEL:  So it's sort of guaranteed.

01:38    2      I don't have much to lose, do I?

01:38    3                   THE COURT:  Right.

01:38    4                   MR. RAVEL:  I would phrase this first set

01:38    5      of motions a little bit differently.  I would like to

01:38    6      call it whether there's going to be issue preclusion

01:38    7      based on an on-all-fours Federal Circuit opinion.

01:38    8                   Other than that, you have too many cases

01:38    9      to ask you to remember that every time -- oh, by the

01:38   10      way, I'm going to argue a procedural issue why this is

01:38   11      ripe.  And Mr. Seddon's going to pick up with the

01:38   12      substance.  And then the other defendants will follow

01:38   13      along.

01:38   14                   Judge, every time I stand up against this

01:39   15      ACQIS team, I compliment their creativity and their

01:39   16      persistence.  And I do that sincerely.  Today will be

01:39   17      no different.

01:39   18                   An example of that creativity and

01:39   19      persistence arose recently when they asked Judge

01:39   20      Gilliland to order an apex deposition of Lenovo.  He

01:39   21      told them no.  Then they said how about taking his

01:39   22      secretary?  And he told them no.

01:39   23                   So those are creative.  They're

01:39   24      persistent.  But they ended up being wrong.

01:39   25                   And I think the notion that collateral

| | | |
|---|---|---|
| 01:39 | 1 | estoppel issue preclusion based on the Federal Circuit |
| 01:39 | 2 | decision in EMC is of that ilk.  Let me elaborate very |
| 01:39 | 3 | briefly, like a couple minutes briefly. |
| 01:39 | 4 | Two things are true that should make that |
| 01:39 | 5 | decision really pretty easy.  Number one, ASUSTek is |
| 01:39 | 6 | both a movant under 12(c) and has answered.  So that |
| 01:40 | 7 | should take care of things anyway.  And something that |
| 01:40 | 8 | the Court graciously did yesterday, that is denying our |
| 01:40 | 9 | 12(b)(6) motions, made the analysis pretty easy too. |
| 01:40 | 10 | We had this argument before that we were |
| 01:40 | 11 | in a Hobson's choice, that if we answered when the |
| 01:40 | 12 | 12(b)(6)s were pending, we waived those.  And if we |
| 01:40 | 13 | didn't answer, we risked -- took a risk that the other |
| 01:40 | 14 | side would argue that a 12(c) was premature.  We got |
| 01:40 | 15 | that second one. |
| 01:40 | 16 | Now, we're going to be answering within |
| 01:40 | 17 | days, so it shouldn't really make much difference.  But |
| 01:40 | 18 | let me go on for like another minute. |
| 01:40 | 19 | It's undisputed, Judge, and indisputable |
| 01:40 | 20 | that ACQIS' problem with the 12(c) motion is entirely |
| 01:40 | 21 | based on its timing and not on its contents.  There is |
| 01:41 | 22 | no argument that it goes beyond the four corners, that |
| 01:41 | 23 | it's not a 100 percent totally proper 12(b), timing |
| 01:41 | 24 | only. |
| 01:41 | 25 | And now we're kind of circling back to |

| | | |
|---|---|---|
| 01:41 | 1 | one of those creative and persistent things.  If you're |
| 01:41 | 2 | in ACQIS' place, try to get a 12(c) that's a proper |
| 01:41 | 3 | 12(c) with an argument about timing converted to a |
| 01:41 | 4 | summary judgment. |
| 01:41 | 5 | A cynical -- a cynical advocate might say |
| 01:41 | 6 | that was an attempt to cut Lenovo's case law and |
| 01:41 | 7 | summary judgment quota of pages in half.  And if that's |
| 01:41 | 8 | so, it was creative and persistent. |
| 01:41 | 9 | But we just -- we think that the better |
| 01:41 | 10 | course is to take up the 12(c)s now and to reject the |
| 01:41 | 11 | notion of a premature advisory opinion about summary |
| 01:41 | 12 | judgment pages. |
| 01:42 | 13 | Judge, I think you would be disappointed |
| 01:42 | 14 | if I didn't refer to at least one slide, and it is only |
| 01:42 | 15 | going to be one today.  And that is Slide 2 in our |
| 01:42 | 16 | deck.  The first substantive slide is a San Antonio |
| 01:42 | 17 | opinion that collects cases from all over the Fifth |
| 01:42 | 18 | Circuit and all over the country that says proper |
| 01:42 | 19 | 12(c)s may be -- that where the argument is made that |
| 01:42 | 20 | they're premature can be reclassified as a 12(b)(6). |
| 01:42 | 21 | THE COURT:  Is this an Xavier Rodriguez |
| 01:42 | 22 | opinion? |
| 01:42 | 23 | MR. RAVEL:  No.  It's a magistrate whose |
| 01:42 | 24 | name I didn't know, which is why I didn't tout the |
| 01:42 | 25 | author all that much.  But it's a good question, Judge. |

9

| | | |
|---|---|---|
| 01:42 | 1 | THE COURT:  Judge Rodriguez is probably |
| 01:42 | 2 | the biggest scholar on civil procedure of anyone I'm |
| 01:42 | 3 | aware of. |
| 01:42 | 4 | MR. RAVEL:  Believe me, if I could have, |
| 01:42 | 5 | I would have dropped his name.  I mean, it's right up |
| 01:43 | 6 | there with Andy Austin, if you think about it. |
| 01:43 | 7 | THE COURT:  The late Andy Austin. |
| 01:43 | 8 | MR. RAVEL:  Well, that's kind of a harsh |
| 01:43 | 9 | term.  How about the emeritus Andy Austin? |
| 01:43 | 10 | It's a big day in this case, Judge.  When |
| 01:43 | 11 | you decide issue preclusion, there is a possibility, |
| 01:43 | 12 | using Lenovo as an example, that this case goes from |
| 01:43 | 13 | unmanageable to manageable and a single jury trial.  40 |
| 01:43 | 14 | patent claims spread across 5 patents becomes 9 patent |
| 01:43 | 15 | claims spread against 3 even before the second |
| 01:43 | 16 | narrowing.  So you have an opportunity today to make |
| 01:43 | 17 | this case simpler and more manageable at a very key |
| 01:43 | 18 | time. |
| 01:43 | 19 | We're in between opening expert reports |
| 01:44 | 20 | and rebuttal expert reports.  And if we could reduce |
| 01:44 | 21 | the bulk of what we're doing appropriately by |
| 01:44 | 22 | two-thirds, the Court understands better than anybody |
| 01:44 | 23 | how the Court, its staff and the parties are best |
| 01:44 | 24 | served by that. |
| 01:44 | 25 | So I'm going to turn it over to |

| | | |
|---|---|---|
| 01:44 | 1 | Mr. Seddon for an Xavier Rodriguez-quality discussion |
| 01:44 | 2 | of collateral estoppel and issue preclusion. |
| 01:44 | 3 | MR. SEDDON:  Your Honor, if I may. |
| 01:44 | 4 | May it please the Court.  I won't claim |
| 01:44 | 5 | for an Xavier Rodriguez quality, although I appreciate |
| 01:44 | 6 | Mr. Ravel's kind words. |
| 01:44 | 7 | But I am going to try to take on the |
| 01:44 | 8 | issue of whether the Court is going to permit ACQIS to |
| 01:44 | 9 | continue asserting claim construction arguments and |
| 01:44 | 10 | standards-based infringement reads that both the |
| 01:45 | 11 | District of Massachusetts and the Federal Circuit have |
| 01:45 | 12 | already rejected, or whether the Court will follow the |
| 01:45 | 13 | Federal Circuit's claim construction and the District |
| 01:45 | 14 | of Massachusetts' determination of noninfringement, now |
| 01:45 | 15 | affirmed, that ACQIS' patents do not cover products |
| 01:45 | 16 | using the PCI Express standard under those |
| 01:45 | 17 | constructions. |
| 01:45 | 18 | I think the answer is clear:  The Court |
| 01:45 | 19 | should follow the Federal Circuit's lead and stop ACQIS |
| 01:45 | 20 | from continuing to assert its rejected theories. |
| 01:45 | 21 | Rather than the Court and the parties, as |
| 01:45 | 22 | Mr. Ravel said, focusing on sort of a broad swath of |
| 01:45 | 23 | claims over a broad set of patents, really now is the |
| 01:45 | 24 | time to put the PCI Express infringement theories to |
| 01:45 | 25 | the side and focus the case on the small set of patents |

—11—

01:45   1   and the manageable set of asserted claims that are

01:45   2   remaining under ACQIS' theory of infringement against

01:45   3   USB 3.

01:45   4              Now, Your Honor, we identified, as I'm

01:46   5   sure you're familiar, a number of different bases for

01:46   6   judgment in our 12(c) motion.  And we also have our

01:46   7   co-counsel's motions for issue preclusion and the

01:46   8   motion for reconsideration of claim construction.

01:46   9              But I think the core of the issue and the

01:46   10  easiest way to approach this is to focus on the

01:46   11  collateral estoppel argument.  And so unless Your Honor

01:46   12  has any questions on the other issues, that's what I'm

01:46   13  going to focus on.

01:46   14             THE COURT:  That's fine.

01:46   15             MR. SEDDON:  So collateral estoppel, in

01:46   16  our opinion, prevents ACQIS from two arguments here.

01:46   17  First, it prevents ACQIS from challenging the Federal

01:46   18  Circuit's claim construction.  And, second, it prevents

01:46   19  ACQIS from asserting PCI Express infringes claims, or

01:46   20  setting PCI bus transaction or address and data bits of

01:46   21  a PCI bus transaction, or any variation thereof.

01:46   22             Now, collateral estoppel requires four

01:46   23  elements, all of which are present here.  The first is

01:46   24  identity of issues.  The second is that the identical

01:47   25  issues were actually litigated in the prior litigation.

01:47  1    The third, that the issues actually litigated were

01:47  2    necessary to the judgment.  And the fourth is that

01:47  3    there's no sort of special circumstances that preclude

01:47  4    collateral estoppel.

01:47  5              ACQIS, in its briefing, didn't dispute

01:47  6    the second and third -- or the third and fourth

01:47  7    elements.  And those are addressed in our brief, so I'm

01:47  8    not going to cover those here.

01:47  9              But I do want to focus on the first two

01:47  10   which I really think are the two issues in dispute:

01:47  11   Whether or not the issues were identical in the prior

01:47  12   litigation and whether or not the issues were actually

01:47  13   litigated in prior litigation.

01:47  14             So first I want to look at the claim

01:47  15   construction issues.  And now I'm going to turn to

01:47  16   Slide 3 of the deck that we handed up.  So the first

01:47  17   thing I think is important to keep in mind is that the

01:47  18   asserted patents here are all closely related.  They're

01:47  19   continuations of the patents that were asserted in the

01:47  20   EMC case.

01:48  21             So I won't belabor the point, but Your

01:48  22   Honor can see on Slide 3 there's two different families

01:48  23   of patents, one with non-reissues and one with

01:48  24   reissues.  And all of the patents asserted in this

01:48  25   case, those are the patents highlighted in yellow, are

—13—

01:48   1      continuations of patents asserted in the EMC case.

01:48   2                  So we are dealing with the same set of

01:48   3      specifications, the same set of inventions, the same

01:48   4      theory and the same disclosure.  There's some minor

01:48   5      tweaks to the specification, but as we'll go through,

01:48   6      none of those are material.  All the stuff that we're

01:48   7      looking at here was in the patents in front of the EMC

01:48   8      court and in front of the Federal Circuit.

01:48   9                  Now, if we turn to the next slide, Slide

01:48   10     4, you can see that the claim construction issues in

01:48   11     this case are also identical.  So we've got three sets

01:48   12     of terms that we're asking Your Honor to adopt from the

01:48   13     Federal Circuit's decision.

01:49   14                 The first, "peripheral component PCI bus

01:49   15     transaction."  We have the same term in EMC and the

01:49   16     same term here.  Some of the terms refer to PCI bus

01:49   17     transaction instead of saying the full thing spelled

01:49   18     out, but they are otherwise identical.

01:49   19                 The second set of terms "communicating

01:49   20     address and data bits of PCI bus transaction" in EMC or

01:49   21     "conveying or communicating address and data bits of

01:49   22     PCI bus transactions" here are virtually identical

01:49   23     except for the verb, which is a synonym.  So that is an

01:49   24     identical issue.

01:49   25                 And in the final set of terms, the

—14—

01:49  1    encoding terms, here you've got some rewording, but

01:49  2    honestly the substance is identical.  You can see on

01:49  3    both sets of terms on the third row we've got "encoded

01:49  4    address and data bits of a PCI bus transaction," and

01:49  5    the only real difference is whether or not you're going

01:49  6    to encode them in a serial bit stream or a serial form.

01:50  7            Now, that's not a material difference

01:50  8    here.  And what's more, we know it's not material and

01:50  9    we know that we should be looking at the core of the

01:50  10   substance because the Federal Circuit tells us that

01:50  11   when you're looking at collateral estoppel, you don't

01:50  12   need to have identity of terms as long as the issues

01:50  13   are identical.

