# Exhibit 61

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

INTEL CORPORATION
Petitioner,

v.

ACQIS LLC,
Patent Owner

_____

Case IPR2021-01110
Patent 9,703,750

_____

**PATENT OWNER'S PRELIMINARY RESPONSE**

IPR2021-01110
Patent 9,703,750

## **TABLE OF CONTENTS**

**Page(s)**

I.    PRELIMINARY STATEMENT ......................................................................1

II.   PROSECUTION BACKGROUND OF THE '750 PATENT.......................6

III.  CLAIM CONSTRUCTION ........................................................................10

IV.   LEGAL STANDARD ................................................................................10

V.    THE BOARD SHOULD EXERCISE ITS DISCRETION TO DENY INSTITUTION UNDER §325(D)................................................................11

    A.    The Same or Substantially the Same Arguments were Previously Presented to the Office ....................................................12

        1.    The Examination Division of the Office Has Already Twice Considered and Rejected Petitioner's Argument..........12

        2.    The Board Has Already Considered and Rejected the Central, Necessary Argument in the Petition...........................14

    B.    Petitioner has Not Demonstrated that the Office Erred in a Manner Material to Patentability.......................................................16

VI.   THE PETITION FAILS TO DEMONSTRATE A REASONABLE LIKELIHOOD OF PREVAILING ON ANY ASSERTED GROUND.......17

    A.    The Amendments to the '912 Application .........................................18

    B.    Chu '330 Properly Incorporated By Reference Chu '886.................21

    C.    None of the Asserted References Qualifies as Prior Art....................30

VII.  THE BOARD SHOULD EXERCISE ITS DISCRETION TO DENY INSTITUTION UNDER §314 ....................................................................31

        1.    Factor 1: No Stay Has Issued, Petitioner Has Not Sought Stay in View of its Petition, and the Court is Unlikely to Stay the Parallel Litigation.......................................................31

        2.    Factor 2:  Trial Dates Precede the Board's Statutory Deadline for a Final Written Decision ....................................34

        3.    Factor 3:  Courts and Litigants Have Invested Significant Resources in Pending Litigation .............................................35

i

IPR2021-01110
Patent 9,703,750

4.      Factor 4:  There is Significant Overlap Between the
        Issues in the Parallel Litigation and Those Raised in the
        Petition ...................................................................................37

5.      Factor 5: The Petitioner is Closely Related to and
        Coordinating with the Lenovo Defendant RPIs, who are
        Parties in the Parallel Litigation..............................................40

6.      Factor 6: The Board Has Already Considered and
        Rejected the Substance of Petitioners' Invalidity Theory .......43

VIII.   CONCLUSION.............................................................................45

4821-7322-1626\6

IPR2021-01110
Patent 9,703,750

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleration Bay, LLC v. Activision Blizzard Inc.*,
    908 F.3d 765 (Fed. Cir. 2018) ............................................................................11

*ACQIS LLC v. Lenovo Group Ltd.*,
    Case No. 6-20-cv-00967 (W.D. Tex.) ............................................................6, 31

*ACQIS LLC v. Samsung Elecs. Co. Ltd., et al.*,
    Case No. 2:20-cv-00295-JRG (E.D. Tex.), Dkt. 46 ............................................32

*Advanced Bionics, LLC v. Med-el Elektromedizinische Geräte Gmbh*,
    IPR2019-01469, Paper 6 (PTAB Feb. 13, 2020) (precedential,
    designated March 24, 2020)........................................................................11, 16, 17

*Advanced Display Sys. v. Kent State Univ.*,
    212 F.3d 1272 (Fed. Cir. 2000) ....................................................................23, 27

*Apple Inc. v. Fintiv, Inc.*,
    IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020)......................................*passim*

*Applied Materials, Inc. v. Demray, LLC*,
    IPR2021-00104, Paper 13 (PTAB May 11, 2021) ......................................42, 43

*Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*,
    543 F.3d 657 (Fed. Cir. 2008) ......................................................................22, 24

*Becton, Dickinson & Co. v. B. Braun Melsungen AG*,
    IPR2017-01586, Paper 8 (PTAB Dec. 15, 2017) ...............................................11

*Commonwealth Sci. & Indus. Rsch. Organisation v. Buffalo Tech.
(USA), Inc.*,
    542 F.3d 1363 (Fed. Cir. 2008) ..........................................................................13

*Hollmer v. Harari*,
    681 F.3d 1351 (Fed. Cir. 2012) ............................................................25, 26, 28

IPR2021-01110
Patent 9,703,750

*NetApp, Inc. v. KOM Software, Inc.*,
   IPR2019-00605, Paper 10 (PTAB Sept. 9, 2019).................................................31

*NHK Spring Co. v. Intri-Plex Techs.*, Inc., IPR2018-00752, Paper 8
   (PTAB Sept. 12, 2018) (precedential, designated May 7, 2019) ...... 31*Phillips v.
   AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ...................................................................10, 29

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008) .........................................................................30

*Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*,
   IPR2021-00604, Paper 7 (PTAB August 9, 2021).....................................*passim*

*Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*,
   IPR2021-00605, Paper 7 (PTAB August 23, 2021) ..........................3, 14, 15, 26

*Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*,
   IPR2021-00606, Paper 7 (PTAB August 25, 2021) ..........................3, 14, 15, 26

*SMR Auto. Sys. USA, Inc. v. Magna Mirrors of Am., Inc.*,
   IPR2018-00931, Paper 7 (PTAB Sept. 14, 2018)................................................12

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) .........................................................................29

*Valve Corp. v. Elec. Scripting Prods., Inc.*,
   IPR2019-00062, Paper 11 (PTAB Apr. 2, 2019) ................................................43

*VMware, Inc. v. Intellectual Ventures I LLC*, IPR2020-00470 (PTAB
   Aug. 18, 2020) ...................................................................................................39

## Statutes

35 U.S.C. 132…..................................................................................................13

35 U.S.C. § 112...................................................................................................12

35 U.S.C. § 112, ¶ 1 ...........................................................................................15

IPR2021-01110
Patent 9,703,750

35 U.S.C. §119(e) ................................................................................23

35 U.S.C. § 120 ...........................................................................7, 8, 28

35 U.S.C. § 314(a) ......................................................................6, 10, 31

35 U.S.C. § 314(b) ...............................................................................34

35 U.S.C. § 316(1)(11) .........................................................................34

35 U.S.C. § 325(d) ...................................................................4, 11, 12, 13

## Other Authorities

37 C.F.R. § 1.57 (g) (2007) ..................................................................20

37 C.F.R. § 42.24(a)(1)(i) .....................................................................46

37 C.F.R. § 42.100(b) ...........................................................................10

37 CFR 1.57 (2005) ........................................................................23, 24

69 Fed. Reg. 56482 ..............................................................................23

69 Fed. Reg. 56498 ..............................................................................23

M.P.E.P. ........................................................................................*passim*

M.P.E.P. § 201.06(c) ............................................................................23

M.P.E.P. § 608.01(p) ............................................................................20

M.P.E.P. § 608.04 .............................................................................9, 13

IPR2021-01110
Patent 9,703,750

## TABLE OF EXHIBITS

| Number | Description |
|--------|-------------|
| EX2001 | Excerpts from Defendants' Invalidity Contentions in *ACQIS LLC v. Lenovo Group Ltd.et al.*, Case No. 6:20-cv-00967-ADA (W.D. Tex.) |
| EX2002 | File History of U.S. Patent No. 8,977,797 |
| EX2003 | File History of U.S. Patent App. No. 12/561,138 |
| EX2004 | Scheduling Order in *ACQIS LLC v. Lenovo Group Ltd.*, Case No. 6-20-cv-00967 (W.D. Tex.) |
| EX2005 | First Amended Docket Control Order in *ACQIS LLC v. Samsung Elecs. Co. Ltd., et al.*, Case 2:20-cv-00295-JRG (E.D. Tex.) |
| EX2006 | Excerpts from Defendants' P.R.  3-3 and 3-4 Invalidity Contentions and Disclosures and Subject Matter Eligibility Contentions, Case 2:20-cv-00295-JRG (E.D. Tex.) |
| EX2007 | Excerpts from Pacer docket sheet for *ACQIS LLC v. Lenovo Group Ltd. et al.*, Case No. 6:20-cv-00967-ADA (W.D. Tex.) |
| EX2008 | June 24, 2021 Judge Albright Order Governing Proceedings – Patent Case |

IPR2021-01110
Patent 9,703,750

## I.    PRELIMINARY STATEMENT

Petitioner Intel Corporation ("Petitioner")[1] raises the same failed argument that was already considered five times by the USPTO, including three times by the Board. Petitioner's recycled arguments fair no better here, and the Board should deny institution.  Specifically, none of the references relied on in the Petition qualify as prior art to U.S. Pat. No. 9,703,750 (the "'750 patent"), therefore Petitioner has not met its burden of showing a reasonable likelihood of prevailing on its proposed grounds of unpatentability.

