# Exhibit 62

Trials@uspto.gov                                                  Paper 11
571-272-7822                                      Date: December 2, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

INTEL CORPORATION,
Petitioner,

v.

ACQIS LLC,
Patent Owner.

_____

IPR2021-01110
Patent 9,703,750 B2

_____

Before THU A. DANG, JONI Y. CHANG, and SCOTT A. DANIELS,
*Administrative Patent Judges*.

CHANG, *Administrative Patent Judge*.

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 325(d)*

IPR2021-01110
Patent 9,703,750 B2

## I.   INTRODUCTION

Intel Corporation ("Petitioner") filed a Petition requesting an *inter partes* review ("IPR") of claims 1−2, 4, 21, 24, 31, 34, 44, 45, and 48−50 ("the challenged claims") of U.S. Patent No. 9,703,750 B2 (Ex. 1001, "the '750 patent").  Paper 1 ("Pet."), 1.  ACQIS LLC ("Patent Owner") filed a Preliminary Response (Paper 7, "Prelim. Resp.").  Pursuant to our prior authorization, Petitioner filed a Reply to the Preliminary Response.  Paper 9 ("Reply").  Patent Owner filed a Sur-reply.  Paper 10 ("Sur-reply").

In determining whether to institute an *inter partes* review, "the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office." 35 U.S.C. § 325(d) (2018).  For the reasons stated below, we exercise our discretion under § 325(d) not to institute an *inter partes* review of the challenged claims of the '750 patent.

### A.  Related Matters

The parties indicate that the '750 patent is involved in *ACQIS LLC v. Lenovo Group Ltd.*, No. 6:20-cv-00967 (W.D. Tex. 2020).  Pet. 1; Paper 6, 2.  Petitioner also challenges the claims of the '750 patent in IPR2021-01111 and IPR2021-01112.

### B.  The '750 Patent

The '750 patent relates to computer interfaces, specifically an interface channel that "interfaces two computer interface buses that operate

IPR2021-01110
Patent 9,703,750 B2

under protocols that are different from that used by the interface channel."
Ex. 1001, 3:20−24.

    Figure 6 of the '750 patent is reproduced below.



    Figure 6 above shows a block diagram of a computer system using an
interface. *Id.* at 15:54−56. As shown, computer system 600 includes
attached computer module (ACM) 605 and peripheral console 610. *Id.* at
15:56−57. ACM 605 and peripheral console 610 are interfaced through
exchange interface system (XIS) bus 615. *Id.* at 15:62−64. XIS bus 615
includes power bus 616, video bus 617 and peripheral bus (XPBus) 618,
which is also referred to as an interface channel. *Id.* at 15:64−66.

3

IPR2021-01110
Patent 9,703,750 B2

*C. Illustrative Claim*

Of the challenged claims, claims 1, 21, 24, 31, 44, 48, and 50 are independent.  Claims 2 and 4 depend from claim 1; claim 34 depends from claim 31; claim 45 depends from claim 44; and claim 49 depends from claim 48.  Claim 1 is illustrative:

1. A computer, comprising:

an integrated central processing unit and interface controller in a single chip;

a first Low Voltage Differential Signal (LVDS) channel directly extending from the interface controller to convey address bits, data bits, and byte enable information bits of a Peripheral Component Interconnect (PCI) bus transaction in a serial bit stream, wherein the first LVDS channel comprises a first unidirectional, differential signal pair to convey data in a first direction and a second unidirectional, differential signal pair to convey data in a second, opposite direction; and

a system memory directly coupled to the integrated central processing unit and interface controller.

Ex. 1001, 40:36–49.

