# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| ACQIS, LLC,<br>　　　　　*Plaintiff,*<br><br>-vs-<br><br>**SONY INTERACTIVE<br>ENTERTAINMENT INC., SONY<br>INTERACTIVE ENTERTAINMENT<br>LLC,**<br>　　　　　*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **6-22-CV-00386-ADA**<br><br>PUBLIC VERSION |

## ████ORDER GRANTING SONY'S MOTION TO TRANSFER

Before the Court is Defendants Sony Interactive Entertainment LLC ("SIE") and Sony Interactive Entertainment Inc. ("SIEI") (collectively, "Sony") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), seeking transfer from the Western District of Texas to the Northern District of California, or in the alternative, the Austin Division of the Western District of Texas. ECF No. 21 (the "Motion"). Plaintiff ACQIS, LLC ("ACQIS") filed an opposition to the Motion on March 22, 2023 (ECF No. 44), to which Sony replied on April 5, 2023 (ECF No. 47). After careful consideration of the relevant facts, applicable law, and the parties' briefs, the Court **GRANTS** Sony's Motion. As explained below, the Court finds that the Austin Division is more convenient and therefore orders that this case be transferred there but it remains on the docket of United States District Judge Alan D Albright.

## I.　　FACTUAL BACKGROUND

ACQIS filed this suit against Sony on April 14, 2022, asserting that Sony infringed five ACQIS patents—U.S. Patent Nos. 9,529,768 ("'768"), 9,703,750, 8,977,797, RE44,654, and RE45,140 ("Asserted Patents")—through U.S. sales and other activities relating to Sony PlayStation 4 ("PS4") game consoles. ECF No. 1 ¶¶ 1–4.

Broadly speaking, the Asserted Patents relate to low voltage differential signaling (LVDS) as a physical transmission medium for serial data transfer in PCI or USB bus transactions, or recited portions thereof, as used in PCI Express (PCIe) or USB 3.x. *Id.* ¶ 2. The '768 Patent generally relates to a "Computer System Including CPU or Peripheral Bridge Directly Connected to a Low Voltage Differential Signal Channel that Communicates Serial Bits of a Peripheral Component Interconnect Bus Transaction in Opposite Directions." *Id.* ¶ 15. The '750 Patent generally relates to an "Computer System Including CPU or Peripheral Bridge Directly Connected to a Low Voltage Differential Signal Channel that Communicates Serial Bits of a Peripheral Component Interconnect Bus Transaction in Opposite Directions." *Id.* ¶ 16. The '797 Patent generally relates to a "Method of Improving Peripheral Component Interface Communications Utilizing a Low Voltage Differential Signal Channel." *Id.* ¶ 17. The '654 Patent generally relates to an "Data Security Method and Device for Computer Modules." *Id.* ¶ 18. And the '140 Patent generally relates to a "Data Security Method and Device for Computer Modules." *Id.* ¶ 19.

The accused products include Sony video game consoles that include infringing PCIe and/or USB 3.x functionality. *Id.* ¶ 38. ACQIS's infringement allegations relate to the PCI Express (PCIe) functionality used to connect PS4 system components, namely connecting the AMD-supplied semi-custom Liverpool APU processor chip to the southbridge chip, and USB 3.x functionality that allows connection of the PS4 to external components. *See, e.g.*, *id.* ¶¶ 55–72 (PCIe), 147–150 (USB 3.x). In particular, the PCIe functionality of the PS4's processor, including PCIe controller(s) and other elements found on the processor chip, is material to ACQIS's allegations of infringement by the accused PS4 systems. *See id.*

Plaintiff ACQIS LLC is a limited liability company organized and existing under the laws of the State of Texas, with offices at 411 Interchange Street, McKinney, Texas 75071. *Id.* ¶ 5. A

related entity, ACQIS Technology, Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business at 1503 Grant Road, Suite 100, Mountain View, California 94040. *Id.* ACQIS LLC is operated from California, where its President, Dr. William Chu, resides. Dr. Chu is also the Chief Executive Officer of ACQIS Technology, Inc. *Id.*

