# EXHIBIT A

**Misc. Docket No. 23-_____**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

IN RE SONY INTERACTIVE ENTERTAINMENT INC. AND

SONY INTERACTIVE ENTERTAINMENT LLC

*Petitioners.*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 6:22-cv-386-ADA, Hon. Alan D. Albright

## NON-CONFIDENTIAL PETITION FOR WRIT OF MANDAMUS

ERIC A. BURESH
eric.buresh@eriseip.com
ERISE IP, P.A.
7015 College Boulevard, Suite 700
Overland Park, Kansas 66211
Telephone:  913.777.5600
Facsimile:   913.777.5601

*Counsel for Petitioners Sony Interactive
Entertainment Inc. and Sony Interactive
Entertainment LLC*

AUGUST 8, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Sony Interactive Entertainment, LLC, et al. |
| **Filing Party/Entity** | Sony Interactive Entertainment LLC and Sony Interactive Entertainment Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/07/2023

Signature: /s/ Eric A. Buresh

Name: Eric A. Buresh

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Sony Interactive Entertainment LLC | Sony Group Corporation | Sony Group Corporation |
| Sony Interactive Entertainment Inc. | Sony Group Corporation | Sony Group Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Erise IP, P.A. (Eric A. Buresh, Abran Kean, Mark C. Lang) | | |
| Gillam & Smith, L.L.P. (Melissa Smith) | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| None | | |
| | | |

# TABLE OF CONTENTS

**Page:**

CERTIFICATE OF INTEREST

TABLE OF CONTENTS..........................................................................i

TABLE OF AUTHORITIES ............................................................iv

STATEMENT OF RELATED CASE ................................................ vii

JURISDICTIONAL STATEMENT ......................................................1

INTRODUCTION ................................................................................2

RELIEF SOUGHT................................................................................7

ISSUE PRESENTED............................................................................8

STATEMENT OF FACTS ...................................................................9

    I.     ACQIS Is a Non-Practicing Entity with No WDTX Ties...................9

    II.    Sony's Accused PlayStation Products Have Strong NDCA Ties.......10

    III.   Sony Seeks Transfer to the NDCA ......................................................11

    IV.   The District Court Denies Sony's Motion to Transfer to the NDCA..........................................................................................12

STANDARD OF REVIEW .................................................................14

REASONS FOR ISSUING THE WRIT..............................................16

    I.     The Private and Public Interest Factors Favor Transfer .....................16

          A.    The District Court Clearly Abused Its Discretion in Weighing the Transfer Factors Under Its Own Factual Findings.........................................................................................17

1.    The Law Rejects Overinflating Concerns of Judicial Economy ........................................................................18

2.    The District Court's Analysis Flouts This Court's Clear Directives .............................................................19

B.    Clear Errors by the District Court Regarding the Private Interest Factors ...........................................................24

1.    "The Cost of Attendance for Willing Witnesses" – The District Court Erred by Failing to Find that this Factor Strongly Favored Transfer .................................24

2.    "The Relative Ease of Access to Sources of Proof" – The District Court Clearly Erred by Ignoring the Fact That the Vast Majority of Relevant Physical and Documentary Evidence Lies in NDCA .................27

3.    "The Availability of Compulsory Process" – The District Court Clearly Erred by Attributing Undue Weight to a Few AMD Employees in WDTX in Contrast to the Marvell, Cerny Games, the Prosecuting Attorney, and Prior Art Witnesses in California ........................................................................28

4.    "All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive" – The District Court Clearly Erred by Relying on Judicial Economy to Outweigh Other Factors ............................32

C.    Clear Errors by the District Court Regarding the Public Interest Factors ...........................................................33

1.    The District Court Clearly Erred by Ignoring the NDCA's Significant Local Interest in the Outcome of This Litigation .............................................................33

D.    NDCA Is Clearly More Convenient Than WDTX ...................36

CONCLUSION ................................................................................37

ADDENDUM

CERTIFICATE OF SERVICE AND FILING

CERTIFICATE OF COMPLIANCE

**CONFIDENTIAL MATERIAL OMITTED**

The material highlighted and redacted on page 34 describes the relationship and terms of a contract between Sony and a third party.

The ORDER DENYING SONY'S MOTION TO TRANSFER was filed Confidential with highlights and a public counter-part with redactions. Appendix pages: Appx1, Appx6, Appx8-9, Appx11-13 and Appx18 contain highlights.

The public counter-part contains redactions at Appendix pages: Appx23, Appx28, Appx30-31, Appx33-35 and Appx40

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*ACQIS LLC v. Alcatel-Lucent USA Inc.*,
   No. 6:13-cv-638, 2015 WL 1737853 (E.D. Texas Apr. 13, 2015) ...............22

*ACQIS LLC v. Appro Int'l, Inc.*,
   No. 6:09-cv-148, 2010 WL 3057371 (E.D. Tex. Aug. 2, 2010) ...................22

*ACQIS LLC v. ASUSTek Computer, Inc.*,
   6:20-cv-966-ADA (W.D. Tex.) ...................................................21, 22, 23, 32

*ACQIS LLC v. Samsung Elecs. Co.*,
   No. 2:20-cv-00295-JRG (E.D. Tex.) .......................................................22, 23

*ACQIS, LLC v. EMC Corp.*,
   No. 14-cv-13560, 2017 WL 6211051 (D. Mass. Dec. 8, 2017) ..............22, 23

*ACQIS, LLC v. EMC Corp.*,
   No. 14-CV-13560-ADB,
   2021 WL 1088207 (D. Mass. Feb. 19, 2021), *aff'd*,
      No. 2021-1772, 2022 WL 1562847 (Fed. Cir. May 18, 2022) ..........22, 23

*EcoFactor, Inc. v. Google LLC*,
   No. W-22-CV-00032-ADA,
   2022 WL 17169178 (W.D. Tex. Nov. 1, 2022) ...........................................35

*Fintiv, Inc. v. Apple Inc.,*
   No. 6:18-cv-372-ADA,
   2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ...........................................24

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011) .......................35

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) .......................................................14, 16, 27

iv

*In re Apple Inc.*,
 No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ................19, 32

*In re Apple, Inc.*,
 581 F. App'x 886 (Fed. Cir. 2014) ........................................................26, 29

*In re Genentech, Inc.*,
 566 F.3d 1338 (Fed. Cir. 2009) .............................................................24, 26

*In re Google Inc.*,
 No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017)................... 24-25

*In re Google LLC*,
 58 F.4th 1379 (Fed. Cir. 2023) ..............................................................*passim*

*In re Google LLC*,
 No. 2022-140, 2022 WL 1613192 (Fed. Cir. May 23, 2022) ......................19

*In re HP Inc.*,
 826 Fed. Appx. 899 (Fed. Cir. Sept. 15, 2020) ...........................................35

*In re Nintendo Co. Ltd.*,
 589 F.3d 1194 (Fed. Cir. 2009) .............................................................15, 16

*In re Planned Parenthood Fed'n of Am., Inc.*,
 52 F.4th 625 (5th Cir. 2022) .............................................................. 18-19

*In re Princo Corp.*,
 478 F.3d 1345 (Fed. Cir. 2007) ....................................................................1

*In re Samsung Elecs. Co.*,
 2 F.4th 1371 (Fed. Cir. 2021) ......................................................4, 19, 33, 36

*In re Toyota Motor Corp.*,
 747 F.3d 1338 (Fed. Cir. 2014) .............................................................16, 17

*In re TS Tech USA Corp.*,
 551 F.3d 1315 (Fed. Cir. 2008) ......................................................4, 6, 17, 26

*In re Verizon Bus. Network Servs. Inc.*,
 635 F.3d 559 (Fed. Cir. 2011) .....................................................................19

*In re Volkswagen of Am., Inc.*,
　545 F.3d 304 (5th Cir. 2008) ..................................................................*passim*

*XR Commc'ns, LLC v. Google LLC*,
　No. 6:21-CV-00625-ADA,
　2022 WL 3702271 (W.D. Tex. Aug. 26, 2022) ......................................25, 30

**Statutes:**

28 U.S.C. § 1295 ......................................................................................................1

28 U.S.C. § 1404(a) ......................................................................................*passim*

28 U.S.C. § 1651(a) ................................................................................................1

## STATEMENT OF RELATED CASE

No appeal in or from the proceeding in the lower court has previously been before this Court or any other appellate court.

## JURISDICTIONAL STATEMENT

This petition seeks a writ of mandamus to a district court in a patent infringement action. This Court has jurisdiction under 28 U.S.C. §§ 1295 and 1651(a). *In re Princo Corp.*, 478 F.3d 1345, 1351 (Fed. Cir. 2007).

**INTRODUCTION**

The district court clearly erred in denying[1] Sony's[2] motion to transfer this patent infringement suit filed by ACQIS LLC ("ACQIS") from the Western District of Texas ("WDTX") to the Northern District of California ("NDCA").   Sony identified *eight* willing Sony witnesses in NDCA, and neither party identified a single willing witness in WDTX.   That is because ACQIS does not have any operations in WDTX.   Instead, ACQIS operates from NDCA where its President and the sole inventor of all five Asserted Patents[3] resides, representing an additional willing witness in NDCA.   Sony also identified NDCA as the epicenter of the relevant sources of proof, along with relevant third parties within NDCA and elsewhere in California, all subject to absolute subpoena power in NDCA.   By contrast, the record reflects no willing witnesses in WDTX.   The only identified potential source of proof and witnesses in WDTX are all associated with a single third-party company, AMD, that is also headquartered in NDCA and that contributed to the design and development of *just one component* of the accused PS4 consoles. There are two other third-party companies, Marvell and Cerny Games, both of which

---

[1] While the district court's Order is titled "Order Granting Sony's Motion to Transfer," the district court in fact denied Sony's primary motion in holding that the "Sony Motion with respect to NDCA is therefore DENIED."  Appx1, Appx19.

[2] Petitioners are Sony Interactive Entertainment LLC ("SIE") and Sony Interactive Entertainment Inc. ("SIEI").

[3] "Asserted Patents" means U.S. Patent Nos. 9,529,768, 9,703,750, 8,977,797, RE44,654, and RE45,140.

reside in California and also contributed to the design and development of other accused components of the PS4 consoles. The district court also gave little credence to the presence of the prosecuting attorney and prior art witnesses in NDCA. Given the clear weight of witnesses and evidence in California, Sony moved to transfer to NDCA under 28 U.S.C. § 1404(a).

In its Order, although the district court ultimately granted an alternative request to transfer to the Austin division of WDTX (while retaining the case before the same judge), the district court abused its discretion by even reaching the Austin question in the first place. The primary relief requested was a transfer to NDCA because NDCA was a clearly more convenient forum than WDTX. Despite a plain entitlement to this relief based on the factual record before it, the district court elevated the existence of a single related case in the WDTX over all other factors. The district court's table summarizing its conclusions tells the story:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | In favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| The relative ease of access to sources of proof | Slightly favors transfer |
| All other practical problems that make the trial of a case easy, expeditious and inexpensive | Weighs strongly against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Neutral |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

Appx19.