01:50  14           And in this case, the Federal Circuit in

01:50  15   its opinion on Footnote 1 said that the District Court

01:50  16   was correct in treating related terms similarly.

01:50  17           So there's no reason for Your Honor to

01:50  18   take a different tact and try to parse out these minor

01:50  19   differences that ACQIS has not identified as material

01:50  20   with regard to these terms versus the EMC terms.

01:50  21           So for the claim construction issue there

01:50  22   is identity of issues.  The first element of collateral

01:50  23   estoppel is met, because the issues are identical.

01:50  24   And, in fact, two of the terms are identical or

01:50  25   effectively identical.

| | |
|---|---|
| 01:51 | 1 |

01:51    1               Now, if we turn to the next slide, Slide

01:51    2   5, we get to the identity of issues with regard to

01:51    3   infringement.  And here, again, we have identical

01:51    4   issues.  ACQIS' theory of infringement is the same in

01:51    5   this litigation as it was in EMC.

01:51    6               And just to show Your Honor, on the left

01:51    7   side of the slide here we've got ACQIS' theory.  This

01:51    8   an excerpt from ACQIS' argument trying to show that it

01:51    9   was asserting the same theory of infringement against

01:51   10   effectively the same products across all defendants

01:51   11   here.

01:51   12               And what did ACQIS say?  ACQIS said that

01:51   13   it's alleging that defendants' products infringe

01:51   14   critical limitations of the asserted patent claims

01:51   15   because, among other things, the Intel CPUs employ PCIe

01:51   16   standards technology which plaintiff alleges practices

01:51   17   critical limitations of the asserted patents.

01:51   18               So for these limitations, for the PCI bus

01:52   19   transaction limitations, ACQIS is asserting a standards

01:52   20   read here.  And that's the same standards read they

01:52   21   were asserting in the EMC case.

01:52   22               If you look on the right-hand side, you

01:52   23   can see an excerpt from ACQIS' opening brief in the

01:52   24   Federal Circuit appeal.  They talk about the PCI

01:52   25   standard being succeeded by the PCI Express standard.

—16—

01:52  1   And they say that PCI Express standard adopted the same

01:52  2   new interface channel that ACQIS invented, making the

01:52  3   same claim here.

01:52  4              And they -- then they go on to say that

01:52  5   they, in fact, filed suit against EMC because those EMC

01:52  6   computer modules that use PCI Express are using them to

01:52  7   communicate PCI bus transactions.

01:52  8              So in both cases, here and in front of

01:52  9   the Federal Circuit and EMC, ACQIS is asserting a

01:52 10   standards-based read against PCI Express.  We've got

01:52 11   the identical read.

01:52 12              So that gets us to identity of issues for

01:52 13   both claim construction and for noninfringement, or

01:52 14   infringement.

01:52 15              Now, in fact, if you turn to the next

01:53 16   slide, Slide 6, you can see that this was squarely at

01:53 17   the heart of ACQIS' appeal.  In their opening brief,

01:53 18   the very beginning and introduction, they said the

01:53 19   District Court granted EMC summary judgment of

01:53 20   noninfringement against all asserted claims on the

01:53 21   basis that PCI Express does not communicate PCI bus

01:53 22   transactions as construed by the District Court.

01:53 23              And the Federal Circuit opinion on the

01:53 24   right affirmed that.  The Federal Circuit said that

01:53 25   that determination flowed directly from the claim

| | | |
|---|---|---|
| 01:53 | 1 | constructions it adopted. |
| 01:53 | 2 | So to have ACQIS squarely lose on the |
| 01:53 | 3 | issue of whether or not PCI Express communicates PCI |
| 01:53 | 4 | bus transactions in EMC, at the Federal Circuit and at |
| 01:53 | 5 | the District Court and to continue here would run |
| 01:54 | 6 | completely -- to make that same assertion here would |
| 01:54 | 7 | run completely afoul of collateral estoppel.  These are |
| 01:54 | 8 | identical issues. |
| 01:54 | 9 | On the next slide, Slide 7, ACQIS, in its |
| 01:54 | 10 | response, tried to identify differences between these |
| 01:54 | 11 | cases and the EMC cases.  But none of the differences |
| 01:54 | 12 | that ACQIS identified are material. |
| 01:54 | 13 | So, one, on the first row of the slide, |
| 01:54 | 14 | ACQIS attempted to argue that EMC was procedurally |
| 01:54 | 15 | different because it didn't address what information is |
| 01:54 | 16 | in a PCI bus transaction.  But the fact is that's an |
| 01:54 | 17 | argument that they already made at the Federal Circuit |
| 01:54 | 18 | and they lost.  The Federal Circuit rejected it. |
| 01:54 | 19 | If you look on the right side of the |
| 01:54 | 20 | slide, you can see and accept two excerpts from the |
| 01:54 | 21 | oral argument.  And you can see that at the oral |
| 01:54 | 22 | argument the panel actively addressed the issue of |
| 01:55 | 23 | whether or not all the elements -- or what elements |
| 01:55 | 24 | were contained in a PCI bus transaction. |
| 01:55 | 25 | Judge said -- excuse me.  Judge Chen said |

01:55  1   to ACQIS' counsel, you know, there's no such thing as a

01:55  2   PCI transaction that does not have control bits.

01:55  3   Because part of the issue ACQIS was arguing was are

01:55  4   there or are there not control bits within a PCI bus

01:55  5   transaction.

01:55  6           So they were addressing exactly the

01:55  7   question that ACQIS tries to raise as a point of

01:55  8   distinction here.  What information is in a PCI bus

01:55  9   transaction?

01:55  10          Again, below that Judge Chen in

01:55  11  responding to ACQIS says, that's the entire PCI bus

01:55  12  transaction.  When you've got a PCI bus transaction,

01:55  13  it's not just selected pieces of the PCI bus

01:55  14  transaction.

01:55  15          So the notion that the EMC is

01:55  16  procedurally different because it didn't address what

01:55  17  information was in a PCI bus transaction just doesn't

01:55  18  square with the record.

01:55  19          ACQIS has also argued that some of the

01:55  20  asserted claims in this case are different because in

01:56  21  addition to requiring address and data bits of a PCI

01:56  22  bus transaction, they also require byte-enable

01:56  23  information in a PCI bus transaction.  Well, that's

01:56  24  also something that they raised at the Federal Circuit.

01:56  25          You can see on the right hand of the

—19—

01:56  1  bottom row of the slide that ACQIS, in fact, made that

01:56  2  argument at the Federal Circuit and lost.  And in

01:56  3  addition to that, frankly, even if it were true, even

01:56  4  if it were a new argument, it has no bearing on the

01:56  5  issue of infringement, Your Honor.  Because adding an

01:56  6  additional claim limitation -- or adding an additional

01:56  7  element of a claim limitation will not make it easier

01:56  8  for ACQIS to show infringement here.

01:56  9         The Federal Circuit has already said that

01:56  10  it cannot show that there's communication of a PCI bus

01:56  11  transaction in PCI Express.  So having it also need to

01:56  12  show that there's communication of byte-enable

01:57  13  information from a PCI bus transaction in PCI Express

01:57  14  only makes ACQIS' job harder.  It doesn't make it

01:57  15  easier.  It does not and should not affect Your Honor's

01:57  16  determination of whether or not collateral estoppel

01:57  17  applies here.

01:57  18         The third major difference and the

01:57  19  so-called critical difference that ACQIS identifies

01:57  20  between the issues in front of the EMC court and the

01:57  21  issues before Your Honor is the notion that the patents

01:57  22  here disclose transactions originating in serial rather

01:57  23  than in parallel form and that the patents address and

01:57  24  the claims address embodiments that don't have a PCI

01:57  25  bus.  That's something that ACQIS calls a critical

—20—

01:57 1    difference, but the fact is those same issues were in

01:57 2    front of the EMC court.

01:57 3                    So if you look at ACQIS -- on the left

01:57 4    hand of the slide, Slide 8, we've got an excerpt from

01:58 5    ACQIS' brief in the Federal Circuit at Page 47.  There

01:58 6    they specifically call out that the patent

01:58 7    specifications in the EMC case, like this claim

01:58 8    language in the EMC case, disclose embodiments that

01:58 9    exclude a PCI local bus.

01:58 10                   That, as shown in Figure 8 of the '415

01:58 11   patent, one of the EMC patents, the PCI components

01:58 12   connect directly to interface controllers or through

01:58 13   other bus types without any intervening PCI local bus.

01:58 14                   So the notion that because these patents

01:58 15   in this case don't have a PCI local bus don't require a

01:58 16   conversion from a parallel PCI bus transaction to a

01:58 17   serial PCI bus transaction.

01:58 18                   The notion that that's some sort of

01:58 19   difference between the EMC case and this case is just

01:58 20   not true.  That information, that argument was

01:58 21   presented to the Federal Circuit in EMC.

01:58 22                   And we also have Figure 8.  And you can

01:58 23   see in Figure 8 ACQIS argued to the Federal Circuit

01:59 24   that there was a direct connection.  There was no PCI

01:59 25   local bus in that figure, and therefore there's no need

—21—

01:59  1   to convert from parallel to serial in that figure.

01:59  2              But that's also something that was in

01:59  3   front of the Federal Circuit and the Federal Circuit

01:59  4   rejected.  And there's no reason to identify there's a

01:59  5   difference here.

01:59  6              Turning to Slide 9, Your Honor, so

01:59  7   another point, and this sort of ties into that same

01:59  8   argument, the notion that there's no PCI local bus,

01:59  9   ACQIS argues that Judge Payne, when Judge Payne

01:59  10  addressed collateral estoppel in the context of claim

01:59  11  construction, recognized this difference.

01:59  12             But the fact is that -- so two things:

01:59  13  First of all, that analysis that ACQIS cites from Judge

01:59  14  Payne wasn't actually focused on collateral estoppel.

01:59  15  The analysis that they specifically cite at Pages 15 to

01:59  16  16 of their brief was really focused on an IPR

02:00  17  disclaimer argument.

02:00  18             And so there Judge Payne was actually

02:00  19  comparing just one of the patents from the EMC decision

02:00  20  and one of the patents that was at issue in the IPR to

02:00  21  the patents asserted here.  So I -- that analysis, I

02:00  22  think, is actually not quite on point here.

02:00  23             But the other point is the figures that

02:00  24  Judge Payne pointed to as not being asserted in the

02:00  25  patent that he was distinguishing are, in fact, present

—22—

02:00  1    in the EMC case.

02:00  2                So a lot of ACQIS' arguments here focus

02:00  3    around these figures, Figures 8A, Figures 8B, Figures

02:00  4    8C in its asserted patents.  And you can see them on

02:00  5    the left, the '768 patent.  That's the figure that

02:00  6    Judge Payne was pointing to, saying it wasn't in the

02:00  7    patent that was at issue on the IPR.

02:00  8                But, in fact, those same figures were

02:00  9    present in the patents asserted in EMC.  So on the

02:00  10   right you can see an excerpt from the '468 Patent, one

02:01  11   of the patents asserted in EMC.  It's got identical

02:01  12   figures.

02:01  13               There is no material difference between

02:01  14   the patents asserted here and the patents asserted in

02:01  15   EMC.

02:01  16               And while ACQIS is pointing to Judge

02:01  17   Payne's analysis, that analysis which was narrowly

02:01  18   focused in this cite on collateral estoppel, just

02:01  19   doesn't apply here.  Because he didn't have the

02:01  20   opportunity to consider all of the patents asserted in

02:01  21   EMC.

02:01  22               He also, frankly, didn't have the

02:01  23   opportunity to consider the arguments that ACQIS

02:01  24   actually made in the EMC Federal Circuit appeal,

02:01  25   because his decision was made back in the fall of last

—23—

02:01   1   year.  And so now we know more.  And, frankly, with the

02:01   2   record that we have, have a better opportunity to look

02:01   3   at whether collateral estoppel applies based upon the

02:01   4   arguments that ACQIS has made rather than just looking

02:01   5   at the thin slice that Judge Payne was able to look at

02:01   6   at the time of claim construction.

02:01   7          Now, Your Honor, that's my point on

02:02   8   identity of issues.  I think all of the evidence shows

02:02   9   that the issues are identical between the patents

02:02   10  asserted in EMC and the infringement allegations

02:02   11  asserted in EMC and the issues here.  The next question

02:02   12  we have is whether or not those issues were actually

02:02   13  litigated.  This is the second prong of collateral

02:02   14  estoppel, one of two that are actually disputed.

02:02   15         Now, I don't think there's any real

02:02   16  question that claim construction was actively disputed

02:02   17  at the Federal Circuit in EMC.  It was, in fact, the

02:02   18  center of ACQIS' argument.  If you look at Slide 5 --

02:02   19  I'm sorry -- Slide 6 again, Your Honor.  Renumbered

02:02   20  these.