The inventor of the '750 patent, William Chu, is a prolific inventor with dozens of issued patents, and ACQIS has licensed its portfolio to numerous significant technology companies, including multiple Fortune 100 companies. In spite of this track record, Petitioner challenges a significant portion of ACQIS's portfolio, including the '750 patent, by walking the tightest possible rope: advancing the priority date of the '750 patent over ten years in an attempt to use the inventor's own prior, commonly-owned patents and provisional applications against him. In particular, the Petition alleges that the earliest non-provisional priority application, U.S. Pat. App. No. 09/569,758 (the "'758 application") and

---

[1] Intel also identifies various Lenovo entities as real parties-in-interest ("RPI Lenovo Defendants"). Pet. at 8.

IPR2021-01110
Patent 9,703,750

several subsequent applications in the priority chain fail to provide written description for certain claimed features because of an alleged improper incorporation by reference. Petitioner contends that due to this alleged improper incorporation by reference, the '750 patent included new matter and is only entitled to a priority date of April 15, 2011, more than ten years after the May 12, 2000 filing date of the '758 application (or the May 14, 1999 provisional application to which the '758 application claims priority, U.S. Prov. Pat. App. No. 60/134,122). The Petitioner is wrong, and the Board should not institute *inter partes* review of claims 1-2, 4, 21, 24, 31, 34, 44-45, and 48-50 of the '750 patent for the following independent reasons.

***First***, the Board should exercise its discretion to deny institution of *inter partes* review because the arguments advanced by Petitioner have been considered, and rejected, multiple times by the USPTO (including three times by the Board). Petitioner is merely recycling the same argument already asserted earlier this year against Patent Owner and the '750 patent in IPR2021-00604. The Board denied institution less than six weeks ago. *See Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*, IPR2021-00604, Paper 7 at 21 (PTAB August 9, 2021).[2]

─────────────

[2] The Board has also considered and rejected the same argument for other patents in the '750 patent's priority chain in IPR2021-000605 and IPR2021-000606. *See*

IPR2021-01110
Patent 9,703,750

In IPR2021-00604, the Board explained that "Petitioner has ***not*** shown sufficiently that the applications in the '750 patent priority chain did not properly incorporate by reference Chu '330 and Chu '886, or that the examiner erred in entering the amendments that added the subject matter from Chu '886 to the '912 application." *Id.* (emphasis added). "As such, [the Board was] not persuaded by Petitioner's argument that the earliest possible priority date for the challenged claims of the '750 patent is April 15, 2011." *Id.* The Board "determine[d] that the same or substantially the same arguments previously were presented to the Office

_____

*Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*, IPR2021-00605, Paper 7 at 26 (PTAB August 23, 2021) ("denying institution where "Petitioner has not shown sufficiently that the applications in the '768 patent priority chain did not properly incorporate by reference Chu '330 and Chu '886, or that the examiner erred in entering the amendments that added the subject matter from Chu '886 to the '912 application."); *Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*, IPR2021-00606, Paper 7 at 21 (PTAB August 25, 2021) (denying institution where "Petitioner has not shown that the applications in the '797 patent priority chain failed to properly incorporate by reference Chu '330 and Chu '886, or that the Examiner erred in entering the amendments that added the subject matter from Chu '886 to the '912 application."); *see also infra* priority chain timeline in Section II.

3

IPR2021-01110
Patent 9,703,750

[during prosecution of the '912 application] and that Petitioner fails to show that the Examiner erred." *Id.* Because the argument Petitioner presses here has been previously decided by the Office and now has been decided by the Board three times over, the Board here should also exercise its discretion pursuant to 35 U.S.C. § 325(d) to deny the Petition.[3]

    ***Second***, none of the art cited in the Petition is actually *prior* art, but relies on an argument that new matter was introduced (but not rejected) during examination of patents in the '750 patent priority chain. Petitioner's new matter argument is fatally flawed.[4]  The Petition incorrectly asserts that applications in the '750

---

[3] While the underlying "prior" art and combinations thereof vary between Samsung's petitions (IPR2021-00604, IPR2021-00605, IPR2021-00606) and Intel's petition here, each of these petitions raises the same argument in an attempt to move the priority date of the patents in the '750 patent's priority chain (to reach the "prior" art): the examiner allegedly erred in entering the amendments that added the subject matter from Chu '886 to the '912 application.

[4] Patent Owner does not concede that any of the amendments challenged in the Petition are the only disclosure that provide written description for the challenged claims. However, for the limited purpose of this Patent Owner Preliminary Response, Patent Owner assumes that the added figures and disclosure from Chu

IPR2021-01110
Patent 9,703,750

patent's priority chain failed to properly incorporate by reference a previous application. Specifically, the Petition incorrectly asserts that U.S. Pat. No. 6,345,330 ("Chu '330") failed to properly incorporate by reference U.S. Provisional Pat. App. No. 60/083,886 ("Chu '886"). Petitioner **must** make this strained (five times rejected) form-over-function argument to reach its "prior art" of choice. Each of Petitioner's specific grounds of invalidity relies on Chu '330 as the primary reference. *See* Pet. at 34.

However, Chu '330 incorporated Chu '886 by reference as of the filing date of the application that issued as Chu '330. At two separate instances during examination, Patent Owner called the examiner's attention to the incorporation by reference of Chu '886 when later amending to explicitly add previously incorporated material from Chu '886 to the pending U.S. Pat. App. No. 13/087,912 (the "'912 application"). Chu '330 and Chu '886 are part of the disclosure of each application in the priority chain, and the '750 patent is entitled to a priority date of no later than May 12, 2000—the filing date of the '758 application. Based on this priority date, **none** of the references relied on in the Petition qualifies as prior art. The Petition should be denied.

---

'886 are necessary to support the challenged claim limitations. Patent Owner reserves the right to argue otherwise if *inter partes* review is instituted.

5

IPR2021-01110
Patent 9,703,750

**Third**, the Board should exercise its discretion to deny the Petition under 35 U.S.C. § 314(a) and *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (precedential). The RPI Lenovo Defendants advance the same arguments, based on the same art, that they have raised in a parallel proceeding in the Western District of Texas[5] (*see* EX2001 at 2, 7-9)—a matter in the midst of claim construction and set for trial before the deadline for a Final Written Decision on this Petition. Due to the overlap of issues and the advanced stage of the District Court proceeding, institution of this *inter partes* review would be a waste of resources for the Board, the District Court, and the parties.

## II.   PROSECUTION BACKGROUND OF THE '750 PATENT

The '750 patent was filed as U.S. Pat. App. No. 14/511,093 on October 9, 2014. The '750 patent claims priority through a series of eleven preceding patent applications going back to the '758 application, filed May 12, 2000, as shown in the timeline below.[6]

_____

[5] *ACQIS LLC v. Lenovo Group Ltd.*, Case No. 6-20-cv-00967-ADA (W.D. Tex.).

[6] The '758 application also claims priority to U.S. Provisional Application No. 60/134,122 (the "'122 provisional application"). The Board need not determine whether the '750 patent is entitled to the priority date of the '122 provisional

IPR2021-01110
Patent 9,703,750



Each application in the priority chain accurately identifies each prior application in the priority chain as required by 35 U.S.C. § 120 and incorporates such applications by reference.

Each application/patent in the priority chain utilizes the long-standing practice of incorporation by reference to incorporate material from the inventor's prior Patent Application No. 09/149,882. *See, e.g.*, EX1006 at 40; EX1020 at 16. This '882 application corresponds to the asserted reference, Chu '330. EX1003 at 1. Petitioner does not dispute that Chu '330 is properly incorporated by reference.

application for purposes of denying the Petition, as none of the alleged prior art predates the '758 application's May 12, 2000 filing date.

IPR2021-01110
Patent 9,703,750

During prosecution of the '912 application[7], one of the applications in the '750 patent's priority chain, Patent Owner amended the specification of the '912 application to explicitly recite certain disclosure, verbatim, from Chu '886, to which Chu '330 claimed priority, and which was incorporated by reference in Chu '330.[8] EX1009 at 12-16. Specifically, on April 15, 2011, the same day the '912 application was submitted, Patent Owner submitted a Preliminary Amendment to explicitly include Figures 8A and 8B from Chu '886 and the corresponding description of those figures. *Id.* at 26. The remarks accompanying this preliminary amendment explain that Figures 8A and 8B are from Chu '886, and directed the examiner to the incorporation by reference of Chu '886 into Chu '330. *Id.* Shortly thereafter, on April 28, 2011, the PTO issued a Notice to File Corrected Application Papers, requesting marked up and clean versions of the substitute specification and a statement that the substitute specification contains no new

---

[7] Referred to by Petitioner by the Patent Number 8,234,436 (the "'436 Patent"), but to be consistent across multiple IPR proceedings, it is referred to as the '912 application here. *See* Pet. at 27; EX1009 (referred to by Petitioner as "'436 FH").