*D. Prior Art Relied Upon*

Petitioner relies upon the references listed below (Pet. 10−11):

| Name | Reference | Date | Exhibit No. |
|---|---|---|---|
| Chu ("Chu '330") | U.S. Patent No. 6,345,330 B2 | Feb. 5, 2002 | 1003 |
| Cupps | U.S. Patent Publication No. 2003/0135771 A1 | July 17, 2003 | 1004 |

4

IPR2021-01110
Patent 9,703,750 B2

| Name | Reference | Date | Exhibit No. |
|------|-----------|------|-------------|
| Helms | U.S. Patent No. 7,146,510 B1 | Dec. 5, 2006 | 1044 |

### E. Asserted Grounds of Unpatentability

Petitioner asserts the following grounds of unpatentability (Pet. 35)[1]:

| Claims Challenged | 35 U.S.C. § | Reference(s)/Basis |
|-------------------|-------------|--------------------|
| 1, 21, 24, 31, 34, 44, and 48−50 | 103(a) | Chu '330, Cupps |
| 2, 4, 45 | 103(a) | Chu '330, Cupps, Helms |

## II.   ANALYSIS

### A. Discretionary Denial Under 35 U.S.C. § 325(d)

Petitioner relies upon Chu '330 in each asserted ground.  Pet. 35.
Petitioner argues that while Chu '330 appears on the voluminous list of
references considered by United States Patent and Trademark Office
("USPTO" or "Office"), no Examiner cited Chu '330 against any claims of
the '750 patent or any of its related applications.  *Id.* at 138.  Petitioner also

---

[1] For purposes of this Decision, we assume the challenged claims have an
effective filing date prior to March 16, 2013, the effective date of the
Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284
(2011) ("AIA"), and we apply the pre-AIA versions of 35 U.S.C. §§ 102,
103 and 112.

IPR2021-01110
Patent 9,703,750 B2

argues that "the Examiner did not determine the proper priority date of any of the challenged claims during prosecution." *Id.* According to Petitioner, "[t]he Examiner simply accepted the applicant's representation that the '750 Patent properly incorporated by reference the materials found only in" U.S. provisional application No. 60/083,886 (Chu '886). *Id.* Petitioner further argues that "even wrongly assuming the Examiner made an implicit determination regarding the priority date, such determination would have been materially erroneous." *Id.*

Patent Owner counters that the USPTO has already considered and rejected Petitioner's argument regarding the incorporation by reference of Chu '330 and Chu '886. Prelim. Resp. 11−31. Patent Owner argues that the Board should exercise its discretion under § 325(d) to deny institution because the Examiner previously considered and affirmed the efficacy of an incorporation by reference in the context of a priority claim. *Id.* at 12 (citing *SMR Auto. Sys. USA, Inc. v. Magna Mirrors of Am., Inc.*, IPR2018-00931, Paper 7 at 14 (PTAB Sept. 14, 2018)).

For the reasons set forth below, we are persuaded by Patent Owner's arguments to exercise our discretion to deny institution of *inter partes* review under 35 U.S.C. § 325(d).

Institution of an *inter partes* review is discretionary. The U.S. Supreme Court has explained that, because § 314 includes no mandate to institute review, "the agency's decision to deny a petition is a matter committed to the Patent Office's discretion." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 (2016); *see also Harmonic Inc. v. Avid Tech.,*

6

IPR2021-01110
Patent 9,703,750 B2

*Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) (explaining that under § 314(a), "the PTO is permitted, but never compelled, to institute an IPR proceeding"). Moreover, 35 U.S.C. § 325(d) states, in relevant part, that "[i]n determining whether to institute or order a proceeding under this chapter, chapter 30, or chapter 31, the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office." 35 U.S.C. § 325(d); *see also Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte Gmbh*, IPR2019-01469, Paper 6 at 8 (PTAB Feb. 13, 2020) (precedential); *Becton, Dickinson & Co. v. B. Braun Melsungen AG*, IPR2017-01586, Paper 8 at 17−18 (PTAB Dec. 15, 2017) (precedential as to Section III.C.5, first paragraph).

"Under § 325(d), the Board uses the following two-part framework: (1) whether the same or substantially the same art previously was presented to the Office or whether the same or substantially the same arguments previously were presented to the Office; and (2) if either condition of the first part of the framework is satisfied, whether the petitioner has demonstrated that the Office erred in a manner material to the patentability of challenged claims." *Advanced Bionics*, Paper 6 at 8. If the petitioner fails to show that the Office erred, the Director may exercise his or her discretion not to institute *inter partes* review. *Id.*; *see also Becton, Dickinson*, Paper 8, 24 (exercising discretion where "Petitioner has not pointed to error by the Examiner").