Defendants are SIE and SIEI. *Id.* ¶¶ 7–8. SIE is a California limited liability company with its worldwide headquarters and principal place of business in San Mateo, California. *Id.* ¶ 8; ECF No. 23-2, Declaration of Lori Waugh ("Waugh"), ¶ 3. SIE operates a business that designs, develops, markets, and distributes PlayStation video game products globally and nationally. Waugh ¶ 3. SIE also has an office at 7800 Shoal Creek Boulevard, Austin, Texas. *Id.* ¶ 3. SIEI, which is SIE's affiliate in Japan, is incorporated under the laws of Japan with its principal place of business in Tokyo, Japan. *Id.* ¶ 4; ECF No. 1 ¶ 7.

## II.  LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . ." *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action might have been brought in the destination venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*] (en banc). If the destination venue would have been a proper venue,

then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law." *Id.*

Defendants should expect and accept some inconvenience when haled into Court. *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). Thus, assuming jurisdiction exists and venue is proper, the fact that litigating elsewhere would be more convenient for the defendant does not justify transfer under § 1404(a). *Id.* Rather, the elevated "good cause" burden that a movant must carry to justify transfer is that the alternative venue is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 315 (emphasis added). Although the plaintiff's choice of forum is not a separate factor entitled to special weight in the transfer analysis, this burden reflects the deference to which the plaintiff's choice of forum is entitled. *Id.* at 314 n.6, 315. And although "clearly more convenient" is not necessarily equivalent to the "clear and convincing" evidence standard, a movant must show "materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019); *see Volkswagen II*, 545 F.3d at 315.

### III.     DISCUSSION

## A.  Sony's Motion to Transfer to the Northern District of California

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue. *See Volkswagen II*, 545 F.3d at 312. Sony asserts that this case could have been brought in the NDCA because SIE's headquarters are located there. ECF No. 21 at 4. ACQIS does not contest this point. *See generally* ECF No. 44. This Court therefore finds that venue would have been proper in the NDCA, had the suit originally been filed there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the WDTX.

### 1.  The Private Interest Factors

#### a.  *The Cost of Attendance and Convenience for Willing Witnesses Favors Transfer*

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 WL 4743678, at *6; *see In re Genentech, Inc.*, 566 F.3d at 1343. Courts should consider all potential material and relevant witnesses when analyzing this factor. *Fintiv*, 2019 WL 4743678, at *6. The Fifth Circuit has established a "100-mile rule" to assist with analysis of witness convenience: "When the distance between an existing venue . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. But the Federal Circuit has clarified that courts should not apply the 100-mile rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple Inc.*, 979 F.3d at 1341 (citing *In re Genentech, Inc.*, 566 F.3d at 1344). And as "the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time,"

travel time is a more important metric than distance. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

i.      Sony's witnesses identified by Sony

Sony contends that this factor strongly favors transfer because the NDCA "includes Federal Courthouses geographically coinciding with SIE's San Mateo headquarters and are more easily accessible to SIEI's Tokyo-based office than the Waco Federal Courthouse." ECF No. 21 at 9. According to Sony, "[m]aintaining venue in the Waco Division requires witnesses to fly over 1,500 miles from California and over 6,500 miles from Tokyo, Japan, to an airport in Austin, Texas, and then to commute an additional 107 miles to the courthouse in Waco amidst higher travel costs from inflation and exorbitant fuel prices." *Id.* Sony also contends that "[e]ight of Sony's nine party witnesses would only commute 20.9 miles to [the San Francisco Federal Courthouse] from SIE's office in San Mateo, California." *Id.* To support the alleged eight party witnesses in NDCA, Sony relies on the Waugh Declaration. *See* Waugh ¶ 6. In it, Ms. Waugh identifies eight allegedly relevant SIE employees in the NDCA. *See id.* The one other party witness identified by Sony, ███ ████████ works at SIEI's office in Tokyo, Japan. ECF No. 21 at 5.