3

The district court ignored this Court's guidance that "judicial economy considerations [cannot] undermine the clear case for transfer in light of the imbalance on the other factors," and instead overstated the concern for judicial economy ("weighs *strongly*[4] against transfer") while concurrently devaluing the single most important factor regarding the costs for willing witnesses (only "in favor of transfer"). *In re Google LLC,* 58 F.4th 1379, 1383 (Fed. Cir. 2023); *In re Samsung Elecs. Co*., 2 F.4th 1371, 1380 (Fed. Cir. 2021) (noting that "incremental gains" in judicial economy were not sufficient "to justify overriding the inconvenience to the parties and witnesses").  This was a clear abuse of discretion that resulted in a patently erroneous result and warrants a grant of Sony's petition for a writ of mandamus directing transfer to NDCA.  *In re TS Tech USA Corp*., 551 F.3d 1315, 1319 (Fed. Cir. 2008) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (*en banc*)).

Compounding this fundamental error in improperly weighing its own factual findings, mandamus is also appropriate because the district court committed multiple additional clear errors in arriving at its conclusions under several of the private and public interest factors:

---

[4] All emphases are added by Petitioners unless noted otherwise.

4

- Failing to find that the cost of attendance for willing witnesses factor strongly favors transfer where the only willing witnesses are all in NDCA and none reside in WDTX.  Appx6-7.

- Overvaluing the location of AMD's office in WDTX in finding that the relative ease of access to sources of proof factor only "[s]lightly favors transfer" despite AMD having its headquarters in NDCA where relevant product development work was performed and despite that Sony, ACQIS, and "at least two out of three third party entities' sources of proof" are in California.  Appx13.

- Overvaluing the location of certain AMD employees in WDTX in finding that the availability of compulsory process factor "neutral" despite AMD having its headquarters in NDCA and despite Sony identifying 16 California-based witnesses, almost all in NDCA, from various companies that have knowledge about various aspects of this case.  Appx10-11.

- Overvaluing the location of AMD in WDTX in finding the local interest factor "neutral" despite AMD having its headquarters in NDCA and Sony, ACQIS, and two third-party companies involved in the development of the accused products being in California.  Appx18.

The district court's analysis of these factors follows a common theme—sidestepping relevant facts supporting transfer to the NDCA and instead focusing on a limited third-party presence in WDTX.  When properly analyzed considering the full record and in line with controlling authority, the district court's clearly erroneous evaluation of these factors additionally warrants transfer to NDCA.  Sony, therefore, respectfully requests a grant of its petition for a writ of mandamus directing transfer

to NDCA to remedy the district court's "patently erroneous result" when denying the requested transfer. *In re TS Tech.*, 551 F.3d at 1319 (quoting *Volkswagen*, 545 F.3d at 310).

## RELIEF SOUGHT

Sony respectfully requests that this Court grant this petition for a writ of mandamus, vacate the district court's decision, and remand the case with instructions to transfer this action to the United States District Court for the Northern District of California.

## ISSUE PRESENTED

Whether the district court clearly abused its discretion in refusing to transfer this case to the United States District Court for the Northern District of California.

## STATEMENT OF FACTS

### I.  ACQIS Is a Non-Practicing Entity with No WDTX Ties

ACQIS is a "limited liability company organized and existing under the laws of the State of Texas, with offices [in] McKinney, Texas"—which is outside the WDTX. Appx2, Appx57 (¶5). ACQIS Technology, Inc., a related company, has its principal place of business in Mountain View, California, which is in the NDCA. Appx2-3, Appx57-58 (¶5). ACQIS is operated from the NDCA where its founder and the sole inventor of the Asserted Patents resides. Appx3, Appx58 (¶5). ACQIS is a non-practicing entity. Appx16. On April 14, 2022, ACQIS filed this lawsuit in the WDTX despite having no connection to the WDTX other than filing lawsuits there. *See generally* Appx57, Appx62-64 (¶¶5, 25, 28-35). ACQIS alleges that the Sony PlayStation 4, PlayStation 4 Slim, and PlayStation 4 Pro video game consoles (collectively, "PS4 Consoles" or "accused products") infringe the Asserted Patents, accusing the alleged "PCIe interface" and "USB 3.x functionality" of the PS4 Consoles.  Appx1-2; *see also, e.g.,* Appx70-84 (¶¶55-72), Appx837, Appx848-849, Appx808.

In ACQIS's infringement allegations, ACQIS specifically identifies a southbridge chip supplied by Marvell Semiconductor, Inc. ("Marvell") (Appx848-849) and identifies that the accused "PCIe interface" is used to "connect[] the southbridge to the CPU" (Appx849-850). ACQIS also identifies a processor

supplied by Advanced Micro Devices, Inc. ("AMD") as the CPU.  Appx839-845.

ACQIS also generally accuses USB 3.x functionality that allegedly connects the PS4

Consoles to external components. Appx70-84 (¶¶55-72).

## II.    Sony's Accused PlayStation Products Have Strong NDCA Ties

Defendant SIE is headquartered in San Mateo, California, which is in the

NDCA.  Appx3, Appx58 (¶8), Appx768-769 (¶3).  Defendant SIEI is headquartered

in Tokyo, Japan.  Appx3 (Order, p. 3), Appx58 (¶7), Appx769 (¶4).  Various teams

from SIE and SIEI, and other companies, designed and developed the processing

architecture for the PS4 Consoles that are accused of infringement.  Appx765-766

(¶3).  As part of that development, engineers at SIE worked with engineers at SIEI

and third parties Marvell Semiconductor, Inc. ("Marvell"), Advanced Micro

Devices, Inc. ("AMD"), and Cerny Games, Inc. ("Cerny Games").  *Id*.  AMD is

headquartered in the NDCA and Marvell is in NDCA.  Appx18, Appx765-766 (¶3).

Cerny Games is also located in California. Appx18, Appx765-766.

Sony identified 3 party witnesses and 6 non-party witnesses (including former

Sony employees) involved in development of the PS4 Consoles located in the NDCA

and 1 party witness in Japan.  Appx407, Appx765-766 (¶3), Appx769-770 (¶6).

Sony also identified 5 party witnesses with knowledge relevant to pre-suit

communications between Sony and ACQIS or knowledge of sales, marketing, and

revenue of the PS4 Consoles that are all located in NDCA.  Appx407 (Motion, p. 5), Appx766 (¶4), Appx769-770 (¶6).

## III.    Sony Seeks Transfer to the NDCA

In view of the strong connections to NDCA, Sony moved to transfer the case from WDTX to NDCA under 28 U.S.C. § 1404(a). Appx398-777. If the district court could somehow find (which it could not) that NDCA is "inappropriate as the transferee venue," Sony alternatively moved to transfer to the Austin Division of WDTX.  Appx415-417, Appx1 (Order, p. 1).   Sony supported its transfer motion with documentation and a sworn declaration of Geoff Norton, Vice President of Engineering at SIE who was involved with design and development of the PS4 Consoles prior to their initial release in 2013.  Appx765-766 (¶3).  Mr. Norton's declaration identifies a number of individuals affiliated with Sony and third parties that were involved with, and are knowledgeable about, the design and development of the PS4 Consoles.  Appx766 (¶4).  Sony also submitted the sworn declaration of Lori Waugh, demonstrating the bulk of relevant Sony-employed individuals is in NDCA. Appx768-770.  These individuals are custodians and have access to relevant documents in the NDCA relating to the design, development, marketing, sale and/or intellectual property licensing related to the accused PS4 Consoles.  Appx769-770 (¶6).  Sony also identified ACQIS, its President, the prosecuting attorney for the

11

Asserted Patents, and multiple prior art witnesses that reside in NDCA.  Appx2-3, Appx409-410, Appx443-446 (¶¶5-14).

ACQIS did not identify a single party witness or ACQIS document residing in WDTX or closer to WDTX than NDCA.  Appx6, Appx13.  Instead, ACQIS relied on the presence of third-party AMD employees in Austin, Texas, and speculation relating to their possible involvement with the development of, or their knowledge regarding, the PS4 Consoles while dismissing similar work done by AMD in NDCA outlined in sworn declarations and interrogatory responses.  Appx788-791; Appx765-766 (¶¶3-4), Appx1197-1198.

## IV.    The District Court Denies Sony's Motion to Transfer to the NDCA

The district court denied Sony's Motion to Transfer to NDCA, finding that Sony did not meet its burden to demonstrate that the NDCA is a clearly more convenient venue.  Appx19.  Instead, the district court granted Sony's alternative request for relief and transferred the case to the Austin Division of WDTX and retained the case on the district court judge's own docket.  Appx21-22.

As detailed below, the district court contradicted its own analysis and, contrary to this Court's repeated directives, elevated the pendency of a single related case in WDTX over the factors that strongly favored transfer to NDCA. *See, e.g.,* Appx19 (table detailing factors).  The district court specifically found that the cost of attendance for willing witnesses—the "single most important factor"— and

relative ease of access to sources of proof factors weighed in favor of transfer to NDCA.   Appx6-7, Appx11-14.   Despite these findings, the district court counterbalanced these factors with an inflated and legally erroneous view of judicial efficiency and refused to transfer the case to NDCA.  Appx19.  This was clear error.

The district court also clearly erred in elevating the presence of some employees of a single third-party (AMD) in WDTX to find the ease of access to proof factor only slightly weighed in favor of transfer to NDCA.  In doing so, the district court gave little weight to the abundance of proof in NDCA, including the presence of Sony and ACQIS and their witnesses and documents in NDCA, the presence of AMD and Marvell witnesses and documents in NDCA, the presence of third-party Cerny Games in California, the prosecuting attorney in NDCA, and prior art witnesses in NDCA.  Appx10-11, Appx13-14, Appx18.  Failing to give these facts due weight, while acknowledging that they weighed in favor of transfer, was a clear abuse of discretion.  The district court correctly found that the administrative difficulties, familiarity of law and avoidance of conflicts of law factors were neutral. Appx19.