02:02   21         You can see that the Federal Circuit --

02:02   22  ACQIS' opening previous brief to the Federal Circuit on

02:03   23  the left identified the fact that they were challenging

02:03   24  summary judgment of noninfringement on the basis of the

02:03   25  Court's determination as construed by the District

—24—

02:03  1    Court.  They were challenging the claim construction on

02:03  2    appeal.

02:03  3                    And, in fact, on the right you can see

02:03  4    the Federal Circuit made a determination based on

02:03  5    infringement flowing from the claim constructions.  And

02:03  6    then it goes on to say:  Because ACQIS' arguments on

02:03  7    appeal are directed only to those constructions.

02:03  8                    So ACQIS' arguments on appeal were

02:03  9    directed to claim construction.  That is what they were

02:03  10   challenging on appeal.  That was fully litigated on

02:03  11   appeal.  And, Your Honor, that is enough to show full

02:03  12   and fair litigation and show the issue was actually

02:03  13   litigated.

02:03  14                   If you look at the Nestlé court decision,

02:03  15   the Nestlé USA v. Steuben Foods that we cited in our

02:03  16   briefing, you'll see that the Federal Circuit held that

02:03  17   fully litigating a claim construction on appeal, the

02:03  18   opportunity to litigate a claim construction on appeal,

02:03  19   that suffices as actual litigation for collateral

02:04  20   estoppel.

02:04  21                   Now, ACQIS says that because the claim

02:04  22   construction was stipulated below that means it was not

02:04  23   actually litigated.

02:04  24                   And, Your Honor, that may have been true

02:04  25   when they argued that to Judge Payne back in the fall.

-25-

02:04  1    That may have been true before the Federal Circuit

02:04  2    opinion that the claim construction stipulated below in

02:04  3    the District of Massachusetts might not have been

02:04  4    enough.

02:04  5            I don't think it actually is because I

02:04  6    think the record in the District of Massachusetts shows

02:04  7    that they did, in fact, argue the stipulated

02:04  8    construction.  They fought over the meaning of the

02:04  9    stipulated construction.  It was ultimately rejected by

02:04  10   the District Court.

02:04  11           But even if it were true that the

02:04  12   stipulation in the District of Massachusetts made a

02:04  13   difference, it doesn't matter here because now that

02:04  14   they have fully litigated, they have actively

02:04  15   litigated, they challenged the District Court's

02:05  16   determination on the basis of claim construction in the

02:05  17   Federal Circuit, there's no question that it's been

02:05  18   actually litigated.

02:05  19           The second element that we're moving for

02:05  20   collateral estoppel on, noninfringement, that was also

02:05  21   actually litigated.  That was actually litigated in the

02:05  22   District Court.  They put up the issue -- well, EMC

02:05  23   asserted on a motion for summary judgment that PCI

02:05  24   Express does not infringe the PCI bus transaction

02:05  25   limitations and the other limitations addressed in the

| | | |
|---|---|---|
| 02:05 | 1 | Federal Circuit's decision. |
| 02:05 | 2 | The District Court decided that issue, |
| 02:05 | 3 | decided it based on undisputed facts that PCI Express |
| 02:05 | 4 | and products using PCI Express do not have address and |
| 02:05 | 5 | data phases as required by PCI bus transactions, do not |
| 02:05 | 6 | have control signals as required by PCI bus |
| 02:05 | 7 | transactions and do not have parity signals as required |
| 02:05 | 8 | by PCI bus transactions, and granted summary judgment |
| 02:06 | 9 | on that issue.  That was actually litigated. |
| 02:06 | 10 | And what's more, that issue was not even |
| 02:06 | 11 | appealed by ACQIS.  So as you can see on Slide 6, |
| 02:06 | 12 | ACQIS' arguments on appeal were actually directed just |
| 02:06 | 13 | to claim construction.  They did not contest the |
| 02:06 | 14 | finding below, that under those constructions there was |
| 02:06 | 15 | noninfringement.  That's just not something they raised |
| 02:06 | 16 | on appeal. |
| 02:06 | 17 | So that was actually litigated.  It is |
| 02:06 | 18 | final. |
| 02:06 | 19 | Now, ACQIS has its arguments to say that |
| 02:06 | 20 | these issues were not actually litigated.  If you turn |
| 02:06 | 21 | to Slide 10, we address those.  In fact -- so I already |
| 02:06 | 22 | briefly talked about the stipulated constructions. |
| 02:06 | 23 | In addition to the fact that, in fact, |
| 02:06 | 24 | they were fully litigated, ACQIS also raised that issue |
| 02:06 | 25 | at the Federal Circuit.  So you can see on the first |

—27—

02:07    1    row of Slide 10 we're quoting from ACQIS' brief at Page

02:07    2    31.  They raised the issue that they say that the

02:07    3    District Court construed the PCI bus transaction term

02:07    4    based on a purported agreement about the meaning of the

02:07    5    term.  That's something they raised at the Federal

02:07    6    Circuit and the Federal Circuit rejected it.  There's

02:07    7    no reason for Your Honor to address that argument again

02:07    8    here.

02:07    9            If you look to the second row, ACQIS

02:07    10   argues that the EMC decision didn't consider the

02:07    11   difference between a PCI bus transaction and physical

02:07    12   signals used to convey a transaction.  Well, in fact,

02:07    13   that was another issue that was raised on appeal and

02:07    14   that the Federal Circuit rejected.

02:07    15           And so on the right of the slide you can

02:07    16   see another excerpt from the transcript of the

02:07    17   argument.  Judge Chen talks about the difference

02:07    18   between transaction layers and physical layers in

02:07    19   ACQIS' briefing.

02:07    20           And goes on to say:  There's nothing in

02:08    21   the PCI local bus specification that talks about these

02:08    22   two kinds of layers and distinguishing signals based

02:08    23   upon whether they're in the transaction layer versus

02:08    24   the physical layer; is that right?

02:08    25           And ACQIS says:  The words "physical" and

| 02:08 | 1 | "transaction layer" are not used in that particular |
| 02:08 | 2 | specification. |
| 02:08 | 3 | This is something that, again, they |
| 02:08 | 4 | argued in front of the Federal Circuit.  They lost. |
| 02:08 | 5 | It's not something that is a difference here, not |
| 02:08 | 6 | something that shows it wasn't actually litigated.  It, |
| 02:08 | 7 | in fact, is a point that shows it was actually |
| 02:08 | 8 | litigated. |
| 02:08 | 9 | And then finally, ACQIS argues that |
| 02:08 | 10 | there's factual issues that preclude judgment of |
| 02:08 | 11 | noninfringement here.  That there's issues that need to |
| 02:08 | 12 | be dived into as far as expert analysis.  That the |
| 02:08 | 13 | experts need to weigh in as to whether or not PCI |
| 02:08 | 14 | Express can communicate a PCI bus transaction under |
| 02:08 | 15 | these constructions. |
| 02:08 | 16 | Again, that's an argument that ACQIS |
| 02:09 | 17 | argued at the Federal Circuit and that the Federal |
| 02:09 | 18 | Circuit rejected. |
| 02:09 | 19 | You can see the bottom right of Slide 10 |
| 02:09 | 20 | ACQIS says:  If this Court just looks at the intrinsic |
| 02:09 | 21 | record and thinks that it's absolutely clear that's |
| 02:09 | 22 | what a PCI bus transaction means, then that is what Mr. |
| 02:09 | 23 | Perry is suggesting requires affirmance. |
| 02:09 | 24 | I just don't think that the Court can get there.  And |
| 02:09 | 25 | for the specific reason we talked about, there has to |

02:09  1    be a remand for some sort of discussion of expert

02:09  2    testimony.

02:09  3                So they laid it out for the Federal

02:09  4    Circuit.  They said, if you don't think that we need to

02:09  5    get to expert testimony, then just affirm.  But we

02:09  6    think that you need to get to expert testimony and you

02:09  7    can remand.

02:09  8                And the expert -- the Federal Circuit

02:09  9    answered that implicit question by affirming the

02:09  10   decision.  It did not remand for further consideration

02:09  11   of expert testimony.  It had the opportunity to do so.

02:09  12   ACQIS asked it to do so.  And the Federal Circuit

02:09  13   rejected that argument.

02:09  14               So the notion that factual issues, or the

02:09  15   need for expert testimony precludes an issuance of

02:10  16   judgment of noninfringement here just does not hold

02:10  17   water.  That's something that's already been rejected.

02:10  18               Now, Your Honor, the fact is these claims

02:10  19   have been litigated fully and fairly.  ACQIS has

02:10  20   litigated its claims against PCI Express for more than

02:10  21   a decade.  It has had every opportunity in the Eastern

02:10  22   District of Texas, in the District of Massachusetts and

02:10  23   finally at the Federal Circuit, to make its arguments

02:10  24   and to try to show that PCI Express, products using PCI

02:10  25   Express, communicate PCI bus transactions or address

02:10   1   and data bits of PCI bus transactions or encoded serial

02:10   2   bit streams of PCI bus transactions as required by its

02:10   3   patents.

02:11   4              It has lost.  And now that it has lost,

02:11   5   the Court should not permit ACQIS to continue to

02:11   6   relitigate these same issues here and waste both the

02:11   7   parties' and the Court's time and resources on

02:11   8   arguments when the Federal Circuit has already spoken.

02:11   9              As Mr. Ravel said, we're past the close

02:11   10  of fact discovery.  We're now in the midst of expert

02:11   11  reports.  Now is the time to narrow the case.  Your

02:11   12  Honor can do that.  Your Honor can narrow the case now

02:11   13  by rejecting these claims that have already been lost

02:11   14  and focus it on the remaining issues that have not

02:11   15  already been litigated, which are ACQIS' allegations

02:11   16  against USB 3.

02:11   17             Against Lenovo defendants that leaves

02:11   18  three patents, nine asserted claims.  That's an actual

02:11   19  manageable number.  That's where the parties and that's

02:11   20  where the Court should be focusing their attention.

02:11   21             And so for those reasons, Your Honor,

02:11   22  defendants submit that collateral estoppel applies and

02:12   23  Your Honor should adopt the Federal Circuit's claim

02:12   24  constructions and, as a matter of collateral estoppel,

02:12   25  should grant judgment on the pleadings that there is no

—31—

02:12  1    infringement by products using PCI Express of ACQIS'

02:12  2    patents.

02:12  3              THE COURT:  A response?  Are you done for

02:12  4    everyone on this side?

02:12  5              MR. SEDDON:  So --

02:12  6              THE COURT:  Mr. Siegmund?

02:12  7              MR. SIEGMUND:  Your Honor, we have a

02:12  8    slightly different motion procedurally.  I'm not going

02:12  9    to go through --

02:12  10             THE COURT:  Happy to take yours up.

02:12  11   Let's take all of the defendants up, and then I'll hear

02:12  12   from the plaintiff.

02:12  13             MR. SIEGMUND:  Okay.  Great.

02:12  14             MR. SEDDON:  Thank you, Your Honor.

02:12  15             MR. SIEGMUND:  I'm going to hand out some

02:12  16   slides real quick, Judge.

02:13  17             May it please the Court?

02:13  18             THE COURT:  Yes, sir.

02:13  19             MR. SIEGMUND:  Mark Siegmund on behalf of

02:13  20   defendant Wiwynn.

02:13  21             And, Judge, we have a slightly different

02:13  22   motion here.  Our motion is a motion for

02:13  23   reconsideration of your prior claim construction order

02:13  24   in this case.  And we are simply asking for the Court

02:13  25   to reconsider its construction in light of the Federal

| | | |
|---|---|---|
| 02:13 | 1 | Circuit's opinion, as well as the decision in the EMC. |
| 02:13 | 2 | Which as you already heard, Judge, the |
| 02:13 | 3 | Federal Circuit affirmed not only the motion for |
| 02:13 | 4 | summary judgment granted against ACQIS in the District |
| 02:13 | 5 | of Massachusetts, but they also went out of their way |
| 02:13 | 6 | to specifically adopt those claim constructions. |
| 02:13 | 7 | So all we're asking Your Honor to do, |
| 02:13 | 8 | from Wiwynn's perspective, is to adopt the same |
| 02:13 | 9 | constructions consistent with the Federal Circuit. |
| 02:13 | 10 | Alternatively, as you already heard from |
| 02:13 | 11 | Lenovo's counsel, we also agree that issue -- issue |
| 02:14 | 12 | preclusion collateral estoppel apply in this case and |
| 02:14 | 13 | prevent ACQIS from relitigating these issues that |
| 02:14 | 14 | they've already litigated for some time. |
| 02:14 | 15 | So very briefly, Your Honor, turning to |
| 02:14 | 16 | my slides here, as Your Honor might remember, prior to |
| 02:14 | 17 | the claim construction actually in this case before |
| 02:14 | 18 | Your Honor, the District Court of Massachusetts did |
| 02:14 | 19 | interpret several claims that are at issue in this case |
| 02:14 | 20 | related to the PCI standard. And then it granted that |
| 02:14 | 21 | motion of noninfringement. |
| 02:14 | 22 | And during that time ACQIS moved to |
| 02:14 | 23 | appeal that to the Federal Circuit. And at that time, |
| 02:14 | 24 | Judge, if you might remember, we -- all the defendants |
| 02:14 | 25 | moved Your Honor to stay the case pending the outcome |

—33—

02:14   1    of the Federal Circuit appeal.