[8] Like the '750 patent, the '912 application also explicitly incorporated by reference Chu '330, which in turn incorporated by reference Chu '886. EX1009 at 65.

IPR2021-01110
Patent 9,703,750

matter. *Id.* at 184. On May 11, 2011, Patent Owner submitted the requested

corrected materials, (*see id.* at 191-303), including a statement confirming that no

new matter had been added via the Preliminary Amendment. *Id.* at 191. The

examiner did not object to these amendments as containing new matter under

M.P.E.P. § 608.04. *See id.* at 311-320 (non-final office action containing no new

matter rejection).

Subsequently, Patent Owner again amended the specification of the '912

application on December 16, 2011, to explicitly recite Figures 8C and 24 and

corresponding description from Chu '886. *Id.* at 379-392. Again, Patent Owner

explained that the added figures are from Chu '886, and directed the examiner to

the incorporation by reference of Chu '886 into Chu '330. And again, the examiner

did not object to these amendments as containing new matter under M.P.E.P. §

608.04. *See id.* at 405-414 (final office action containing no new matter rejection).

Thus, the examiner twice considered amendments to the specification to recite

previously incorporated material, and in neither instance did the examiner object to

the amendments.

Following the amendments —including both the April 15 and December 16,

2011 amendments—made during prosecution of the '912 application, each

IPR2021-01110
Patent 9,703,750

subsequent application in the '750 patent's priority chain included the same figures
and disclosure that were added by amendment to the '912 application.[9]

## III.   CLAIM CONSTRUCTION

Patent Owner does not believe that any claim terms require express
construction to deny the Petition. Accordingly, the claims should be given their
ordinary and customary meaning in light of the specification and prosecution
history, as understood by a person of ordinary skill in the art. 37 C.F.R. §
42.100(b); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

## IV.   LEGAL STANDARD

The Board may not institute an *inter partes* review unless the Petition
demonstrates that there is a reasonable likelihood that the petition would prevail
with respect to at least one of the claims challenged in the petition.
35 U.S.C. § 314(a).  The Petitioner bears the burden to prove that the references

---

[9] In the context of prosecuting U.S. Pat. App. No. 13/649,084, which issued as U.S.
Pat. No. 8,977,797, a non-substantive modification to Figure 8C was made in
which the description below Figure 8C was removed. *See* EX2002 at 125-127.
This modification was carried forward in subsequent applications, including the
application that issued as the '750 patent.

IPR2021-01110
Patent 9,703,750

relied on qualify as prior art. *Acceleration Bay, LLC v. Activision Blizzard Inc.*,

908 F.3d 765, 772 (Fed. Cir. 2018).

## V.   THE BOARD SHOULD EXERCISE ITS DISCRETION TO DENY INSTITUTION UNDER §325(d)

The USPTO has already considered and rejected Petitioner's argument five

times—twice during examination and, critically, three times by the Board just

weeks ago. The Board should deny the Petition under 35 U.S.C. § 325(d) based on

the two separate examiners' rejection, and the Board's rejection, of Petitioner's

arguments here.

Section 325(d) provides that "[i]n determining whether to institute or order a

proceeding . . . , the Director may take into account whether, and reject the petition

or request because, the same or substantially the same . . . arguments previously

were presented to the Office." 35 U.S.C. § 325(d); *see also Becton, Dickinson &

Co. v. B. Braun Melsungen AG,* IPR2017-01586, Paper 8 at 17-18 (PTAB Dec. 15,

2017) (precedential as to Section III.C.5, first paragraph); *Advanced Bionics, LLC

v. Med-el Elektromedizinische Geräte Gmbh*, IPR2019-01469, Paper 6, at 8-9

(PTAB Feb. 13, 2020) (precedential, designated March 24, 2020) ("Thus, under §

325(d), the Board uses the following two-part framework: (1) … whether the same

or substantially the same arguments previously were presented to the Office; and

(2) … whether the petitioner has demonstrated that the Office erred in a manner

IPR2021-01110
Patent 9,703,750

material to the patentability of challenged claims."). The Board has previously

exercised its discretion under § 325(d) to deny institution where, as here, the

examiner previously considered and affirmed the efficacy of an incorporation by

reference in the context of a priority claim. *SMR Auto. Sys. USA, Inc. v. Magna*

*Mirrors of Am., Inc.*, IPR2018-00931, Paper 7 at 14 (PTAB Sept. 14, 2018).

> ### A.    The Same or Substantially the Same Arguments were Previously Presented to the Office

> #### 1.    The Examination Division of the Office Has Already Twice Considered and Rejected Petitioner's Argument

When the disclosure from Chu '886 was added to the '912 application,

Patent Owner specifically directed the examiner to the transmittal form as support

for the amendment:

> The original '758 parent application incorporated by reference U.S. Application No. 09/149,882 (now issued as U.S. Patent No. 6,345,330), which, in turn, claimed the benefit of and incorporated by reference U.S. Provisional Application No. 60/083,886 (the "'886 provisional application") (*See* checked incorporation by reference box in utility patent application transmittal of U.S. Application No. 09/149,882 filed on September 8, 1998).    By this preliminary

EX1009 at 26 (emphasis added). The examiner did not object to the inclusion of

the amendment as new matter or issue a rejection under § 112. In fact, ***two***

***different examiners*** considered and rejected Petitioner's argument. Patent Owner

entered a similar amendment while prosecuting U.S. App. No. 12/561,138, as part

of a separate priority chain, again directing the examiner to the transmittal letter

IPR2021-01110
Patent 9,703,750

submitted with Chu '330. EX2003 at 363. And again the examiner (different from the examiner of the '912 application) allowed the amendment without objection. *See id.* at 446 (notice of allowance issued after entry of amendment adding figures and disclosure from Chu '886). Thus, the Office has twice rejected the Petitioner's argument, and Patent Owner is entitled to an "especially weighty presumption" that Chu '886 is properly incorporated by reference in Chu '330. *Commonwealth Sci. & Indus. Rsch. Organisation v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1380 (Fed. Cir. 2008) (quoting *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574-75 (Fed. Cir. 1992)).

In its cursory dismissal of the Section 325(d) framework (Pet. at 137-138), Petitioner attempts to sidestep the prior consideration and rejection by the examiner by focusing on the wrong examination—the examination of the application that issued as the '750 Patent. But it is undisputed that that application already contained Figures 8A-8C and the associated disclosure, and thus, there was no ripe incorporation by reference issue to be reviewed. Rather, the proper time for analyzing the incorporation by reference issue was at the time the figures and description were actually added to the priority family. *See* M.P.E.P. § 608.04, 8th Ed. Rev. 8 (July 2010) ("When new matter is introduced into the specification, the amendment should be objected to under 35 U.S.C. 132… and a requirement made to cancel the new matter. The subject matter which is considered to be new matter

13

IPR2021-01110
Patent 9,703,750

must be clearly identified by the examiner.").  The argument raised by Petitioner

now had already been considered and rejected during the earlier prosecution of the

'912 application–and it need not be reconsidered in every subsequent application

after the material was explicitly incorporated into the specification.

### 2. The Board Has Already Considered and Rejected the Central, Necessary Argument in the Petition

The Petition survives or perishes at the institution phase on the strength of

the argument that "[t]he amendments that introduced Figures 8A-8C and

associated disclosure added new matter, because none of '436 Patent's parent

applications properly incorporated by reference the '886 Provisional", and thus,

"the challenged claims are not entitled to a priority date earlier than April 15,

2011." Pet. at 24, 31. But the Board has already considered and rejected the

substantive merits of this *exact same issue* presented in IPR2021-00604, IPR2021-

00605, and IPR2021-00606: "Petitioner argue[ed] that Chu '886 was not properly

incorporated by reference into the '750 Patent's family, and the earliest priority

date to which the claims relying on the Chu '886 disclosure are entitled is April

[1]5, 2011". *Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*, IPR2021-00604,

Paper 7 at 6 (PTAB August 9, 2021); *see also Samsung Electronics Co., Ltd., et al.*

*v. ACQIS LLC*, IPR2021-00605, Paper 7 at 26 (PTAB August 23, 2021) (same);

*Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*, IPR2021-00606, Paper 7 at 21

14

IPR2021-01110
Patent 9,703,750

(PTAB August 25, 2021) (same). In those proceedings, the Board explained that

"the examiner considering the '912 application did not object to the inclusion of

the amendments as new matter or issue a rejection under 35 U.S.C. § 112, ¶ 1."

*Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*, IPR2021-00604, Paper 7 at 6

(PTAB August 9, 2021) at 11. "Nor did the examiner require the applicant to

change the benefit claim from "continuation" to "continuation-in-part." *Id.*

"Instead, the examiner entered the amendments and subsequently allowed the '912

application with the subject matter added from Chu '886." *Id.* The Board

determined that "Petitioner has not shown sufficiently that the applications in the

'750 patent priority chain did not properly incorporate by reference Chu '330 and

Chu '886, or that the examiner erred in entering the amendments that added the

subject matter from Chu '886 to the '912 application." *Id.* at 21. "As such, we are

not persuaded by Petitioner's argument that the earliest possible priority date for

the challenged claims of the '750 patent is April 15, 2011." *Id.* The Board in

IPR2021-00604, IPR2021-00605, and IPR2021-00606 itself exercised its

discretion to deny institution based on the examiner's previous consideration of the

issue during prosecution.  *Id; see also Samsung Electronics Co., Ltd., et al. v.

ACQIS LLC*, IPR2021-00605, Paper 7 at 26 (PTAB August 23, 2021) (same);

*Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*, IPR2021-00606, Paper 7 at 21

(PTAB August 25, 2021) (same).

15

IPR2021-01110
Patent 9,703,750

Thus, the USPTO has already considered and rejected, on five separate

occasions, the same or substantially the same arguments as those presented by

Petitioner here. The first part of the *Advanced Bionics* framework is satisfied five

times over.

**B.   Petitioner has Not Demonstrated that the Office Erred in a Manner Material to Patentability**

Petitioner attempts to sidestep the Office's repeated rejections of its

argument by incorrectly reframing the argument: the only alleged error identified

by Petitioner is that the wrong standard of review was applied when evaluating an

incorporation by reference. Pet. at 26 n.4. This is not an error, because the Patent

Owner complied with the M.P.E.P. requirements for incorporation by reference at

the time of prosecution. As the Board in IPR2021-00604, IPR2021-00605, and

IPR2021-00606 expressly recognized and applied, the correct standard for

evaluating the sufficiency of the incorporation by reference during prosecution is

the reasonable examiner standard. *See Samsung Electronics Co., Ltd., et al. v.*

*ACQIS LLC*, IPR2021-00604, Paper 7 at 16 (PTAB August 9, 2021). Moreover,

the issued '750 patent (that is, the one that would be looked at by a POSITA)

indisputably contains Figures 8A-8C and the associated disclosures within "the

four corners" of the specification and thus has no written description issue or need

to rely on incorporation by reference. *See* Pet. at 29 n.6 (citing *Hollmer v. Harari*,

IPR2021-01110
Patent 9,703,750

681 F.3d 1351, 1358 (Fed. Cir. 2012) ("The incorporation by reference analysis, therefore, is similarly constrained by the four corners of the application.").)

For these reasons and the reasons discussed below in Section VI.b., Petitioner has not demonstrated that the USPTO erred in a manner material to patentability in any of the instances where the USPTO considered the same argument, let alone all five. *See Advanced Bionics, LLC v. Med-el Elektromedizinische Geräte Gmbh*, IPR2019-01469, Paper 6, at 9 (PTAB Feb. 13, 2020) ("If reasonable minds can disagree regarding the purported treatment of the art or arguments, it cannot be said that the Office erred in a manner material to patentability. At bottom, this framework reflects a commitment to defer to previous Office evaluations of the evidence of record unless material error is shown.").

## VI.   THE PETITION FAILS TO DEMONSTRATE A REASONABLE LIKELIHOOD OF PREVAILING ON ANY ASSERTED GROUND

The Petition fails to demonstrate a reasonable likelihood of success because none of the asserted references qualifies as prior art. As already decided multiple times by the Office (including the Board), the '750 Patent is entitled to at least a priority date of May 12, 2000.  Petitioner asserts that Chu '330 is prior art as issued in February 5, 2002, Cupps as of July 17, 2003, and Helms as of December 5, 2006, all of which are after May 12, 2000. Pet. at 10-11.  Because none of the

IPR2021-01110
Patent 9,703,750

asserted references is prior art in relation to this priority date, the Petition is not

supported by any actual *prior* art, and institution should be denied.

### A.    The Amendments to the '912 Application

As an initial matter, solely for purposes of its Petition, Petitioner concedes

that Figures 8A, 8B, and 8C, and the corresponding disclosure, found at column

16, lines 24-33 in the '750 patent, provide written description for all of the

challenged limitations. Pet. at 19-22. The cited portion of the specification states:

> FIG. 8A shows an attached computer module with integrated
> CPU/NB/Graphics 815 and Integrated HIC/SB 820. FIG. 8B
> shows an attached computer module with single chip 825 fully
> integrated: CPU, Cache, Core Logic, Graphics controller and
> Interface controller. In an implementation with South Bridge in
> Peripheral Console, FIG. 8C shows an example of an attached
> computer module with Integrated CPU/North Bridge/Graphics
> and Peripheral Console with Integrated Peripheral Interface
> Controller and South Bridge.

EX1001 at 16:24-33.

When claims were added to the '912 application, Patent Owner submitted an

amendment to explicitly set forth this material previously incorporated by

reference (the allegedly "only arguable support") in the specification.

The claims of the '912 application and the resulting '436 patent are in sharp

contrast to the claims of the applications and patents that preceded them in the

priority chain. When the '912 application was filed, it was accompanied by a

preliminary amendment canceling claims 1-43 and adding new claims 44-96.

18

IPR2021-01110
Patent 9,703,750

EX1009 at 17-25. The new claims included new limitations that had not previously

appeared in the parent priority applications, including several limitations that are

similar to those identified by the Petition, such as the "single chip" limitations and

"directly connected" limitations. *Compare, e.g.,* EX1009 at 23 (April 15, 2011

Preliminary Amendment, claim 83) *with* Pet. at 22 (reciting a processing unit and

an interface controller integrated on a single chip). For example, claim 83, which

was added to the '912 application by the preliminary amendment at filing, is

presented below and annotated to highlight the new features:

> 83.  A computer system comprising:
>
> a computer module comprising
>
>> an enclosure insertable into a console,
>>
>> an ***integrated interface controller and processing unit*** to output encoded address and data bits of Peripheral Component Interconnect (PCI) bus transaction in serial form, the ***integrated interface controller and processing unit configured as a single chip*** and housed in the enclosure,
>>
>> a ***low voltage differential signal (LVDS) channel*** housed in the enclosure, the ***LVDS channel coupled to the integrated interface controller and processing unit*** to convey encoded address and data bits of PCI bus transaction in serial form, and
>>
>> a system memory housed in the enclosure and coupled to the integrated interface controller and processing unit.

EX1009 at 23 (April 15, 2011 Preliminary Amendment, claim 83) (emphasis

19

IPR2021-01110
Patent 9,703,750

added).

With the new claims added to the '912 application, the correct procedure,

and the procedure followed by Patent Owner, was to amend the specification to

explicitly set forth the material previously incorporated by reference. 37 C.F.R. §

1.57 (g) (2007). Specifically, the version of § 1.57 in effect when the '912

application was filed provided:

> (g) An incorporation of material by reference that does not comply with paragraphs (b), (c), or (d) of this section is not effective to incorporate such material *unless corrected* within any time period set by the Office, but in no case later than the close of prosecution as defined by § 1.114(b), or abandonment of the application, whichever occurs earlier.

37 C.F.R. § 1.57(g) (2007) (emphasis added). Similarly, the version of M.P.E.P.

§ 608.01(p) in effect when the '912 application was filed provided:

> An incorporation by reference of essential material to an unpublished U.S. patent application, a foreign application or patent, or to a publication is improper under 37 C.F.R. § 1.57(c). The improper incorporation by reference is not effective to incorporate the material *unless corrected by the applicant* (37 C.F.R. § 1.57(g)). Any underlying objection or rejection (e.g., under 35 U.S.C. § 112) should be made by the examiner *until applicant corrects the improper incorporation by reference by submitting an amendment to amend the specification or drawings to include the material incorporated by reference*.

M.P.E.P. § 608.01(p), 8th Ed. Rev. 8 (July 2010) (emphases added); *see also id.* at

Example 2 (expressly permitting applicants to amend the specification to support

newly essential material). Thus, both § 1.57 and the M.P.E.P. allow an applicant to

20

IPR2021-01110
Patent 9,703,750

amend the specification to specifically include the previously non-essential

disclosures incorporated by reference where those disclosures became essential due

to claim amendments.