7

IPR2021-01110
Patent 9,703,750 B2

1. <u>Part I – whether the same or substantially the same arguments previously were presented to the Office</u>

      We first determine whether the same or substantially the same arguments previously were presented to the Office.  *Advanced Bionics*, Paper 6 at 8.  Patent Owner's Figure (reproduced below with color annotations added) provides a timeline of the priority chain of the '750 patent (light-blue filled box) and other related applications, including Chu '886 (yellow) and U.S. Application No. 09/149,882 ("the '882 application"), which was issued as Chu '330 (red).  Prelim. Resp. 7.



IPR2021-01110
Patent 9,703,750 B2

Annotated Patent Owner's Figure above shows the filing dates of the applications in the priority chain of the '750 patent and other related applications. The '750 patent was issued from U.S. Application No. 14/511,093 ("the '093 application"), which claims priority to U.S. Application No. 09/569,758 ("the '758 application") (dark purple) filed on **May 12, 2000**, through a chain of continuation applications. Ex. 1001, code (63). The '758 application (the initial parent application) incorporated by reference the '882 application (Chu '330), which in turn claimed priority to and incorporated by reference Chu '886. Ex. 1013, 4:50−53; Ex. 1011, 78, 81, 83 (Prosecution History of Chu '330). Each subsequent application in the priority chain identified each preceding application as required by 35 U.S.C. § 120 and incorporated by reference the prior applications and the '882 application. *See, e.g.*, Ex. 1001, 1:13−37, 9:66−10:2; Ex. 1008, 1:12−27, 9:27−29.

U.S. Application No. 13/087,912 ("the '912 application") (green) filed on April 15, 2011, now U.S. Patent No. 8,234,436 ("the '436 patent"), is an intervening application, claiming the benefit to the '758 application through several other prior applications (dark blue). Ex. 1008, code (63). The '912 application was filed with a preliminary amendment, adding Figures 8 and 9 and corresponding disclosure from Chu '886 as Figures 8A and 8B and corresponding disclosure in the '912 application. Ex. 1009, 12−26 (Prosecution History of the '912 application). The applicant also filed another amendment in the '912 application, adding Figures 10 and 16 and

IPR2021-01110
Patent 9,703,750 B2

corresponding disclosure from Chu '886 as Figures 8C and 24 and
corresponding disclosure in the '912 application. *Id.* at 379−395.

     In its Petition, Petitioner argues that the '750 patent is not entitled to a
priority date before April 15, 2011, because the '436 patent's parent
applications did not properly incorporate by reference Chu '886, and that the
amendments adding the subject matter from Chu '886 improperly introduced
new matter. Pet. 17−31.

     However, during the prosecution of the '912 application (issued as the
'436 patent), the applicant argued that these amendments were proper
because the '758 application (the initial parent application) incorporated by
reference the '882 application, which in turn incorporated Chu '886 by
reference. Ex. 1009, 26, 392. "When a patentee argues that its claims are
entitled to the priority date of an earlier filed application, the examiner must
undertake a priority analysis to determine if the patentee meets the
requirements of § 120." *In re NTP, Inc.*, 654 F.3d 1268, 1277 (Fed. Cir.
2011).

     Indeed, the prosecution history of the '912 application shows that
when the subject matter from Chu '886 was added to the '912 application,
the applicant specifically directed the Examiner to the incorporation by
reference statement in the transmittal form of the '882 application as support
for the amendments. Ex. 1009, 26, 392. The applicant in the Remarks
sections of the amendments also argued that "[t]he original '758 patent
application incorporated by reference U.S. Application No. 09/149,882 (now
issued as U.S. Patent No. 6,345,330), which in turn, claimed the benefit of

IPR2021-01110
Patent 9,703,750 B2

and incorporated by reference U.S. Provisional Application No. 60/083,886
. . . (*See* checked incorporation by reference box in utility patent application
transmittal of U.S. Application No. 09/149,882 filed on September 8,
1998)." *Id.* The Examiner did not object to the inclusion of the amendments
as new matter or issue a rejection under 35 U.S.C. § 112, ¶ 1. Nor did the
Examiner require the applicant to change the benefit claim from
"continuation" to "continuation-in-part." Instead, the Examiner entered the
amendments and subsequently allowed the '912 application with the subject
matter added from Chu '886. *Id.* at 430 (Notice of Allowance and Fee(s)
Due).