ii.     Sony's witnesses identified by ACQIS

ACQIS identifies no Sony party witnesses in the WDTX. *See* ECF No. 44 at 11. ACQIS also does not rebut the eight party witnesses identified in the NDCA and the one party witness in Japan identified by Sony. *See id.* Instead, ACQIS points to non-party witnesses, which the Court will address below. *See id.*

iii.    ACQIS's witnesses identified by ACQIS and Sony

The parties identify only one ACQIS party witness, Dr. Chu, who resides in the NDCA. *See id.* According to ACQIS and Dr. Chu, attending trial in the WDTX would not be an

inconvenience. *Id.* Sony responds that Dr. Chu's "self-serving declaration should be given no weight." ECF No. 47 at n.4. Accordingly, the Court finds that Dr. Chu is neutral in regard to transfer to the NDCA.

iv.      Conclusion

In sum, Sony has identified eight relevant willing witnesses in the NDCA and one willing party witness in Japan. Neither party has identified any willing witness in the WDTX. Accordingly, this factor weighs in favor of transfer to the NDCA.

**b.  *The Availability of Compulsory Process to Secure the Attendance of Witnesses Is Neutral***

A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). "The venue's ability to compel testimony through subpoena power is . . . an important factor in the § 1404(a) calculus," *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), that "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re Dish Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692586, at *3 n.1 (Fed. Cir. Sept. 25, 2018). But the Fifth Circuit has clarified that "the availability of compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In*

*re Planned Parenthood*, 52 F.4th at 630–31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 499 (6th Cir. 2016)).

Sony contends that this factor favors transfer. ECF No. 21 at 8. According to Sony, there are 17 non-party witnesses whom the NDCA could compel. ECF No. 21 at 7–8. First, Sony points to ██████████████████████████████ in Burbank, California and worked on the design and development of the PS4 console. *Id.* Second, Sony relies on Dr. Chu, President of ACQIS and sole inventor of all the Asserted Patents. *Id.* Dr. Chu, however, was considered by the Court above under the willing witness factor and will not be considered here. Third, Sony points to ███████ ████████████████████████████████████████████████ in Santa Clara, California. *Id.* Fourth, Sony relies on William Galliani, a patent attorney who prosecuted the Asserted Patents and works at Cooley LLP in Palo Alto, California. *Id.* Fifth, Sony lists ████ ████████████████████████████████████████████ in Sunnyvale, California, and worked with Sony on an AMD Accelerated Processing Unit ("APU") component used in the PS4 console. *Id.* Sixth, Sony relies on ████████████████████████████████████ ██████████████████████████ who resides in Los Angeles and worked on the design or development of the PS4 console. *Id.* Seventh, Sony points to ████████████████████████ ██████████████████████████ who resides in Cupertino and worked on the design or development of the PS4 console. *Id.* at 8. Eighth, Sony relies ████████████████████ ████████████████████████████ who resides in Livermore, California and worked on the design or development of the PS4 console. *Id.* Then Sony relies prior art witnesses, including seven inventors of prior art listed in the Asserted Patents and two additional relevant prior art witnesses are also located in California. *Id.*

In response, ACQIS identifies 16 exemplary non-party AMD witnesses, including current and former employees, who appear to reside in Texas. ECF No. 44 at 10. According to ACQIS, although AMD is headquartered in Sunnyvale, California, much of its engineering work takes place in Austin, Texas, including much of the Liverpool APU development. *Id.* at 7. ACQIS explains that Sony identified six additional current or former AMD employees of which it is aware, involved with technical aspects of the Liverpool APU. *Id.* Besides ███████████, which Sony identified above, Sony also identified ███████████ in Austin. *Id.* And the other five individuals Sony identified—████████████████████████████████████████████████████ ██████—appear to be located in or around Massachusetts. *Id.*