## STANDARD OF REVIEW

This Court applies the law of the regional circuit—in this case, the Fifth Circuit—in mandamus review of the district court's denial of a motion to transfer. *In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020). A petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate method of attaining the desired relief;" and (3) demonstrate that "the writ is appropriate under the circumstances." *Volkswagen*, 545 F.3d at 311 (citations omitted). "In the § 1404(a) transfer context, however, the test for mandamus essentially reduces to the first factor." [5] *Apple*, 979 F.3d at 1336-37 (applying Fifth Circuit law). Accordingly, Sony need only show that the district court "clearly abused its discretion" in denying the transfer motion. *Volkswagen*, 545 F.3d at 311. A clear abuse of discretion exists when the district court reaches a "patently erroneous result" by: "(1) rel[ying] on clearly erroneous factual findings; (2) rel[ying] on erroneous conclusions of law; or (3) misappl[ying] the law to the facts." *Apple*, 979 F.3d at 1336 (citing *Volkswagen*, 545 F.3d at 310).

This case "featur[es] most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the

---

[5] This is because "the possibility of an appeal in the transferee forum following a final judgment is not an adequate alternative, and . . . an erroneous transfer may result in judicially sanctioned irreparable procedural injury." *Apple*, 979 F.3d at 1337 (citations and internal quotations omitted).

plaintiff," which means that "the trial court should grant a motion to transfer." *In re*

*Nintendo Co. Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

## REASONS FOR ISSUING THE WRIT

**I.      The Private and Public Interest Factors Favor Transfer.**

In cases arising from the Fifth Circuit, this Court "has granted writs of mandamus to correct denials of transfer that were clear abuses of discretion under governing legal standards."  *In re Toyota Motor Corp.*, 747 F.3d 1338, 1339 (Fed. Cir. 2014).  This is such a case.  It is not even a close call as there is a "stark contrast in relevance, convenience, and fairness between the two venues."  *Nintendo*, 589 F.3d at 1198.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"  It is undisputed that this action could have been brought in NDCA.  Appx5.  Accordingly, the only issue before the district court was whether a transfer would be for the convenience of parties and witnesses, and in the interest of justice.  *See Volkswagen*, 545 F.3d at 315.  The record overwhelmingly supports transfer to NDCA.

The Fifth Circuit uses both "private interest" factors and "public interest factors."  *Apple*, 979 F.3d at 1338 (citing *Volkswagen*, 545 F.3d at 315).  The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make

trial of a case easy, expeditious and inexpensive." *Id*.  The public interest factors

are: "(1) the administrative difficulties flowing from court congestion; (2) the local

interest in having localized interests decided at home; (3) the familiarity of the forum

with the law that will govern the case; and (4) the avoidance of unnecessary

problems of conflict of laws or in the application of foreign law." *Id*.

Courts should grant transfer when the transferee venue is "clearly more

convenient" than the venue the plaintiff chose.  *TS Tech*., 551 F.3d at 1319 (citing

*Volkswagen*, 545 F.3d at 315).  However, this does not mean the defendant must

show that the transferee forum is "far more convenient."  *Toyota*, 747 F.3d at 1341.

### A.  **The District Court Clearly Abused Its Discretion in Weighing the Transfer Factors Under Its Own Factual Findings**

Under the district court's own factual findings, and in view of the law, the

district court clearly abused its discretion in denying Sony's motion to transfer to

NDCA.  As can be seen below, the cost of attendance for willing witnesses, which

the district court acknowledged as the "single most important factor," and the ease

of access to sources of proof factors favored transfer to NDCA:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | In favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| The relative ease of access to sources of proof | Slightly favors transfer |
| All other practical problems that make the trial of a case easy, expeditious and inexpensive | Weighs strongly against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Neutral |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

Appx19 (annotated with colors). The only factor that did not favor transfer are purported "other practical problems" based on a single related co-pending litigation in WDTX. The law is clear that this factor alone cannot tip the balance—but that is exactly what the district court did. While Sony recognizes the transfer analysis is not a rigid mathematical exercise, it does not absolve the district court of conducting a factually and legally sound inquiry that follows this Court's directives. There is no sound basis under the facts here or the law for the district court's findings. Therefore, the district court clearly abused its discretion in denying Sony's motion to transfer to NDCA, warranting the issuance of a writ of mandamus directing such transfer. *See In re Google,* 58 F.4th at 1382-83 (granting mandamus relief where several factors favored transfer and none weighed against transfer).

        1.   *The Law Rejects Overinflating Concerns of Judicial Economy*

This Court has repeatedly found that "judicial economy considerations [cannot] undermine the clear case for transfer in light of the imbalance on the other factors." *In re Google,* 58 F.4th at 1383 (citing *In re Planned Parenthood Fed'n of*

*Am., Inc.*, 52 F.4th 625, 632 n.5 (5th Cir. 2022)); *In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022) ("[A]ny judicial economy gained in having the district court preside over this case based on its prior familiarity with some of the issues, from a prior claim construction in a different case brought by [the plaintiff], is clearly insufficient in this case to outweigh the other factors that clearly favor transfer."); *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022) (finding the "district court appears to have overstated the concern about waste of judicial resources and risk of inconsistent results in light of [the plaintiff's] co-pending suit in the Western District of Texas" where that "suit involves a different defendant with different hardware and different software and thus is likely to involve significantly different discovery and evidence"); *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (noting that "incremental gains" in judicial economy were not sufficient "to justify overriding the inconvenience to the parties and witnesses"); *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("To interpret §1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying §1404(a).").

> 2.   *The District Court's Analysis Flouts This Court's Clear Directives*

In its analysis, ignoring repeated warnings from this Court to avoid applying undue weight to judicial economy, the district court improperly elevated the "all

other practical problems" to overshadow the other factors that significantly favored transfer. While the district court paid lip service to the rule of law ((Appx15) (stating that the practical problems "factor alone is not dispositive")), the district court's factual findings make plain that it ignored this Court's admonitions.

For example, the district court affirmatively recognized that the convenience of willing witnesses is "the single most important factor in the transfer analysis" and found it favors transfer.[6]  Appx5.  This is because, other than one witness in Japan, the willing witnesses (*nine* in total) are all located in NDCA.  Appx6-7.  Not a single willing witness was identified in WDTX.  Appx7.

The district court also found that the relative ease of access to sources of proof factor favored NDCA because "ACQIS points to no sources of proof of its own in [WDTX]" and "[a]ll of Sony's sources of proof and at least two out of three of the non-party entities' sources of proof are in California."  Appx13.[7]  The district court further found that the availability of compulsory process and public interest factors were all neutral as to transfer.[8]  Appx19.

---

[6] As discussed below in Section I.B.1, the district court erred in not finding that this factor weighs strongly in favor of transfer.

[7] As discussed below in Section I.B.2, the district court erred in finding that this factor only "slightly favors transfer."

[8] As explained below in Section I.B.3 and I.C.1, the district court erred in finding that the compulsory process and local interest factors were only "neutral."

The only factor purportedly weighing against transfer was the "all other practical problems" factor.  Appx15, Appx19.  Specifically, the district court found this non-dispositive factor "weighs strongly against transfer" because "ACQIS currently has one pending case" in WDTX, the *AUSTeK* case, involving the Asserted Patents.  Appx15.  The district court found that transferring to NDCA "would create significant practical difficulties."  *Id*.  Namely, "[t]wo courts ruling on the same patent asserted by the same plaintiff wastes judicial resources and risk inconsistent rulings," "[t]rying both cases in the same court increases judicial economy," and the district court "already conducted a Markman hearing" in *ASUSTeK*.  *Id*.

The significance placed on this factor by the district court was clear error in view of the facts. In particular, the *ASUSTeK* case cited by the district court is scheduled for trial in less than two months.  *See* Appx1358 (Order setting trial for September 25, 2023). The Sony case is in its early stages and a Markman hearing has yet to be held.  Appx1226 (scheduling Markman hearing for August 11, 2023). In addition, Sony has offered new constructions not at issue in the *ASUSTeK* litigation.  Appx1321 (ACQIS recognizing that "[f]or the first time in litigations involving the Asserted Patents, Defendants have argued that a POSITA would interpret the term 'LVDS' as either limited to two specific standard specifications or completely subjective and indefinite."). Thus, there are no efficiencies to be gained by keeping the Sony case in WDTX vis-à-vis the *ASUSTeK* case.

In addition, the fact that "two courts" may "rul[e] on the same patent asserted by the same plaintiff" is already happening here.  Terms from the Asserted Patents, and related patents, have already been construed by two judges in the EDTX, one judge in the District of Massachusetts ("D. Mass."), one judge in the WDTX, and by this Court.  Appx1345-1357, Appx1303-1304 (*ACQIS LLC v. ASUSTek Computer, Inc.*, 6:20-cv-966-ADA (W.D. Tex.) (Albright, J.)); *ACQIS, LLC v. EMC Corp.,* 2022 WL 1562847 (Fed. Cir. May 18, 2022) ("specifically adopt[ing] district court's [D. Mass.] construction[s]"); Appx1266-1301 (*ACQIS LLC v. Samsung Elecs. Co*., No. 2:20-cv-00295-JRG (E.D. Tex.) (Payne, J.)); *ACQIS, LLC v. EMC Corp.*, No. 14-cv-13560, 2017 WL 6211051 (D. Mass. Dec. 8, 2017) (Burroughs, J.); *ACQIS LLC v. Alcatel-Lucent USA Inc.*, No. 6:13-cv-638, 2015 WL 1737853 (E.D. Texas Apr. 13, 2015) (Davis, J.); *ACQIS LLC v. Appro Int'l, Inc*., No. 6:09-cv-148, 2010 WL 3057371 (E.D. Tex. Aug. 2, 2010) (Davis, J.).  In addition, this Court has affirmed and the D. Mass. court has ruled on summary judgment motions relating to similar issues in the present case.  *ACQIS, LLC v. EMC Corp*., No. 14-CV-13560-ADB, 2021 WL 1088207 (D. Mass. Feb. 19, 2021) (granting motion for summary judgment of non-infringement), *aff'd*, No. 2021-1772, 2022 WL 1562847 (Fed. Cir. May 18, 2022).  The potential to avoid overlapping decisions on similar issues has long ago passed.

Finally, the district court's concerns regarding inconsistent rulings are of the district court's own making.  In particular, this Court in *EMC* expressly adopted claim constructions relating to PCI bus transactions terms that are found in the Asserted Patents.  *EMC Corp.* (Fed. Cir.)*,* 2022 WL 1562847, at *1 ("specifically adopt[ing] district court's [D. Mass.] construction of terms "Peripheral Interconnect (PCI) bus transaction, 'encoded ... serial bit stream of Peripheral Component Interconnect (PCI) bus transaction,' 'communicating ... PCI bus transaction,' and related terms").  As one example, the D. Mass. court construed "PCI bus transaction" as "a transaction, in accordance with the industry standard PCI Local Bus Specification, for communication with an interconnected peripheral component." *EMC Corp.* (D. Mass.), 2017 WL 6211051, at *3-5 (D. Mass. Dec. 8, 2017). Refusing to directly adopt this Court's construction, the district court in *ASUSTeK* construed "PCI bus transaction" as "a transaction, in accordance ***or backwards compatible*** with the industry standard PCI Local Bus Specification, for communication with an interconnected peripheral component."  Appx1348-1349. The district court also construed "USB"-related terms differently than a court in EDTX.  *Compare* Appx1353 (*ASUSTek*) (construing "USB"/"USB protocol [data/information]" as "plain-and-ordinary meaning") *with* Appx1298 (*Samsung* (construing "USB protocol" and "USB protocol [data/information]" as "[data/information in accordance with] the protocols defined in the Universal Serial

Bus Specification Revision 2.0 and the prior versions of this standard"). The district court's concern in the *Sony* case for inconsistent claim constructions, therefore, rings hollow.