02:14   2                    Your Honor declined our invitation.  But

02:14   3    what you did say, and I have the quote pulled up on

02:14   4    Slide 3, is:  Should the Federal Circuit address the

02:15   5    appeal during the course of this litigation, the Court

02:15   6    can make the necessary modifications or hear pretrial

02:15   7    arguments concerning the claim construction.

02:15   8                    And, Judge, that's exactly what happened.

02:15   9    I think the chickens have finally come home to roost.

02:15   10   The Federal Circuit has ruled in this case.  It

02:15   11   specifically adopted what the District Court in

02:15   12   Massachusetts did.  And we simply believe that Your

02:15   13   Honor should adopt that same construction.

02:15   14                    And if you look at Slide 4, Judge, it's

02:15   15   very clear, even though it was a brief opinion by the

02:15   16   Federal Circuit, they, number one, importantly,

02:15   17   affirmed the motion for summary judgment.  And number

02:15   18   two, they adopted the District Court's claim

02:15   19   construction on all terms relating to PCI.

02:15   20                    And that is really the point, Judge.

02:15   21                    I think you heard enough on issue

02:15   22   preclusion, so I'm not going to go into that

02:15   23   whatsoever.

02:15   24                    The only thing I will point out in terms

02:15   25   of whether this issue was actually litigated before the

02:16  1   Federal Circuit is you have to look no further than

02:16  2   ACQIS' brief and specifically -- I think it's Page 2 or

02:16  3   3 of their brief -- where they state the issues of the

02:16  4   case before the Circuit.  They explicitly call out each

02:16  5   of the terms at issue.

02:16  6           And as Your Honor heard from Mr. Seddon,

02:16  7   they argued about this ad nauseam, spilled a lot of ink

02:16  8   discussing these different terms.

02:16  9           So with that, Your Honor, unless you have

02:16 10   any specific questions about our motion or any issue,

02:16 11   preclusion issue, that's all we have from Wiwynn's

02:16 12   perspective.

02:16 13           THE COURT:  And so your client is aligned

02:16 14   with what I heard in the first case?

02:16 15           MR. SIEGMUND:  Yes, sir.  That's correct.

02:16 16           THE COURT:  Got it.  Anyone else for

02:16 17   defendants?

02:16 18           MR. BURESH:  Very briefly, Your Honor.

02:16 19           THE COURT:  Sure.

02:16 20           MR. BURESH:  Eric Buresh on behalf of

02:16 21   ASUSTek.  If it pleases the Court.

02:16 22           Your Honor, this is a very short forest

02:17 23   and trees, and I want to focus solely on claim

02:17 24   construction.  The framing of ASUSTek's motion is again

02:17 25   issue preclusion or collateral estoppel.  We directed

02:17  1    it solely to the issue of claim construction.

02:17  2               I want to focus on PCI bus transaction.

02:17  3    Every court that has looked at this case has construed

02:17  4    that term, "PCI bus transaction."

02:17  5               Your Honor, of all the courts that have

02:17  6    considered that term from this family of patents, this

02:17  7    Court is the only one to include the phrase "or

02:17  8    backwards compatible with."  And specifically, the

02:17  9    construction is from this Court:  Peripheral bus

02:17  10   transaction means a transaction in accordance with or

02:17  11   backwards compatible with the industry standard PCI

02:17  12   local bus specification.

02:17  13              That phrase "or backwards compatible

02:17  14   with" is unique to this Court.  It was not present in

02:17  15   the construction from the Eastern District of Texas.

02:17  16   It was not present in the construction from the

02:17  17   District of Massachusetts.  And most importantly, it

02:18  18   was not present in the de novo construction or de novo

02:18  19   review of the construction by the Federal Circuit.

02:18  20              From ASUSTek's perspective, to not

02:18  21   correct that construction at this point leads us on a

02:18  22   fool's errand.  We already know the construction the

02:18  23   Federal Circuit is going to adopt, so continuing to

02:18  24   litigate this case with the phrase "or backwards

02:18  25   compatible" in the construction is going to take us

—36—

02:18  1    nowhere.  It's going to take us ultimately to a Federal
02:18  2    Circuit reversal.  And we know that because the writing
02:18  3    is already on the wall.
02:18  4              So we would ask at a minimum that that
02:18  5    construction be corrected.  And then we defer to Lenovo
02:18  6    counsel's argument with respect to the impact of that
02:18  7    correction.
02:18  8              Thank you, Your Honor.
02:18  9              THE COURT:  Anything else from
02:18 10    defendants?
02:18 11              MR. SIEGMUND:  No, Your Honor.  Not from
02:18 12    Wiwynn.
02:18 13              THE COURT:  A response?
02:19 14              MR. COLLARD:  Your Honor, may I approach?
02:19 15    I have some slides for you guys.
02:19 16              THE COURT:  Sure.
02:19 17              MR. COLLARD:  May it please the Court.
02:19 18              This is Case Collard of Dorsey & Whitney
02:19 19    for ACQIS.
02:19 20              Your Honor, just so you know, the slides
02:19 21    that I gave you are our claim construction slides.
02:19 22    They're not new slides.  So those are the slides we
02:19 23    used at claim construction, but I'm going to reference
02:19 24    a couple of those today in my discussion.
02:19 25              I'm going to start where counsel for

—37—

02:20  1   ASUSTek left off.  It was very emphatic to say every --
02:20  2   you're the only court out of every court that's looked
02:20  3   at this that found that this is backwards compatible or
02:20  4   put that in the claim construction.
02:20  5               And that leads me actually to a little
02:20  6   bit of a thought experiment, Your Honor.  So that what
02:20  7   if there is collateral estoppel?  And what if that's
02:20  8   where we're starting from and then the question is:
02:20  9   What's really the difference between the construction
02:20  10  that you ordered that includes the words "or backwards
02:20  11  compatible" and the construction that defendants claim
02:20  12  we are collaterally estopped and must use?
02:20  13              And it's really only those words, as
02:20  14  ASUS' counsel pointed out.  "Or backwards compatible."
02:20  15              And adding those words is absolutely
02:20  16  consistent with every court that's ever looked at this.
02:21  17  And I think that that is a critical point, Your Honor.
02:21  18              And I -- so I want to take you right
02:21  19  there.  And the first court to look at this was Judge
02:21  20  Davis in the Eastern District of Texas.  And this is
02:21  21  Slide 10 of the claim construction slides that I just
02:21  22  handed you.  This is from 2011.  This is 11 years ago,
02:21  23  Your Honor.
02:21  24              PCI bus transaction allows compatibility
02:21  25  with PCI legacy devices when replacing the conventional

—38—

02:21   1   parallel PCI bus with serial architecture.  So it's

02:21   2   talking about, in principle, backwards incompatibility

02:21   3   there.

02:21   4          And then another quote from his claim

02:21   5   construction order:  Likewise, one of skill in the art

02:22   6   would conclude that the term "PCI bus" in the patent is

02:22   7   not specific to a PCI local bus standard form of

02:22   8   architecture.  And that a PCI bus transaction is used

02:22   9   merely -- to merely designate an ability to communicate

02:22   10  with a legacy device, i.e., an interconnected

02:22   11  peripheral that is designed to operate over a

02:22   12  conventional PCI local bus so that backward

02:22   13  incompatibility within installed base of peripherals is

02:22   14  assured.

02:22   15         So I'm afraid contrary to counsel for

02:22   16  ASUSTek, you know, one of the very first times this

02:22   17  term was addressed, backwards incompatibility was an

02:22   18  issue that was found by the Court.

02:22   19         Well, but what about EMC?  The words "or

02:22   20  backwards compatibility" didn't appear there.  But

02:22   21  just -- I think it was just -- gosh, maybe two days ago

02:22   22  we got a transcript filed by Lenovo of the oral

02:22   23  argument, I assume for our reference today.

02:23   24         So what did EMC think of their

02:23   25  construction and what it meant?  This is EMC's counsel

—39—

| 02:23 | 1 | talking about their claim construction.  This is Docket |
| 02:23 | 2 | No. 193-1, Page 16 of 29 on the filing.  And, again, |
| 02:23 | 3 | EMC's counsel:  The reason this inventor adopted the |
| 02:23 | 4 | standard was for interoperability.  This was for |
| 02:23 | 5 | backwards compatibility with existing buses and |
| 02:23 | 6 | peripheral devices. |
| 02:23 | 7 | EMC thought that the claim construction |
| 02:23 | 8 | included backwards compatibility.  So we've got now |
| 02:23 | 9 | book-ended 11 years ago and two months ago, the idea of |
| 02:23 | 10 | backwards compatibility is consistent with what has |
| 02:23 | 11 | been found by other courts. |
| 02:23 | 12 | So that leads me to what Mr. Seddon ended |
| 02:24 | 13 | with and something that Wiwynn raised in their brief, |
| 02:24 | 14 | and that was a accusation, from Wiwynn at least, saying |
| 02:24 | 15 | that ACQIS is forum shopping and a claim from Lenovo's |
| 02:24 | 16 | counsel that ACQIS has tried for ten years to get this |
| 02:24 | 17 | position and lost. |
| 02:24 | 18 | Well, that's not true, Your Honor. |
| 02:24 | 19 | Because ACQIS has won at trial against IBM asserting |
| 02:24 | 20 | infringement against products that included PCI Express |
| 02:24 | 21 | under a claim construction with these claims that say |
| 02:24 | 22 | PCI bus transaction, these type of claims that say PCI |
| 02:24 | 23 | bus transaction. |
| 02:24 | 24 | So, Your Honor, that's not true that -- |
| 02:24 | 25 | that ACQIS has had -- you know, been trying this |

| | | |
|---|---|---|
| 02:24 | 1 | position for ten years and lost. |
| 02:24 | 2 | And then I want to make another general |
| 02:24 | 3 | point, and that is that Lenovo was very interested in |
| 02:24 | 4 | the potential benefits of narrowing this case. |
| 02:25 | 5 | Well, Your Honor, you'll notice if you |
| 02:25 | 6 | look at the briefing closely that at the beginning the |
| 02:25 | 7 | claim numbers were, you know, up near 100 claims |
| 02:25 | 8 | asserted.  Well, as directed by Your Honor, we |
| 02:25 | 9 | conferred and we narrowed our claims significantly. |
| 02:25 | 10 | 50 percent, we narrowed claims at the first narrowing. |
| 02:25 | 11 | Claims and patents, 50 percent. |
| 02:25 | 12 | It was a little less than 50 percent with |
| 02:25 | 13 | Wiwynn based on some specifics about how -- what |
| 02:25 | 14 | patents were asserted against them, but I think for |
| 02:25 | 15 | them it was maybe a third or 35 percent. |
| 02:25 | 16 | You shouldn't decide this case based on |
| 02:25 | 17 | some potential benefit of narrowing.  When the time |
| 02:25 | 18 | comes, as is already on the case -- the Court's |
| 02:25 | 19 | scheduling order, ACQIS will confer.  ACQIS will narrow |
| 02:25 | 20 | again as necessary.  There's no need for any artificial |
| 02:25 | 21 | narrowing if the law doesn't call for it. |
| 02:25 | 22 | And so that's where we are now.  The law |
| 02:26 | 23 | doesn't call for it.  Defendants are overstating how |
| 02:26 | 24 | much has changed.  They've already been in front of |
| 02:26 | 25 | this Court arguing that collateral estoppel applies |

02:26  1    from the EMC's District Court order, and now they're

02:26  2    arguing it applies from the Federal Circuit

02:26  3    affirmation.

02:26  4                But they don't claim that the Federal

02:26  5    Circuit affirmation really changes the substance of the

02:26  6    EMC District Court order.  They can't.  They agree with

02:26  7    the content of the EMC District Court order.  If it

02:26  8    changed, they would have told you that or ACQIS would

02:26  9    have told you that.  But it didn't.

02:26  10               And, Your Honor, they already argued

02:26  11   every one of these points at claim construction.  They

02:26  12   argued that it was final.  They argued that it was

02:26  13   litigated, that it was necessary and that the issues

02:26  14   were identical.  They've already argued those exact

02:26  15   issues and you already ruled on this before.

02:26  16               And one thing that I want to make sure is

02:27  17   crystal clear in underlying your decision is that there

02:27  18   is zero overlap in the patents remaining in this case

02:27  19   and the patents that were at issue in EMC.  Not one of

02:27  20   the seven patents that was at issue in -- is -- that

02:27  21   remains at issue in this case across the three

02:27  22   defendants was at issue in EMC.