Patent Owner was proactive in complying with both § 1.57 and the M.P.E.P.

When new claims were added in the '912 application, Patent Owner amended the

specification to explicitly recite any arguably essential material, exactly as the

M.P.E.P. prescribes.  Unsurprisingly, the examiner allowed these routine

amendments of the patent specification after the Patent Owner validly stated that

they were not new matter because they were previously incorporated into the

patent specification by reference.

### B.     Chu '330 Properly Incorporated By Reference Chu '886

The Petition contends that Chu '330 failed to properly incorporate by

reference Chu '886. Petitioner is wrong.

When the application that issued as Chu '330 was filed, Patent Owner

submitted a transmittal form with the application that expressly indicated "the

entire disclosure of the prior application . . . is considered as being part of the

disclosure of the accompanying application and is hereby incorporated by

reference therein." EX1011 at 79. These prior applications, U.S. Provisional

Application No. 60/083,886 (*i.e.* Chu '886) and U.S. Provisional Application No.

60/092,706, were ***specifically identified*** on the face of Chu '330 with the

21

IPR2021-01110
Patent 9,703,750

application papers as-filed. EX1011 at 83. Specifically, the specification as-filed expressly identified Chu '886 and the '706 applications by serial number, which allowed these two applications to be identified during intake processing at the USPTO (even before hitting the examiner's desk) as "continuing domestic data" including "provisional application no. 60/086,886." EX1011 at 78.

The Petition asserts that the checked box on the transmittal does not "identify" Chu '886 and that the Box 5 selection was ineffective because Box 4b was not also checked.  Pet. at 27-28. These arguments ignore standard examination practice and M.P.E.P. procedure in utilizing application transmittal forms for incorporation by reference and place form over function.[10]

---

[10] "Procedural lapses during examination, should they occur, do not provide grounds of invalidity. Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued." *Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 663 (Fed. Cir. 2008) (quoting *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 960 (Fed. Cir. 1997)). Failure to check one of two related boxes is the epitome of an inconsequential "procedural lapse." The Petition does not identify any case in which failure to check a box on a transmittal form resulted in invalidation of a patent.

IPR2021-01110
Patent 9,703,750

The version of the M.P.E.P. in effect at the time Chu '330 was filed stated "an applicant may incorporate by reference the prior application by including, in the application-as-filed, a statement that such specifically enumerated prior application or applications are 'hereby incorporated herein by reference.' The statement may appear in the specification *or in the application transmittal letter*." M.P.E.P. § 201.06(c), 7th Ed. (July 1998) (emphasis added). That is exactly what Patent Owner did here. Patent Owner specifically identified the prior filed applications in the specification and informed the examiner that "the entire disclosure of the prior application . . . is hereby incorporated by reference . . . ." EX1011 at 79. Thus, Chu '330's transmittal letter was effective to incorporate Chu '886 by reference under the applicable rules at the time, particularly in view of the statement in the Chu '330 specification that "[t]his application claims any and all benefits as provided by law of U.S. Provisional Application No. 60/083,886 [Chu '886], filed May 1, 1998 . . . ." EX1003 at 60.  Notably, both the right to claim priority and the ability to incorporate other documents by reference are "benefits provided by law." 35 U.S.C. §119(e) (priority benefit via a provisional application); *Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1282-83 (Fed. Cir. 2000) (detailing the common law basis for the practice of incorporation by reference); 69 Fed. Reg. 56482, 56498 (Sept. 21, 2004) (discussing 37 CFR 1.57 (2005) as "codifying the incorporation by reference practice as set forth in

23

IPR2021-01110
Patent 9,703,750

[the] MPEP. . .".); 37 CFR 1.57 (2005) (codification of the incorporation by reference doctrine).

The Petition further argues that Chu '330's incorporation by reference of Chu '886 was ineffective because Chu '330 was not a continuation or divisional application of Chu '886. Pet. at 28 n.5. Again, the Petition cites no case in support of this argument. In *Pregis Corp. v. Doll*, the U.S. District Court for the Eastern District of Virginia found that a continuation-in-part application's incorporation by reference in the transmittal letter of a provisional patent application and a parent patent was effective. 698 F. Supp. 2d 584, 598-99 (E.D. Va. Mar. 16, 2010). The fact that the patent at issue was not a continuation or divisional of either of the incorporated applications did not factor into whether the incorporation by reference was effective. *Id.* Rather, the court found that "this letter indicates that [the relevant figures] were part of the information disclosed when the applicants filed the . . . [a]pplication." *Id.*

The Court in *Pregis* was correct to reject a naked attempt to exploit a formalistic non-issue to invalidate a property right issued by the Patent Office, and the Board should follow the same course. *Aristocrat Techs.*, 543 F.3d at 663 ("Absent proof of inequitable conduct, the . . . applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued."). Thus, Chu '330's application transmittal form, as well as the reference to

24

IPR2021-01110
Patent 9,703,750

Chu '886 in the Chu '330 specification, was effective to incorporate by reference

Chu '886, and Chu '886 is "part of the information disclosed" in Chu '330.

*Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*, IPR2021-00604, Paper 7 at 21

(PTAB August 9, 2021) ("Petitioner has not shown sufficiently that the

applications in the '750 patent priority chain did not properly incorporate by

reference Chu '330 and Chu '886, or that the examiner erred in entering the

amendments that added the subject matter from Chu '886 to the '912

application.").

 Petitioner admits, as it has to, that the specification of Chu '330 precisely

identified Chu '886. Pet. at 30. Thus, Chu '886 was clearly identifiable within the

"four corners" of the specification of Chu '330, even without reference to the

transmittal form. EX1011 at 78, 347 (showing an internal information sheet used

by the USPTO at intake and filing receipt both confirming identification of Chu

'886).  *Cf. Hollmer*, 681 F.3d at 1358 (*Harari II*) (the language on the face of the

applications did not specifically identify an application and the description

provided could be used to describe several different applications).  By not

addressing the reasonable examiner standard beyond dismissing the same in a

footnote, Petitioner apparently concedes that a reasonable examiner would

recognize Chu '330's incorporation by reference of Chu '886 when filed (as two

separate examiners certainly did). *See* Pet. at 26 n.4.

25

IPR2021-01110
Patent 9,703,750

In an attempt to disguise its argument as a new one, Petitioner asserts, in a

footnote, that a POSITA standard (rather than a reasonable examiner standard)

now applies to the assessment because the '912 application and/or Chu '330

eventually issued as patents. *See* Pet. at 26 n.4. But as the Board in IPR2021-

000604 has already confirmed just a few weeks ago, the correct standard here is

the reasonable examiner standard. *Samsung Electronics Co., Ltd., et al. v. ACQIS*

*LLC*, IPR2021-00604, Paper 7 at 16 (PTAB August 9, 2021).[11]

Petitioner latches on to the "narrow circumstances" soundbite in *Harari II*,

but does not actually apply the Federal Circuit's reasoning in that case. *See* Pet. at

26 n.4. In *Harari II*, the Federal Circuit explained that "[q]uestions surrounding

incorporation by reference statements do not arise in isolation but instead generally

manifest as an initial hurdle that first must be crossed before reaching an

underlying issue" and "[i]t is this underlying issue that provides the framework for

resolving the incorporation by reference question." *Hollmer*, 681 F.3d at 1357; *see*

*also id.* at 1353 n. 2. ("Because *Harari I* did 'not involve an issued patent or

language that is intended to appear in an issued patent,' we held that the proper

---

[11] *See also Samsung Electronics Co., Ltd., et al. v. ACQIS LLC*, IPR2021-00605,

Paper 7 at 22 (PTAB August 23, 2021) (same); *Samsung Electronics Co., Ltd., et*

*al. v. ACQIS LLC*, IPR2021-00606, Paper 7 at 16 (PTAB August 25, 2021) (same).

26

IPR2021-01110
Patent 9,703,750

inquiry focused on the reasonable examiner, not the person of ordinary skill.")

Here, the "underlying issue" was whether Patent Owner could amend the

specification of the '912 application to add disclosure from Chu '886. That

necessarily required the examiner to determine whether or not the '912 application

properly incorporated Chu '886. If the answer was no, the examiner would have

issued a new matter rejection. This "underlying issue" is one for a reasonable

examiner and was in fact considered by two separate examiners at the time.

EX1009 at 311-320, 405-414; EX2003 at 363, 446.