In addition, another petitioner (Samsung) previously presented to the
Office substantially the same arguments that the amendments adding the
subject matter from Chu '886 to an intervening application in the challenged
patent's priority chain improperly introduced new matter and that "Chu '330
did not properly incorporate the subject matter of Chu '886" in the following
five IPR proceedings:

(1) *Samsung Electronics Co., LTD. v. ACQIS LLC*, IPR2021-00604,
Paper 1 at 9−18 (PTAB March 8, 2021) (Petition filed by Samsung);

(2) *Samsung Electronics Co., LTD. v. ACQIS LLC*, IPR2021-00605,
Paper 1 at 9−17 (PTAB March 8, 2021) (Petition filed by Samsung);

(3) *Samsung Electronics Co., LTD. v. ACQIS LLC*, IPR2021-00606,
Paper 1 at 8−17 (PTAB March 8, 2021) (Petition filed by Samsung);

(4) *Samsung Electronics Co., LTD. v. ACQIS LLC*, IPR2021-00607,
Paper 1 at 9−17 (PTAB March 8, 2021) (Petition filed by Samsung); and

11

IPR2021-01110
Patent 9,703,750 B2

        (5) *Samsung Electronics Co., LTD. v. ACQIS LLC*, IPR2021-00608,
Paper 1 at 10−17 (PTAB March 8, 2021) (Petition filed by Samsung).

        Upon consideration of Samsung's arguments, the panel in each of
these five IPR proceedings denied Samsung's petition under 35 U.S.C.
§ 325(d) because the same or substantially the same arguments previously
were presented to the Office and Samsung failed to show that the Examiner
erred in entering the amendments or in determining that Chu '330
incorporated by reference Chu '886.  *See, e.g.*, IPR2021-00604, Paper 7 at
6−21 (Decision Denying Institution).

        For the foregoing reasons, we determine that the Petition presents the
same or substantially the same arguments that were previously presented to
the Office.  Pet. 17−31.  Consequently, the first part of the *Advanced Bionics*
framework is satisfied.

2.  Part II – whether the petitioner has demonstrated that the Office erred in
    a manner material to the patentability of the challenged claims

        Because the first part of the *Advanced Bionics* framework is satisfied,
we next determine whether Petitioner has demonstrated that the Office erred
in a manner material to the patentability of challenged claims.  *Advanced
Bionics*, Paper 6 at 8.  "If reasonable minds can disagree regarding the
purported treatment of the art or arguments, it cannot be said that the Office
erred in a manner material to patentability.  At bottom, this framework
reflects a commitment to defer to previous Office evaluations of the
evidence of record unless material error is shown."  *Id.* at 9.

IPR2021-01110
Patent 9,703,750 B2

As discussed above, Petitioner argues that the '750 patent is not entitled to a priority date before April 15, 2011, because the '436 patent's parent applications did not properly incorporate by reference Chu '886, such that the amendments adding the subject matter from Chu '886 improperly introduced new matter. Pet. 17−31. Petitioner admits that the '758 application (the initial parent application) incorporated by reference the '882 application. *Id.* at 24−25; *see also* Ex. 1013, 4:50−53. It also is undisputed that each subsequent application in the priority chain identified each preceding application as required by 35 U.S.C. § 120 and incorporated by reference the prior applications and the '882 application. *See, e.g.*, Ex. 1001, 1:13−37, 9:66−10:2; Ex. 1008, 1:12−27, 9:27−29. Nonetheless, Petitioner argues that "Chu '330 never incorporated by reference the '886 Provisional" (Chu '886). Pet. 25−31.

In short, under Part II of the *Advanced Bionics* framework, Petitioner has the burden to show that the Examiner erred in determining that Chu '330 incorporated by reference Chu '886. *Advanced Bionics*, Paper 6 at 8.