But ACQIS also argues that "there are numerous other current (and former) AMD employees, beyond those identified by Sony, that are likely custodians of relevant documents and/or witnesses." *Id.* at 7–8. According to ACQIS, the Liverpool APU is a semi-custom processor ████████████████████████████████████████████████████████████████ ████████████████████████████████████. *See id.* at 6; *see also* ECF Nos. 44-3– 7. ACQIS contends that ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ECF No. 44 at 8. Indeed, ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ *See id.*; ECF No. 44-3. Accordingly, ACQIS lists several relevant current and former AMD employees in Austin based on ████████████████████████████████████████. ECF No. 44 at 8. ACQIS also points to Jeff Connell, who resides in Austin, because AMD's operations in Austin appear to include a "Sony Business Unit," LinkedIn profile identifies his title from June 2016 as "Corporate VP and

GM, Sony Business Unit." *Id.* at 8–9. ACQIS also identifies twelve additional potential AMD custodians/witnesses. *Id.* at 9 (citing ECF No. 44-1 ¶ 24).

ACQIS also responds that "Sony fails to show, or even allege, that William Galliani, the patent attorney who prosecuted the Asserted Patents, or any of the other 15 witnesses are unwilling witnesses." *Id.* at 10. And ACQIS also argues that Sony provides no explanation for why the three former Sony employees testimony would be needed in addition to that of current Sony employees with similar knowledge. *Id.* at n.4. Similarly, ACQIS argues against Sony's reliance on nine prior art witnesses because Sony has not yet served invalidity contentions and has provided no explanation for why the identified alleged prior art is likely to be used at trial. *Id.*

In reply, Sony first reiterates that it has specifically named "16 non-party witnesses with knowledge of the design and development of the PS4 console, Asserted Patents, or prior art, all located in California and outside W.D. Tex.'s subpoena power." ECF No. 47 at 2–3. Although ACQIS contends that the Court should discount these witnesses because Sony never showed unwillingness, Sony contends that this Court follows the Federal Circuit's presumption of unwillingness for non-party witnesses. *Id.* at 3 (citing *XR Commc'ns.*, 2022 WL 3702271, at *5– 6). Sony also contends that for the non-party witnesses identified by ACQIS, "9 of these employees currently reside outside of Texas, none have any connection to the Waco Division . . ., and 3 have no apparent connection to development of the PS4." *Id.* at 3. Thus, Sony concludes that "factor favors transfer to N.D. Cal. or, alternatively, Austin." *Id.* at 4.

The Court finds this factor to be neutral. Sony puts forward 16 non-party witnesses in support of its motion to transfer. ACQIS, however, also presents 16 non-party witnesses in this District that weigh against transfer. Although Sony misleadingly states that "9 of these employees currently reside outside of Texas" (ECF No. 47 at 3), the Court finds that ACQIS has identified 16

employees in this District. First, Sony contends that Hunter and Moshkelani are in California (*id.* at n.3), but ACQIS never contends that Hunter is in Texas (ECF No. 44-1 ¶ 21) and ACQIS states that Moshkelani resides in both Texas and Los Gatos (*id.* ¶ 24). Second, Sony asserts that ███████████████████████████████████████ are all in Massachusetts (ECF No. 47 n.3), but ACQIS never contends that any of these potential witnesses are in Texas. ECF No. 44-1 ¶ 24. And finally, Sony asserts that ███ is in Canada (ECF No. 47 n.3), but ACQIS never contends that ███ is in Texas. ECF No. 44-1 ¶ 24. ACQIS has therefore shown 16 potential witnesses in this District: 12 potential witnesses in this District (*id.*); ████████████████████ are in this District (ECF No. 44 at 8), Jeff Connell, who resides in Austin (*id.* at 8–9), and ████████ (*id.* at 7). Sony does not sufficiently rebut these witnesses. Because there are the same number of potentially relevant non-party witnesses in each district, the Court finds that this factor is neutral as to transfer to the NDCA.