Regardless, this factor is not sufficient to overcome the strong showing that NDCA is clearly more convenient, as reflected in the district court's own findings that the cost of attendance for willing witnesses and ease of access to sources of proof factors favor transfer. In view of these factual findings, the district court clearly abused its discretion in denying Sony's Motion to Transfer to NDCA, warranting the issuance of a writ of mandamus directing transfer to NDCA. *See In re Google*, 58 F.4th at 1383.

**B.**     **Clear Errors by the District Court Regarding the Private Interest Factors**

The district court further erred in its factual findings when analyzing several of the private interest factors.

   1. *"The Cost of Attendance for Willing Witnesses" – The District Court Erred by Failing to Find that this Factor Strongly Favored Transfer.*

The district court correctly found that "[t]he convenience of witnesses is the ***single most important factor in the transfer analysis***." Appx5 (quoting *Fintiv, Inc. v. Apple Inc.,* No. 6:18-cv-372-ADA, 2019 WL 4743678, at *6 (W.D. Tex. Sept. 13, 2019) and citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)); *see also In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23,

2017).  Because the parties identified 8 Sony witnesses and the inventor/Plaintiff's CEO in NDCA and not a single witness in WDTX, this factor **strongly** favors transfer.

Despite these facts, the district court found that this factor merely "weighs in favor of transfer."  Appx7.  The only way it could have arrived at this result is by not giving this factor the importance it warrants.  The only fact that the district court found was "neutral" on this factor is the inventor's (and ACQIS's President) presence in NDCA because he submitted a self-serving declaration that WDTX would not be inconvenient.  Appx6-7.  Giving Mr. Chu's declaration any weight is improper even under the district court's previous rulings.  *XR Commc'ns, LLC v. Google LLC*, No. 6:21-CV-00625-ADA, 2022 WL 3702271, at *4 (W.D. Tex. Aug. 26, 2022) ("[T]he Court will not weigh the convenience of a plaintiff's witnesses against transfer under this factor merely because the plaintiff attests that travel to this District would not represent an inconvenience upon witnesses with no apparent connection to this District.").  And it is clear error to find that Dr. Chu's presence in NDCA is merely "neutral" when it undoubtedly favors transfer, especially when there are no witnesses in ACQIS's chosen venue.

More importantly, the district court's undervaluing of this factor is contrary to this Court's repeated holdings that failure to find this factor substantially and

25

heavily favors transfer is clear error where multiple witnesses are found in the transferee district and none in the transferor district:

- "Because a substantial number of material witnesses reside within the transferee venue … and no witnesses reside within the Eastern District of Texas, the ***district court clearly erred in not determining this factor to weigh substantially in favor of transfer***."  *In re Genentech*, 566 F.3d at 1345.

- "[B]ecause the identified witnesses would need to travel a significantly further distance from home to attend trial in Texas than [transferee forum], ***the district court's refusal to considerably weigh this factor in favor of transfer was erroneous***." *In re TS Tech*., 551 F.3d at 1320.

- "On the [defendant] side of the balance are eight identified witnesses while on the [plaintiff] side of the balance are none. ***Such a strong showing of convenience weighs heavily in favor of transfe***r."  *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Here, there are a minimum of 9 willing party witnesses in the NDCA—for both Sony and ACQIS—and none in WDTX.[9]  Appx407, Appx409.

The result should be no different than in *Genentech*, *TS Tech*., *Apple*, and the long pedigree of cases that hold similarly. The district court clearly abused its discretion by not finding that this factor ***strongly favors transfer***.

---

[9] The district court did not consider third party witnesses under this factor, but instead under the compulsory process and ease of access to sources of proof factors, presumably because there was no indication they are willing witnesses. Appx6, Appx10-11, Appx13-14.  Therefore, Sony will address the district court's analysis with respect to third party witnesses in the context of those factors.

2.    *"The Relative Ease of Access to Sources of Proof" – The District Court Clearly Erred by Ignoring the Fact That the Vast Majority of Relevant Physical and Documentary Evidence Lies in NDCA.*

Ease of access to the sources of proof is a meaningful factor in the convenience analysis. *Volkswagen*, 545 F.3d at 316. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple*, 979 F.3d at 1340. Here, all of Sony's documents and custodians possessing relevant evidence are in NDCA or Japan. Appx407-408, Appx765-767 (¶¶3-5), Appx769-770 (¶6). ACQIS's documents are also in NDCA because ACQIS "is operated from [NDCA]." Appx3. Neither Sony nor ACQIS points to any source of proof of its own in WDTX. Appx13. In addition, "at least" two of the three identified third parties'—Marvell and Cerny Games— sources of proof are in California, while AMD's sources of proof are "in NDCA or Austin [WDTX]." Appx13.

In view of this, the district court found that this factor "slightly weighs toward granting transfer to the NDCA." Appx14. This was clear error. Four of the five sources of proof are in NDCA. Only one source of proof, AMD, is in WDTX, but it is also in NDCA. The only way the district court could have arrived at its findings for the sources of proof factor is to diminish the importance of the proof in possession of Sony, ACQIS, Marvell, Cerny Games, the prosecuting attorney, prior

art witnesses, and AMD in NDCA.  In addition, Sony's sources of proof in NDCA include not only technical documents relating to the PS4 Consoles, but also development agreements, financial statements, and marketing strategies (and custodians of the same).  Appx407-408.  But there was no evidence showing what proof, if any, may be with AMD in Texas.  Even so, it was clear error to find that AMD's unidentified proof in WDTX against the many sources of proof in NDCA could result in a finding anything other than "strongly favoring transfer."

3.   *"The Availability of Compulsory Process" – The District Court Clearly Erred by Attributing Undue Weight to a Few AMD Employees in WDTX in Contrast to the Marvell, Cerny Games, the Prosecuting Attorney, and Prior Art Witnesses in California.*

The district court found this factor was neutral "[b]ecause there are the same number of potentially relevant non-party witnesses in each district."  Appx11.  There are a variety of problems with district court's analysis.

First, the district court incorrectly equated the alleged presence in Austin of 16 ACQIS-identified AMD employees that purportedly have non-cumulative, relevant knowledge with the 16 relevant California witnesses identified by Sony through sworn testimony.  However, there are not 16 relevant witnesses in each venue.  As the district court notes, Mr. Moshkelani, identified by ACQIS, resides in both Texas and Los Gatos, California, which is in the NDCA.  Appx11.  The district court counted Mr. Moshkelani for WDTX but not NDCA—he should have been counted for both or neither.  The district court also did not count Brian Hunter,

28

another AMD employee identified by ACQIS in the San Francisco Bay Area (i.e., NDCA). Appx11, Appx790, Appx826 (¶21), Appx1081-1083.   Therefore, with Messrs. Moshkelani and Hunter added to Sony's 16 relevant California witnesses, there are 18 witnesses in California, not 16, and there may be at most 15 AMD witnesses in WDTX, not 16.   Thus, the district court's analysis was clearly erroneous on its face.   It was a clear abuse of discretion to find that this factor does not favor transfer because this Court has held that this factor "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x at 889.

*Second*, the district court's reliance on ACQIS's speculation as to many of the AMD witnesses' purported knowledge is fraught with risk.   This risk is revealed by looking at the nascent evidentiary support.   For example, the LinkedIn profiles of Jack Huynh and Scott Matlock do not even reference the PS4 Consoles, nor is it apparent why these witnesses would possess any relevant knowledge.   Appx1139-1145, Appx1164-1170.   In addition, the profile of Jeff Connell reflects that he was not even employed by AMD until three years after the original PS4 Console was released, so it is hard to imagine what relevant knowledge he may have.   Appx1095 (reflecting work at AMD starting in June 2016); Appx765-766 (¶3).

ACQIS had the ability to conduct discovery to inquire as to the knowledge of these purportedly relevant AMD witnesses.   It chose not to do so, leaving the district

court to guess as to what relevant and non-cumulative information each witness may have based on their LinkedIn Profiles.  The district court has previously recognized the challenge in relying on such profiles. *XR Commc'ns.*, 2022 WL 3702271, at *4 (criticizing failure to conduct venue discovery, quoting "[g]auging and articulating the relevance of a party's personnel to a particular case–especially personnel from a company the size of [AMD]–based only on vague LinkedIn profiles is a challenge"). It was clear error for the district court to place so much weight on these LinkedIn profiles when it has previously recognized the challenge in doing so.

In contrast, Sony presented a sworn declaration from Geoff Norton, who was closely involved with the design and development of the PS4 Consoles.  Appx765-766 (¶3).  Mr. Norton identified names of nine individuals at AMD, Marvell, and Cerny Games, and current and former employees of SIE in California that he worked with during the development process of the PS4 Consoles.  Appx8, Appx765-766 (¶¶3-4).  Sony also identified the prosecuting attorney and 9 prior art witnesses that reside in California.  Appx8, Appx409, Appx445-446 (¶¶12-14).

The district court evened the scales on this factor based only on employees of AMD, who may or may not have even contributed to a single component of the PS4 Consoles.  Appx9-10.  In contrast, Sony identified 16 witnesses covering a broad swath of subject matter who are subject to the subpoena power of NDCA, but who are not subject to the subpoena power of WDTX. Appx8, Appx407, Appx409-410,

30

Appx445-446 (¶¶12-14), Appx765-766 (¶¶3-4), Appx769-770 (¶6).  Similar to the AMD processor, ACQIS alleges that the "southbridge chip in each PlayStation 4 model is supplied by Marvell Technology, Inc." and the "PCIe interface used … for connecting the southbridge to the CPU … has an LVDS channel[.]"  Appx849-850. Thus, even if the presence of AMD witnesses in both the NDCA and WDTX could somehow keep the scales somewhat even, the presence in California of additional Marvell, Cerny Games and former Sony employee witnesses that worked on the development of the accused products tip the scales far in favor of transfer to NDCA.

The district court also appears to have given little weight to the fact that AMD is headquartered in NDCA and, therefore, is subject to the absolute subpoena power of NDCA.  If ACQIS seeks any knowledge regarding specific aspects of the development and operation of the PS4 Consoles in the possession, custody, or control of AMD, it can obtain that information in NDCA for deposition or trial.  The same cannot be said for WDTX, which does not have absolute subpoena power over any of the witnesses Sony identified in NDCA or elsewhere in California.