02:27  23               And I think that counsel for Lenovo took

02:27  24   a -- you know, their argument was very careful.  But we

02:27  25   need to really listen carefully too.  And everybody has

| | |
|---|---|
| 02:27 | 1 | gone through the elements of collateral estoppel, but I |
| 02:27 | 2 | think there's not -- there's actually more than four. |
| 02:27 | 3 | Because actually litigated has four of its own |
| 02:27 | 4 | elements. |
| 02:27 | 5 | And, Your Honor, this is from your |
| 02:27 | 6 | decision in SmileDirectClub on collateral estoppel. |
| 02:27 | 7 | This was cited by Wiwynn in their motion and where you |
| 02:28 | 8 | cite in re Katy.  And actually litigated has four |
| 02:28 | 9 | subparts.  Raised, but that's not it.  It's not just |
| 02:28 | 10 | raised.  Raised, contested, submitted and determined. |
| 02:28 | 11 | And that is where everybody on the side |
| 02:28 | 12 | of defendants is blurring the lines.  If something was |
| 02:28 | 13 | raised, it was actually litigated.  No matter where it |
| 02:28 | 14 | was raised, no matter under what circumstance, it was |
| 02:28 | 15 | raised.  If something was raised and contested, oh, it |
| 02:28 | 16 | was actually litigated. |
| 02:28 | 17 | But it has to be all four of those.  It |
| 02:28 | 18 | has to be raised, contested, submitted and determined. |
| 02:28 | 19 | And the key questions that Your Honor has weighed in on |
| 02:28 | 20 | already and already determined, and that Judge Payne |
| 02:28 | 21 | has looked at, were -- they don't meet all four of |
| 02:28 | 22 | those prongs of actually litigated from in re Katy and |
| 02:28 | 23 | SmileDirectClub.  I may have said Smile Club Direct. |
| 02:29 | 24 | I'm not a member. |
| 02:29 | 25 | So I think that that has led them to see |

—43—

02:29   1    some ghosts in this Federal Circuit order.  Which, as

02:29   2    you know, is two paragraphs.  It is nonprecedential per

02:29   3    curiam because they act as if every argument that ACQIS

02:29   4    made on appeal and at oral arguments was considered in

02:29   5    detail and rejected with a reasoned opinion.  But

02:29   6    that's not the case.

02:29   7                 And this is worse than even trying to

02:29   8    point to dicta.  You know, sometimes you might say,

02:29   9    well, they talked about this but it wasn't essential to

02:29   10   their ruling.  These are things that were simply never

02:29   11   addressed by the Federal Circuit in their opinion.

02:29   12                 And the two most important examples are

02:29   13   the two most key issues.  The fact that some of these

02:29   14   claim constructions were stipulated by the parties and

02:29   15   therefore not litigated.  And that the District Court

02:29   16   found that ACQIS had waived arguments by raising them

02:29   17   in an untimely way and said that they would not

02:30   18   consider them.

02:30   19                 And so defendants are trying to say,

02:30   20   well, ACQIS argued about those issues in its brief at

02:30   21   the Federal Circuit.  And they became actually

02:30   22   litigated.  But that isn't the case, Your Honor.

02:30   23   Stipulated constructions can't become unstipulated on

02:30   24   appeal.

02:30   25                 And we've got -- its Moore versus

—44—

02:30  1   Standard Register.  The record on -- this is a Federal

02:30  2   Circuit case, 229 F.3d 1091.  The record on appeal is

02:30  3   generally limited to that which was before the District

02:30  4   Court.

02:30  5              And we have that case law in our brief as

02:30  6   well on Page 14, additional case law on that, that the

02:30  7   Federal Circuit only decides what they discuss in their

02:30  8   opinion.  That's the Exxon and Roche cases.

02:30  9              So when you walk through the

02:30  10  requirements, you'll see that collateral estoppel and

02:30  11  stare decisis don't apply here.  And I think it's

02:30  12  important to put some context on why Judge Burroughs

02:30  13  did another claim construction in this case after Judge

02:30  14  Davis had already done one.  And that was because the

02:31  15  case had been stayed to allow for an IPR and she was

02:31  16  going to say, is there any prosecution history estoppel

02:31  17  from the IPR?

02:31  18             For PCI bus transaction, there was no

02:31  19  prosecution history estoppel.  It was construed the

02:31  20  same way as previously in Judge Davis.  The use of the

02:31  21  word "transaction" was agreed upon by the parties, the

02:31  22  inclusion of the local PCI bus specification was

02:31  23  included by the parties.

02:31  24             And the only part that was -- all four of

02:31  25  those -- raised, contested, submitted and determined

02:31  1   with respect to that construction was whether or not a

02:31  2   parallel PCI bus must be present as a part of the

02:31  3   construction.  Nothing to do with what the -- was

02:31  4   argued at the Federal Circuit or what's at issue in our

02:31  5   case.  But that's the only piece that has -- meets all

02:31  6   four of those elements.

02:31  7              Encoded serial PCI bus transactions --

02:31  8   sorry.  Encoded stream of serial PCI bus transactions,

02:31  9   that was found to have prosecution history estoppel

02:31 10   based on the IPR.  But, Your Honor, that's a different

02:32 11   patent with a different specification.

02:32 12              And that's what Judge Payne found.

02:32 13   That's why, you know, Mr. Seddon was saying, oh, well,

02:32 14   that was about prosecution history estoppel.  Well,

02:32 15   yeah.  That was the basis for that claim construction,

02:32 16   was prosecution history estoppel.

02:32 17              Here's the question that's never been

02:32 18   litigated:  Does that prosecution history estoppel,

02:32 19   based on the reexamination of the '873 patent, extend

02:32 20   to other patents?  Never litigated, Your Honor.

02:32 21   Nobody's ever even submitted that question.  That's not

02:32 22   a question that was in front of the EMC court because

02:32 23   it didn't need to be.  The patent that was at issue

02:32 24   there was also asserted in that case.  So that's a

02:32 25   question that's never been actually litigated.

—46—

02:32   1          And then finally, the "communicating"
02:32   2   term, that was also stipulated, Your Honor.  The
02:32   3   communicating specific bits of the construction.  And
02:32   4   that was also -- that stipulation was based on the
02:32   5   construction that had been used in the IPRs.  And so it
02:33   6   was also based on kind of a prosecution history
02:33   7   estoppel argument.
02:33   8          So we talked about, you know, collateral
02:33   9   estoppel doesn't apply because those prongs of the
02:33   10  argument are not met.  And we've talked about, well,
02:33   11  even if it did, your construction on PCI bus
02:33   12  transaction is consistent.
02:33   13         And I think it's important to recognize
02:33   14  that the rules on claim construction across patent
02:33   15  families are not as rigid as the defendants claim.  The
02:33   16  cases that they cite are about being consistent.
02:33   17         And I think, as I showed you, EMC's own
02:33   18  interpretation of the last -- of the most recent
02:33   19  construction in the EMC case, Judge Davis' orders on
02:33   20  prior claim constructions, it's consistent across over
02:33   21  a decade that backwards compatibility is part of the
02:34   22  construction.
02:34   23         And so Judge Payne, Your Honor, you can
02:34   24  read Judge Payne and his order.  I'm sure you have.
02:34   25  I'm not going to spend a lot of time on that because we

—47—

02:34  1    hit that pretty heavily in our papers.  But I think

02:34  2    Judge Payne, he zeros in on the material differences.

02:34  3    And the parties agreed on the use of the word

02:34  4    "transaction" in EMC.  So the Court never reached what

02:34  5    that was going to mean.

02:34  6              I want to -- I just do want to point out

02:34  7    in our slides, Slides 31 and 32, the parties agreed on

02:34  8    transaction.  So Judge Burroughs declined to address it

02:34  9    when it became a dispute later.

02:34  10             And I think that the -- you know, the --

02:34  11   31 has the highlight here as an initial matter.  ACQIS'

02:34  12   attempt to reduce the import of the specification is

02:35  13   untimely.

02:35  14             And then how she closes this -- this is

02:35  15   on Slide 32:  There is no need to now construe a

02:35  16   readily understandable term that ACQIS itself thought

02:35  17   clear when offering proposed constructions of related

02:35  18   terms, and the Court will not do so.

02:35  19             They didn't do it.  It wasn't determined.

02:35  20   The Court said, I'm not going to determine this.

02:35  21             That's the fourth piece of actually

02:35  22   litigated, Your Honor.

02:35  23             So the question of what is a PCI bus

02:35  24   transaction was not actually litigated.  And Judge

02:35  25   Payne identified that exact issue.  It's actually the

| | | |
|---|---|---|
| 02:35 | 1 | next couple of slides in our deck, 34 and 35, that are |
| 02:35 | 2 | quoting from his reasoned claim construction order. |
| 02:35 | 3 | So your construction is consistent with |
| 02:35 | 4 | that, with Judge Payne's.  And it zeros in on the main |
| 02:35 | 5 | issue that wasn't litigated and gives guidance on that |
| 02:35 | 6 | key issue that has never been litigated before. |
| 02:35 | 7 | So, you know, I do want to briefly run |
| 02:36 | 8 | through the collateral estoppel elements with respect |
| 02:36 | 9 | to PCI bus transactions.  You know, these are not the |
| 02:36 | 10 | same patents or claims.  I will -- I promise I'll stop |
| 02:36 | 11 | repeating that pretty soon, Your Honor, but it's seven |
| 02:36 | 12 | different patents and it's different claims.  And |
| 02:36 | 13 | they're not identical claim limitations either. |
| 02:36 | 14 | Throughout -- peppered throughout |
| 02:36 | 15 | everybody's arguments, peppered throughout their slides |
| 02:36 | 16 | and their briefs are lots of "near-identical," |
| 02:36 | 17 | "substantially the same."  I think Wiwynn's headings in |
| 02:36 | 18 | their briefs are "essentially the same." |
| 02:36 | 19 | But the law on that is that even though |
| 02:36 | 20 | they're related families, it doesn't mean that the |
| 02:36 | 21 | issues are the same.  So the -- they're near identical. |
| 02:36 | 22 | They're not identical. |
| 02:36 | 23 | And then, you know, I've talked quite a |
| 02:36 | 24 | bit about the issue.  They try to alie the fact that |
| 02:37 | 25 | these patents, claims, claim terms and the limitations |

02:37   1   are not identical by saying, well, the issue is

02:37   2   identical.  But it's not, Your Honor, because the issue

02:37   3   is what sort of information qualifies as a transaction

02:37   4   under the PCI local bus specification, and that has

02:37   5   still not been litigated.

02:37   6            I talked a little bit about the four

02:37   7   elements, so I won't go through those.  But the

02:37   8   stipulation means that -- at the trial court means that

02:37   9   it wasn't litigated at the trial court.  And there's --

02:37   10  and it wasn't litigated at the Federal Circuit.

02:37   11           And I -- you know, I've looked at the

02:37   12  Nestlé case, which is a different situation, Your

02:37   13  Honor.  It's distinguishable because in that case --

02:37   14  it's a really short opinion, Your Honor.  But the

02:37   15  Nestlé case, they say, well, we construed this before

02:37   16  on appeal and that counts as actually litigated because

02:37   17  we went through it and we looked at the intrinsic

02:37   18  evidence and we did all this work.

02:37   19           But it doesn't address a situation with a

02:38   20  stipulated construction or where there are a waiver of

02:38   21  arguments.

02:38   22           So -- and they also point to their own

02:38   23  analysis.  They don't say, well, they raised this in

02:38   24  oral arguments, so that means it was litigated; or they

02:38   25  put this in their brief, so that means it was

—50—

02:38  1   litigated.

02:38  2              Raised is only the first step on finding

02:38  3   something was actually litigated, and that's what

02:38  4   defendants want you to do, is just say, well, just

02:38  5   because this was raised, it was actually litigated,

02:38  6   even if it wasn't determined.

02:38  7              For the "communicating specific bits of

02:38  8   PCI bus transaction," the term at issue is different.

02:38  9   And, you know, there's one difference too about the

02:38  10  specific bits.  There's a byte-enable bit.  That's

02:38  11  never been addressed.  That's not been raised,

02:39  12  contested, submitted and determined how to construe

02:39  13  claims that talk about transmitting byte-enable bit

02:39  14  instead of the whole entire PCI bus transaction.

02:39  15             And there's no dispute.  That was a

02:39  16  stipulated construction, so that was not in dispute.

02:39  17             And one of the things that in their

02:39  18  papers, defendants try to distinguish the Pfizer case

02:39  19  on stipulated constructions by saying, well, the

02:39  20  stipulation in that case was only for the purposes of

02:39  21  that litigation.

02:39  22             The stipulation in the EMC case was only

02:39  23  for the purposes of that litigation.  ACQIS didn't

02:39  24  stipulate for all time or with all parties.  The only

02:39  25  other party there to stipulate with was EMC.

-51-

02:39    1                        And this is another issue related to

02:39    2    prosecution history estoppel, and no one's ever

02:39    3    litigated whether the prosecution history estoppel and

02:39    4    the construction used there should extend to other

02:39    5    patents.

02:39    6                        And again, Judge Payne looked at this and

02:39    7    we have a slide on that.  Slide 54 is the slide on the

02:40    8    specific bits and why there's no prosecution history

02:40    9    estoppel and there need not be any collateral estoppel.