The cases cited by Petitioner are inapposite, as the "underlying issues" in

those cases actually implicate the understanding of one of ordinary skill. *See*, *e.g.*,

*Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272 (Fed. Cir. 2000)

(evaluating incorporation by reference for purposes of an anticipation invalidity

argument).[12] In *Harari II*, where the POSITA standard applied, the "underlying

issue" was "the intervening '838 and '768 applications—***which never were***

---

[12] *In re Seversky* is distinguishable as well. *See* 474 F. 2d 671 (C.C.P.A. 1973). In

that case, the relevant subject matter was present in a grandparent application but

not the parent application, and the *only* reference to the grandparent application in

the parent application was that the parent application was a *continuation-in-part*

(not a continuation) of the grandparent). *Id.* at 674.

27

IPR2021-01110
Patent 9,703,750

*amended*—in the context of the § 120 priority analysis." (emphasis added).

*Holmer*, 681 F.3d at 1356. In contrast, in *Harari I*, where the reasonable examiner

standard applied, the "underlying issue" was "the language of the '880 application

*viewed in light of the preliminary amendment and accompanying transmittal*

*sheet*." *Id.* Petitioner's bald claim about the "correct" standard is inconsistent with

the Federal Circuit's reasoning in *Harari II* and the Board's recent decisions in

IPR2021-000604, IPR2021-00605, and IPR2021-00606.

For the purposes of this Petition, Petitioners do not argue (nor could they)

that the '912 application or the '750 patent (as issued) lack written description—a

POSITA would find Figures 8A-8C and the associated disclosures within the "four

corners" of the specifications. *See* Pet. at 29 n.6 (citing *Hollmer, 681 F.3d, 1358*

("The incorporation by reference analysis, therefore, is similarly constrained by the

four corners of the application.")). That is, contrary to *Harari II*, the '750 patent

(via the amendments presented in the '912 application) *was amended* to include

information incorporated by reference. Compare this with *Harari II* in which the

applications at issue were *not amended* to include information incorporated by

reference *or* specific reference to applications incorporated by reference, and

"[s]uch ambiguity in incorporation does not suffice." 681 F.3d at 1358.  Petitioner

is grasping at straws to revive a previously rejected argument by identifying any

IPR2021-01110
Patent 9,703,750

potential error in the Office's previous treatments of the issue.  Petitioner is

incorrect: the correct standard is from the perspective of a reasonable examiner.

Even if the Board accepted Petitioner's argument that the person of ordinary

skill in the art standard applies to an amendment during examination, the specific

reference to Chu '886 on the face of Chu '330 would be sufficient to identify Chu

'886 to a POSITA. A POSITA is understood to look to the file history of the patent

that eventually issues from the application, including any transmittal forms. *See*

*Phillips*, 415 F.3d at 1313.  A patent is to be understood from the perspective of a

POSITA at the time of invention, and for this reason courts look to "those sources

available to the public that show what a person of skill in the art would have

understood" about the disclosed invention.  *Id.* at 1314. This includes the

prosecution history of the patent, which is "the complete record of the proceedings

before the  PTO . . . [and] provides evidence of how the PTO and the inventor

understood the patent." *Id.* at 1317.

Because Chu '330 incorporated Chu '886 by reference, and the '758

application incorporated Chu '330 by reference, both Chu '330 and Chu '886 are

part of the original disclosure of the '758 application. *Telemac Cellular Corp. v.*

*Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) ("When a document is

'incorporated by reference' into a host document, such as a patent, the referenced

document becomes effectively part of the host document as if it were explicitly

29

IPR2021-01110
Patent 9,703,750

contained therein."). Thus, the '758 application, and every subsequent application in the priority chain, may rely on Chu '330 and Chu '886 to satisfy the written description requirement, consistent with the examiner's conclusion during prosecution of the '912 application.

### C.     None of the Asserted References Qualifies as Prior Art

It is undisputed for purposes of this Petition that Chu '886 provides adequate written description for the challenged terms. The Petition admits as much. Pet. at 20, 31. Because Chu '886 provides written description for the challenged limitations, and every patent in the '750 patent's priority chain properly incorporated Chu '886 by reference through Chu '330, the challenged claims are entitled to a priority date of no later than May 12, 2000, the filing date of the '758 application. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (explaining that a patent application is entitled to the benefit of the filing date of an earlier filed application if the disclosure of the earlier application provides support for the claims of the later application). This date is earlier than the alleged prior art date of each of the asserted references. *See* Pet. at 10-11 (alleging that Chu '330 is available as prior art as of February 5, 2002, that U.S. Patent Publication No. 2003/0135771 ("Cupps") is available as prior art as of July 17. 2003, and that U.S. Patent No. 7,146,510 ("Helms") is available as prior art as of December 5, 2006). Because the '758 application antedates all of the asserted

IPR2021-01110
Patent 9,703,750

references, none of the asserted references qualifies as prior art to the '750 patent, and the Petition should be denied. *NetApp, Inc. v. KOM Software, Inc.*, IPR2019-00605, Paper 10 at 17 (PTAB Sept. 9, 2019).

## VII.  THE BOARD SHOULD EXERCISE ITS DISCRETION TO DENY INSTITUTION UNDER §314 .

35 U.S.C. § 314(a) gives the Board discretion to deny institution in view of parallel district court proceedings on the same patent. *See NHK Spring Co. v. Intri-Plex Techs.*, Inc., IPR2018-00752, Paper 8 (PTAB Sept. 12, 2018) (precedential, designated May 7, 2019).  The Board analyzes six non-exclusive factors for determining whether discretionary denial is appropriate (the "*Fintiv* factors").  *See Apple Inc., v. Fintiv, Inc.*, IPR2020-00019, Paper 11 at 6 (PTAB Mar. 20, 2020) (precedential, designated May 5, 2020) (hereinafter cited as "*Fintiv*"). Because ***each of the six factors*** favors denial of the Petition, the Board should deny the Petition.

### 1.  Factor 1: No Stay Has Issued, Petitioner Has Not Sought Stay in View of its Petition, and the Court is Unlikely to Stay the Parallel Litigation

The first factor weighs against institution.  The Lenovo defendants, RPIs in this proceeding ("RPI Lenovo Defendants"), are accused of infringement in a parallel district court proceeding before Judge Albright of the Western District of Texas, *ACQIS LLC v. Lenovo Group Ltd.*, Case No. 6:20-cv-00967-ADA. The RPI

IPR2021-01110
Patent 9,703,750

Lenovo Defendants have not moved for a stay in view of this Petition.  Petitioner is

not a party to that case and cannot move for a stay.  Petitioner offers no evidence

that the district court proceeding or any related cases would be stayed if this IPR is

instituted.

As discussed above, the Board has considered and denied the IPR petition of

a defendant in the Eastern District of Texas as to the '750 patent.  For this reason,

the pending motion to stay that case in view of the now-denied IPR petition to

review the '750 patent will almost certainly be denied or withdrawn and that case

will proceed toward trial.[13]  No defendant in either the Eastern or Western District

of Texas cases has moved to stay its litigation pending the Board's institution

decision in this proceeding.

The '750 patent is asserted by ACQIS in five cases before Judge Albright in

the Western District of Texas ("WDTX cases"), including the case against real

parties in interest in this proceeding.  Judge Albright, on similar procedural

schedules across those five cases, has scheduled the trial on the infringement of the

'750 patent beginning December 12, 2022.  *See* EX2004 (WDTX Scheduling

---

[13] *See ACQIS LLC v. Samsung Elecs. Co. Ltd., et al.*, Case No. 2:20-cv-00295-JRG

(E.D. Tex.), Dkt. 46; Dkt. 86 (ACQIS notice to court that both of Samsung's

petitions relating to the '750 patent have been denied).

IPR2021-01110
Patent 9,703,750

Order) at 6. The institution decision in this matter is expected to be filed on or about December 17, 2021.  By that time, the parties will have submitted all *Markman* briefing and conducted the *Markman* hearing, the parties will have served their final infringement and invalidity contentions, and approximately two of the seven months appointed for fact discovery will have elapsed.  *See id*. at 3-4. Petitioner provides no reason to believe that Judge Albright would stay a case at this procedural posture, and no defendant in the cases moved for such relief.

Judge Albright's prior disposition of such motions strongly indicates he would not grant such a motion, and this may well be why the defendants in the WDTX cases have not moved for this relief.  For example, in *Multimedia Content Mgmt. LLC v. Dish Network*, Judge Albright denied a motion to stay the litigation in view of two IPR petitions where the court had already conducted *Markman* proceedings, fact discovery had not yet started, and the scheduled trial date preceded the Final Written decision deadline.  *See* No. 6:18-CV-00207-ADA, 2019 U.S. Dist. LEXIS 236670, *4-*7 (W.D. Tex. May 30, 2019). The facts in this situation are at least as unfavorable for a stay for the same reasons.