We address below each of Petitioner's arguments in turn.

   *a. Incorporated by reference statement in a transmittal form*
To support its argument that Chu '330 never incorporated by reference Chu '886, Petitioner contends that the transmittal form filed in Chu '330 does not identify Chu '886. Pet. 27−28. The transmittal form is reproduced below with Petitioner's annotations added. Ex. 1011, 81.

IPR2021-01110
Patent 9,703,750 B2



Petitioner argues that nothing in the transmittal form above identifies "with *detailed particularity* what specific material" Chu '330 incorporates, citing testimony of John Kubiatowicz, Ph.D., for support.  Pet. 28 (quoting *Hollmer v. Harari*, 681 F.3d, 1351, 1357 (Fed. Cir. 2012) ("*Hollmer*"); citing Ex. 1002 ¶ 104).  Petitioner also avers that "the box 5 states that it is only 'useable if Box 4b is checked[,]' which is *not* checked," and that "[e]ven if Box 4b were checked, Box 4b was limited 'for continuation/divisional with Box 17 completed.'"  *Id.* at 28 n.5.

14

IPR2021-01110
Patent 9,703,750 B2

However, Petitioner's arguments and Dr. Kubiatowicz's testimony narrowly focus on the transmittal form alone. *Id.* at 27−29; Ex. 1002 ¶ 104. As the Federal Circuit has explained, the incorporation by reference analysis includes "the four corners of the application." *Hollmer*, 681 F.3d at 1358.

In addition, it is instructive to review the facts in *Hollmer*. In that case, the intervening applications merely identified the referenced application with the title of the invention and the language "*filed on the same day as the present application*," but the intervening applications were not "filed on the same day" as that referenced application and at least two other applications by the same inventors that had the same title as that referenced application. *Id.* at 1353, 1358. Therefore, the Federal Circuit held that the incorporation language in *Hollmer* did not directly lead one of ordinary skill in the art to that referenced application, but rather presented several potential documents for incorporation. *Id.* at 1358.

Unlike *Hollmer*, the '882 application (issued as Chu '330) here provided an incorporation by reference statement of the applicant's prior applications in the transmittal form and clearly identified the applicant's prior applications (including Chu '886) in the first sentence of the Specification on filing. In particular, the '882 application was filed with a transmittal form with the "incorporation by reference" box checked:

> Incorporation by Reference (useable if Box 4b is checked)
> *The entire disclosure of the prior application*, from which a copy of the oath or declaration is supplied under Box 4b, is considered as being part of the disclosure of the accompanying application and *is hereby incorporated by reference therein.*

15

IPR2021-01110
Patent 9,703,750 B2

Ex. 1011, 81 (emphases added).  This checked box on a USPTO transmittal form shows that the applicant intended to incorporate by reference his prior applications, in their entirety, when he was filing the '882 application.

The applicant also clearly identified his prior applications in the '882 application on filing.  Notably, the first sentence of the Specification of the '882 application states that "[t]his application claims any and all benefits as provided by law of U.S. Provisional Application No. 60/083,886" (Chu '886) "and of U.S. Provisional Application No. 60/092,706 filed on July 14, 1998." *Id.* at 83.  The USPTO accepted the benefit claims to these two prior applications (including Chu '886) by placing them on the file wrapper cover of the '882 application and the Examiner verified them by placing his or her initials on the file wrapper cover. *Id.* at 78.  Moreover, the Cross-Reference to Related Applications Section of the '882 application listed only these two prior applications and another concurrently-filed application. *Id.* at 83.

A reasonably skilled artisan would have recognized that the applicant intended to incorporate his prior applications (including Chu '886) at the time of filing the '882 application.  The incorporation by reference language together with the benefit claims in the first sentence of the Specification of the '882 application would have sufficiently identified the applicant's prior applications (including Chu '886) as the referenced prior applications, distinguishing them from all other documents.