### c. *The Relative Ease of Access to Sources of Proof Slightly Favors Transfer*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). Specifically, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)). The Fifth Circuit has specified that the location of evidence bears "much more strongly" on the transfer analysis when the evidence is physical in nature. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630

(5th Cir. 2022). Other relevant considerations include the location of document custodians and where documents are created and maintained, "which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 21, 2021).

Sony contends that this factor favors transfer because "[a]ll hard copy and electronic documents in Sony's possession or control that are likely to serve as sources of proof and relate to Plaintiff's claims are accessible in the ordinary course of business at SIE's headquarters in San Mateo, California." ECF No. 21 at 5 (citing Waugh ¶ 6). And according to Sony, Sony's personnel who created and maintain this documentation are in Northern California or Japan. *Id.* Sony argues that its sources of proof include PS4 console specifications, development agreements, financial statements, and marketing strategies. *Id.* at 6.

In response, ACQIS argues that this factor weighs against transfer and focuses on the fact that "Sony does not assert that any of its documents exist in, or are stored solely in, non-electronic form or that any physical evidence cannot be digitized." ECF No. 44 at 6. Although ACQIS acknowledges that relevant Sony documents likely exist in Japan and California, ACQIS contends that Sony is wrong that there is not "a single source of physical proof in this District." *Id.*; ECF No. 21 at 6. According to ACQIS, "[h]ighly relevant third-party AMD documents relating to the Liverpool APU processor found in the accused PS4 products (as well as custodians, including current and possibly former AMD employees), are located and/or accessible in Austin in WDTX." *Id.* And as discussed above the Liverpool APU was made by AMD ██████████████████ █████████ ACQIS contends that many of the above AMD employees identified under the compulsory process factor will be relevant document custodians relating to the Liverpool APU. *Id.* at 8–9. ACQIS also asserts that ████████, identified as a Japan-based likely party trial witness in Sony's motion, ECF No. 21 at 5, and was ██████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.* at 9.

Sony replies that "it is undisputed almost all documents in Sony's possession, and the custodians thereof, relating to Plaintiff's claims, such as PS4 console specifications, development agreements, financial documents, and marketing strategies, are maintained at SIE's N.D. Cal headquarters." ECF No. 47 at 1. According to Sony, "ACQIS also does not explain how AMD evidence in Austin, if any, is not duplicative of that at its Sunnyvale headquarters." *Id.* at 2. And Sony also contends that "ACQIS ignores evidence relating to other specifically accused components of the PS4 developed by Marvell and Cerny Games, both in California." *Id.* Thus, Sony asserts that all of Sony's sources of proof and at least two out of the three non-party entities' sources of proof are in California, with AMD's sources of proof in N.D. Cal. or Austin. *Id.*

Upon consideration of the above, the Court finds this factor is weighs slightly in favor of transfer. ACQIS points to no sources of proof of its own in this District. All of Sony's sources of proof and at least two out of the three non-party entities' sources of proof are in California, with AMD's sources of proof in NDCA or Austin. Despite Sony's assertions to the contrary, the Court finds that there are relevant and important sources of proof in the WDTX with AMD that are not merely duplicative of California. *See* ECF No. 44 at 6–9. Notably, however, Sony does not assert that any of its documents exist in, or are stored solely in, non-electronic form or that any physical evidence cannot be digitized. When most of the evidence is electronic and equally accessible in either forum, this factor weighs against transfer. *In re Planned Parenthood*, 52 F.4th at 630 ("The district court first concluded that the private interest factors weigh against transfer. It found that the vast majority of the evidence was electronic, and therefore equally accessible in either forum."). Ultimately, the Court finds that all the relevant documents that are identified by the

parties appear to be electronic. Thus, under *In re Planned Parenthood*, this factor does not have as much bearing on whether this Court transfers this case as the other factors herein do. *See* 2022 WL 16549164, at *3. In conclusion, the Court finds that this factor slightly weighs toward granting transfer to the NDCA.