It was clear error for the district court to attach more significance to having subpoena power over ACQIS's identified AMD-Austin employees versus the numerous witnesses identified by Sony from many other companies that cover components of the accused PS4 Consoles and additional aspects of the case.

When properly analyzed, this factor at least weighs in favor of transfer.

31

4.    *"All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive" – The District Court Clearly Erred by Relying on Judicial Economy to Outweigh Other Factors.*

The district court relied on the pendency of a single case relating to the Asserted Patents in the WDTX to find this factor "strongly weighs against transfer." As discussed in Section I.A., this was a clear abuse of discretion. The Sony case is in its earliest stages, with no Markman hearing having occurred and fact discovery only recently opening. In contrast, *ASUSTeK* is set for trial in less than two months. *See* Appx1358. Any efficiencies to be gained by retaining this case as it relates to *ASUSTeK* no longer exist. Second, putting aside the difference in timing, the cases involve different accused products, including different hardware and software, that will involve different discovery and evidence. *In re Apple Inc.*, No. 2022-128, WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). Third, the Sony claim construction briefing involves proposed terms that the WTDX has not previously construed. *Compare* Appx1346-1357 (*ASUSTeK* CC Order) *with* Appx1228 (Sony Op. CC Brief) (identifying "LVDS" and "serial bit channel" as terms to be construed in the Sony case, but not construed in *ASUSTeK*). Finally, the district court's concern with inconsistent rulings ignores the reality that the Asserted Patents have already been construed by more than five courts, and the district court below has construed terms inconsistent with constructions from other district courts and this Court. *See supra*, Section I.A.2.

32

Therefore, this factor is neutral and, at a minimum, does not outweigh the strong showing as to the other factors that NDCA is clearly the more convenient venue. *In re Google,* 58 F.4th 1379 at 1383; *see also In re Samsung*, 2 F.4th at 1380.

    **C.**    **Clear Errors by the District Court Regarding the Public Interest Factors**

        1.    *The District Court Clearly Erred by Ignoring the NDCA's Significant Local Interest in the Outcome of This Litigation.*

The district court found that "on balance this factor is neutral." Appx18. This is clearly erroneous because this case has significant connections with the NDCA, which is not surprising given that this is a dispute between two entities that both operate out of NDCA. The district court recognized as much. *Id.* (noting that "Plaintiff conducts business" out of NDCA and defendant "SIE is headquartered" in NDCA). And there is no other party connection to WDTX. *See supra* Sections I.A. and I.B.1. In such a case, it is hard to imagine any venue having a local interest equal to NDCA that could possibly support this factor being neutral as opposed to favoring transfer.

Nonetheless, the district court again overemphasized the role of AMD (located in NDCA ***and*** WDTX) above that of Sony, Marvell, and Cerny Games that developed the PS4 Consoles, and of ACQIS, the inventor and the prosecuting attorney, all of whom are in NDCA (or California). The district court briefly alluded to AMD's headquarters in NDCA, but ignored the record evidence demonstrating

[CONFIDENTIAL MATERIAL OMITTED]

that more Sony development work was performed with AMD in NDCA than in Austin.  Appx18.  Specifically, employees of Sony met with AMD in its Sunnyvale headquarters on 12 occasions and in its Austin office on only 9 occasions.  Appx1197-1198.[10]  Thus, on balance, Sony's interactions of record with AMD occurred more in NDCA than in WDTX and, therefore, at worst, this weighs slightly in favor of NDCA when considering only AMD.

This, of course, does not end the inquiry because AMD was not the only party involved in the design and development of the PS4 Consoles.  Employees of SIE, SIEI, Marvell and Cerny Games in NDCA (or California) were also involved.  *See supra*, Section I.B; Appx8, Appx406, Appx409-410, Appx765-766 (¶¶3-4), Appx769-770 (¶6).  And ACQIS and its President (inventor of the Asserted Patents) and its patent prosecuting attorney are also all located in NDCA.  Appx2-3, Appx8.  The work of each of these companies and individuals will be potentially relevant during this case and at trial.  On balance, the scale tips heavily in favor of NDCA because each of these parties performed significant activities relating to this case in NDCA.

---

[10]  The district court also notes the ▮▮▮▮ Contract Terms ▮▮▮▮ (Appx18), but ignores it is with ▮▮▮ Contract Terms ▮▮▮ ▮▮ Contract Terms ▮▮ Appx905 (SONY_0000082).  This supports that NDCA has a greater local interest as it relates to AMD given that AMD's work under ▮ Contract Terms ▮ is being put into question.

In short, it was an abuse of discretion for the district court to elevate third party AMD's involvement in WDTX over the significant connections to NDCA (or California) of SIE, ACQIS, Marvell, Cerny Games, and numerous other party and third party witnesses in evaluating the local interest factor, especially considering that AMD is headquartered in NDCA.

When properly analyzed, this factor favors transfer. *In re HP Inc.*, 826 Fed. Appx. 899, 901, 903-04 (Fed. Cir. Sept. 15, 2020) (concluding that the local interests factor weighed at least slightly in favor of transfer because "more of the events giving rise to this suit appear to have occurred in [NDCA] than in [EDTX]— specifically, the development of the accused products"); *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011) (noting that "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor" such as when "[t]he company asserting harm and many of the companies alleged to cause that harm are all residents of that district, as are the inventor and patent prosecuting attorneys whose work may be questioned at trial"); *see also EcoFactor, Inc. v. Google LLC*, No. W-22-CV-00032-ADA, 2022 WL 17169178, at *13 (W.D. Tex. Nov. 1, 2022) (finding factor favors transfer because "[w]hile both the NDCA and the WDTX have a local interest in the outcome of this litigation … NDCA's interest is likely more

significant because both parties are headquartered there and many of the events giving rise to the litigation occurred there.").

### D.    <u>NDCA Is Clearly More Convenient Than WDTX</u>

As detailed above, the district court repeatedly applied erroneous legal conclusions contradicting this Court's repeated holdings in previous cases granting mandamus petitions. The district court also relied on clearly erroneous factual findings and misapplied the law to the facts and thereby abused its discretion. *Volkswagen*, 545 F.3d at 310. This abuse of discretion yielded "a patently erroneous result" requiring mandamus relief. *Id*.

A proper weighing of the private and public interest factors shows at least four factors weighing in favor of transfer and none weighing against. As described above, the following factors heavily weigh in favor of transfer: (1) cost of attendance of willing witnesses, (2) relative ease of access to sources of proof, (3) availability of compulsory process, and (4) local interest. All other practical problems, particularly given the context of multiple already-existing rulings from other courts, cannot possibly outweigh the four factors heavily favoring transfer. The district court, therefore, clearly abused its discretion in denying the motion to transfer to NDCA, warranting the issuance of a writ of mandamus directing transfer. *See In re Google,* 58 F.4th at 1382, 1385; *In re Samsung*, 2 F.4th at 1379.

36

## CONCLUSION

Sony respectfully requests that this Court grant this petition for a writ of mandamus, vacate the district court's decision, and remand the case to the district court with instructions to transfer this action to NDCA.

August 8, 2023

*/s/* Eric A. Buresh
Eric A. Buresh
ERISE IP, P.A.
7015 College Boulevard, Suite 700
Overland Park, Kansas 66211
(913) 777-5600
eric.buresh@eriseip.com

*Counsel for Petitioners Sony Interactive Entertainment Inc. and Sony Interactive Entertainment LLC*

37

[CONFIDENTIAL MATERIAL OMITTED]

Case 1:23-cv-00822-ADA   Document 65-1   Filed 08/08/23   Page 50 of 73
Case 6:22-cv-00386-ADA   Document 63   Filed 07/27/23   Page 1 of 22

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **ACQIS, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | **6-22-CV-00386-ADA** |
| -vs- | § | |
| | § | |
| **SONY INTERACTIVE** | § | PUBLIC VERSION |
| **ENTERTAINMENT INC., SONY** | § | |
| **INTERACTIVE ENTERTAINMENT** | § | |
| **LLC,** | § | |
| *Defendants.* | | |

**█████████ORDER GRANTING SONY'S MOTION TO TRANSFER**

Before the Court is Defendants Sony Interactive Entertainment LLC ("SIE") and Sony Interactive Entertainment Inc. ("SIEI") (collectively, "Sony") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), seeking transfer from the Western District of Texas to the Northern District of California, or in the alternative, the Austin Division of the Western District of Texas. ECF No. 21 (the "Motion"). Plaintiff ACQIS, LLC ("ACQIS") filed an opposition to the Motion on March 22, 2023 (ECF No. 44), to which Sony replied on April 5, 2023 (ECF No. 47). After careful consideration of the relevant facts, applicable law, and the parties' briefs, the Court **GRANTS** Sony's Motion. As explained below, the Court finds that the Austin Division is more convenient and therefore orders that this case be transferred there but it remains on the docket of United States District Judge Alan D Albright.

## I.    FACTUAL BACKGROUND

ACQIS filed this suit against Sony on April 14, 2022, asserting that Sony infringed five ACQIS patents—U.S. Patent Nos. 9,529,768 ("'768"), 9,703,750, 8,977,797, RE44,654, and RE45,140 ("Asserted Patents")—through U.S. sales and other activities relating to Sony PlayStation 4 ("PS4") game consoles. ECF No. 1 ¶¶ 1–4.

1

Broadly speaking, the Asserted Patents relate to low voltage differential signaling (LVDS) as a physical transmission medium for serial data transfer in PCI or USB bus transactions, or recited portions thereof, as used in PCI Express (PCIe) or USB 3.x. *Id.* ¶ 2. The '768 Patent generally relates to a "Computer System Including CPU or Peripheral Bridge Directly Connected to a Low Voltage Differential Signal Channel that Communicates Serial Bits of a Peripheral Component Interconnect Bus Transaction in Opposite Directions." *Id.* ¶ 15. The '750 Patent generally relates to an "Computer System Including CPU or Peripheral Bridge Directly Connected to a Low Voltage Differential Signal Channel that Communicates Serial Bits of a Peripheral Component Interconnect Bus Transaction in Opposite Directions." *Id.* ¶ 16. The '797 Patent generally relates to a "Method of Improving Peripheral Component Interface Communications Utilizing a Low Voltage Differential Signal Channel." *Id.* ¶ 17. The '654 Patent generally relates to an "Data Security Method and Device for Computer Modules." *Id.* ¶ 18. And the '140 Patent generally relates to a "Data Security Method and Device for Computer Modules." *Id.* ¶ 19.