02:40   10                        And it's very similar for the claims on

02:40   11    serial and encoded, and I think that one of the key

02:40   12    issues that Judge Payne found is that there are -- is a

02:40   13    different disclosure in the patents that we're looking

02:40   14    at that have Figures 8A and 8B, which have never -- the

02:40   15    question of whether or not the '873 patent, which was

02:40   16    the patent in IPR, and the -- with the images in that

02:40   17    patent specification, does that prosecution history

02:40   18    estoppel on serial and encoded extend to patents that

02:40   19    have Figures 8A and 8B, which relate directly to that

02:40   20    issue about whether or not there is a parallel PCI bus

02:41   21    transaction that's converted into serial?

02:41   22                        I know that Mr. -- I think I dropped my

02:41   23    Lenovo slides.  Excuse me.

02:41   24                        I know that Mr. Seddon brought that up on

02:41   25    Slide 9, but he's pointing to the '486 patent.  He's

02:41  1    not pointing to the patent that was actually in the

02:41  2    prosecution history estoppel.

02:41  3              And even if that patent was asserted in

02:41  4    EMC, that question was never raised.  So it wasn't

02:41  5    actually litigated.  Nobody raised the question and

02:41  6    said, huh, does prosecution history estoppel extend to

02:41  7    this one that has, you know, for the '468, Figure 19

02:41  8    and Figure 20?

02:41  9              So that issue wasn't raised, and

02:41 10    collateral estoppel shouldn't apply.

02:41 11              Your Honor, I'm not going to actually

02:41 12    address any of the procedural issues that Mr. Ravel

02:41 13    addressed.  But if you have any questions on those,

02:42 14    that's fine, but I think those have been covered in our

02:42 15    brief.  But if you are considering this through the

02:42 16    motion for judgment on the pleadings lens, then that

02:42 17    means you must resolve any disputed question of fact in

02:42 18    ACQIS' favor.

02:42 19              And so, you know, I think right down the

02:42 20    line that the issue preclusion doesn't apply because

02:42 21    the test isn't met.  But that's especially true when

02:42 22    considering this through a lens favorable to ACQIS.

02:42 23              Thank you, Your Honor.  That's all I have

02:42 24    at this time.

02:42 25              MR. SEDDON:  Your Honor, if I may have a

| | | |
|---|---|---|
| 02:42 | 1 | short rebuttal? |
| 02:42 | 2 | THE COURT:  Sure. |
| 02:42 | 3 | MR. SEDDON:  Jeff Seddon of Desmarais LLP |
| 02:42 | 4 | for the defendants, particularly the Lenovo defendants, |
| 02:42 | 5 | Your Honor.  May it please the Court. |
| 02:43 | 6 | I want to address ACQIS' presentation. |
| 02:43 | 7 | There's a number of things I want to address.  I'm |
| 02:43 | 8 | going to start focusing on the issue of the identity of |
| 02:43 | 9 | the issues. |
| 02:43 | 10 | I think the main point that ACQIS made |
| 02:43 | 11 | there is that these are different patents and different |
| 02:43 | 12 | claims, but, Your Honor, as we've said in our brief and |
| 02:43 | 13 | as I think we've shown from the actual limitations that |
| 02:43 | 14 | are at issue, you can look at them side by side on |
| 02:43 | 15 | Slide 4 of our slides.  In fact, there are no material |
| 02:43 | 16 | differences here. |
| 02:43 | 17 | And while ACQIS says that these are |
| 02:43 | 18 | different claims and different patents, that's really |
| 02:43 | 19 | as far as they go.  They don't identify differences |
| 02:43 | 20 | with regard to these particular terms that are at |
| 02:43 | 21 | issue.  And these particular terms that are at issue |
| 02:43 | 22 | are, in some cases, identical with the PCI bus |
| 02:44 | 23 | transaction.  In some cases so close to identical as to |
| 02:44 | 24 | be nonexistent. |
| 02:44 | 25 | I mean, I challenge ACQIS to identify a |

02:44  1    difference between communicate address and data bits of

02:44  2    a PCI bus transaction and convey address and data bits

02:44  3    of a data bus transaction.  Or very close with regard

02:44  4    to the encoded claims, just sort of mixed up a little

02:44  5    bit.  And ACQIS has not identified any differences

02:44  6    between those claim terms.

02:44  7             Now, ACQIS has said that the Federal

02:44  8    Circuit law on construing like claims -- like is not

02:44  9    applicable here and not as fine as we would apply.  But

02:44  10   I direct Your Honor, again, to the case that ACQIS

02:44  11   attempted to rebut, Nestlé USA versus Steuben Foods,

02:44  12   that's 884 F.3d 1350.

02:44  13            I mean, there -- and it is a two-page

02:44  14   opinion, so it's short.  The Federal Circuit addressed

02:45  15   a situation where Nestlé previously appealed the

02:45  16   board's -- a board's construction of a particular term

02:45  17   involving deterrent claims of a different patent that

02:45  18   were nonetheless related.

02:45  19            Nestlé then brought up the issue on

02:45  20   appeal again.  And the Court determined, and I quote:

02:45  21   Neither party has pointed to any material difference

02:45  22   between the two patents or their prosecution histories

02:45  23   that would give rise to claim construction issues in

02:45  24   this appeal different from those raised in the prior

02:45  25   appeal.  Accordingly, Steuben Foods has had a full and

02:45  1    fair opportunity to litigate the issue of claim

02:45  2    construction during the prior appeal.  It follows

02:45  3    therefore that collateral estoppel protects Nestlé and

02:45  4    obviates the need to revisit an issue that was already

02:45  5    resolved against Steuben Foods.  Importantly, our

02:45  6    precedent makes clear that collateral estoppel is not

02:45  7    limited to patent claims that are identical.  Rather,

02:45  8    it is the identity of the issues that were litigated

02:45  9    that determines whether collateral estoppel should

02:45  10   apply.

02:45  11              The exact same is true here.  ACQIS has

02:46  12   not identified any material differences.  The one

02:46  13   difference that I heard it identify between claims is

02:46  14   apparently some claims require byte-enable bit in

02:46  15   addition to requiring address and data bits.

02:46  16              And ACQIS did not address my contention,

02:46  17   which I addressed at the outset, which is that the

02:46  18   additional limitation does not make a difference for

02:46  19   the purpose of infringement.  And, frankly, does not

02:46  20   make a difference for the purpose of the Court's -- the

02:46  21   Federal Circuit's claim constructions.

02:46  22              If you look at Slide 12 at the back of

02:46  23   our 12s -- at the back of our slides, we have an

02:46  24   additional slide just sort of as backup with the

02:46  25   Federal Circuit's constructions there.  Row 2, you can

02:46  1  see that the Court construed terms with "address and

02:46  2  data bits of a PCI transaction" as "communicating PCI

02:46  3  transaction including all address data and control

02:46  4  bits."

02:46  5          There's no reason to think that adding

02:46  6  "byte enable" would somehow change this or remove

02:47  7  "control bits."  And really, the issue that ACQIS

02:47  8  argued, the issue on -- one of the points on which

02:47  9  summary judgment was granted is that PCI Express does

02:47  10  not have PCI control bits.  Does not have PCI control

02:47  11  signals.

02:47  12          So with regard to the identity of issues,

02:47  13  there is an identity of issues with claim construction.

02:47  14  And I noticed that counsel for ACQIS did not challenge

02:47  15  that there's an identity of issues for infringement as

02:47  16  well.  They're making the same allegations against the

02:47  17  PCI Express standard here as they did in EMC.

02:47  18          Now, as far as actually litigated,

02:47  19  counsel for ACQIS identified four prongs of the

02:47  20  actually litigated thing, the actually litigated

02:47  21  standard, the portion of collateral estoppel and said

02:47  22  that we had not addressed them.

02:47  23          I think, Your Honor, that we have

02:47  24  addressed those and we have clearly showed that, in

02:48  25  fact, ACQIS actually litigated this on every point,

02:48  1    actually litigated claim construction on every point in

02:48  2    the Federal Circuit, and they did, in fact, actually

02:48  3    litigate in the Federal Circuit.

02:48  4                  They raised the issue of claim

02:48  5    construction.  If you look at Exhibit 2 to our brief,

02:48  6    Page 4 -- that's their opening brief -- they

02:48  7    specifically raised the issue of whether the District

02:48  8    Court misconstrued communicating a PCI bus transaction

02:48  9    based on apparent agreement between the parties that

02:48  10   did not exist, and they explicitly raised the issue --

02:48  11   this is Issue No. 3 -- from their brief whether the

02:48  12   District Court misconstrued encoded PCI bus transaction

02:48  13   based on a prosecution disclaimer that had not occurred

02:48  14   with regard to all of the patents, not just the '873

02:48  15   patent.

02:48  16                  So they actually raised the issue.  They

02:48  17   contested it hotly throughout the brief.  It's evident

02:48  18   throughout the brief that claim construction is what

02:48  19   they were focused on, they submitted it to the Federal

02:48  20   Circuit.  And as you saw on -- I believe it's Slide 6

02:48  21   of our slides, the Federal Circuit actually determined

02:49  22   it.  The Federal Circuit said, claim construction's

02:49  23   what's at issue.  We determined claim construction and

02:49  24   noninfringement flows from that claim construction.

02:49  25                  So it, in fact, was raised, contested,

02:49  1    submitted and determined.  No question, I think, that

02:49  2    claim construction was actually litigated on appeal.

02:49  3              So the only remaining question is whether

02:49  4    or not actually litigating claim construction on appeal

02:49  5    is sufficient to give rise to collateral estoppel.

02:49  6              And looking back to Nestlé USA versus

02:49  7    Steuben Foods, again, we see that the Federal Circuit

02:49  8    found collateral estoppel based on actually litigation

02:49  9    (sic) the issues of claim construction during the prior

02:49  10   appeal.

02:49  11             And counsel for ACQIS attempted to

02:49  12   distinguish this by saying the Federal Circuit said

02:49  13   they went through and carefully analyzed all the

02:49  14   intrinsic evidence.  That's not in here.

02:49  15             So this is a short opinion, and what it

02:49  16   does say is neither party pointed to material

02:49  17   differences.  Therefore, they had a full and fair

02:49  18   opportunity to litigate the issue of claim construction

02:50  19   on appeal.  They did not go into the depth of analysis.

02:50  20             The only thing they said about their

02:50  21   prior analysis is they said:  We previously vacated a

02:50  22   construction below relying on binding lexicography.

02:50  23             That's it, and that's in a completely

02:50  24   different section of the opinion.  There's nothing

02:50  25   where they said, well, it was fully litigated on appeal

02:50  1    because we went into depth and we did an in-depth

02:50  2    analysis.  They just said, the party had a full and

02:50  3    fair opportunity to raise and litigate it on appeal.

02:50  4    That's enough.  And that's the situation here.

02:50  5                   So again, claim construction issues were

02:50  6    actually litigated.  They were actually litigated on

02:50  7    appeal.  That's enough.

02:50  8                   And counsel for ACQIS did not dispute

02:50  9    that the infringement issues were actually litigated

02:50  10   below.  They were actually litigated below.  There

02:50  11   weren't any factual issues, that's why summary judgment

02:50  12   was granted.

02:50  13                  ACQIS did not dispute that PCI Express

02:51  14   transactions, PCI Express did not have elements of the

02:51  15   PCI bus transaction that were required under the

02:51  16   Court's claim construction.

02:51  17                  And just two more small things, and then

02:51  18   I'll stop taking up your time, Your Honor.

02:51  19                  So one point I want to make.  ACQIS

02:51  20   argued that, in fact, backwards compatibility hadn't

02:51  21   been addressed before.  Respectfully, Your Honor, I

02:51  22   just don't think that's accurate.

02:51  23                  If you look at ACQIS' opening brief on

02:51  24   appeal, Exhibit 2, starting at Page 11, ACQIS has a

02:51  25   whole section in their brief directed to backwards

―60―

02:51  1    compatibility being the problem that they were trying

02:51  2    to solve.

02:51  3            They specifically call out that backwards

02:51  4    compatibility was important because the ability to

02:51  5    execute a PCI bus transaction, that is a specific PCI

02:51  6    bus transaction that's compliant with the standard, was

02:51  7    required for a computer system to be commercially

02:52  8    acceptable.

02:52  9            And they say, ACQIS -- and I'm quoting at

02:52  10   Page 13:  ACQIS replaced the PCI standards physical

02:52  11   layer, including the parallel PCI local bus with this

02:52  12   combination of serial interface channels and interface

02:52  13   controllers, yet it maintained backwards compatibility

02:52  14   by enabling a new physical layer to communicate PCI

02:52  15   standard bus transactions.

02:52  16           So the backwards compatibility it

02:52  17   maintained was by communicating PCI standard bus

02:52  18   transactions in accordance with the specification.  Not

02:52  19   by communicating PCI bus transactions or something

02:52  20   backwards compatibility with PCI bus transactions.