Because there is no reason to believe that Judge Albright will stay any of the WDTX cases, and because the Eastern District of Texas cases are likely to proceed toward trial following a prior, unsuccessful petition for IPR of the '750 patent, this factor weighs against institution.

33

IPR2021-01110
Patent 9,703,750

### 2.    Factor 2:  Trial Dates Precede the Board's Statutory Deadline for a Final Written Decision

The second factor weighs against institution.  Trial in the parallel litigation is set to begin earlier than the Board's statutory decision deadline.  Trial in the WDTX cases is set to begin on December 12, 2022.  *See* EX2004 at 6.  The Order Governing Proceedings in the WDTX cases states that "[a]fter the trial date is set, the Court will not move the trial date except in extreme situations."  EX2008 at 6.  The December 12, 2022 trial would begin before the Board's deadline to issue its Final Written Decision.  In exigent circumstances, trial may predate the Board's deadline by as much as six months.[14]  Thus, the trial date precedes the Board's statutory decision deadline.  The '750 patent is also asserted in the Eastern District of Texas against Samsung.  That trial will take place in February of 2022—more than 10 months before the Board's statutory deadline to issue the Final Written Decision.  *See* EX2005 at 1.

---

[14] The Board is obligated to issue its institution decision within three months of receipt of this preliminary response and its Final Written Decision within a year of institution.  35 U.S.C. § 314(b); 35 U.S.C. § 316(1)(11).  Because this preliminary response is filed on September 17, 2021, the Board's final written decision (if instituted) is due no later than December 17, 2022.

IPR2021-01110
Patent 9,703,750

"If the court's trial date is earlier than the projected statutory deadline, the Board generally has weighed this fact in favor of exercising authority to deny institution . . .". *Fintiv* at 9. Petitioner's argument on this factor improperly relies on the filing of this Petition – not the projected statutory deadline – relative to the trial date. *See* Pet. at 141. Moreover, Petitioner attempts to gloss over that the trial date is in fact earlier than the projected statutory deadline by stating that, "RPIs' trial date is estimated to ***be approximately the same time*** as the expected final written decision date." *See id.* (emphasis added). This factor *favors* denial of institution.

### 3.   Factor 3:  Courts and Litigants Have Invested Significant Resources in Pending Litigation

The third factor weighs against institution. Petitioner makes two key mistakes in concluding that this factor favors institution. Petitioner's first mistake is performing its analysis from the time it filed its Petition. *See* Pet. at 142 ("The Petition is being filed at the early stages of the WDTX cases . . .".). But *Fintiv* requires the analysis to be performed from the perspective of "the time of the institution decision." *Fintiv* at 9-10. "Specifically, if, at the time of the institution decision, the district court has issued substantive orders related to the patent at issue in the petition, this fact favors denial. Likewise, district court claim construction orders may indicate that the court and parties have invested sufficient

IPR2021-01110
Patent 9,703,750

time in the parallel proceeding to favor denial." *Id.*  This is likely to be the case in the parallel district court cases in which the '750 patent is asserted.

All *Markman* briefing has been submitted in the EDTX cases and the court held its *Markman* hearing on August 24, 2021—more than four months before the Board's institution deadline in this matter.  EX2005 at 4. In the WDTX cases, including the parallel litigation, the parties will finish briefing *Markman* issues by October 14, 2021, with the hearing to take place on October 20, 2021.  *See* EX2004 at 3.  Given the efficiency of Judge Albright in the Western District of Texas, that court's *Markman* order may well issue in the two months that will elapse before the Board's December 17, 2021 institution deadline.

Petitioner's second mistake is its substitution of the relevant inquiry—the *investment* of the court and the parties in the parallel proceeding (*see Fintiv* at 9-10)—for an analysis based on the *effect* that those efforts in the parallel proceedings might have on the IPR, if instituted.  *See* Pet. at 142 ("because no claim terms need be construed for the purposes of the instant IPR, any investment in the parallel WDTX cases is expected to have little effect in the instant proceeding.").  Petitioner's improper focus is likely because, by the December 17, 2021 deadline to issue an institution decision in this matter, the EDTX cases in which the '750 patent is asserted will be less than two months from jury selection (*see* EX2005 at 1 (Samsung trial schedule)) and the WDTX cases will be well into

36

IPR2021-01110
Patent 9,703,750

discovery.  By the institution decision deadline, the parties in the WDTX cases,

including the parallel proceeding, will have completed jurisdictional discovery,

*Markman* briefing and related oral argument, exchanged <u>final</u> infringement and

invalidity contentions, and completed approximately two of the seven months

appointed for fact discovery.  *See* EX2004 at 3-4.

Accordingly, courts and litigants in the parallel proceedings in which the

'750 patent is asserted will have made a substantial investment in their respective

proceedings by "the time of the institution decision," and which favors denying

institution.

### 4.    Factor 4:  There is Significant Overlap Between the Issues in the Parallel Litigation and Those Raised in the Petition

This factor weighs against institution.  *Finitiv* counsels that denial is favored

where "the petition includes the same or substantially the same claims, grounds,

arguments, and evidence as presented in the parallel proceeding." *Fintiv* at 12.

Despite this targeted inquiry, Petitioner does not present the Board with any direct

accounting of whether the combination of references and arguments in the Petition

are also asserted in the parallel case or prior cases involving the '750 patent. *See*

Pet. at 142-43.  Petitioner opts, instead, to argue that it challenges more claims here

than are challenged in the WDTX proceedings, and Petitioner speculates that

denial of the Petition will "incentivize ACQIS to pursue these unchallenged claims

37

IPR2021-01110
Patent 9,703,750

against" the WDTX defendants.  *See* Pet. at 143.  Patent Owner responds to Petitioner's omissions and arguments in turn.

Exhibit B-16 to the WDTX defendants' joint invalidity contentions, like the Petition in this matter, asserts that "all Asserted Claims" of the '750 patent are invalid in view Chu '330 alone or in combination with one or more of the Cupps reference and/or the Helms reference.  *See* EX2001 at 9.  Thus, there is complete overlap between the arguments presented there and those raised here, which is the relevant inquiry under *Fintiv* factor 4, counseling strongly for denial of institution.

As to Petitioner's argument that it challenges more claims in the Petition than are challenged in the parallel case, denial of review will not, as Petitioner nakedly argues, "incentivize ACQIS to pursue these unchallenged claims against" the RPI defendants at least because the Scheduling Order in the parallel proceeding does not allow Patent Owner to add any patent claims to its already-served preliminary infringement contentions without leave of court.  *See* EX2008 at 8 n.8.

Petitioner's final argument is flawed on its face for three reasons.  Petitioner asserts, without any supporting declaration or other proof of ability to effect its assurance, that the RPI Lenovo Defendants in the parallel case "*are willing* to stipulate not to advance the same Grounds or even the same references relied upon in the instant petition."  Pet. at 143 (emphasis added).  First, Petitioner provides no proof that its assurance is binding on each of the RPI Lenovo Defendants in that

IPR2021-01110
Patent 9,703,750

matter.  A naked representation of a non-party's *willingness* to stipulate is not, itself, a stipulation.  Second, even if Petitioner can make good on its assurance, the WDTX cases' invalidity contentions are a <u>joint</u> invalidity contention, not one advanced solely by the RPI Lenovo Defendants.  Thus, the Lenovo entities' willingness to stipulate, if effected, will not remove that invalidity theory or those references from the other pending WDTX cases.  Third, even if each of the defendants in the WDTX cases joined the RPI Lenovo Defendants in the stipulation proffered by Petitioner,  Chu '330 remains a backbone of the invalidity arguments presented in the EDTX cases against the '750 patent and other of Patent Owner's patents, and that case will go to trial in February, as much as ten months before the final written decision would be expected in this matter.  *See* EX2006 at 3 (invalidity contentions from EDTX cases); EX2005 at 1 (scheduling order in Samsung case).  Unlike in *VMware, Inc. v. Intellectual Ventures I LLC*, inaptly cited by Petitioner, the RPI Lenovo Defendants' purported willingness to stipulate in no way "mitigates any concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions."  IPR2020-00470, Paper 13 at 20 (PTAB Aug. 18, 2020).  Again, this factor weighs against institution.