A reasonably skilled artisan would not have ignored the applicant's incorporation by reference statement just because Box 4b was not checked

16

IPR2021-01110
Patent 9,703,750 B2

or because the applicant was not filing a continuation or divisional application. As the Federal Circuit has explained, "[t]he incorporation standard relies only on the reasonably skilled artisan and his or her ability to deduce from language, however, imprecise, what a host document aims to incorporate." *Husky Injection Molding Systems Ltd. v. Athena Automation Ltd.*, 838 F.3d 1236, 1248 (Fed. Cir. 2016) (citing *Harari v. Lee*, 656 F.3d 1331 (Fed. Cir. 2011); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1283 (Fed. Cir. 2000)); *cf. In re Fouche*, 439 F.2d 1237, 1239−1240 (CCPA 1971) ("It seems amply clear that an applicant should be permitted to incorporate the disclosure of a copending application . . . so long as the reference application is sufficiently well identified to distinguish it from all others.").

The evidence before us shows that two different Examiners on three separate occasions considered the transmittal form together with the benefit claims and recognized that the applicant incorporated by reference Chu '886, including:

(1) when the applicant filed a preliminary amendment that added Figures 8 and 9 and corresponding disclosure from Chu '886 as Figures 8A and 8B and corresponding disclosure in the '912 application, in which the applicant directed the Examiner to the transmittal form as support for the amendment (Ex. 1009, 26);

(2) when the applicant filed another amendment on December 16, 2011, in the '912 application that added Figures 10 and 16 and corresponding disclosure from Chu '886 as Figures 8C and 24 and

17

IPR2021-01110
Patent 9,703,750 B2

corresponding disclosure in the '912 application, in which the applicant also directed the Examiner to the transmittal form as support for this amendment (*id.* at 392); and

(3) when the applicant filed a similar amendment in U.S. Application No. 12/561,138, as part of a separate priority chain of six reissue applications of U.S. Patent No. 6,643,777 B1 ("the '777 patent"), directing the Examiner to the transmittal form submitted in the '882 application as support for the amendment (Ex. 2003, 363, 446 (Notice of Allowance and Fee(s) Due issued after entry of amendment adding figures and disclosure from Chu '886)).

The Examiner in each of these cases did not object to the amendments as new matter or issue a rejection under 35 U.S.C. § 112, ¶ 1 for lack of written description support for the claims. *NTP*, 654 at 1277. Instead, the Examiner entered the amendments and subsequently allowed the '912 application with the subject matter added from Chu '886. Ex. 1009, 430 (Notice of Allowance and Fee(s) Due).

The incorporation by reference statement in the transmittal form also was never objected to by any Examiner during prosecution of the '882 application (Chu '330), the '758 application (initial parent application), and all eleven continuation applications in the priority chain of the '750 patent, as well as the '777 patent and all six reissue applications in the priority chain of the '777 patent, as noted in our Decision Denying Institution in IPR2021-00607, Paper 7 at 20. Moreover, none of the Examiners required the

18

IPR2021-01110
Patent 9,703,750 B2

applicant to change its benefit claims from "continuation" to "continuation-in-part" in those continuation applications.

For the foregoing reasons, the '882 application identified Chu '886 with particularity and would have directly led an ordinarily skilled artisan to the document intended to be incorporated. Accordingly, we determine that Petitioner fails to show that the Examiner erred in determining that the '882 application (Chu '330) incorporated Chu '886 by reference.

In addition, as discussed above, Petitioner admits that the '758 application (the initial parent application) incorporated by reference the '882 application. Pet. 24–25; *see also* Ex. 1013, 4:50–53. It also is undisputed that each subsequent application in the priority chain identified each preceding application as required by 35 U.S.C. § 120 and incorporated by reference the prior applications and the '882 application. *See, e.g.*, Ex. 1001, 1:13–37, 9:66–10:2; Ex. 1008, 1:12–27, 9:27–29. As such, we also find that Petitioner has failed to show (1) the '750 patent is not entitled to a priority date before April 15, 2011, (2) the '436 patent's parent applications did not properly incorporate by reference Chu '886, and (3) the amendments adding the subject matter from Chu '886 improperly introduced new matter. Pet. 17–31.