**d.  *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Strongly Disfavor Transfer.***

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013) (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly abuse[s] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

Sony contends that this factor favors transfer because "Plaintiff appears to have no presence in this District other than as a litigant." ECF No. 21 at 10. But ACQIS responds that this factor weighs strongly against transfer because there are other cases involving the same patents pending before this Court. ECF No. 44 at 3. According to ACQIS, there are currently four cases, including this one, pending before this Court involving the same patents; and three other cases before this Court involving the same patents were resolved within the last thirteen months. *Id.* at 4. ACQIS further explains that the co-pending cases all involve overlapping issues of claim construction, invalidity, prior art, conception and reduction to practice, and infringement based on PCIe and

USB 3.x functionality common to the accused computer systems in all co-pending cases. *Id.* Moreover, in November 2021, ACQIS explains that this Court construed claims from all five of the Asserted Patents in this case. *Id.* (citing *ACQIS LLC v. Lenovo Grp. Ltd.*, No. 6:20-cv-00967-ADA, Dkt. 106 (W.D. Tex. Nov. 17, 2021)). Sony replies that "ACQIS places undue emphasis on related suits in the District, particularly where this case will involve different products, discovery, evidence, witnesses, and trial." ECF No. 47 at 4.

The Court finds that ACQIS currently has one pending case against ASUSTeK, No. 6:20-cv-00966-ADA (involving all five patents asserted here (*see* Dkt. 1 at ¶ 2)). The Court also finds that ACQIS resolved cases in this Court against MiTAC, No. 6:20-cv-00962-ADA (involving same patents) (dismissed Feb. 2022), Inventec, No. 6:20-cv-00965-ADA (involving four of the five patents asserted here) (dismissed June 2022), Lenovo, No. 6:20-cv-00967-ADA (involving same patents) (dismissed Dec. 2022), Wiwynn, No. 6:20-cv-00968-ADA (involving four of the five patents asserted here (*see* Dkt. 1 at ¶ 2)) (dismissed Jun. 2023), and Microsoft, No. 6:22-cv-00385-ADA (involving the same five patents asserted here) (dismissed Jun. 2023).

In sum, this factor weighs strongly against transfer. Transfer to the NDCA, while another case involving the same patent and questions proceed here, would create significant practical difficulties. Two courts ruling on the same patent asserted by the same plaintiff wastes judicial resources and risks inconsistent rulings on the patents-in-suit. Trying both cases in the same court increases judicial economy. Moreover, the fact that this Court has already conducted a Markman hearing on all of the asserted patents also weighs against transfer. The Court therefore finds that this factor weighs strongly against transfer but recognizes that this factor alone is not dispositive.

## 2. The Public Interest Factors

### a. *The Administrative Difficulties Flowing from Court Congestion Are Neutral*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). It considers "the speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In the § 1404(a) transfer analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Id.*

Sony asserts that this factor is neutral. *See* ECF No. 21 at 11. ACQIS responds that this factor weighs against transfer because "[t]he median time from filing to trial for all civil cases in the WDTX is 28.9 months, and in NDCA 34.7 months, a difference of nearly six months." ECF No. 44 at 12. The Federal Circuit, however, recently determined that "it was a clear abuse of discretion [for this Court] to accord this factor any weight" where "[i]t appears undisputed that [the patentee] is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *See In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Because there is no evidence that ACQIS—a non-practicing entity—is engaged in "product competition in the marketplace," this factor is neutral.

### b. *The Local Interest in Having Localized Interests Decided at Home is Neutral*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). The local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In*

*re Apple Inc.*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d at 1256); *see also Volkswagen II*, 545 F.3d at 318. Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *In re Apple Inc.*, 979 F.3d at 1345. For instance, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). But if a lawsuit "calls into question the work and reputation of several individuals residing in or near [a particular] district," *see id.* at 1336, or if "the accused products were designed, developed, and tested in [a particular district]," that district has a local interest in deciding the case at home. *In re Apple Inc.*, 979 F.3d at 1345. Thus, to determine which district has the stronger localized interest, the Court looks to where the events forming the basis for the infringement claims occurred. *In re Juniper Networks, Inc.*, 14 F.4th at 1319.