The accused products include Sony video game consoles that include infringing PCIe and/or USB 3.x functionality. *Id.* ¶ 38. ACQIS's infringement allegations relate to the PCI Express (PCIe) functionality used to connect PS4 system components, namely connecting the AMD-supplied semi-custom Liverpool APU processor chip to the southbridge chip, and USB 3.x functionality that allows connection of the PS4 to external components. *See, e.g.*, *id.* ¶¶ 55–72 (PCIe), 147–150 (USB 3.x). In particular, the PCIe functionality of the PS4's processor, including PCIe controller(s) and other elements found on the processor chip, is material to ACQIS's allegations of infringement by the accused PS4 systems. *See id.*

Plaintiff ACQIS LLC is a limited liability company organized and existing under the laws of the State of Texas, with offices at 411 Interchange Street, McKinney, Texas 75071. *Id.* ¶ 5. A

related entity, ACQIS Technology, Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business at 1503 Grant Road, Suite 100, Mountain View, California 94040. *Id.* ACQIS LLC is operated from California, where its President, Dr. William Chu, resides. Dr. Chu is also the Chief Executive Officer of ACQIS Technology, Inc. *Id.*

Defendants are SIE and SIEI. *Id.* ¶¶ 7–8. SIE is a California limited liability company with its worldwide headquarters and principal place of business in San Mateo, California. *Id.* ¶ 8; ECF No. 23-2, Declaration of Lori Waugh ("Waugh"), ¶ 3. SIE operates a business that designs, develops, markets, and distributes PlayStation video game products globally and nationally. Waugh ¶ 3. SIE also has an office at 7800 Shoal Creek Boulevard, Austin, Texas. *Id.* ¶ 3. SIEI, which is SIE's affiliate in Japan, is incorporated under the laws of Japan with its principal place of business in Tokyo, Japan. *Id.* ¶ 4; ECF No. 1 ¶ 7.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . ." *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action might have been brought in the destination venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*] (en banc). If the destination venue would have been a proper venue,

3

**Appx25**

then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law." *Id.*

Defendants should expect and accept some inconvenience when haled into Court. *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). Thus, assuming jurisdiction exists and venue is proper, the fact that litigating elsewhere would be more convenient for the defendant does not justify transfer under § 1404(a). *Id.* Rather, the elevated "good cause" burden that a movant must carry to justify transfer is that the alternative venue is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 315 (emphasis added). Although the plaintiff's choice of forum is not a separate factor entitled to special weight in the transfer analysis, this burden reflects the deference to which the plaintiff's choice of forum is entitled. *Id.* at 314 n.6, 315. And although "clearly more convenient" is not necessarily equivalent to the "clear and convincing" evidence standard, a movant must show "materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019); *see Volkswagen II*, 545 F.3d at 315.

## III.  DISCUSSION

### A.  Sony's Motion to Transfer to the Northern District of California

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue. *See Volkswagen II*, 545 F.3d at 312. Sony asserts that this case could have been brought in the NDCA because SIE's headquarters are located there. ECF No. 21 at 4. ACQIS does not contest this point. *See generally* ECF No. 44. This Court therefore finds that venue would have been proper in the NDCA, had the suit originally been filed there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the WDTX.

#### 1.  The Private Interest Factors

##### a.  *The Cost of Attendance and Convenience for Willing Witnesses Favors Transfer*

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 WL 4743678, at *6; *see In re Genentech, Inc.*, 566 F.3d at 1343. Courts should consider all potential material and relevant witnesses when analyzing this factor. *Fintiv*, 2019 WL 4743678, at *6. The Fifth Circuit has established a "100-mile rule" to assist with analysis of witness convenience: "When the distance between an existing venue . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. But the Federal Circuit has clarified that courts should not apply the 100-mile rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple Inc.*, 979 F.3d at 1341 (citing *In re Genentech, Inc.*, 566 F.3d at 1344). And as "the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time,"

[CONFIDENTIAL MATERIAL OMITTED]
Case 1:23-cv-00822-ADA   Document 65-1   Filed 08/08/23   Page 55 of 73
Case 6:22-cv-00386-ADA   Document 63   Filed 07/27/23   Page 6 of 22

travel time is a more important metric than distance. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

      i.      Sony's witnesses identified by Sony

Sony contends that this factor strongly favors transfer because the NDCA "includes Federal Courthouses geographically coinciding with SIE's San Mateo headquarters and are more easily accessible to SIEI's Tokyo-based office than the Waco Federal Courthouse." ECF No. 21 at 9. According to Sony, "[m]aintaining venue in the Waco Division requires witnesses to fly over 1,500 miles from California and over 6,500 miles from Tokyo, Japan, to an airport in Austin, Texas, and then to commute an additional 107 miles to the courthouse in Waco amidst higher travel costs from inflation and exorbitant fuel prices." *Id.* Sony also contends that "[e]ight of Sony's nine party witnesses would only commute 20.9 miles to [the San Francisco Federal Courthouse] from SIE's office in San Mateo, California." *Id.* To support the alleged eight party witnesses in NDCA, Sony relies on the Waugh Declaration. *See* Waugh ¶ 6. In it, Ms. Waugh identifies eight allegedly relevant SIE employees in the NDCA. *See id.* The one other party witness identified by Sony, ██ ████████ works at SIEI's office in Tokyo, Japan. ECF No. 21 at 5.

      ii.      Sony's witnesses identified by ACQIS

ACQIS identifies no Sony party witnesses in the WDTX. *See* ECF No. 44 at 11. ACQIS also does not rebut the eight party witnesses identified in the NDCA and the one party witness in Japan identified by Sony. *See id.* Instead, ACQIS points to non-party witnesses, which the Court will address below. *See id.*

      iii.      ACQIS's witnesses identified by ACQIS and Sony

The parties identify only one ACQIS party witness, Dr. Chu, who resides in the NDCA. *See id.* According to ACQIS and Dr. Chu, attending trial in the WDTX would not be an

inconvenience. *Id.* Sony responds that Dr. Chu's "self-serving declaration should be given no weight." ECF No. 47 at n.4. Accordingly, the Court finds that Dr. Chu is neutral in regard to transfer to the NDCA.

    iv.   Conclusion

  In sum, Sony has identified eight relevant willing witnesses in the NDCA and one willing party witness in Japan. Neither party has identified any willing witness in the WDTX. Accordingly, this factor weighs in favor of transfer to the NDCA.

### b. The Availability of Compulsory Process to Secure the Attendance of Witnesses Is Neutral

  A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). "The venue's ability to compel testimony through subpoena power is . . . an important factor in the § 1404(a) calculus," *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), that "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re Dish Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692586, at *3 n.1 (Fed. Cir. Sept. 25, 2018). But the Fifth Circuit has clarified that "the availability of compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In*

*re Planned Parenthood*, 52 F.4th at 630–31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828

F.3d 488, 499 (6th Cir. 2016)).

      Sony contends that this factor favors transfer. ECF No. 21 at 8. According to Sony, there

are 17 non-party witnesses whom the NDCA could compel. ECF No. 21 at 7–8. First, Sony points

to ████████████████████████████ in Burbank, California and worked on the design

and development of the PS4 console. *Id.* Second, Sony relies on Dr. Chu, President of ACQIS and

sole inventor of all the Asserted Patents. *Id.* Dr. Chu, however, was considered by the Court above

under the willing witness factor and will not be considered here. Third, Sony points to ██████

██████████████████████████████████ in Santa Clara,

California. *Id.* Fourth, Sony relies on William Galliani, a patent attorney who prosecuted the

Asserted Patents and works at Cooley LLP in Palo Alto, California. *Id.* Fifth, Sony lists ██████

████████████████████████ in Sunnyvale, California,

and worked with Sony on an AMD Accelerated Processing Unit ("APU") component used in the

PS4 console. *Id.* Sixth, Sony relies on ██████████████████████

██████████████ who resides in Los Angeles and worked on the design or

development of the PS4 console. *Id.* Seventh, Sony points to ████████████████

██████████████ who resides in Cupertino and worked on the design or

development of the PS4 console. *Id.* at 8. Eighth, Sony relies ████████████████

██████████████ who resides in Livermore, California and worked

on the design or development of the PS4 console. *Id.* Then Sony relies prior art witnesses,

including seven inventors of prior art listed in the Asserted Patents and two additional relevant

prior art witnesses are also located in California. *Id.*

8

Case 1:23-cv-00822-ADA   Document 65-1   Filed 08/08/23   Page 58 of 73
[CONFIDENTIAL MATERIAL OMITTED]
Case 6:22-cv-00386-ADA   Document 63   Filed 07/27/23   Page 9 of 22

In response, ACQIS identifies 16 exemplary non-party AMD witnesses, including current and former employees, who appear to reside in Texas. ECF No. 44 at 10. According to ACQIS, although AMD is headquartered in Sunnyvale, California, much of its engineering work takes place in Austin, Texas, including much of the Liverpool APU development. *Id.* at 7. ACQIS explains that Sony identified six additional current or former AMD employees of which it is aware, involved with technical aspects of the Liverpool APU. *Id.* Besides ██████████, which Sony identified above, Sony also identified ██████████ in Austin. *Id.* And the other five individuals Sony identified—████████████████████████████████████████████████ ████—appear to be located in or around Massachusetts. *Id.*

But ACQIS also argues that "there are numerous other current (and former) AMD employees, beyond those identified by Sony, that are likely custodians of relevant documents and/or witnesses." *Id.* at 7–8. According to ACQIS, the Liverpool APU is a semi-custom processor ████████████████████████████████████████████████████████████████ ████████████████████████████████████████. *See id.* at 6; *see also* ECF Nos. 44-3– 7. ACQIS contends that ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ECF No. 44 at 8. Indeed, ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████ *See id.*; ECF No. 44-3. Accordingly, ACQIS lists several relevant current and former AMD employees in Austin based on ████████████████████████████████████. ECF No. 44 at 8. ACQIS also points to Jeff Connell, who resides in Austin, because AMD's operations in Austin appear to include a "Sony Business Unit," LinkedIn profile identifies his title from June 2016 as "Corporate VP and

**Appx31**

GM, Sony Business Unit." *Id.* at 8–9. ACQIS also identifies twelve additional potential AMD custodians/witnesses. *Id.* at 9 (citing ECF No. 44-1 ¶ 24).