02:52  21           That's what they said to the Federal

02:52  22   Circuit.  That's what they previously argued.  It is

02:52  23   not a new issue that needs to be readdressed here.  And

02:52  24   it's not a reason to depart from the Federal Circuit's

02:52  25   claim construction when it has these particular

| | | |
|---|---|---|
| 02:52 | 1 | arguments in front of it. |
| 02:52 | 2 | And then the second point I want to make, |
| 02:52 | 3 | Your Honor, is just simply ACQIS has, I think, tried to |
| 02:53 | 4 | undermine the Federal Circuit's construction by |
| 02:53 | 5 | pointing out that it's non-precedential and that it's |
| 02:53 | 6 | short. |
| 02:53 | 7 | The fact that it's short and that it's |
| 02:53 | 8 | non-precedential does not in any way undermine its |
| 02:53 | 9 | applicability with regard to collateral estoppel. |
| 02:53 | 10 | That's something that the Federal Circuit has made |
| 02:53 | 11 | clear in its internal operating procedures.  That's on |
| 02:53 | 12 | Page 10 -- or Slide 10 of Wiwynn's slides. |
| 02:53 | 13 | And frankly, Your Honor, I think the fact |
| 02:53 | 14 | that the Federal Circuit's opinion was short, to the |
| 02:53 | 15 | point, and it went out of its way to specifically adopt |
| 02:53 | 16 | the claim constructions of the District Court makes it |
| 02:53 | 17 | more powerful and more evident that they were, in fact, |
| 02:53 | 18 | thinking of these other cases which were raised at |
| 02:53 | 19 | argument.  And the fact that this would be something |
| 02:53 | 20 | that would apply to ACQIS' determination and to its |
| 02:53 | 21 | patents going forward. |
| 02:53 | 22 | So they were not dealing with the same |
| 02:53 | 23 | issue again, just as we're asking your Court to find |
| 02:53 | 24 | that we should not be dealing with the same issue that |
| 02:53 | 25 | the Federal Circuit has already raised and addressed. |

62

```
02:53    1              So unless Your Honor has any questions,
02:54    2     that's it for me.  And apparently I think that's it
02:54    3     for --
02:54    4              MR. SIEGMUND:  Nothing further from
02:54    5     Wiwynn, Judge.
02:54    6              MR. BURESH:  Your Honor, can I beg two
02:54    7     minutes?
02:54    8              THE COURT:  Whatever you...
02:54    9              MR. BURESH:  Eric Buresh on behalf of
02:54   10     ASUSTek.
02:54   11              I'm only going to discuss Slide 10 from
02:54   12     ACQIS' presentation, this issue of backwards
02:54   13     compatibility.
02:54   14              The issue here is the same issue that was
02:54   15     raised at EMC.  And to say that Your Honor's
02:54   16     construction is consistent with what the EMC court
02:54   17     found in -- on claim construction is far, far from
02:54   18     accurate.
02:54   19              If we look at Slide 10, there's two
02:54   20     different types of backwards compatibility, okay?  It's
02:54   21     a frame of reference.  Using the quotes that ACQIS has
02:54   22     presented on Slide 10:  PCI bus transaction allows
02:55   23     incompatibility with PCI legacy devices.  In that first
02:55   24     box.
02:55   25              In the second box we see, again, legacy
```

—63—

| | | |
|---|---|---|
| 02:55 | 1 | devices and that there is backwards compatibility with |
| 02:55 | 2 | an installed base of peripherals. |
| 02:55 | 3 | What this discussion is doing is saying |
| 02:55 | 4 | I'm looking at the PCI standard and looking backwards |
| 02:55 | 5 | in time.  So that the invention here is making the PCI |
| 02:55 | 6 | bus standard applicable backwards in time to peripheral |
| 02:55 | 7 | devices that had already been installed back |
| 02:55 | 8 | previously, okay?  That's the frame of reference, is |
| 02:55 | 9 | looking to the past. |
| 02:55 | 10 | What ACQIS is doing in this case and what |
| 02:55 | 11 | they did in EMC is they're trying to take backwards |
| 02:55 | 12 | compatibility and say, I want to look forward in time |
| 02:55 | 13 | to a future standard that didn't exist at the time of |
| 02:55 | 14 | these patents, which is PCIe Express, and then say in |
| 02:55 | 15 | what, I think, counsel earlier described as |
| 02:55 | 16 | creativeness to say, I'm going to stand at PCIe Express |
| 02:56 | 17 | and look backwards in time to PCIe -- I'm sorry -- to |
| 02:56 | 18 | PCI standard. |
| 02:56 | 19 | Those are two different frames of |
| 02:56 | 20 | reference. |
| 02:56 | 21 | And if Your Honor will recall, that |
| 02:56 | 22 | phrase "or backwards compatible," it did not come from |
| 02:56 | 23 | ACQIS.  They did not propose that as a construction in |
| 02:56 | 24 | this case.  The Court introduced that concept. |
| 02:56 | 25 | Similarly, ACQIS didn't introduce that |

—64—

02:56   1    concept in the claim construction phase in EMC.  There
02:56   2    was no backwards compatibility in the claim
02:56   3    construction.

02:56   4                But when it came to summary judgment,
02:56   5    they argued that the claim construction without "or
02:56   6    backwards compatibility" used that wrong frame of
02:56   7    reference, where we go up to PCIe -- or PCI Express and
02:56   8    look backwards in time.

02:56   9                And the District Court in Massachusetts
02:56   10   said, no.  That's not within the claim scope.  That's
02:56   11   not what backwards compatibility is talking about.
02:56   12   Backwards compatibility is talking about going back to
02:56   13   PCI peripheral devices that were already installed.
02:56   14   Okay?

02:56   15               That's what EMC said.  And they said to
02:56   16   go forward in time to PCI Express is outside the claim
02:57   17   scope.

02:57   18               Now, to say that was stipulated is just
02:57   19   silliness because that argue -- that argument was
02:57   20   appealed.  That claim construction ruling that occurred
02:57   21   at summary judgment was the primary issue on appeal.
02:57   22   Why would it be stipulated if they're arguing it at
02:57   23   appeal?

02:57   24               And the Federal Circuit, of course, said
02:57   25   the EMC court had it exactly right, that backwards

| | | |
|---|---|---|
| 02:57 | 1 | compatibility is not looking from the perspective of |
| 02:57 | 2 | PCIe backwards in time and accordingly affirmed the |
| 02:57 | 3 | claim construction by the District Court and the |
| 02:57 | 4 | summary judgment ruling. |
| 02:57 | 5 | So, Your Honor, don't let this creative |
| 02:57 | 6 | use of the "backwards compatibility" confuse you.  The |
| 02:57 | 7 | frame of reference is critically important. |
| 02:57 | 8 | Thank you, Your Honor. |
| 02:57 | 9 | THE COURT:  Yes, sir. |
| 02:58 | 10 | MR. SIEGMUND:  Nothing further from us, |
| 02:58 | 11 | Your Honor. |
| 02:58 | 12 | THE COURT:  Plaintiff? |
| 02:58 | 13 | MR. COLLARD:  No.  Nothing further from |
| 02:58 | 14 | ACQIS unless you have questions. |
| 02:58 | 15 | THE COURT:  I don't. |
| 02:58 | 16 | (Off-the-record bench conference.) |
| 02:58 | 17 | THE COURT:  I'm going to take about a |
| 02:58 | 18 | ten-minute break.  It's just before 3:00.  If you all |
| 02:58 | 19 | would be back in here by about 3:10, that'd be great. |
| 02:59 | 20 | THE BAILIFF:  All rise. |
| 02:59 | 21 | (Recess taken.) |
| 03:22 | 22 | THE BAILIFF:  All rise. |
| 03:22 | 23 | THE COURT:  Thank you.  You may be |
| 03:22 | 24 | seated. |
| 03:22 | 25 | Okay.  I think I have all this straight. |

| | | |
|---|---|---|
| 03:22 | 1 | I'm going to do my best. |
| 03:22 | 2 | So the Court is -- to the extent that a |
| 03:22 | 3 | claim term was construed by this Court and it has been |
| 03:22 | 4 | construed by the Federal Circuit, or the Federal |
| 03:22 | 5 | Circuit has adopted what was done elsewhere, the Court |
| 03:22 | 6 | is going to amend my claim term constructions to be the |
| 03:23 | 7 | same as the Federal Circuit. |
| 03:23 | 8 | With one exception.  I'm not certain that |
| 03:23 | 9 | adopting what the Circuit did means necessarily that |
| 03:23 | 10 | backward compatibility has to be excluded. |
| 03:23 | 11 | And so now knowing what I'm doing, we'd |
| 03:23 | 12 | like additional briefing on whether or not backward |
| 03:23 | 13 | compatibility -- including that would be consistent |
| 03:23 | 14 | with what the Circuit did or not. |
| 03:23 | 15 | So that -- it's an open question in my |
| 03:23 | 16 | mind.  It may turn out we have a mini Markman on this |
| 03:23 | 17 | or we may just do it -- if the briefs are sufficient, |
| 03:23 | 18 | for us to decide, that's what we'll do without another |
| 03:23 | 19 | hearing.  But we also might have a mini Markman, |
| 03:23 | 20 | depending on that one issue, about whether or not that |
| 03:23 | 21 | should still be in there. |
| 03:24 | 22 | Now, I'm not going to put the plaintiff |
| 03:24 | 23 | on the spot here, but it seems to me that having made |
| 03:24 | 24 | my ruling, you all may need to go back and decide what |
| 03:24 | 25 | you want to do with your complaint in terms of |

| | | |
|---|---|---|
| 03:24 | 1 | allegations of infringement against these products. |
| 03:24 | 2 | And so to that end, how quickly do you |
| 03:24 | 3 | think -- anyone from the plaintiff's side can answer. |
| 03:24 | 4 | How quickly do you think you all can make the |
| 03:24 | 5 | assessment of whether or not you want to maintain the |
| 03:24 | 6 | allegations of infringement based on my ruling now or |
| 03:24 | 7 | not?  How long -- it's entirely up to -- it's your |
| 03:24 | 8 | case.  And so I'm not looking for a short turnaround. |
| 03:24 | 9 | I want to give you all whatever time you think you |
| 03:24 | 10 | need. |
| 03:24 | 11 | So what amount of time does the plaintiff |
| 03:24 | 12 | believe it needs to have a rule -- decide whether it |
| 03:24 | 13 | has a Rule 11 basis to do whatever you're going to do? |
| 03:24 | 14 | And I have no -- I'm not forecasting at all what I -- |
| 03:25 | 15 | you all need to do whatever you need to do.  But about |
| 03:25 | 16 | how long do you think it would take you to make that |
| 03:25 | 17 | assessment? |
| 03:25 | 18 | MR. COLLARD:  May we have a moment? |
| 03:25 | 19 | THE COURT:  Sure. |
| 03:25 | 20 | MR. COLLARD:  Your Honor, I think we |
| 03:25 | 21 | could probably do that in four weeks.  But I think I |
| 03:25 | 22 | want to be clear that we made these narrowing decisions |
| 03:25 | 23 | under the old claim construction, so we may need to |
| 03:25 | 24 | revisit which patents we are -- |
| 03:25 | 25 | THE COURT:  I'm giving you -- you're |

| | | |
|---|---|---|
| 03:25 | 1 | getting a do-over. |
| 03:25 | 2 | MR. COLLARD:  Okay. |
| 03:25 | 3 | THE COURT:  And that's the point of this. |
| 03:25 | 4 | You're -- I mean, you -- when you were operating, you |
| 03:25 | 5 | were acting in good faith based on what I'd done.  And |
| 03:25 | 6 | I think it'd be totally unfair to you, now that I've |
| 03:26 | 7 | amended what I did, to prejudice you in that way. |
| 03:26 | 8 | So I want -- again, is four weeks enough |
| 03:26 | 9 | for you to go through and assess and make whatever |
| 03:26 | 10 | changes you want to make?  This is entirely up to you |
| 03:26 | 11 | all. |
| 03:26 | 12 | MR. COLLARD:  I appreciate it, Your |
| 03:26 | 13 | Honor.  I guess maybe six, because -- |
| 03:26 | 14 | THE COURT:  Whatever -- you know, |
| 03:26 | 15 | whatever you want, I'm okay with. |
| 03:26 | 16 | MR. COLLARD:  That's fine.  Six. |
| 03:26 | 17 | THE COURT:  Okay.  Now, I'm going to |
| 03:26 | 18 | assume, but I could be wrong, that either some claims |
| 03:26 | 19 | may be dropped or some claims may be added as a result |
| 03:26 | 20 | of this.  And so it's with that presumption that |
| 03:26 | 21 | it's -- I'm going to guess that you all -- I need to |
| 03:26 | 22 | stop saying that -- that plaintiff is going to have to |
| 03:26 | 23 | do amended infringement contentions when you -- I think |
| 03:26 | 24 | that's likely. |
| 03:26 | 25 | Yes, sir? |

| | | |
|---|---|---|
| 03:26 | 1 | MR. TAMKIN:  May I, Your Honor? |
| 03:27 | 2 | THE COURT:  Yeah, of course. |
| 03:27 | 3 | MR. TAMKIN:  I appreciate that. |
| 03:27 | 4 | THE COURT:  Yes, sir. |
| 03:27 | 5 | MR. TAMKIN:  So one of the factors that |
| 03:27 | 6 | you started with, which was we may need to do -- we're |
| 03:27 | 7 | going to do some briefing on this backwards |
| 03:27 | 8 | incompatibility.  Theoretically that could impact what |
| 03:27 | 9 | we're going to do -- |
| 03:27 | 10 | THE COURT:  Sure.  I wasn't -- let me |
| 03:27 | 11 | interrupt you and say as soon as you said that, I know |
| 03:27 | 12 | where you're going. |
| 03:27 | 13 | MR. TAMKIN:  Exactly. |
| 03:27 | 14 | THE COURT:  So let's do this.  Let's -- |
| 03:27 | 15 | how long -- let me ask a different question.  Let's try |
| 03:27 | 16 | something different.  You know, eventually I'm going to |
| 03:27 | 17 | figure out how to do this job better. |
| 03:27 | 18 | How long do you all think each side would |
| 03:27 | 19 | need to do the additional briefing? |
| 03:27 | 20 | I would think it could be a pretty quick |
| 03:27 | 21 | turnaround, a couple of weeks, you know, couple of |
| 03:27 | 22 | weeks, right? |
| 03:27 | 23 | MR. COLLARD:  That works for us, Your |
| 03:27 | 24 | Honor. |
| 03:27 | 25 | THE COURT:  Is there any reason it |