IPR2021-01110
Patent 9,703,750

> **5.    Factor 5: The Petitioner is Closely Related to and Coordinating with the Lenovo Defendant RPIs, who are Parties in the Parallel Litigation**

This factor weighs against institution.  Petitioner makes a single argument for Factor 5 – it is not a defendant in the WDTX cases, so it would go against Congressional intent to deny institution of its Petition.  Pet. at 144.  Petitioner's argument is incorrect.  Petitioner's argument cites a footnote in the *Fintiv* decision found in discussion of factor 3.  *Id.*  That footnote, and the statement of Congress found therein, are unrelated to the application of factor 5.  Rather, they discuss estoppel and the one-year time bar for parallel litigants, their real-parties-in-interest, and their privies.  *See Fintiv* at 11 n.20.  The same footnote directs the reader to factor 5 in instances where the Petitioner is not a party to the parallel litigation.  *Id.*

Factor 5 does not ask, as Petitioner intimates, whether the defendant in the parallel litigation and the Petitioner are the same entity; instead, it analyzes whether "a petitioner **is unrelated to a defendant** in an earlier court proceeding," and, if there is no relation, "the Board has weighed this fact against exercising discretion to deny institution. . .".  *Fintiv* at 13-14 (emphases added).  Here, there is no doubt that Petitioner and at least the RPI Lenovo Defendants in the parallel case are closely related:

IPR2021-01110
Patent 9,703,750

- Petitioner has named the RPI Lenovo Defendants as RPIs[15] to its Petition (Pet. at 8);

- Petitioner makes representations to the Board on behalf of the RPI Lenovo Defendants (*id.* at 140);

- Petitioner is represented before the Board by Chris Dorman of Desmarais LLP (*id.* at 9); Mr. Dorman represents the RPI Lenovo Defendants in the parallel litigation (*see* EX2007 at 2 (PACER Docket Sheet for parallel litigation against RPI Lenovo Defendants)); and

- Intel has a manifest interest in preventing "ACQIS [from] pursu[ing] . . . claims against [] defendants" in the WDTX cases based in part on their use of Intel products, including RPI Defendants. *See* Pet. at 139, 143.

---

[15] The AIA requires a petitioner to name RPIs to advance the AIA's estoppel provisions, which seek "to protect patent owners from harassment via successive petitions by the same **or related parties**, to prevent parties from having a 'second bite at the apple,' and to protect the integrity of both the USPTO and Federal Courts by assuring that all issues are promptly raised and vetted." United States Patent and Trademark Office, Patent Trial and Appeal Board Consolidated Trial Practice Guide, 12 (Nov. 2019) (emphasis added). Petitioner's decision to name the Lenovo defendants as RPIs is an admission of their relatedness to Petitioner vis-à-vis this proceeding.

41

IPR2021-01110
Patent 9,703,750

Where, as here, a Petitioner is closely related to a parallel district court defendant through sale of products implicated in parallel infringement litigation, and the defendant coordinated with Petitioner in its filing of the Petition,[16] the Board has found that *Fintiv* factor 5 counsels <u>against</u> institution.  For example, in *Applied Materials, Inc. v. Demray, LLC*, IPR2021-00104, Paper 13 at 16 (PTAB May 11, 2021), the Board credited a patent owner's arguments that parallel district court defendants were named RPIs of the petitioner and "have coordinated with Petitioner in filing this Petition."  In view of these facts and argument, the Board held, "[a]lthough Petitioner and the [] defendants are not 'the same party,' because Petitioner and the [] defendants are related, and because of the degree of involvement by the [] defendants in the preparation of the instant Petition, we find this factor weighs slightly in favor of exercising discretion to deny institution."

---

[16] It must be assumed that Petitioner coordinated with and received instructions to act on behalf of the RPI Lenovo Defendants before representing to the Board that the RPI Lenovo Defendants are willing to stipulate to waive defenses in the parallel litigation.

4821-7322-1626\6

IPR2021-01110
Patent 9,703,750

*Id.*[17]  Accordingly, because of the close relationship and coordination between

Petitioner and the RPI Lenovo Defendants, this factor weighs against institution.

### 6.   Factor 6: The Board Has Already Considered and Rejected the Substance of Petitioners' Invalidity Theory

This factor also weighs against institution.  Under factor 6, the Board

considers other factors bearing on its discretionary determination.  *Fintiv* at 14-16.

The only explicit example of an analysis under this factor is the substantive

strength of the grounds of the petition: the stronger the grounds, the more likely the

factor favors institution.  *Id.*  But the Board has already analyzed the substance of

---

[17] The Board takes the same pragmatic approach in applying the analogous

*General Plastic* factors.  "[O]ur application of the *General Plastic* factors is not

limited solely to instances when multiple petitions are filed by the same petitioner.

Rather, when different petitioners challenge the same patent, we consider any

relationship between those petitioners when weighing the *General Plastic* factors."

*Valve Corp. v. Elec. Scripting Prods., Inc.*, IPR2019-00062, Paper 11 at 2 (PTAB

Apr. 2, 2019) (precedential); *see also id.* at 10 (denying institution where, as here,

the parties have a supplier-customer relationship giving rise to the infringement

litigation and, thus, "there is a significant relationship between Valve and HTC

with respect to Patent Owner's assertion of the '934 patent.")

IPR2021-01110
Patent 9,703,750

the Petition arguments that the Chu '330 reference is prior art to the '750 patent

because of alleged defective incorporation by reference.  *See supra* Section V.A.2.

The Board rejected this argument on its merits, finding insufficient evidence that

the Chu '330 reference is prior art, and denied institution on that basis.  *See id*.

Thus, the Board has already found the merits of this argument to be too weak to

merit institution.  Factor 6 counsels for denial of the Petition.

Accordingly, all six *Fintiv* factors counsel for denial of the Petition, and the

Board should exercise its discretion and deny the Petition.

4821-7322-1626\6

IPR2021-01110
Patent 9,703,750

## VIII.  CONCLUSION

Because none of the references relied upon qualifies as prior art, because the

examiner of the '912 application and the Board in IPR2021-00604, IPR2021-

00605, and IPR2021-00606 already considered and rejected Petitioner's

arguments, and because the Fintiv factors favor denial, the Petition for *inter partes*

review should be denied.

Date: September 17, 2021                    Respectfully Submitted,

                                            / Gina N. Cornelio /

                                            Gina N. Cornelio
                                            Reg. No. 64,336

                                            Dorsey & Whitney LLP
                                            1400 Wewatta Street, Suite 400
                                            Denver, Colorado 80202-5549
                                            303-629-3400 TEL
                                            303-629-3450 FAX

                                            Mark Miller (Reg. No. 44,944)
                                            Gina Cornelio (Reg. No. 64,336)
                                            Case Collard (Reg. No. 72,901)
                                            Attorneys for Patent Owner, ACQIS LLC

IPR2021-01110
Patent 9,703,750

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I hereby certify that this Patent Owner's Preliminary Response complies with the word count limit, and contains less than 14,000 words in 14 point Times New Roman font as calculated by the word count feature Microsoft Office 2016, in compliance with 37 C.F.R. § 42.24(a)(1)(i). This word count is inclusive of all text and footnotes but not including a table of contents, a table of authorities, a certificate of service or word count, or appendix of exhibits or claim listing.

Date: September 17, 2021

Respectfully Submitted,

/ Gina N. Cornelio /

Gina N. Cornelio
Reg. No. 64,336

Dorsey & Whitney LLP
1400 Wewatta Street, Suite 400
Denver, Colorado 80202-5549
303-629-3400 TEL
303-629-3450 FAX

Mark Miller (Reg. No. 44,944)
Gina Cornelio (Reg. No. 64,336)
Case Collard (Reg. No. 72,901)
Attorneys for Patent Owner, ACQIS LLC

4821-7322-1626\6

IPR2021-01110
Patent 9,703,750

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this September 17, 2021, a copy of Patent Owner's

Preliminary Response, including all accompanying attachments, appendices, and

exhibits, has been served in its entirety via e-mail (as was consented to by

Petitioner) on Petitioner at the following e-mail addresses:

Intel-ACQIS-IPRService@desmaraisllp.com

Yung-Hoon Ha: yha@desmaraisllp.com

Theodoros Konstantakopoulos: tkonstantakopoulos@desmaraisllp.com

Christian Dorman: cdorman@desmaraisllp.com


Date: September 17, 2021          Respectfully Submitted,

                                 ⁄ Gina N. Cornelio ⁄

                                 Gina N. Cornelio
                                 Reg. No. 64,336

                                 Dorsey & Whitney LLP
                                 1400 Wewatta Street, Suite 400
                                 Denver, Colorado 80202-5549
                                 303-629-3400 TEL
                                 303-629-3450 FAX

                                 Mark Miller (Reg. No. 44,944)
                                 Gina Cornelio (Reg. No. 64,336)
                                 Case Collard (Reg. No. 72,901)
                                 Attorneys for Patent Owner, ACQIS LLC

4821-7322-1626\6