### b. *Transmittal form is part of the application*

Petitioner argues that "[e]ven if the transmittal form of Chu330 included a statement that purportedly incorporated by reference the '886 Provisional" (Chu '886), "that statement would be inoperative because a [person of ordinary skill in the art]'s analysis of what a patent incorporates is

19

IPR2021-01110
Patent 9,703,750 B2

limited to *the four corners of the patent itself*."  Pet. 29.  According to
Petitioner, a person of ordinary skill in the art "would not have known if a
patent incorporates another document based on *a statement buried in a
transmittal form*."  *Id.* (emphasis added).  Petitioner contends that "any
incorporation by reference statement must have appeared in Chu330 itself."
*Id.*

   We are not persuaded by Petitioner's arguments.  The Federal Circuit
has explained that the incorporation by reference analysis includes "the four
corners of the *application*."  *Hollmer*, 681 F.3d at 1358.  A transmittal form
is a part of the application.  *See* 37 C.F.R. § 1.77(a) (1998) ("The elements
of the application, if applicable, should appear in the following order:
(1) Utility Application Transmittal Form . . . .").  Courts have repeatedly
considered application transmittals in their incorporation by reference
analyses.  *See, e.g.*, *Harari v. Hollmer*, 602 F.3d 1348, 1352−53 (Fed. Cir.
2010) ("*Harari I*"); *Hollmer*, 681 F.3d at 1353−54; *Pregis Corp. v. Doll*,
698 F.Supp.2d 584, 598−599 (E.D. Va. 2010) (The court in its analysis
considered the incorporation by reference of a prior provisional application
and a patent submitted in a transmittal letter.).  Moreover, Petitioner admits
that an applicant filing a continuation or divisional application could have
used the USPTO transmittal form, which includes a check box for
incorporating by reference a prior application.  Pet. 28−29 n.5.

   Therefore, we are not persuaded by Petitioner's arguments that
(1) an incorporation by reference statement appeared in a transmittal form
"would be inoperative," (2) a person of ordinary skill in the art "would not

IPR2021-01110
Patent 9,703,750 B2

have known if a patent incorporates another document based on a statement
buried in a transmittal form," and (3) "any incorporation by reference
statement must have appeared in Chu330 itself." *Id.* at 29.

### c. Benefit claims

Petitioner argues that the statement "[t]his application claims any and
all benefits as provided by law of U.S. Provisional Application No.
60/083,886 filed May 1, 1998" appeared in the first sentence of Chu '330
"is at best a priority claim to the '886 Provisional that is distinct from an
incorporation by reference." Pet. 30 (citing *In re de Seversky*, 474 F.2d 671,
674 (CCPA 1973) ("[A] mere *reference* to another application, or patent, or
publication is not an *incorporation* of anything therein into the
application.")).

Petitioner's reliance on *de Seversky* is misplaced here. In *de Seversky*,
"the parent application . . . contains no 'incorporation-by-reference'
language whatsoever." *de Seversky*, 474 F.2d at 674. In contrast, the
applicant here filed a transmittal form in the '882 application that includes
an incorporation by reference statement of his prior applications. Ex. 1011,
81. Petitioner fails to consider the incorporation by reference statement
together with the benefit claims in the first sentence of the Specification that
clearly identifies the applicant's prior applications (including Chu '886). *Id.*
at 81, 83. As discussed above, the incorporation by reference language
together with the benefit claims in the first sentence of the Specification of
the '882 application would have sufficiently identified the applicant's prior
applications (including Chu '886) as the referenced prior applications,

IPR2021-01110
Patent 9,703,750 B2

distinguishing them from all other documents. In short, the '882 application identified Chu '886 with particularity and would have directly led a reasonably skilled artisan to the document intended to be incorporated.

Therefore, Petitioner has not shown that the Examiner erred in determining that the '882 application (Chu '330) incorporated Chu '886 by reference or in entering the amendments that added the subject matter of Chu '886 in the '912 application.