According to Sony, this factor weighs in favor of transfer because the "Waco Division has no local interest in this dispute." ECF No. 21 at 11. Sony argues that "Plaintiff conducts business out of Mountain View, California"; "SIE is headquartered in the N.D. Cal. in San Mateo, California."; and "SIEI is headquartered in Tokyo, Japan." *Id.* And Sony asserts that the relevant "activities for the PS4 console and Plaintiff's alleged pre-suit meeting with SIE all occurred in the N.D. Cal." *Id.* Moreover, Sony maintains that "Plaintiff and Defendant's party and non-party witnesses and Sony's sources of proof, including those with access to them, are located in California." *Id.*

ACQIS responds that Texas and WDTX have a strong localized interest in this case. ECF No. 44 at 13. According to ACQIS, ACQIS is a limited liability company organized and existing under the laws of the State of Texas. *Id.* And ACQIS argues that it alleges that Sony has committed acts of infringement in this District, including by making, using, offering to sell, and/or selling

infringing PS4 consoles in Texas. *Id.* Importantly, ACQIS asserts that Sony's assertion that the design, development, and sale of the Accused Products "all occurred in the NDCA," ECF No. 21 at 11, ignores the Sony and AMD activity that occurred in Texas. *Id.* Further, according to ACQIS,

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ *See id.*

ACQIS contends that this indicates that a substantial portion of Sony's role in the design and development of the Liverpool APU, and the Accused Products generally, occurred in Japan, not NDCA. *Id.*

Considering all the above facts, the Court finds that on balance this factor is neutral with regard to transfer, although it is true that Plaintiff conducts business out of Mountain View, California, and SIE is headquartered in the N.D. Cal. in San Mateo, California, Sony cannot overcome the clear evidence that shows a connection between the accused product here and the Western District of Texas. As explained above, there is ample support that Sony and AMD were working together on the accused Liverpool APU in Austin and there remains witnesses and likely documentary evidence to support it. Sony ignores that there is a large local interest in Japan alongside the WDTX and NDCA. A substantial portion of Sony's role in the design and development of the Liverpool APU, and the Accused Products generally, occurred in Japan, not NDCA. Although it is also true that AMD's headquarters, Marvell, and Cerny Games are in California, the Court finds that does not outweigh the evidence showing that WDTX has significant local interests in this case as well. The Court, therefore, finds that the local interest in this case is neutral.

    c. ***Familiarity of the Forum with the Law That will Govern the Case Is Neutral***

Both parties agree that this factor is neutral. ECF No. 21 at 13; ECF No. 44 at 13. The Court also agrees.

**d. *Avoidance of Unnecessary Problems of Conflict of Laws or Application of Foreign Law is Neutral***

Both parties agree that this factor is neutral. *Id.* The Court also agrees.

## B. Conclusion on Transfer to the NDCA

Having considered the private and public interest factors, the Court's conclusion for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | In favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| The relative ease of access to sources of proof | Slightly favors transfer |
| All other practical problems that make the trial of a case easy, expeditious and inexpensive | Weighs strongly against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Neutral |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

Sony has established only one factor favors transfer to the WDTX and one factor slightly favors transfer. By contrast, ACQIS has established that the practical problems factor weighs strongly against transfer. Because all other factors are neutral, Sony has failed to meet its burden to show that the NDCA is a *clearly* more convenient venue. *Volkswagen II*, 545 F.3d at 314 n.10. Sony's Motion with respect to the NDCA is therefore **DENIED**.

## C. Sony's Alternate Motion to Transfer to the Austin Division

In the alternative, Sony also argues that the Court should transfer this case to the Austin Division of the Western District of Texas. ECF No. 21 at 13–15. To begin, as it did with its analysis of the NDCA, the Court finds that under the threshold determination in the § 1404(a), this suit could have been brought in the Austin Division of the WDTX. Neither party contests that venue could be proper in the Austin Division. *See id.*; *see generally* ECF No. 44. This Court therefore

finds that venue would have been proper in the Austin Division had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine whether the Austin Division is a clearly more convenient forum than the Waco Division.