ACQIS also responds that "Sony fails to show, or even allege, that William Galliani, the patent attorney who prosecuted the Asserted Patents, or any of the other 15 witnesses are unwilling witnesses." *Id.* at 10. And ACQIS also argues that Sony provides no explanation for why the three former Sony employees testimony would be needed in addition to that of current Sony employees with similar knowledge. *Id.* at n.4. Similarly, ACQIS argues against Sony's reliance on nine prior art witnesses because Sony has not yet served invalidity contentions and has provided no explanation for why the identified alleged prior art is likely to be used at trial. *Id.*

In reply, Sony first reiterates that it has specifically named "16 non-party witnesses with knowledge of the design and development of the PS4 console, Asserted Patents, or prior art, all located in California and outside W.D. Tex.'s subpoena power." ECF No. 47 at 2–3. Although ACQIS contends that the Court should discount these witnesses because Sony never showed unwillingness, Sony contends that this Court follows the Federal Circuit's presumption of unwillingness for non-party witnesses. *Id.* at 3 (citing *XR Commc'ns.*, 2022 WL 3702271, at *5–6). Sony also contends that for the non-party witnesses identified by ACQIS, "9 of these employees currently reside outside of Texas, none have any connection to the Waco Division . . ., and 3 have no apparent connection to development of the PS4." *Id.* at 3. Thus, Sony concludes that "factor favors transfer to N.D. Cal. or, alternatively, Austin." *Id.* at 4.

The Court finds this factor to be neutral. Sony puts forward 16 non-party witnesses in support of its motion to transfer. ACQIS, however, also presents 16 non-party witnesses in this District that weigh against transfer. Although Sony misleadingly states that "9 of these employees currently reside outside of Texas" (ECF No. 47 at 3), the Court finds that ACQIS has identified 16

employees in this District. First, Sony contends that Hunter and Moshkelani are in California (*id.* at n.3), but ACQIS never contends that Hunter is in Texas (ECF No. 44-1 ¶ 21) and ACQIS states that Moshkelani resides in both Texas and Los Gatos (*id.* ¶ 24). Second, Sony asserts that ███████████████████████████████████ are all in Massachusetts (ECF No. 47 n.3), but ACQIS never contends that any of these potential witnesses are in Texas. ECF No. 44-1 ¶ 24. And finally, Sony asserts that ████ is in Canada (ECF No. 47 n.3), but ACQIS never contends that ████ is in Texas. ECF No. 44-1 ¶ 24. ACQIS has therefore shown 16 potential witnesses in this District: 12 potential witnesses in this District (*id.*); ████████████████████ are in this District (ECF No. 44 at 8), Jeff Connell, who resides in Austin (*id.* at 8–9), and ████████████ (*id.* at 7). Sony does not sufficiently rebut these witnesses. Because there are the same number of potentially relevant non-party witnesses in each district, the Court finds that this factor is neutral as to transfer to the NDCA.

### c.  *The Relative Ease of Access to Sources of Proof Slightly Favors Transfer*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). Specifically, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)). The Fifth Circuit has specified that the location of evidence bears "much more strongly" on the transfer analysis when the evidence is physical in nature. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630

Case 1:23-cv-00822-ADA   Document 65-1   Filed 08/08/23   Page 61 of 73
[CONFIDENTIAL MATERIAL OMITTED]
Case 6:22-cv-00386-ADA   Document 63   Filed 07/27/23   Page 12 of 22

(5th Cir. 2022). Other relevant considerations include the location of document custodians and where documents are created and maintained, "which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 21, 2021).

Sony contends that this factor favors transfer because "[a]ll hard copy and electronic documents in Sony's possession or control that are likely to serve as sources of proof and relate to Plaintiff's claims are accessible in the ordinary course of business at SIE's headquarters in San Mateo, California." ECF No. 21 at 5 (citing Waugh ¶ 6). And according to Sony, Sony's personnel who created and maintain this documentation are in Northern California or Japan. *Id.* Sony argues that its sources of proof include PS4 console specifications, development agreements, financial statements, and marketing strategies. *Id.* at 6.

In response, ACQIS argues that this factor weighs against transfer and focuses on the fact that "Sony does not assert that any of its documents exist in, or are stored solely in, non-electronic form or that any physical evidence cannot be digitized." ECF No. 44 at 6. Although ACQIS acknowledges that relevant Sony documents likely exist in Japan and California, ACQIS contends that Sony is wrong that there is not "a single source of physical proof in this District." *Id.*; ECF No. 21 at 6. According to ACQIS, "[h]ighly relevant third-party AMD documents relating to the Liverpool APU processor found in the accused PS4 products (as well as custodians, including current and possibly former AMD employees), are located and/or accessible in Austin in WDTX." *Id.* And as discussed above the Liverpool APU was made by AMD ███████████ ███████ ACQIS contends that many of the above AMD employees identified under the compulsory process factor will be relevant document custodians relating to the Liverpool APU. *Id.* at 8–9. ACQIS also asserts that ███████, identified as a Japan-based likely party trial witness in Sony's motion, ECF No. 21 at 5, and was ████████████████████

Case 1:23-cv-00822-ADA   Document 65-1   Filed 08/08/23   Page 62 of 73
[CONFIDENTIAL MATERIAL OMITTED]
Case 6:22-cv-00386-ADA   Document 63   Filed 07/27/23   Page 13 of 22

██████████████████████████████████████████████

██████████████████████████████████████████ *Id.* at 9.

Sony replies that "it is undisputed almost all documents in Sony's possession, and the custodians thereof, relating to Plaintiff's claims, such as PS4 console specifications, development agreements, financial documents, and marketing strategies, are maintained at SIE's N.D. Cal headquarters." ECF No. 47 at 1. According to Sony, "ACQIS also does not explain how AMD evidence in Austin, if any, is not duplicative of that at its Sunnyvale headquarters." *Id.* at 2. And Sony also contends that "ACQIS ignores evidence relating to other specifically accused components of the PS4 developed by Marvell and Cerny Games, both in California." *Id.* Thus, Sony asserts that all of Sony's sources of proof and at least two out of the three non-party entities' sources of proof are in California, with AMD's sources of proof in N.D. Cal. or Austin. *Id.*

Upon consideration of the above, the Court finds this factor is weighs slightly in favor of transfer. ACQIS points to no sources of proof of its own in this District. All of Sony's sources of proof and at least two out of the three non-party entities' sources of proof are in California, with AMD's sources of proof in NDCA or Austin. Despite Sony's assertions to the contrary, the Court finds that there are relevant and important sources of proof in the WDTX with AMD that are not merely duplicative of California. *See* ECF No. 44 at 6–9. Notably, however, Sony does not assert that any of its documents exist in, or are stored solely in, non-electronic form or that any physical evidence cannot be digitized. When most of the evidence is electronic and equally accessible in either forum, this factor weighs against transfer. *In re Planned Parenthood*, 52 F.4th at 630 ("The district court first concluded that the private interest factors weigh against transfer. It found that the vast majority of the evidence was electronic, and therefore equally accessible in either forum."). Ultimately, the Court finds that all the relevant documents that are identified by the

13

**Appx35**

parties appear to be electronic. Thus, under *In re Planned Parenthood*, this factor does not have as much bearing on whether this Court transfers this case as the other factors herein do. *See* 2022 WL 16549164, at *3. In conclusion, the Court finds that this factor slightly weighs toward granting transfer to the NDCA.

### d. *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Strongly Disfavor Transfer.*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013) (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly abuse[s] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

Sony contends that this factor favors transfer because "Plaintiff appears to have no presence in this District other than as a litigant." ECF No. 21 at 10. But ACQIS responds that this factor weighs strongly against transfer because there are other cases involving the same patents pending before this Court. ECF No. 44 at 3. According to ACQIS, there are currently four cases, including this one, pending before this Court involving the same patents; and three other cases before this Court involving the same patents were resolved within the last thirteen months. *Id.* at 4. ACQIS further explains that the co-pending cases all involve overlapping issues of claim construction, invalidity, prior art, conception and reduction to practice, and infringement based on PCIe and

USB 3.x functionality common to the accused computer systems in all co-pending cases. *Id.* Moreover, in November 2021, ACQIS explains that this Court construed claims from all five of the Asserted Patents in this case. *Id.* (citing *ACQIS LLC v. Lenovo Grp. Ltd.*, No. 6:20-cv-00967-ADA, Dkt. 106 (W.D. Tex. Nov. 17, 2021)). Sony replies that "ACQIS places undue emphasis on related suits in the District, particularly where this case will involve different products, discovery, evidence, witnesses, and trial." ECF No. 47 at 4.

The Court finds that ACQIS currently has one pending case against ASUSTeK, No. 6:20-cv-00966-ADA (involving all five patents asserted here (*see* Dkt. 1 at ¶ 2)). The Court also finds that ACQIS resolved cases in this Court against MiTAC, No. 6:20-cv-00962-ADA (involving same patents) (dismissed Feb. 2022), Inventec, No. 6:20-cv-00965-ADA (involving four of the five patents asserted here) (dismissed June 2022), Lenovo, No. 6:20-cv-00967-ADA (involving same patents) (dismissed Dec. 2022), Wiwynn, No. 6:20-cv-00968-ADA (involving four of the five patents asserted here (*see* Dkt. 1 at ¶ 2)) (dismissed Jun. 2023), and Microsoft, No. 6:22-cv-00385-ADA (involving the same five patents asserted here) (dismissed Jun. 2023).

In sum, this factor weighs strongly against transfer. Transfer to the NDCA, while another case involving the same patent and questions proceed here, would create significant practical difficulties. Two courts ruling on the same patent asserted by the same plaintiff wastes judicial resources and risks inconsistent rulings on the patents-in-suit. Trying both cases in the same court increases judicial economy. Moreover, the fact that this Court has already conducted a Markman hearing on all of the asserted patents also weighs against transfer. The Court therefore finds that this factor weighs strongly against transfer but recognizes that this factor alone is not dispositive.

## 2. The Public Interest Factors

### a. *The Administrative Difficulties Flowing from Court Congestion Are Neutral*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). It considers "the speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In the § 1404(a) transfer analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Id.*

Sony asserts that this factor is neutral. *See* ECF No. 21 at 11. ACQIS responds that this factor weighs against transfer because "[t]he median time from filing to trial for all civil cases in the WDTX is 28.9 months, and in NDCA 34.7 months, a difference of nearly six months." ECF No. 44 at 12. The Federal Circuit, however, recently determined that "it was a clear abuse of discretion [for this Court] to accord this factor any weight" where "[i]t appears undisputed that [the patentee] is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *See In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Because there is no evidence that ACQIS—a non-practicing entity—is engaged in "product competition in the marketplace," this factor is neutral.

### b. *The Local Interest in Having Localized Interests Decided at Home is Neutral*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). The local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In*

*re Apple Inc.*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d at 1256); *see also Volkswagen II*, 545 F.3d at 318. Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *In re Apple Inc.*, 979 F.3d at 1345. For instance, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). But if a lawsuit "calls into question the work and reputation of several individuals residing in or near [a particular] district," *see id.* at 1336, or if "the accused products were designed, developed, and tested in [a particular district]," that district has a local interest in deciding the case at home. *In re Apple Inc.*, 979 F.3d at 1345. Thus, to determine which district has the stronger localized interest, the Court looks to where the events forming the basis for the infringement claims occurred. *In re Juniper Networks, Inc.*, 14 F.4th at 1319.

According to Sony, this factor weighs in favor of transfer because the "Waco Division has no local interest in this dispute." ECF No. 21 at 11. Sony argues that "Plaintiff conducts business out of Mountain View, California"; "SIE is headquartered in the N.D. Cal. in San Mateo, California."; and "SIEI is headquartered in Tokyo, Japan." *Id.* And Sony asserts that the relevant "activities for the PS4 console and Plaintiff's alleged pre-suit meeting with SIE all occurred in the N.D. Cal." *Id.* Moreover, Sony maintains that "Plaintiff and Defendant's party and non-party witnesses and Sony's sources of proof, including those with access to them, are located in California." *Id.*

ACQIS responds that Texas and WDTX have a strong localized interest in this case. ECF No. 44 at 13. According to ACQIS, ACQIS is a limited liability company organized and existing under the laws of the State of Texas. *Id.* And ACQIS argues that it alleges that Sony has committed acts of infringement in this District, including by making, using, offering to sell, and/or selling

[CONFIDENTIAL MATERIAL OMITTED]
Case 1:23-cv-00822-ADA  Document 65-1  Filed 08/08/23  Page 67 of 73
Case 6:22-cv-00386-ADA  Document 63  Filed 07/27/23  Page 18 of 22

infringing PS4 consoles in Texas. *Id.* Importantly, ACQIS asserts that Sony's assertion that the design, development, and sale of the Accused Products "all occurred in the NDCA," ECF No. 21 at 11, ignores the Sony and AMD activity that occurred in Texas. *Id.* Further, according to ACQIS,

████████████████████████████████████████████████████

████████████████████████████████████████████ *See id.*

ACQIS contends that this indicates that a substantial portion of Sony's role in the design and development of the Liverpool APU, and the Accused Products generally, occurred in Japan, not NDCA. *Id.*

Considering all the above facts, the Court finds that on balance this factor is neutral with regard to transfer, although it is true that Plaintiff conducts business out of Mountain View, California, and SIE is headquartered in the N.D. Cal. in San Mateo, California, Sony cannot overcome the clear evidence that shows a connection between the accused product here and the Western District of Texas. As explained above, there is ample support that Sony and AMD were working together on the accused Liverpool APU in Austin and there remains witnesses and likely documentary evidence to support it. Sony ignores that there is a large local interest in Japan alongside the WDTX and NDCA. A substantial portion of Sony's role in the design and development of the Liverpool APU, and the Accused Products generally, occurred in Japan, not NDCA. Although it is also true that AMD's headquarters, Marvell, and Cerny Games are in California, the Court finds that does not outweigh the evidence showing that WDTX has significant local interests in this case as well. The Court, therefore, finds that the local interest in this case is neutral.

### c. *Familiarity of the Forum with the Law That will Govern the Case Is Neutral*

Both parties agree that this factor is neutral. ECF No. 21 at 13; ECF No. 44 at 13. The Court also agrees.

18

**Appx40**

### d. *Avoidance of Unnecessary Problems of Conflict of Laws or Application of Foreign Law is Neutral*

Both parties agree that this factor is neutral. *Id.* The Court also agrees.

## B. Conclusion on Transfer to the NDCA

Having considered the private and public interest factors, the Court's conclusion for each factor is summarized in the following table:

| Factor | The Court's Finding |
| --- | --- |
| Cost of attendance for willing witnesses | In favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| The relative ease of access to sources of proof | Slightly favors transfer |
| All other practical problems that make the trial of a case easy, expeditious and inexpensive | Weighs strongly against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Neutral |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

Sony has established only one factor favors transfer to the WDTX and one factor slightly favors transfer. By contrast, ACQIS has established that the practical problems factor weighs strongly against transfer. Because all other factors are neutral, Sony has failed to meet its burden to show that the NDCA is a *clearly* more convenient venue. *Volkswagen II*, 545 F.3d at 314 n.10. Sony's Motion with respect to the NDCA is therefore **DENIED**.

## C. Sony's Alternate Motion to Transfer to the Austin Division

In the alternative, Sony also argues that the Court should transfer this case to the Austin Division of the Western District of Texas. ECF No. 21 at 13–15. To begin, as it did with its analysis of the NDCA, the Court finds that under the threshold determination in the § 1404(a), this suit could have been brought in the Austin Division of the WDTX. Neither party contests that venue could be proper in the Austin Division. *See id.*; *see generally* ECF No. 44. This Court therefore

19

**Appx41**

finds that venue would have been proper in the Austin Division had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine whether the Austin Division is a clearly more convenient forum than the Waco Division.

Sony argues that the Austin Division is more convenient than the Waco division because "[a]s of April 14, 2022—the filing date of the Complaint—SIE had approximately 32 employees working at an office located at 7800 Shoal Creek Blvd., Austin Texas." ECF No. 21 at 14. According to Sony, although "Bluepoint Games Inc. is a Texas corporation that is separate from Defendants SIEI and SIE, Bluepoint is a subsidiary of SIE and had approximately 69 employees at its only office, which is located at 5000 Plaza on the Lake in Austin, Texas, as of April 14, 2022." *Id.* Sony argues that ACQIS "implies that the employees at Bluepoint's Austin office are SIE employees." ECF No. 1 ¶¶ 8, 13. If that is true, Sony explains that "SIE would have had approximately 101 employees working in Austin on April 14, 2022, but neither SIE nor SIEI had an office or a single employee working in Waco, Texas." ECF No. 21 at 14. Sony contends that "[t]ransfer to the Austin Division would require employees at these Shoal Creek and Plaza on the Lake addresses to travel less than 10 miles to the Austin federal courthouse for trial, while trial in the Waco Division imparts an approximate 100-mile one-way commute for these same employees." *Id.* And since there are non-stop flights available from California to Austin, but not to Waco, Sony contends that "all 27 above-identified party and nonparty witnesses based in California or Japan would incur either additional flight or an additional 100-mile drive from Austin to Waco." *Id.* at 14–15.

ACQIS responds that the practical problems factor weighs strongly against transfer, but that the private and public interest factors are "neutral with respect to the Waco or Austin Divisions." ECF No. 44 at 13–14. Yet the Court finds that the willing witness, sources of proof,

and local interest factors favor Austin over Waco. The Court agrees with Sony that the willing witnesses identified in Japan and California would find it more convenient to take a non-stop flight to Austin over travelling to Waco. And for the local interest factor, although ACQIS contends that Austin has no greater local interest in this case than Waco, the location of non-party AMD offices and employees in Austin, which the Court found highly relevant to the case above, weighs in favor of transferring to Austin. Nor does ACQIS dispute that there are Sony offices and employees in Austin but not in Waco. Similarly, the Court finds that the sources of proof factor slightly weighs in favor of Austin for the reasons stated above when analyzed under the transfer to NDCA.

Most importantly, however, is that the Court finds that for intra-district transfer, the practical problems factor is neutral with regard to the Austin Division and the Waco Division. As will be seen below, the Court will be retaining this case on its docket when it gets transferred to the Austin Division. Thus, unlike for transfer to the NDCA, which would create significant practical difficulties as discussed above. Here, the same judge would be trying both related cases in two divisions, which increases judicial economy. Moreover, the fact that this Court has already conducted a Markman hearing on all the asserted patents also is neutral here because the undersigned will be retaining the case in Austin. The Court therefore finds that this factor is neutral with regard to transfer to Austin.

## D.  Conclusion on Transfer to the Austin Division

Having considered the private and public interest factors, the Court's conclusion for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | Weighs in favor |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| The relative ease of access to sources of proof | Slightly in favor |

21

**Appx43**

| All other practical problems that make the trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Weighs in favor |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

In sum, Sony has shown that two factors weigh in favor of transfer and no factors weigh against transfer. Accordingly, Sony has met its burden to show that the Austin Division is a *clearly* more convenient venue. *Volkswagen II*, 545 F.3d at 314 n.10.

## IV.   CONCLUSION

Having found that the Austin Division is a clearly more convenient venue, it is therefore **ORDERED** that Sony's motion to transfer venue to the Austin Division of the Western District of Texas (ECF No. 44) is **GRANTED** and that the above-styled case be **TRANSFERRED** to the Austin Division but remain on the docket of United States District Judge Alan D Albright.

SIGNED this 19th day of July, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that a true and correct copy of the foregoing Petition for a Writ of Mandamus has been electronically filed with the Clerk of Court using the CM/ECF system. I further certify that I caused a true and correct copy to be served via e-mail upon ACQIS's district court counsel at their last known email addresses and via Federal Express:

Ronald J. Schutz (rschutz@robinskaplan.com)
Aaron R. Fahrenkrog (afahrenkrog@robinskaplan.com)
Logan J. Drew (ldrew@robinskaplan.com)
William Jones (wjones@robinskaplan.com)
T. John Ward, Jr. (jw@wsfirm.com)
Andrea L. Fair (andrea@wsfirm.com)

Additionally, on this 8th day of August, 2023, I caused a copy of the foregoing to be served via UPS Ground to the U.S. District Court Judge:

The Honorable Alan D. Albright
United States District Court for the Western District of Texas
800 Franklin Avenue, Room 301
Waco, Texas 76701
Telephone: (254) 750-1501

August 8, 2023                    */s/* Eric A. Buresh
                                  Eric A. Buresh
                                  ERISE IP, P.A.
                                  7015 College Boulevard, Suite 700
                                  Overland Park, Kansas 66211
                                  (913) 777-5600
                                  eric.buresh@eriseip.com

                                  *Counsel for Petitioners Sony Interactive*
                                  *Entertainment Inc. and Sony Interactive*
                                  *Entertainment LLC*

## CERTIFICATE OF COMPLIANCE

I, Eric A. Buresh, counsel for Petitioners, certify that the foregoing petition complies with the type-volume limitation set forth in Fed. R. App. P. 21(d)(1). Specifically, this petition contains 7,445 words as determined by the word count feature of the word processing program used to create this brief.

I further certify that the foregoing brief complies with the typeface requirements set forth in Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). Specifically, this brief has been prepared using a proportionally spaced typeface using Microsoft Word 365, in 14-point Times New Roman font.

The foregoing contains fifteen [15] unique words, (including numbers) which does not exceed the maximum of fifteen (15) words permitted by Fed. Cir. R. 25.1(d)(1)(B).

August 8, 2023

/s/ Eric A. Buresh
Eric A. Buresh
ERISE IP, P.A.
7015 College Boulevard, Suite 700
Overland Park, Kansas 66211
(913) 777-5600
eric.buresh@eriseip.com

*Counsel for Petitioners Sony Interactive Entertainment Inc. and Sony Interactive Entertainment LLC*