—70—

| | | |
|--|--|--|
| 03:27 | 1 | couldn't be simultaneous briefing? |
| 03:27 | 2 | I mean, I think you all touched on it in |
| 03:27 | 3 | the other briefing.  It's a pretty discrete deal.  What |
| 03:28 | 4 | I would probably prefer is you all just in two weeks, |
| 03:28 | 5 | mas o menos, get me a brief on why you're right, and |
| 03:28 | 6 | then we can look at it.  I'd like to move this part of |
| 03:28 | 7 | it quickly so that then the -- knowing what I'm going |
| 03:28 | 8 | to do with that, the plaintiff can then make its |
| 03:28 | 9 | decision. |
| 03:28 | 10 | Mr. Ravel? |
| 03:28 | 11 | MR. RAVEL:  Your Honor, two weeks sounds |
| 03:28 | 12 | fine with us.  And the simultaneous briefing's a really |
| 03:28 | 13 | good idea, Judge, but I think both of these sides are |
| 03:28 | 14 | going to want to, you know, maybe respond a little with |
| 03:28 | 15 | a letter with three paragraphs, have a short hearing. |
| 03:28 | 16 | I just -- |
| 03:28 | 17 | THE COURT:  I'm going to give you two |
| 03:28 | 18 | weeks from today to get me a brief no longer than five |
| 03:28 | 19 | pages.  And then you can have a second brief, a |
| 03:28 | 20 | response, a week later no longer than five pages. |
| 03:28 | 21 | MR. RAVEL:  Thank you, Judge. |
| 03:28 | 22 | THE COURT:  Okay.  I mean, I don't care |
| 03:28 | 23 | how long it is, but my clerks do.  And so what we'll do |
| 03:28 | 24 | then is we will -- at the end of that hearing, I will |
| 03:28 | 25 | rule at the end -- we'll have a hearing on this as soon |

03:29  1   as I can after we -- it's complete.

03:29  2              And, Mr. Ravel, I'll put this on you -- I

03:29  3   don't care who does it -- but when the second one is

03:29  4   filed, if -- you know, we do have other things coming

03:29  5   in, if you would be so kind as to let -- I think this

03:29  6   is Mr. Gunnell's case.  If you would be so kind as to

03:29  7   let him know that it's complete and we need to set a

03:29  8   hearing, we'll --

03:29  9              MR. RAVEL:  Happy to do it.  A day

03:29  10  without an e-mail to your chambers is like a day

03:29  11  without sunshine.

03:29  12             THE COURT:  I understand.  For us too.

03:29  13             And so we'll do the hearing.  After the

03:29  14  hearing when I let you all know what we're going to do,

03:29  15  we'll set a deadline for the plaintiffs to amend their

03:29  16  pleadings.

03:29  17             And the long -- the reason I'm being so

03:29  18  long-winded is it makes sense to me to not take up the

03:29  19  question of amending the invalidity contentions today,

03:29  20  because it looks -- I think the likely scenario,

03:29  21  regardless of what happens, is there are going to be

03:30  22  new or additional infringement contentions.  And so it

03:30  23  just makes sense that there'll be new invalidity

03:30  24  contentions following that.

03:30  25             So I'm going to deny the motion for -- to

| 03:30 | 1 | amend the invalidity contentions at this point just to |

03:30   1   amend the invalidity contentions at this point just to

03:30   2   get it off of my docket without prejudice.  When we get

03:30   3   back together at the hearing, I will -- I'm going to

03:30   4   allow the defendants to amend their invalidity

03:30   5   contentions.

03:30   6          But it will be -- and in probably a

03:30   7   different scope that -- that deals with -- you may or

03:30   8   may not need to have the issues that are currently

03:30   9   present.  You're going to -- the defendant is going to

03:30   10  have an opportunity to amended invalidity contentions.

03:30   11  And I'm going to make that as broad as the infringement

03:30   12  contentions are going to be.

03:30   13         So I think that takes up a lot of what we

03:30   14  have.  I think there are other discovery issues that I

03:30   15  don't know whether they are now moot or not.

03:30   16         MR. RAVEL:  Judge, one clarifying issue

03:31   17  on what you just ruled.

03:31   18         THE COURT:  Yes.

03:31   19         MR. RAVEL:  Is I think both sides are a

03:31   20  little disappointed that this is inconsistent with the

03:31   21  December trial that we were hurtling towards with --

03:31   22         THE COURT:  Yeah.  We're not going to get

03:31   23  to trial --

03:31   24         MR. RAVEL:  -- with rebuttal expert

03:31   25  reports.

—73—

```
03:31    1                    THE COURT:  We're not going to get to
03:31    2     trial in December.
03:31    3                    MR. RAVEL:  Obviously.  But are we just
03:31    4     going to pause everything and do a new --
03:31    5                    THE COURT:  I think that -- that's what
03:31    6     makes sense to me, unless the plaintiff thinks there'll
03:31    7     be some prejudice.  It seems to me the plaintiff would
03:31    8     like to know -- would like to be certain of which
03:31    9     claims they're asserting.
03:31   10                    And so, yes, we'll pause everything.  At
03:31   11     least for the next -- we'll pause it until the next
03:31   12     hearing.  Everything's stayed until the next hearing.
03:31   13                    And then if one of you -- even though
03:31   14     this will, I'm sure, be on the top of my mind and I'll
03:31   15     think of little else over the next three weeks.  If you
03:31   16     would remind me we had this hearing and what it was I
03:31   17     said, then we'll take up the issues of scheduling and
03:31   18     all these things.
03:31   19                    MR. RAVEL:  Zoom or live for the mini
03:32   20     Markman, Judge?
03:32   21                    THE COURT:  Look.  There are no --
03:32   22     there's no group of lawyers I would rather have here in
03:32   23     person.  You're one of my favorite lawyers of anyone
03:32   24     who's appeared in front of me.  I would love for you
03:32   25     all to be here.
```

—74—

03:32  1           That being said, it's a -- it's hot and
03:32  2   it's a long way away.  I don't know that it merits --
03:32  3   it'll be a short hearing, I would think.  I would think
03:32  4   it'd be fine to do it by Zoom.  Because I think that'd
03:32  5   be much more cost efficient for you guys.
03:32  6           But if you huddle up and you want -- no
03:32  7   one's going to keep you away, but it just seems -- this
03:32  8   is a pretty discrete deal that will take much less
03:32  9   time.  So let's plan on doing this by Zoom, unless you
03:32 10   all tell me that you think that doesn't work.
03:32 11           Is there anything else we need to take up
03:32 12   today?
03:32 13           MR. COLLARD:  I just had one question,
03:32 14   Your Honor.
03:32 15           Are you going to issue something
03:32 16   clarifying specifically which terms and sort of similar
03:32 17   to your prior claim construction order?
03:32 18           THE COURT:  We will, at least which -- we
03:32 19   will identify which claim terms.  And then you should
03:33 20   presume that the ones we identify are the ones that --
03:33 21   you should presume that it's the Federal Circuit -- the
03:33 22   construction the Federal Circuit approved.
03:33 23           MR. COLLARD:  Okay.
03:33 24           THE COURT:  It may be as short as a text
03:33 25   or an e-mail, if that goes faster.  It may be an -- but

03:33    1    we will do something that formally gives you the
03:33    2    words -- the claim terms that we're talking about.
03:33    3                    MR. COLLARD:  Okay.
03:33    4                    THE COURT:  I think they're pretty
03:33    5    clearly disclosed in the briefing, and I know I had a
03:33    6    chart in here that I just don't know how quickly I
03:33    7    could get to it so I could read them in, but yes -- or
03:33    8    I'll tell you what, in fact, I'm going to do something
03:33    9    completely different.
03:33   10                    Mr. Ravel, again, I'm going to pick on
03:33   11    you.  You send us the claim terms that you believe I'm
03:33   12    including, copy plaintiff's counsel.
03:33   13                    And if plaintiff's counsel believes that
03:33   14    Mr. Ravel has been too -- is inaccurate in what claim
03:34   15    terms were covered by the Federal Circuit, you let us
03:34   16    know and we'll take it up then.
03:34   17                    But, Mr. Ravel, if you will take the
03:34   18    laboring oar of getting us something that clearly
03:34   19    identifies which claim terms they are, and I would like
03:34   20    the plaintiffs to sign off on it.  Not that they're
03:34   21    signing off that what I'm doing is correct, but just
03:34   22    that the claim terms that you are identifying are the
03:34   23    correct claim terms.
03:34   24                    MR. RAVEL:  We'll take care of it, Judge.
03:34   25                    THE COURT:  Get Mr. Siegmund to help if

| | | |
|---|---|---|
| 03:34 | 1 | you really need a, you know, pro from Dover on this |
| 03:34 | 2 | one.  You know, he was a big deal at Baylor Law School |
| 03:34 | 3 | a long time ago. |
| 03:34 | 4 | MR. RAVEL:  He had a pretty high-class |
| 03:34 | 5 | clerkship too. |
| 03:34 | 6 | THE COURT:  He had a big time -- those |
| 03:34 | 7 | are hard to get.  I wouldn't have qualified. |
| 03:34 | 8 | (Laughter.) |
| 03:34 | 9 | THE COURT:  So anything else we need to |
| 03:34 | 10 | take up? |
| 03:34 | 11 | Yes, sir. |
| 03:34 | 12 | MR. SIEGMUND:  Judge, a very wise judge |
| 03:34 | 13 | told me that you should let your audience know when |
| 03:34 | 14 | you're going to cede tide back them.  We did have a |
| 03:35 | 15 | discovery dispute, but in light of staying all the |
| 03:35 | 16 | deadlines, I think we're going to meet and confer and |
| 03:35 | 17 | try to reach a resolution on it. |
| 03:35 | 18 | So from Wiwynn's perspective, we don't |
| 03:35 | 19 | have anything else. |
| 03:35 | 20 | THE COURT:  Anyone disagree with that on |
| 03:35 | 21 | the defense counsel side? |
| 03:35 | 22 | And from the plaintiffs? |
| 03:35 | 23 | MR. COLLARD:  No.  We had one dispute |
| 03:35 | 24 | with ASUS, but I think the same thing will be... |
| 03:35 | 25 | THE COURT:  I'm happy to take it up.  I'm |

77

03:35   1   happier for you all to try and work it out in light of

03:35   2   what we've done here.

03:35   3                    I appreciate the arguments that were made

03:35   4   today.  They were very helpful.  And but -- as we were

03:35   5   talking back there, I realized I wasn't completely

03:35   6   clear enough on the issue of backward compatibility to

03:35   7   make the decision right now.  So your briefing will

03:35   8   help on that, and we will get that resolved as soon as

03:35   9   you get the briefing to us.

03:35   10                    Anything else?

03:35   11                    Have a good afternoon.

03:35   12                    (Hearing adjourned.)

13

14

15

16

17

18

19

20

21

22

23

24

25

−78−

1    UNITED STATES DISTRICT COURT  )

2    WESTERN DISTRICT OF TEXAS      )

3

4

5                  I, Kristie M. Davis, Official Court

6    Reporter for the United States District Court, Western

7    District of Texas, do certify that the foregoing is a

8    correct transcript from the record of proceedings in

9    the above-entitled matter.

10                 I certify that the transcript fees and

11   format comply with those prescribed by the Court and

12   Judicial Conference of the United States.

13                 Certified to by me this 14th day of July

14   2022.

15

                          /s/ Kristie M. Davis
16                        KRISTIE M. DAVIS
                          Official Court Reporter
17                        800 Franklin Avenue
                          Waco, Texas 76701
18                        (254) 340-6114
                          kmdaviscsr@yahoo.com
19

20

21

22

23

24

25