### d. The incorporation by reference standard

Petitioner argues that "[t]he reasonable Examiner standard does not apply to the analysis of the '750 Patent's priority chain because these patents have issued." Pet. 26–27 n.4 (citing *Harari I*, 602 F.3d at 1348; *Hollmer*, 681 F.3d at 1357). According to Petitioner, "[t]he incorporation by reference is proper only if the host document 'identif[ies] *with detailed particularity* what specific material it incorporates *to a person of ordinary skill*' ('POSITA') and 'directly lead[s]' a POSITA to the document . . . intended to be incorporated." *Id.* at 26 (quoting *Hollmer*, 681 F.3d at 1357).

We are not persuaded by Petitioner's arguments. As discussed above, Petitioner has the burden to show that the Examiner erred in determining that the '882 application (issued as Chu '330) incorporated by reference Chu '886. In *Advanced Bionics*, the Board stated that "[i]f reasonable minds can disagree regarding the purported treatment of the art or arguments, it cannot be said that the Office erred in a manner material to patentability. At bottom, this framework reflects a commitment to defer to previous Office

22

IPR2021-01110
Patent 9,703,750 B2

evaluations of the evidence of record unless material error is shown."
*Advanced Bionics*, Paper 6 at 9.

Here, Petitioner does not explain why the Examiner erred if a
reasonable examiner would have found that the identification in the '882
application was reasonably precise to incorporate Chu '886 by reference.
Nor does Petitioner provide any meaningful differences between applying
the "reasonable examiner" standard and applying the "POSITA" standard to
the particular facts in this proceeding under the *Advanced Bionics*
framework.

In any event, even applying the "POSITA" standard here, we find that
Petitioner fails to show that the Examiner erred in determining that the '882
application (issued as Chu '330) incorporated Chu '886 by reference.
As discussed above in Section II.A.2.a, unlike *Hollmer* where the
incorporation language did not directly lead one of ordinary skill in the art to
the referenced application because it presented several potential documents
for incorporation, the '882 application here provided an incorporation by
reference statement of the applicant's prior applications and clearly
identified the applicant's prior applications (including Chu '886) in the first
sentence of the Specification on filing.

The incorporation by reference language together with the benefit
claims in the first sentence of the Specification of the '882 application would
have sufficiently identified the applicant's prior provisional applications
(including Chu '886) as the referenced prior applications, distinguishing
them from all other documents. *Husky Injection*, 838 F.3d at 1248. In short,

23

IPR2021-01110
Patent 9,703,750 B2

the '882 application identified Chu '886 with particularity and would have directly led an ordinarily skilled artisan to the document intended to be incorporated. *Hollmer*, 681 F.3d at 1357−58.

Accordingly, even under the "POSITA" standard, we find that Petitioner fails to show that the Examiner erred in determining that the '882 application (issued as Chu '330) incorporated Chu '886 by reference.

3. Conclusion on Discretionary Denial under § 325(d)

For the foregoing reasons, we determine that the same or substantially the same arguments previously were presented to the Office and that Petitioner fails to show that the Examiner erred in determining that the '882 application (issued as Chu '330) incorporated Chu '886 by reference or in entering the amendments that added the subject matter from Chu '886 in the '912 application. Accordingly, we exercise our discretion not to institute *inter partes* review. *Advanced Bionics*, Paper 6 at 8; *see also Becton, Dickinson*, Paper 8, 24.

## III.   CONCLUSION

For the foregoing reasons, we exercise our discretion under § 325(d) to deny institution of an *inter partes* review.

## IV.   ORDER

Accordingly, it is

ORDERED that the Petition is *denied*, and no trial is instituted.

IPR2021-01110
Patent 9,703,750 B2

PETITIONER:

Yung-Hoon Ha
Christian Dorman
Theodoros Konstantakopoulos
DESMARAIS LLP
Intel-ACQIS-IPRService@desmaraisllp.com
yha@desmaraisllp.com
cdorman@desmaraisllp.com
tkonstantakopoulos@desmaraisllp.com

FOR PATENT OWNER:

Mark Miller
Gina Cornelio
Case Collard
DORSEY & WHITNEY LLP
Miller.mark@dorsey.com
Cornelio.gina@dorsey.com
Collard.case@dorsey.com