Sony argues that the Austin Division is more convenient than the Waco division because "[a]s of April 14, 2022—the filing date of the Complaint—SIE had approximately 32 employees working at an office located at 7800 Shoal Creek Blvd., Austin Texas." ECF No. 21 at 14. According to Sony, although "Bluepoint Games Inc. is a Texas corporation that is separate from Defendants SIEI and SIE, Bluepoint is a subsidiary of SIE and had approximately 69 employees at its only office, which is located at 5000 Plaza on the Lake in Austin, Texas, as of April 14, 2022." *Id.* Sony argues that ACQIS "implies that the employees at Bluepoint's Austin office are SIE employees." ECF No. 1 ¶¶ 8, 13. If that is true, Sony explains that "SIE would have had approximately 101 employees working in Austin on April 14, 2022, but neither SIE nor SIEI had an office or a single employee working in Waco, Texas." ECF No. 21 at 14. Sony contends that "[t]ransfer to the Austin Division would require employees at these Shoal Creek and Plaza on the Lake addresses to travel less than 10 miles to the Austin federal courthouse for trial, while trial in the Waco Division imparts an approximate 100-mile one-way commute for these same employees." *Id.* And since there are non-stop flights available from California to Austin, but not to Waco, Sony contends that "all 27 above-identified party and nonparty witnesses based in California or Japan would incur either additional flight or an additional 100-mile drive from Austin to Waco." *Id.* at 14–15.

ACQIS responds that the practical problems factor weighs strongly against transfer, but that the private and public interest factors are "neutral with respect to the Waco or Austin Divisions." ECF No. 44 at 13–14. Yet the Court finds that the willing witness, sources of proof,

and local interest factors favor Austin over Waco. The Court agrees with Sony that the willing witnesses identified in Japan and California would find it more convenient to take a non-stop flight to Austin over travelling to Waco. And for the local interest factor, although ACQIS contends that Austin has no greater local interest in this case than Waco, the location of non-party AMD offices and employees in Austin, which the Court found highly relevant to the case above, weighs in favor of transferring to Austin. Nor does ACQIS dispute that there are Sony offices and employees in Austin but not in Waco. Similarly, the Court finds that the sources of proof factor slightly weighs in favor of Austin for the reasons stated above when analyzed under the transfer to NDCA.

Most importantly, however, is that the Court finds that for intra-district transfer, the practical problems factor is neutral with regard to the Austin Division and the Waco Division. As will be seen below, the Court will be retaining this case on its docket when it gets transferred to the Austin Division. Thus, unlike for transfer to the NDCA, which would create significant practical difficulties as discussed above. Here, the same judge would be trying both related cases in two divisions, which increases judicial economy. Moreover, the fact that this Court has already conducted a Markman hearing on all the asserted patents also is neutral here because the undersigned will be retaining the case in Austin. The Court therefore finds that this factor is neutral with regard to transfer to Austin.

## D. Conclusion on Transfer to the Austin Division

Having considered the private and public interest factors, the Court's conclusion for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | Weighs in favor |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| The relative ease of access to sources of proof | Slightly in favor |

| All other practical problems that make the trial of a case easy, expeditious and inexpensive | Neutral |
|---|---|
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Weighs in favor |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

In sum, Sony has shown that two factors weigh in favor of transfer and no factors weigh against transfer. Accordingly, Sony has met its burden to show that the Austin Division is a *clearly more convenient* venue. *Volkswagen II*, 545 F.3d at 314 n.10.

### IV.    CONCLUSION

Having found that the Austin Division is a clearly more convenient venue, it is therefore **ORDERED** that Sony's motion to transfer venue to the Austin Division of the Western District of Texas (ECF No. 44) is **GRANTED** and that the above-styled case be **TRANSFERRED** to the Austin Division but remain on the docket of United States District Judge Alan D Albright.

SIGNED this 19th day of July, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE